LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Proposed Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

In re:

A CAB, SERIES L.L.C.,

Debtor.

Case No. 22-14361-nmc
Chapter 11

Date:  February 14, 2023
Time:  9:30 a.m.

**DEBTOR'S OPPOSITION TO MOTION FOR ORDER GRANTING
LEON GREENBERG, ESQ. PERMISSION TO FILE A SINGLE
ITEMIZED PROOF OF CLAIM FOR 661 CREDITORS**

A Cab, Series L.L.C., a Nevada series limited liability company, as debtor and debtor in possession (the "Debtor"), submits its opposition (the "Opposition") to the *Motion for Order Granting Leon Greenberg, Esq. Permission to File a Single Itemized Proof of Claim for 661 Creditors* (the "Motion" or the "Class Claim Motion") [ECF No. 62] filed by Leon Greenberg, P.C. ("Greenberg P.C.") and/or on behalf of Leon Greenberg, Esq. ("Mr. Greenberg"), which alleges that it is on behalf of various class plaintiffs identified as the "Murray Case creditors." This Opposition is made and based on the points and authorities herein, the *Declaration of Jay Nady* (the "Nady Declaration") filed in support of this Opposition, the papers and pleadings on file in this bankruptcy case, judicial notice of which are requested, and any arguments of counsel made at the time of any hearings on the Motion.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

## I.    JURISDICTION AND VENUE

1.    On December 12, 2022 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing its bankruptcy case (the "Chapter 11 Case"). The Debtor has elected to be treated under Subchapter V of chapter 11 of the Bankruptcy Code, and thus is authorized to continue operating its business as a debtor in possession pursuant to section 1184 of the Bankruptcy Code. Nathan F. Smith has been appointed as the Subchapter V Trustee. Pursuant to LR 9014.2, the Debtor consents to the entry of final orders by the bankruptcy judge regarding the matters at issue in the Motion.

## II.    STATEMENT OF FACTS

### A.    Introduction.

2.    The Debtor is a Nevada series limited liability company that operates as a taxicab service in the Las Vegas area, and is licensed by the Nevada Taxicab Authority. The Debtor's manager is Creighton J. Nady ("Mr. Nady"), and the Laurie Nady Family Trust (the "Trust") is its the sole member. Mr. Nady and his wife are the trustees of the Trust, and thus indirectly control the Debtor. As of the Petition Date, the Debtor's various cells collectively had about 76 active taxicabs in use. Additionally, one of the Debtor's cells owns Taxi Leasing Company ("TLC"), which also has numerous cells as well, and which collectively had about 54 active additional taxicabs in use as of the Petition Date. The Debtor itself does not have any employees, however, TLC has various cells, including one that enters into leases with drivers, as well as other cells that have employees, and still others that engage in various designated tasks, including for example, administration, operations, and repairs related to the business.

### B.    The Murray Case.

3.    Since 2012, the Debtor has been a party to class action litigation pending in the Eighth Judicial District Court, Clark County, Nevada (the "Nevada State Court"), styled as Murray, *et al.* v. A Cab, Series L.L.C., Case No. A-12-669926-C (the "Murray Case"). The Murray Case originally involved claims by 890 former taxi drivers (collectively, the "Murray Plaintiffs") for alleged violation of the Nevada Minimum Wage Act under the Constitution of the State of Nevada, however, they have more recently stated that there are now only 661 alleged

claimants in that case.

4.      On August 21, 2018, the Nevada State Court entered an judgment in favor of the Murray Plaintiffs, <u>see</u> Motion, Ex. E, which was subsequently amended by an order entered October 22, 2018.  Greenberg P.C., as movant herein, points to this earlier decision in 2018 in support of its assertion that it is authorized to represent all of the Murray Plaintiffs now in this Chapter 11 Case.  Significantly, however, not only does that 2018 order obviously not make any reference to any bankruptcy representation whatsoever, but also, as hereinafter explained, certain events intervened that are directly contrary to Greenberg P.C.'s alleged authority to represent all of the claimants herein.  The Debtor thereafter appealed that final judgment and certain post-judgment orders to the Nevada Supreme Court.

5.      On or about September 17, 2018, the Murray Plaintiffs executed on various bank accounts in the collection of their judgment, which resulted in a garnishment in the total amount of $203,620.54.  This collection action was done shortly before payments to taxicab drivers were due, and almost resulted in the near catastrophic shutdown of the business, which was only averted because Mr. Nady did an emergency infusion of cash from personal funds to save the business.

6.      On December 31, 2021, the Nevada Supreme Court finally issued an opinion and remittitur, which directed certain modifications to the Murray Plaintiffs' judgment, including a reduction of the amount of damages awarded, and remanded the matter back to the Nevada State Court for further determinations.  Accordingly, even through the end of 2021, the Murray Case was not fully and finally resolved.

7.      After remand, it was not until on November 17, 2022, which was more than eleven (11) months later, that the Nevada State Court entered various orders as hereinafter detailed, further addressing certain matters on remand in the Murray Case.  *First*, the Nevada State Court directed the entry of a judgment in favor of the Murray Plaintiffs in the principal amount of $685,886.60 as of August 21, 2018, plus post-petition interest accruing thereon, for alleged wages owing for the period of October 8, 2010 through December 31, 2015.  <u>See</u> Motion, Ex. C.  Accordingly, although the claims in the Murray Case are for alleged wage and/or

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

overtime claims for drivers, they all involve claims for time periods well outside of the 180-day lookback period prior to the Petition Date to qualify for priority treatment pursuant to section 507(a)(4) of the Bankruptcy Code, and thus are general unsecured (non-priority) claims.

8.      *Second*, the Nevada State Court entered a modified award of fees and costs in favor of Greenberg P.C. in the principal amount of $541,271, together with interest accruing thereon from August 21, 2018, as well as an additional award of a principal amount of at least $46,528.07 in additional attorneys' fees arising from the latest appeal in the Nevada Supreme Court. Inclusive of interest through the Petition Date, the total claims of the Murray Plaintiffs from the Murray Case are alleged to be approximately $870,000, and the total claims of Greenberg, P.C., as their counsel, are alleged to be approximately $744,000, for a total of about $1.615 million.

9.      Greenberg P.C., on behalf of the Murray Plaintiffs, thereafter filed a motion with the Nevada State Court seeking to disburse $303,694.54 in funds still being held in Greenberg P.C.'s IOLTA trust account to satisfy, in part, their awards, and also continued with their request for the appointment of a receiver over the Debtor's business in aid of collection of their award, both of which were set for hearing on December 15, 2022. To be clear, $203,620.54 of the foregoing sum held in Greenberg P.C.'s IOLTA trust account were the monies previously garnished in 2018 as previously referenced, and the other monies were also provided by the Debtor previously as well.

10.     Accordingly, faced with the Murray Plaintiffs and Greenberg P.C. seeking an immediate collection of their awards, including via the appointment of a receiver set for hearing on December 15, 2022, which awards the Debtor lacked the financial ability to pay all at once, and in order to bring about a resolution of these matters, while preserving its operations and avoid the severe disruption, if not complete shutdown, that would occur if those awards were enforced like they were previously in September 2018, as well as to avoid the cost and dislocation that would occur if a receiver were appointed to operate the business, the Debtor sought bankruptcy protection. The Debtor's bankruptcy filing stayed the Murray Case, and various other litigations involving the Debtor, by operation of the automatic stay in section 362

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

4

of the Bankruptcy Code.

**C.     The Dubric Case.**

11.     The Debtor also had a nearly identical wage and hour class action commenced against it by nearly all of the same plaintiffs as the Murray Plaintiffs in Nevada State Court, styled as Dubric, *et al.*, v. A Cab, Series, L.L.C., Case No. A-15-721063-C (the "Dubric Case"). The plaintiffs in the Dubric Case (collectively, the "Dubric Plaintiffs"), however, were represented by different counsel, the Bourassa Law Group.

12.     On August 31, 2021, the Judge hearing the Dubric Case, which was a different department/judge than the one hearing the Murray Case, approved a settlement with nearly all of the Dubric Plaintiffs, and the Debtor fully funded this settlement in the amount of $224,529 to these plaintiffs, as well as attorney's fees and costs to the Bourassa Law Group, as their counsel, of an additional $57,500.  Significantly, all class members received notice of these two (2) separate class lawsuits, and only one (1) chose to opt out the Dubric settlement.  Notably also, this order approved the appointment of the Bourassa Law Group as counsel to the Dubric Plaintiffs, all of whom save only a few, were also plaintiffs in the Murray Case.  Critically also, this decision approving the Dubric settlement and Bourassa Law Group as counsel was entered on August 31, 2021, and thus was fully finalized well before the Murray Case was concluded in late 2022, and thus obviously takes precedence.

13.     Significantly also, Greenberg, P.C. challenged the Dubric decision on appeal, however, the Nevada Supreme Court affirmed in a decision entered on August 11, 2022, which again was well before the Nevada State Court in the Murray Case entered its additional decisions post-remand on November 17, 2022.  Specifically, the Nevada Supreme Court held that "The record demonstrates that respondents reached the settlement as a result of lengthy negotiations after conducting a significant amount of discovery and with the assistance of both a jointly retained expert and an experienced judicial officer. And although there were objections to the settlement, the number of objections represented only a small fraction of the total class, and those objectors chose not to opt of the settlement."  As such, the Dubric Case was a full and final judgment.  True and correct copies of the Nevada State Court's order in the Dubric Case, and the

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel:  (702) 382-1170  Fax:  (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Nevada Supreme Court's affirmance thereof, are attached as **Exhibit A** and **Exhibit B**.[1] Greenberg P.C. also filed a petition for rehearing, but the Nevada Supreme Court subsequently denied that request as well on September 7, 2022.

14.    On February 8, 2023, the Bourassa Law Group, as counsel, filed its latest *Status Report on Class Action Settlement Fund and Disbursement* (the "Status Report") in the Dubric Case, which indicated that as of that date, 270 of the 867 checks were returned as undeliverable. This Status Report further indicated that Bourassa Law Group had performed advanced address searches (*i.e.* skip traces) on 257 class members whose check was returned, and then re-mailed the 257 checks to the most up to date address located. The Status Report further indicated that the Bourassa Law Group continues to research additional addresses for the remaining 13 checks that have been returned to date and will continue to do so for any other checks that are returned to it as class counsel. Finally, the Status Report indicated that, to date, 391 checks have cleared the Bourassa Law Group's IOLTA trust account consisting of settlement funds paid to claimants, and provided a detailed report of who had been paid, which was $132,348.12 of total distributions, thus leaving about $92,000 undistributed to date. A true and correct copy of this status report is attached as **Exhibit C**.

15.    In short, quite unbelievably, there are competing decisions entered in Nevada State Court with diametrically opposite results, involving nearly all of the same plaintiffs, and different counsel both acting on behalf of nearly all of the same claimants.

**D.    Procedural History in the Debtor's Chapter 11 Case To Date.**

16.    The purpose of the Debtor's bankruptcy case is to preserve its business, and to allow it to continue operating, and without the danger of an immediate enforcement of the judgment in the Murray Case and/or receiver appointment that could shut down or have substantially deleterious effects on its operations, and thus allow the company the time to restructure its debts, maintain its drivers' jobs, and preserve value for the benefit of all creditors

---

[1] The Debtor requests that the Court take judicial notice of these filings pursuant to and to the extent permitted by Fed. R. Evid. 201.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

and parties in interest.

17. On the Petition Date, the Clerk issued the Debtor's *Notice of the Chapter 11 Bankruptcy* (the "Notice of Bankruptcy") [ECF No. 2], which included a bar date for filing claims for non-governmental units of February 21, 2023 (the "Claims Bar Date"). The Notice of Bankruptcy, including the notice therein of the Claims Bar Date, was properly served on all parties, including the known addresses of all of the plaintiffs in the Murray Case. [ECF Nos. 15 and 50]. In fact, the Debtor went to great expense to ensure that due and proper notice was given to all alleged Murray Plaintiffs, among other creditors, by engaging a third-party service to assist with the printing and mailing via -- BK Attorney Services, LLC d/b/a certificateofservice.com, which is an Approved Bankruptcy Notice Provider authorized by the U.S. Courts Administrative Office pursuant to Fed. R. Bankr. P. 9001(9) and 2002(g)(4). [ECF No. 50]. Of all of these Notices of Bankruptcy that were mailed out, at least 215 were returned back to the Debtor's counsel as undeliverable and without any forwarding address, thus leaving only 447 as delivered, thus creating a serious question as to whether at least 1/3 of the alleged Murray Plaintiffs can even be contacted and paid.

18. Greenberg P.C., as purported counsel for the Murray Plaintiffs, filed its *Notice of Appearance and Request for Special Notice* [ECF No. 4] on the Petition Date, and thus has had notice throughout the Debtor's Chapter 11 Case.

19. The Debtor's bankruptcy *Schedules* and *Statement of Financial Affairs* (the "SoFA") [ECF Nos. 41 and 43] detailed its various assets and liabilities, as well as its recent operating performance.

20. The Debtor has one (1) secured creditor, the U.S. Small Business Administration (the "SBA"), for an Economic Injury Disaster Loan (the "EIDL Loan") that the company obtained in May 2020 during the COVID-19 pandemic and in order to assist it through that difficult period. The EIDL Loan had a balance of $123,217.04 as of the Petition Date, and is secured in substantially all of the Debtor's assets.

21. The Debtor has one (1) priority unsecured creditor, the Internal Revenue Service (the "IRS"), which is owed approximately $220,000 for 2022 income tax obligations.

22.    The Debtor's general unsecured claims include, but are not necessarily limited to, the following:  (a) approximately $300,000 in taxes owing for 2016 to the IRS, which remain disputed and unresolved; (b) the disputed claims in the Murray Case, including to both the Murray Plaintiffs and also to their counsel, which allegedly total in excess of $1.615 million as previously detailed, and which are the subject of the Murray Appeal currently pending before the Nevada Supreme Court as previously noted; (c) the contingent and unliquidated claims in the various auto negligence cases presently pending in Nevada State Court, and for which the Debtor has a self-insured retention (the "SIR") of $25,000 per incident, see Claim Nos. 3-8, among others; and (d) about $88,000 in various other claims asserted to date, see Claim Nos. 2 and 9. Accordingly, although the Murray Plaintiffs are roughly 75% of all general unsecured claims asserted in the Debtor's case, there are numerous other creditors as well.

23.    On December 13, 2022, the Bankruptcy Court entered an *Order Setting Status Conference, et al.* [ECF No. 12], which set certain dates and deadlines in the Chapter 11 Case, including a Status Conference for January 31, 2023 (the "Status Conference").

24.    On December 14, 2022, the Debtor filed an appeal from the Nevada State Court's determinations in the Murray Case to the Nevada Supreme Court, where the appeal remains pending as Appeal No. 85850 (the "Murray Appeal").  On that same day, the Debtor also removed the remainder of the Murray Case pending in Nevada State Court to the Bankruptcy Court, where it is now pending as Adv No. 22-01163-nmc (the "Murray Adversary"). Notwithstanding the removal of this litigation to the Bankruptcy Court, and for reasons that are not entirely clear (or proper), the Nevada State Court still held a hearing in the Murray Case post-removal on December 15, 2022.  Such actions were in violation of the automatic stay and without jurisdiction in light of the prior removal of the case to this Court, which is very concerning to the Debtor.

25.    The Debtor's 341 meeting of creditors was held on January 12 and 19, 2023 [ECF No. 59], and concluded at that second date.

26.    On January 20, 2023, the Murray Plaintiffs, acting through Greenberg, P.C., filed a *Motion to Remand* the Murray Adversary back to Nevada State Court, which is set for hearing

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

on February 23, 2023. The Debtor will be filing a separate opposition to this remand motion.

27.     At the Status Conference on January 31, 2023, which was more than a month and a half into the Chapter 11 Case (and again a case where Greenberg P.C. had filed its Notice of Appearance on the Petition Date, and thus had more than sufficient time to prepare such a motion), Mr. Greenberg made an "oral motion" for the relief requested in this Class Claim Motion. The Court refused to consider that request on that basis, and instead directed counsel to brief the matter in writing on an expedited basis. Additionally, as this Opposition explains, the matter at issue here are not just a matter of mere administrative convenience; rather, they involve significant issues having a substantial impact in this Chapter 11 Case. Additionally, at the Status Conference, Mr. Greenberg also feigned ignorance of the proof of claim process even though he has quite recently been involved in a similar bankruptcy case – indeed involving another cab company that filed for bankruptcy due to class action overtime litigation he commenced, and also involving class proof of claim issues. See In re Boulder Cab, Inc., Case No. 20-13069-abl (Bankr. D. Nev. 2020). Additionally, Mr. Greenberg argued and continues to argue in this Class Claim Motion that Clerk's Office in this District has some kind of "special rule," when it is clear that the Clerk is just following the well-known, long-established procedure that each party has to file its own proof of claim in a case.

**E.     The Debtor's Proposed Plan.**

28.     On February 6, 2022, the Debtor filed its proposed *Chapter 11 Plan of Reorganization* (the "Plan") [ECF No. 65], and the next day, filed its *Ex Parte Motion for Order Re: Fixing of Deadlines and Procedures in Subchapter V Case for Proposed Chapter 11 Plan of Reorganization* (the "Procedures Motion"), [ECF No. 66], which the Court approved by order entered on February 8, 2023 [ECF No. 67], thus setting a confirmation hearing on the Plan for March 31, 2023.[2]

29.     The Debtor filed its Plan on the 65th day after the Petition Date, and thus well before the 90-day deadline in section 1189(b) of the Bankruptcy Code. Additionally, the Debtor

---

[2] Capitalized terms used in this section that are not defined herein shall have the same meanings as in the Plan.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

circulated various drafts of its proposed Plan to both the Subchapter V Trustee, Greenberg, P.C. and Bourassa Law Group, for more than a week prior to filing it seeking comments, however, none were forthcoming in a timely fashion.  Additionally, given Greenberg P.C. had filed various motions, including its Motion to Remand the Murray Adversary [Adv. No. 22-1163, ECF No. 9], and this Class Claim Motion, the latter of which was set for hearing on shortened time, the Debtor was compelled to proceed with its Plan in order to bring this case to a prompt and rightful conclusion, and not let Greenberg P.C., on its purported Murray Plaintiffs, try to derail what should be a very straightforward Chapter 11 Case, which the Debtor's Plan proposes to bring to a fair and final conclusion.

30.    The Plan involved a significant amount of work by the Debtor, and includes a comprehensive narrative overview of the lengthy litigation history and current situation, much of which is reproduced in this Opposition.  The Plan also includes detailed projections, a comprehensive liquidation analysis, and projected distribution calculations to illustrate its operation.  The Plan seeks to bring to an end to the 10+ year long-running litigation with the Murray Plaintiffs and Greenberg P.C., which has spawned various collateral litigation as further detailed in the Plan, as well as numerous appeals to the Nevada Supreme Court as well, and proposes a clear path forward to a final, comprehensive resolution.

31.    The Plan notes that that the Murray Plaintiffs' counsel, Greenberg P.C. had filed this Class Claim Motion, but then explains that there is no guaranty that the Motion will be granted, and also goes on to provide the following explicit warning in boldfaced italics:  "***The Debtor strongly encourages all claimants to file their own proofs of claim, as there is no guaranty that the foregoing motion will be granted and the failure to file a proof of claim may result in a claimant being entitled to no distribution in the case.***" (emphasis in original).  Accordingly, between the Notices of Bankruptcy and the Plan, more than adequate notice has been provided to all claimants in the case, including without limitation, the alleged Murray Plaintiffs (and the Dubric Plaintiffs, who are nearly identical), regarding the Claims Bar Date.

32.    As a general overview, the Plan classifies creditors and equity into five (5) total classes, including: Class 1 (Priority Unsecured Claims), which involves an IRS claim for

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

$220,000 for 2022 income tax obligations; Class 2 (U.S. Small Business Administration), which involves a secured claim of the EIDL Loan owing to the SBA in the amount of $123,217.04 as of the Petition Date; Class 3 (Other Secured Claims), which is a "placeholder" class in the event any other secured creditors, other than the SBA, are identified, however, if none are filed, then it will ultimately be a vacant class, and thus eventually deemed eliminated under the Plan; Class 4 (General Unsecured Claims), which is explained in greater detail below; and Class 5 (Equity), which equity is preserved and retained by its owners, because this is a subchapter V case.

33.    The only impaired class of claims under the Debtor's Plan is Class 4 (General Unsecured Creditors).  Class 4 creditors with Allowed claims are proposed to receive their *pro rata* share of all of the following:  (a) the Debtor's disposable income, which is calculated at $900,000 over the next five (5) years, and which is payable in quarterly installments pursuant to a schedule provided in the Plan; (b) all undisbursed monies, if recoverable, from the IOLTA attorney trust account of Greenberg, P.C., which is presently the sum of $303,694.54, which includes the amounts garnished from the company's bank account pre-petition, but not released as of the Petition Date; and (c) Debtor's Employee Retention Tax Credit, which it estimates will be about $570,905, if and when received, and which presumably will be sometime in 2023. Plan, p. 9.  Notably, the Debtor has stretched the length of its Plan out the full five (5) years, which is the maximum permitted in subchapter V, to maximize the distributions to creditors.

34.    The Plan only pays claims that are Allowed, see Plan, p. 12, § 8.01, and provides that the claims of the Murray Plaintiffs are all Disputed Claims (which were also already disputed on the Debtor's filed bankruptcy schedules as well) because of the pendency of the Murray Appeal before the Nevada Supreme Court. Id. p. 9, Class 4, ¶ 4.  As is fairly standard in plans of reorganization, the Plan provides that Disputed Claims like the Murray Plaintiffs will not receive any distribution unless and until their claims are allowed by a Final Order.  Id. pp. 10-11, §§ 5.01 and 5.02.  That having been said, and to avoid any prejudice to any holders of Disputed Claims like the Murray Plaintiffs pending the decision with respect to the allowance or disallowance of any Disputed Claims by Final Order, the Plan provides that the Debtor will still deposit their applicable *pro rata* share of all payments attributable to their asserted claims into a

Disputed Claims Reserve, which will be a separate segregated account, and hold such funds and not to be commingled with any other funds, pending the final allowance or disallowance decision by Final Order. Id. p. 9-10, and pp. 14-15, § 10.5.

35.    The Plan then goes on to provide detailed payment procedures in the event the Murray Plaintiffs prevail and also if they lose in the Nevada Supreme Court. Id. p. 10. For example, if the Murray Plaintiffs prevail, and thus their claims are allowed by Final Order, then the Plan contemplates a release of all funds attributable to any Allowed claims from the Disputed Claims Reserve. See id. 4(b). In contrast, if the Murray Plaintiffs lose and thus their claims are disallowed by Final Order, then all of the monies put into the Disputed Claims Reserve attributable to their alleged claims is to be refunded back to the Debtor. See id. ¶ 4(c).

36.    Simply put, the Plan allows for the Murray Appeal to "play through" and thus proceed to a final determination before the Nevada Supreme Court regarding the final allowance or disallowance of the asserted claims of the Murray Plaintiffs, but also puts in place protections to prevent any prejudice to those claimants pending that decision, see id. ¶ 4(a), while at the same time, also allowing appropriate and immediate distributions to other alleged general unsecured claims like the IRS as well, as such other claimants like the IRS who have Allowed claims should not be prejudiced and have to wait for an unrelated appeal involving different claimants before getting their own distributions in the case. Again, the Debtor asserts that these are commonplace, and commonsense procedures often employed in chapter 11 plans to handle situations like that presented in the case at hand.

37.    The Plan provides that it will be funded through cash flow generated from future operations of the Debtor's business, inclusive of TLC's operations as well, and inclusive of all specific cells of them, which are all deemed substantively consolidated herein solely for purposes of calculating the required amount of disposable income required to be paid pursuant §§ 1190 and 1191 of the Bankruptcy Code, and for making distributions under this Plan, but for no other purpose. Additionally, the Plan will be funded from the amounts currently being held in the trust accounts of Greenberg, P.C. as specified herein, to the extent recoverable, as well as the Debtor's anticipated receipt of its Employee Retention Tax Credit. Id. § 7.01.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

38.    As further means for its implementation the Plan provides for a limited remand of the Murray Adversary back to Nevada State Court, but significantly, only after the Plan has been confirmed, and subject to various restrictions, so that Court has clear guidance and does not run afoul of the Plan, and also to prevent the Murray Plaintiffs from running amok and trying to do an "end run" around the Plan.  See id. § 7.02.  Specifically, upon the occurrence of the Effective Date, the Murray Adversary shall be remanded, on a limited basis, back to the Nevada State Court for the sole and exclusive purpose of allowing the Murray Appeal, and any further subsequent proceedings related thereto in the Nevada State Court, to proceed for the sole purpose of determining by Final Order the final Allowed amount, if any, of the claims of the Murray Plaintiffs and/or their counsel.  Given that the limited purpose of the remand is only to adjudicate the final allowed amount of the foregoing claims only, including principally via the Murray Appeal, the Nevada State Court is prohibited from entering any order: (a) enforcing any judgment or award in favor of the Murray Plaintiffs or their counsel; (b) ordering, authorizing or directing any release, application or distribution of any and all funds, including the $303,694.54 held in the Greenberg, P.C. trust account; (c) granting any other further relief that is otherwise inconsistent with the terms and conditions of the Plan, including without limitation any relief or enforcement against the Debtor or its specific cells or assets therein.  See id.

39.    Additionally, and as is fairly standard, the Plan provides that the Reorganized Debtor will make all payments under the Plan directly to creditors.  Id. § 10.8.

40.    Finally, the Plan provides an appropriate and limited injunction to ensure implementation and enforcement of its terms.  Id. § 10.12.  Notwithstanding such injunction, however, it also provides that "[f]or the avoidance of doubt, nothing herein is intended or should be interpreted as in any way prohibited a full and final adjudication of the Murray Appeal, and any proceedings thereafter related to the final determination of the allowed amount of the claims of the Murray Plaintiffs and/or their counsel, but in all events only to the extent necessary to liquidate the final allowed amounts of their claims to a Final Order."  Id.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel:  (702) 382-1170   Fax:  (702) 382-1169

### III.    LEGAL ARGUMENT

#### A.    Introduction.

The Motion seeks a court order authorizing Mr. Greenberg personally (not Greenberg P.C. oddly) to file a single "class" or "group" proof of claim on behalf of 661 alleged claimants arising out of various orders and a judgment entered in the Murray Case in Nevada State Court, which are currently on appeal before the Nevada Supreme Court in the Murray Appeal.  No legal authority is cited in support of the requested relief in the Motion,[3] but it does argue that requiring those claimants to follow the normal, default rules whereby each creditor must file its own proof of claim would create a significant amount of administrative work that is unnecessary and serves no valid purpose in this case.[4]

#### B.    Standard of Decision.

Generally, claimants in a bankruptcy must file their own individual proofs of claim to participate in a reorganization and obtain any consideration from the estate, see Fed. R. Bankr. P. 3003(c), and a proof of claim "shall be executed by the creditor or the creditor's authorized agent . . . ." Fed. R. Bankr. P. 3001(b).  This is the normal, default rule in every chapter 11 case.

The Bankruptcy Code contains no explicit provision authorization the filing of a "class" or "representative" or "group" proof of claim, however, courts have discretion to allow them in appropriate cases.  See In re Birting Fisheries, Inc., 92 F.3d 939 (9th Cir. 1996) (approving of a class proofs of claim in a particular case) (per curium); Mortland v. Aughney, No. C 11-00743 WHA, 2011 WL 2653515, *2 (N.D. Cal. July 6, 2011) (affirming the bankruptcy court's decision to expunge a "class" proof of claim and explaining that "a bankruptcy court has *discretion* to apply [FRCP] 23 via Rule 7023 via Rule 9014") (emphasis in original); In re Musicland Holding Corp., 362 B.R. 644, 651 (S.D.N.Y. 2007) ("While class proofs of claim in

---

[3] The lack of any legal memorandum is a separate basis to deny the Motion outright, as the failure to include such is a violation of LR 9014(c)(1).

[4] Although the "default" rule in Fed. R. Bankr. P. 2019(b)(2)(C) is that a class representative does not need to file the disclosures required under that rule, the rule also provides so "unless the court orders otherwise."  If ever there was a case where the Court should "order otherwise" and require such disclosures it is this case because Mr. Greenberg and/or Greenberg P.C. is acting in clear contravention of what other counsel, Bourassa Law Group, has already accomplished for all of these same claimants, save and except one (1), in the Dubric Case.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel:  (702) 382-1170   Fax:  (702) 382-1169

14

bankruptcy are not prohibited, the right to file one is not absolute. Federal Civil Rule 23 does not apply automatically to contested matters, see Fed. R. Bankr. P. 9014, and the decision to extend its application is committed to the Court's discretion.").

The proponent of a "class" proof of claim must (1) make a motion to extend the application of Rule 23 to some contested matter, (2) satisfy the requirements of Rule 23, and (3) show that the benefits derived from the use of the class claim device are consistent with the goals of bankruptcy. See In re Musicland Holding Corp., 362 B.R. at 651 (citing In re Woodward & Lothrop Holdings, Inc., 205 B.R. 365, 369 (Bankr. S.D.N.Y. 1997)). In determining whether the benefits of allowing a "class" proof of claim "are consistent with the goals of bankruptcy," courts look to: (1) whether the class was certified pre-petition; (2) whether the class members received notice of the bar date; and (3) whether class certification will adversely affect administration of the case. Id. at 654. An examination of each of these three (3) elements follows.

**B.** **Application.**

As to the *first* prong, there certainly was a class certified pre-petition; in fact, there were several classes of nearly identical plaintiffs certified pre-petition -- one in the Murray Case, and a nearly identical one in the Dubric Case -- however, those parallel, competing litigations had very different ultimate results, and with the Dubric case being fully concluded first, and thus taking precedence. Only one (1) of the plaintiffs opted out of the Dubric Case's court-approved class settlement. Accordingly, although there was class certification pre-petition, the fact that there were multiple nearly identical classes certified, in different (but very similar) parallel cases in Nevada State Court, and involving different plaintiffs' counsel, which ultimately resulted in different outcomes, calls in to question the validity of this first point in the case at hand. As hereinafter explained, these two competing litigations is a rather extraordinary fact that requires a rejection of any "class" or "group" proof of claim by Greenberg P.C., because it calls into question that firm's authority to even act on behalf of the purported claimants in the first place pursuant to Fed. R. Bankr. P. 3001(b), and indeed whether the specific claimants even want to participate in a bankruptcy via the claims process given the court-approved settlement and prior payments made under the Dubric Case settlement.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

15

As to the *second* prong, the Debtor individually mailed out Notices of Bankruptcy to all claimants' last known addresses provided, which Notice included the Claims Bar Date, and thus have been provided a full and fair opportunity to assert their own, individualized proofs of claim in this Chapter 11 Case -- should they still believe they are owed anything after the Dubric Case settlement. Accordingly, a class or group proof of claim should not be permitted as an "end run" around this most basic of requirements applicable in all bankruptcy cases that a creditor must filed its own proof of claim. A proof of claim form is very easily and quickly filled out, and indeed simplified electronic forms are available online and widely accessible. When a party of an alleged class or group clearly had notice of the bankruptcy case and the bar date, the use of a class proof of claim device to get around that basic requirement should be denied. In re Musicland Holding Corp., 362 B.R. at 365 (citing Bailey v. Jamesway Corp. (In re Jamesway Corp.), Nos. 95 B 44821(JLG), 96/8389A, 1997 WL 327105 (Bankr. S.D.N.Y. Jun. 12, 1997); In re Sacred Heart Hosp. of Norristown, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995)).

As to the *third* prong, a "class" or "group" proof of claim will adversely affect administration of the Chapter 11 Case for various reasons. First, as is very common, especially in subchapter V cases, the Debtor is in charge of disbursements under its Plan, see Plan, § 10.8, and thus needs to know the specific addresses for each creditor where to send the periodic distributions under the Plan to specific creditors, which contact information can be reaffirmed by the individual proof of claims submitted. In other words, the distributions to individual plaintiffs under the Plan will not be routed through Greenberg, P.C. or Bourassa Law Group. This is of special concern in the case at hand given the substantial amounts of return mail the Debtor has received in this case, which calls into question whether a significant number of claimants want to be involved and/or can even be properly located, and really illustrates that Greenberg P.C. is trying to act on behalf of "ghost" claimants that may not actually be found or want to be involved, and indeed who it does not have actual authority to act on behalf of, as it is contravention to what the Bourassa Law Group already obtained in the Dubric settlement.

Second, the fact that there is already a final and enforceable class settlement agreement approved in the Dubric Case, and which preceded the final disposition in the Murray Case, and

16

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

with significant disbursements on that court-approved settlement already made, means that nearly all of the claimants have already been satisfied. Greenberg P.C. just assumes, without any actual evidence to support its authority, other than a vague state court decision in the Murray Case from 2018 that was directly controverted in the Dubric Case, that it has the actual authority. Indeed, what proof does Greenberg P.C. have that the Bourassa Law Firm is not already well protecting the claimants' interests? Given this rather incredible conflict between two competing, parallel litigations involving nearly all of the same claimants, it is the applicable affected plaintiffs who should decide for themselves whether they still believe they have claims to assert, not have Greenberg P.C. decide for them, and merely because it wants to try and preserve its own claim to attorney's fees and costs arising out of the litigation in the Murray CAse. In fact, it is quite presumptuous of Greenberg P.C. even to assume the alleged claimants want to file claims in light of the parallel representation of them by Bourassa Law Group in the Dubric Case.

Third, the Motion assumes that if it is denied, then Greenberg, P.C. would have to sign and file 661 individual proofs of claim on behalf of all of the purported Murray Plaintiffs, and apparently all signed by Greenberg P.C. as agent, but this assumption is problematic for at least two reasons. First, attempts to file proofs of claim on behalf of individual class members have been rejected where there was no showing that each member of the class had authorized the "agent" to file on his or her behalf. See Mission Towers v. W.R. Grace, Case No. 01-01139(JKF), 2007 WL 4333817 (D. Del. Dec. 6, 2007) (citing In re Standard Metals, 817 F.2d 625, 631 (10th Cir. 1987), vacated on other grounds, 839 F.2d 1383 (1988)). Again, an order in the Murray Case about an ability to enforce claims generally from 2018, which is directly controverted by the court-approved settlement in the Dubric Case, the latter of which is a final and enforceable order that preceded the final determinations in the Murray Case by almost a year (and indeed over the objections filed by Greenberg P.C.), is not sufficient evidence of authority pursuant to Fed. R. Bankr. P. 3001(b) in favor of Greenberg P.C. to do what it is requesting now in its Class Claim Motion, or indeed even to file individual proofs of claim on behalf of the same alleged claimants.

Second, an attorney's signature on a proof of claim renders the attorney a fact witness to

the allegations in the proof of claim, and thus operates as a waiver of the attorney-client and work-product privileges.  See In re Rodriguez, Bankr. No. 10-70606, Adv. No. 11-07012, 2013 WL 2450925, at *6 (Bankr. S.D. Tex. June 5, 2013); In re Duke Investments, Ltd., 545 B.R. 414, 427 (Bankr. S.D. Texas 2011) (specifically warning of the problems that can arise when an attorney signs a proof of claim on behalf of the client, including possibly disqualification of counsel because it would render the counsel a fact witness).  Accordingly, Mr. Greenberg cannot sign any claims on behalf of the purported Murray Plaintiffs  -- whether as a group or single, individual claims -- because doing so would disqualify his firm and/or result in significant waivers of privilege for the claimants he purports to represent.

### IV.    CONCLUSION

WHEREFORE, the Debtor requests that the Court deny the Motion filed by Greenberg P.C. and/or Mr. Greenberg purportedly on behalf of the Murray Plaintiffs, but *without prejudice* to all claimants' ability to file their own individual proofs of claim in the Debtor's case by the Claims Bar Date.

Dated:  February 9, 2023.

By:   /s/ Matthew C. Zirzow
      LARSON & ZIRZOW, LLC
      ZACHARIAH LARSON, ESQ.
      MATTHEW C. ZIRZOW, ESQ.
      850 E. Bonneville Ave.
      Las Vegas, Nevada 89101

      Proposed Attorneys for Debtor

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

18

# EXHIBIT A

Electronically Filed
08/31/2021 1:27 PM

CLERK OF THE COURT

**ORDR**
MARK J. BOURASSA, ESQ.
Nevada Bar No. 7999
VALERIE S. GRAY, ESQ.
Nevada Bar No. 14716
**THE BOURASSA LAW GROUP**
2350 W. Charleston Blvd., #100
Las Vegas, Nevada 89102
Telephone: (702) 851-2180
Facsimile: (702) 851-2189
mbourassa@blgwins.com
vgray@blgwins.com
*Attorneys for Plaintiff*

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| JASMINKA DUBRIC, individually and on behalf) of those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>A CAB, LLC, a Nevada Limited Liability) Company; A CAB SERIES LLC, EMPLOYEE) LEASING COMPANY, a Nevada Series Limited) Liability Company; CREIGHTON J. NADY, an) individual; and DOES 3 through 20<br><br>Defendants.<br>_____ ) | Case No.: A-15-721063-C<br>Dept. No.: XXV<br><br><br><br>**ORDER APPROVING CLASS ACTION SETTLEMENT, AWARDING ATTORNEY FEES AND COSTS, AND AWARDING INCENTIVE PAYMENTS** |

On March 11, 2021, the above-captioned matter came before the Honorable Kathleen E. Delaney, sitting in Department XXV of the Eighth Judicial District, Clark County, Nevada on the parties Motion for Final Approval of Class Action Settlement and Plaintiff's Motion for Attorneys' Fees, Costs, and Enhancement Award for Named Plaintiff (collectively the "Motions for Final Approval"). Plaintiff JASMINKA DUBRIC appeared by and through her counsel of record, Valerie S. Gray, Esq. and Mark J. Bourassa, Esq. of The Bourassa Law Group; Defendants, A CAB, LLC, A CAB SERIES LLC, EMPLOYEE LEASING COMPANY, and CREIGHTON J. NADY (collectively, "Defendants") appeared

-1-

by and through their counsel of record Esther C. Rodriguez, Esq. of Rodriguez Law Offices, P.C., and Intervenors MICHAEL MURRAY, MICHAEL RENO, and MICHAEL SARGEANT (the "Intervenors") and Objectors MARCO BAKHTIARI, MICHAEL BRAUCHLE, THOMAS COHOON, GARY GRAY, JORDON HANSEN, ROGER KELLER, CHRIS D. NORVELL, POLLY RHOLAS and GERRIE WEAVER (the "Objectors") appeared by and through their counsel of record, Leon Greenberg, Esq.

The Court, after having considered the Motions for Final Approval, the papers and pleadings on file herein, the oral arguments of counsel, and good cause appearing therefore, hereby finds as follows:

WHEREAS, a class action is pending in this Court entitled *Dubric, et al. v. A Cab, LLC, et al.,* Case No. A-15-721063-C (the "Action");

WHEREAS, Plaintiff Jasminka Dubric ( "Settlement Class Representative"), individually and on behalf of the Class, and Defendants (collectively (the "Parties"), entered into the Class Action Settlement Agreement and Release signed by the Parties on December 28, 2016 and filed with the Court on January 24, 2017 as an Exhibit to the Parties' Joint Motion for Preliminary Approval of Class Settlement Agreement on an Order Shortening Time ("Settlement Agreement") setting forth the terms and conditions of the Parties' proposed settlement (the "Settlement");

WHEREAS, by Order dated October 11, 2020 (the "Preliminary Approval Order"), this Court (a) conditionally certified the Action to proceed as a class action on behalf of a class of all current and formerly hourly paid taxi cab drivers employed by A Cab, LLC and/or A Cab Series, LLC, Employee Leasing Company at any time from April 1, 2009 through July 2, 2014 (the "Class"); (b) appointed The Bourassa Law Group, LLC as Class Counsel; (c) preliminarily approved the Settlement; (d) ordered that Notice of the proposed Settlement be provided to potential Class Members; (e) provided Class Members with the opportunity to: (i) opt out of the Class or (ii) object to the proposed Settlement; and (f) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, unless otherwise defined in this Order, the capitalized terms herein shall have the same meaning as they have in the Settlement Agreement;

WHEREAS, pursuant to this Court's Order dated October 11, 2020, the Notice of Proposed Class Action Settlement (the "Class Notice") was mailed to potential members of the Class to notify them of, among other things: (i) the Action pending against Defendants; (ii) the certification of the Action by the

-2-

Court to proceed as a class action on behalf of the Court-certified Class; and (iii) their right to opt out of the Settlement, the effect of remaining in the Class or requesting exclusion, and the requirements for requesting exclusion, and their right to object to the proposed Settlement.

WHEREAS, due and adequate notice has been given to the Class;

WHEREAS, on November 25, 2020, the Plaintiff filed a Motion for Final Approval of Class Action Settlement;

WHEREAS, on November 25, 2020, Plaintiff filed a Motion For Award Of Attorney Fees And Costs, And Incentive Awards For Named Plaintiff and a Memorandum of Costs;

WHEREAS, the Court conducted a hearing on March 11, 2021 (the "Fairness Hearing") to consider, among other things: (i) whether the terms and conditions of the Settlement are fair, reasonable and adequate, and in the best interests of the Settlement Class Representative and the other Class Members, and should therefore be approved; (ii) whether the objections filed by the Objectors and/or opposition filed by the Intervenors warrant a denial of the requested final approval of the Settlement or final approval subject to modifications; and (ii) whether an order should be entered dismissing the Action with prejudice against Defendants.  In addition, the Court heard Plaintiff's Motion For Award of Attorney Fees and Costs, and Incentive Awards for Named Plaintiff;

WHEREAS, the Court, having reviewed and considered the Motion for Final Approval, the Settlement Agreement, all papers filed and proceedings herein in connection with the Settlement, all oral and written comments received regarding the Settlement, including the objections filed by the Objectors and the opposition filed with respect thereto by the Intervenors, Plaintiff's Motion For Award of Attorney Fees and Costs and Incentive Awards For Named Plaintiffs and all papers filed in support and in opposition thereto, Plaintiff's Memorandum of Costs, and the record in the Action, and good cause appearing therefore;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. **Jurisdiction.**  This Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Class Members.

2. **Incorporation of Settlement Documents.**  This Order incorporates and makes a part

hereof: (a) the Settlement Agreement filed with the Court on January 24, 2017; and (b) the Settlement Notice, which was filed with the Court on January 24, 2017 and later amended by the request of the Court and Intervenors and filed with the Court on February 26, 2021; (c) the briefs, declarations, affidavits, and other materials filed in support of the Settlement Class Counsels' request for an award of attorneys' fees, incentive award, and reimbursement of expenses; (d) the record at the Preliminary Approval Hearing; (e) the record at the Fairness Hearing; (f) the documents listed on the docket sheet or otherwise submitted to the Court; and (g) all prior proceedings in the action.

3. **Final Class Certification.** The Class was preliminarily certified by this Court on October 11, 2020. The Court now enters its final certification of this Class pursuant to NRCP 23 finding that the Class satisfies all applicable requirements of NRCP 23(a) and NRCP 23(b) and due process. The Class shall consist of "all persons who were employed by A Cab, LLC and/or A Cab Series, LLC, Employee Leasing Company during the applicable statutory period prior to the filing of this Complaint continuing until date of judgment as Drivers in the State of Nevada."  More specifically, the Settlement Class is defined as all current and former hourly paid Drivers employed by A Cab, LLC and/or A Cab Series LLC, Employee Leasing Company at any time from April 1, 2009 through July 2, 2014.

4. **Exclusion.** Michael Murray, Michael Reno, and Michael Sargeant (collectively "Intervenors") are plaintiffs in a separate action entitled *Murray et al. v. A Cab Taxi Service LLC et al.*, Clark County Nevada District Court Case No. A-12-669926-C, which also alleges claims of unpaid minimum wages against A Cab LLC, as well as associated penalties pursuant to NRS 608.040.  These individuals are expressly excluded from the Settlement Agreement for all purposes, pursuant to Section 8.3. Additionally, the Court finds that only those individuals specifically listed in Exhibit "1," attached hereto, and no other member of the Class, have submitted timely valid requests for exclusion from the Class and therefore are not bound by this Final Order. All other members of the Class are bound by the terms and conditions of the Settlement Agreement and this Final Order.

5. **Adequacy of Representation.** Class Representative Jasminka Dubric has adequately represented the Settlement Class for purpose of entering and implementing the Settlement. Mark J. Bourassa of The Bourassa Law Group is experienced and adequate Class Counsel. Class Representatives and Class Counsel have satisfied the requirements of NRCP 23(a)(4) and NRCP 23(f).

6. **Settlement Notice.** The Court finds that the dissemination of the Settlement Notice: (i) was implemented in accordance with the Settlement Agreement and Preliminary Approval Order; (ii) constituted the best notice practicable under the circumstances; (iii) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members (a) of the effect of the Settlement (including the Releases provided for therein), (b) of Class Counsel's motion for an award of attorneys' fees, incentive award to the Settlement Class Representative, and reimbursement of litigation expenses, (c) of their right to object to any aspect of the Settlement, (d) of their right to opt out of the Class, and (e) of their right to appear at the Fairness Hearing; (iv) constituted due, adequate and sufficient notice to all persons entitled to receive notice of the proposed Settlement; and (v) satisfied the requirements of Rule 23 of the Nevada Rules of Civil Procedure.

7. **Final Settlement Approval.** Pursuant to, and in accordance with Rule 23 of the Nevada Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Settlement Agreement in all respects (including, without limitation: the amount of the Settlement, the Releases provided for therein, and the dismissal with prejudice of claims against Defendants), and finds that the Settlement is, in all respects, fair, reasonable and adequate, and is in the best interest of Settlement Class Representative and the other Class Members. The settlement is approved and all objections to the settlement are overruled.

8. **Implementation of the Settlement.** The Parties are directed to implement, perform and consummate the Settlement in accordance with the terms and provisions contained in the Settlement Agreement. The Court orders Defendants to fund the Settlement Fund in the total amount of Two Hundred Twenty-Four Thousand Five Hundred Twenty-Nine Dollars ($224,529.00), and orders the Class Counsel to disburse the Settlement Fund to the Class Members pursuant to Section 11 of the Settlement Agreement, which provides that Ms. Nicole Omps, CPA of Beta Consulting shall determine the amounts owed to each class member based on the number of workweeks for each Class Member.

9. **Award of Attorney Fees and Costs.** In addition, the Court hereby grants Plaintiff's Motion for Attorney Fees and Costs, and orders Defendants to pay Class Counsel Fifty-Seven Thousand Five Hundred Dollars ($57,500.00) in attorneys' fees and costs. The Court finds that Class Counsel's requested fees are reasonable and are based upon the actual time expended by Class Counsel in the

litigation of this matter.  The Court further finds that Class Counsel's requested costs were reasonable, necessary, and actually incurred.

10.    **Incentive Awards for Settlement Class Representatives.**  Pursuant to the terms of the Parties' Settlement Agreement and Plaintiff's Motion, the Court also orders Defendants to pay an Incentive Award to the Settlement Class Representative Jasminka Dubric in the amount of five thousand dollars ($5,000.00) to be paid from the Settlement Fund.  The Court finds that this amount is reasonable and appropriate based upon the services the Settlement Class Representative provided in litigating this matter.

11.    **Binding Effect.**  The terms of the Settlement Agreement and of this Order shall be forever binding on the Settlement Class Representative, all other Class Members and Defendants, as well as their respective heirs, executors, administrators, predecessors, successors, affiliate and assigns.  The Persons listed on Exhibit 1 hereto and the individual Intervenors Michael Murray, Michael Reno, Michael Sargeant are excluded from the Class pursuant to request and the Settlement Agreement and are not bound by the terms of the Settlement Agreement or this Order.

12.    **Releases.**  The releases as set forth in paragraph 13 of the Settlement Agreement, together with the definitions contained in paragraph 2 of the Settlement Agreement relating thereto, are expressly incorporated herein in all respects.  Accordingly, this Court orders that:

a)    Except for the obligations and rights created by the Settlement Agreement, and upon Final Approval of the Settlement, the Settlement Class hereby releases and absolutely and forever discharges Defendants A Cab LLC, A Cab Series LLC, Employee Leasing Company, Creighton J. Nady, and their past, present, and future subsidiaries, parent companies, their predecessors in interest and/or ownership, successors in interest and/or ownership, partners, licensees, assignees, managing members, Insurers, including claims under any and all insurance policies, estates, and other affiliates and/or related entities, and each of the foregoing Persons' respective past, present, and future officers, directors, attorneys, shareholders, indemnitees, predecessors, successors, trusts, trustees, partners, associates, principals, divisions, employees, Insurers, any and all insurance policies, members, agents, Representatives, brokers, consultants, heirs, and assigns  from any and all Settled Claims.

b)    The Releasing Parties acknowledge that they are aware that they or their attorneys

-6-

may hereafter discover claims or facts in addition to or different from those now known or believed to be true with respect to the subject matter of this Agreement and/or the Settled Claims. The Releasing Parties acknowledge that they intend to and will fully, finally, and forever settle and release any and all Settled Claims described herein, whether known or unknown, suspected or unsuspected, which now exist, hereinafter may exist, or heretofore may have existed. In furtherance of this intention, the releases contained in this Agreement shall be and remain in effect as full and complete releases of the Settled Claims by the Releasing Parties without regard to the subsequent discovery or existence of such different or additional claims or facts. Furthermore, upon the expiration of the Claims Period, each and every Releasing Party and all successors in interest shall be permanently enjoined and forever barred from prosecuting any and all Settled Claims against Defendants, A Cab LLC, A Cab Series LLC, Employee Leasing Company, Creighton J. Nady, and their past, present, and future subsidiaries, parent companies, their predecessors in interest and/or ownership, successors in interest and/or ownership, partners, licensees, assignees, managing members, Insurers, including claims under any and all insurance policies, estates, and other affiliates and/or related entities, and each of the foregoing Persons' respective past, present, and future officers, directors, attorneys, shareholders, indemnitees, predecessors, successors, trusts, trustees, partners, associates, principals, divisions, employees, Insurers, any and all insurance policies, members, agents, Representatives, brokers, consultants, heirs, and assigns.

13. Notwithstanding paragraph 12 above, nothing in this Order shall bar any action by any of the Parties to enforce or effectuate the terms of the Settlement Agreement or this Order;

14. **No Admission.** Neither this Order, nor the Settlement Agreement, nor the negotiation of the Settlement, nor any proceedings taken pursuant thereto:

a) Shall be offered against Defendants as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission with respect to the truth of any fact alleged by the Settlement Class Representative or the validity of any claim that was or could have been asserted or the deficiency of any defense that could have been asserted in this Action or in any litigation ,or of any liability, negligence, fault, or other wrongdoing of any kind; or

b) Shall be construed against any of the Releasees as an admission, concession or presumption that the consideration to be given hereunder represents the amount which could be or would

have been recovered after trial.

15.     **Retention of Jurisdiction.**  Without affecting the finality of this Order in any way, this Court retains continuing and exclusive jurisdiction over the Parties for purposes of administration, interpretation, implementation and enforcement of the Settlement, disposition of the Settlement Fund, and the Class Members for all matters relating to the Action.

16.     **Modification of the Settlement Agreement.**  Without further approval from the Court, Settlement Class Representative and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (i) are not materially inconsistent with this Order; and (ii) do not materially limit the rights of the Class Members in connection with the Settlement.  Without further order of the Court, Settlement Class Representatives and Defendants may agree to reasonable extension of time to carry out any provisions of the Settlement.  All other modifications or amendments of the Settlement Agreement must be agreed to by all Parties and approved by the Court, in accordance with the terms of the Settlement Agreement.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

17.    **Termination.**  If the Settlement is terminated as provided in the Settlement Agreement, then this Order (and any orders of the Court relating to the Settlement) shall be vacated, rendered null and void and be of no further force or effect, except as otherwise provided by the Settlement Agreement.

**IT IS SO ORDERED.**

_____

Dated this 31st day of August, 2021

_____

F3B 729 660B FCB6
Kathleen E. Delaney
District Court Judge

Respectfully submitted by:


**THE BOURASSA LAW GROUP**


By:  */s/ Valerie S. Gray*
     MARK J. BOURASSA, ESQ.
     Nevada Bar No. 7999
     VALERIE S. GRAY, ESQ.
     Nevada Bar No. 14716
     2350 W. Charleston Blvd., #100
     Las Vegas, Nevada 89102

*Attorneys for Plaintiffs*


Approved as to form by:

| **RODRIGUEZ LAW OFFICES, P.C.** | **LEON GREENBERG PROFESSIONAL CORP.** |
|---|---|
| By: *Esther C. Rodriguez* | By:  **NOT APPROVED** |
| ESTHER C. RODRIGUEZ, ESQ. | Leon Greenberg, Esq. |
| Nevada Bar No. 6473 | Nevada Bar No. 8094 |
| 10161 Park Run Dr., Suite 150 | 2965 S. Jones Boulevard - Ste. E-3 |
| Las Vegas, Nevada 89145 | Las Vegas, Nevada 89146 |
| *Attorneys for Defendants* | *Attorney for the Intervenors* |

*Dubric v. A Cab, LLC, et al.*
*Case No. A-15-721063- C*

## EXHIBIT 1

## Persons Excluded from Class Pursuant to Opt-Out Request

1.  Richard Clark
    440 Golden State St.
    Henderson, Nevada 89012

| | |
|---|---|
| **From:** | Esther Rodriguez |
| **To:** | Valerie Gray |
| **Cc:** | "Susan Dillow" |
| **Subject:** | RE: Dubric v. A Cab - Final Order |
| **Date:** | Friday, April 30, 2021 1:15:32 PM |
| **Attachments:** | image002.png |
| | image003.png |

Yes, you have my authorization to use my e-signature on this proposed order.  Thank you.


Esther C. Rodriguez, Esq.
Rodriguez Law Offices, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada  89145
(P) 702-320-8400
(F) 702-320-8401
esther@rodriguezlaw.com

CONFIDENTIALITY NOTICE: Unless otherwise indicated or obvious from the nature of the transmittal, the information contained in this e-mail message is attorney/client privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, immediately notify the sender by telephone at 702-320-8400, return the original message to esther@rodriguezlaw.com and delete or destroy any and all other copies. Thank you for your assistance.

---

**From:** Valerie Gray <vgray@blgwins.com>
**Sent:** Friday, April 30, 2021 12:47 PM
**To:** Esther Rodriguez <esther@rodriguezlaw.com>
**Subject:** Dubric v. A Cab - Final Order

Esther:

Attached please find the proposed order for the March 11, 2021 hearing for your review.

If acceptable, please confirm I have your authority to use your e-signature.


Sincerely,

---



Valerie S. Gray
Attorney

2350 W. Charleston Blvd., Suite 100
Las Vegas, Nevada 89102

vgray@blgwins.com
Office: (702) 851-2180
Fax:    (702) 851-2189

 

**BEVERLY HILLS • DENVER • LAS VEGAS • SCOTTSDALE**

**CSERV**

DISTRICT COURT
CLARK COUNTY, NEVADA

Jasminka Dubric, Plaintiff(s)

vs.

A Cab LLC, Defendant(s)

CASE NO: A-15-721063-C

DEPT. NO.  Department 25

### AUTOMATED CERTIFICATE OF SERVICE

This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Order was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 8/31/2021

| | |
|---|---|
| "Esther Rodriguez, Esq." . | esther@rodriguezlaw.com |
| "Mark J. Bourassa, Esq." . | mbourassa@blgwins.com |
| Assistant . | info@rodriguezlaw.com |
| Carmen Cherry . | ccherry@blgwins.com |
| Dana Sniegocki . | dana@overtimelaw.com |
| filings . | susan8th@gmail.com |
| Hilary Daniels . | hdaniels@blgwins.com |
| Hillary Ross . | hross@blgwins.com |
| Jennifer Fornetti . | jfornetti@blgwins.com |
| leon greenberg . | leongreenberg@overtimelaw.com |
| Susan Dillow . | susan@rodriguezlaw.com |

Trent Richards .                    trichards@blgwins.com

Mercedes Ortega                     mortega@blgwins.com

# EXHIBIT B

IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL MURRAY; MICHAEL RENO; MICHAEL SARGEANT, INDIVIDUALLY AND ON BEHALF OF A CLASS OF PERSONS SIMILARLY SITUATED; MARCO BAKHTIARI; MICHAEL BRAUCHLE; THOMAS COHOON; GARY GRAY; JORDAN HANSEN; ROGER KELLER; CHRIS D. NORVELL; POLLY RHOLAS; AND GERRIE WEAVER,
Appellants,
vs.
JASMINKA DUBRIC, INDIVIDUALLY AND ON BEHALF OF THOSE SIMILARLY SITUATED; A CAB, LLC, A NEVADA LIMITED LIABILITY COMPANY; A CAB SERIES LLC; EMPLOYEE LEASING COMPANY, A NEVADA SERIES LIMITED LIABILITY COMPANY; AND CREIGHTON J. NADY, AN INDIVIDUAL,
Respondents.

No. 83492

FILED

AUG 11 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a district court order approving a class action settlement. Eighth Judicial District Court, Clark County; Kathleen E. Delaney, Judge.[1]

Appellants and respondent Jasminka Dubric are taxi drivers who allege that their employer, respondents A Cab, LLC, and A Cab Series LLC, Employing Leasing Company (collectively, the A Cab respondents)

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted.

SUPREME COURT
OF
NEVADA

(O) 1947A

22-25183

failed to pay them and other drivers minimum wage. The taxi drivers filed two separate class action suits against the A Cab respondents: the underlying matter brought by Dubric (the *Dubric* action) and another brought by appellants Michael Murray, Michael Reno, and Michael Sargeant (collectively, the Murray intervenors) (the *Murray* action).[2] The Murray intervenors secured a judgment against the A Cab respondents in the *Murray* action, *see A Cab, LLC v. Murray*, 137 Nev., Adv. Op. 84, 501 P.3d 961 (2021), and then intervened in the *Dubric* action, objecting to the proposed class action settlement because of its potential impact on the judgment in the *Murray* action. The remaining appellants are unnamed class members of both the *Murray* action and the *Dubric* action who objected to the *Dubric* settlement.

The Murray intervenors unsuccessfully sought to recuse or disqualify Judge Kathleen Delaney from presiding over the *Dubric* action due to alleged bias toward their counsel. After sending notice to all potential class members, class counsel in the *Dubric* action received nine objections to the proposed class settlement and only one member, in addition to the Murray intervenors, opted out.[3] Thereafter, the district court conducted a final fairness hearing and granted respondents' joint

---

[2]While there is some overlap of class membership, the *Dubric* class action settlement encompasses claims that go beyond the timeframe of those resolved in the *Murray* class action.

[3]This court denied appellants' previous request for extraordinary relief in which they sought an order requiring the district court to allow their class counsel to opt out from the *Dubric* settlement on behalf of all members of the *Murray* class. *See Murray v. Eighth Judicial Dist. Court*, No. 82126, 2020 WL 7296993 (Nev. Dec. 10, 2020) (Order Denying Petition for Writ of Prohibition or Mandamus).

motion to approve their proposed settlement, finding that the settlement was fair, reasonable, and adequate and in the best interest of the class members. Appellants now challenge the order granting final approval of the *Dubric* settlement, as well as the order denying the Murray intervenors' motion to disqualify Judge Delaney.

As a preliminary matter, we first reject the A Cab respondents' arguments that appellants lack standing to bring this appeal, as appellants are potentially aggrieved by the *Dubric* settlement order in that it appears to release some of the class claims against the A Cab respondents for less than the amount of the judgments obtained in the *Murray* action. *See Valley Bank of Nev. v. Ginsburg*, 110 Nev. 440, 446, 874 P.2d 729, 734 (1994) (defining an aggrieved party as one whose personal or property rights are adversely and substantially affected). Although the Murray intervenors cannot demonstrate that they are *individually* aggrieved because they were not included in the *Dubric* settlement class, we conclude that they have standing as class representatives to assert claims on behalf of those *Murray* class action members who may be adversely affected by the *Dubric* settlement. *See Las Vegas Police Protective Ass'n Metro, Inc. v. Eighth Judicial Dist. Court*, 122 Nev. 230, 239, 130 P.3d 182, 189 (2006) (providing that intervenors have "a right to appeal independent from that of the original parties" so long as they are also aggrieved parties pursuant to NRAP 3A(a)). And this court has previously recognized that unnamed class members who objected to a proposed settlement have standing to appeal that settlement. *See Marcuse v. Del Webb Cmtys., Inc.*, 123 Nev. 278, 285, 163 P.3d 462, 467 (2007) (concluding that unnamed class members "had standing to object to [a] proposed settlement and to appeal the district court's order dismissing the class action based on the settlement").

Next, we reject appellants' challenge to the order denying the motion to disqualify Judge Delaney. The Murray intervenors' motion to intervene in the *Dubric* class action was still pending when they sought Judge Delaney's disqualification. Therefore, the Murray intervenors were not yet parties to the *Dubric* class action, *see Aetna Life & Cas. Ins. Co. v. Rowan*, 107 Nev. 362, 363, 812 P.2d 350, 350 (1991) ("[A] proposed intervenor does not become a party to a lawsuit unless and until the district court grants a motion to intervene."), and thus lacked standing to move to disqualify Judge Delaney. *See* NRS 1.235(1) (providing that "[a]ny *party* to an action [may] seek[ ] to disqualify a judge for actual or implied bias" (emphasis added)). As such, we conclude that the district court did not abuse its discretion when it denied the motion to disqualify. *See Ivey v. Eighth Judicial Dist. Court*, 129 Nev. 154, 162, 299 P.3d 354, 359 (2013) (reviewing the denial of a motion to disqualify for an abuse of discretion).

We also reject appellants' challenge to Dubric serving as the class representative because she is a judgment debtor of the A Cab respondents in a related federal action. The judgment that forms the basis of Dubric's purported conflict of interest did not arise until after the respondents reached a settlement in the *Dubric* action and the record does not otherwise demonstrate that she had an injury or "interest in the outcome of the litigation" that differed from the other class members such that she could not "fairly and adequately protect the interests of the class."[4] *Jane Doe Dancer I-VII v. Golden Coin, Ltd.*, 124 Nev 28, 34-35, 176 P.3d 271, 275-76 (2008) (discussing the prerequisites for serving as a class representative).

---

[4]We are not persuaded by appellants' remaining arguments regarding Dubric's standing to serve as class representative.

Finally, while appellants advance several arguments contesting the *Dubric* settlement terms, they fail to point to any Nevada caselaw or statute that would require reversal.[5]  And although we decline appellants' invitation to adopt the Ninth Circuit's eight-factor test for determining whether a proposed class action settlement is fair, adequate, and reasonable at this time, *see Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004),[6] we note that the district court here appeared to consider many of those factors and the *Dubric* settlement would likely satisfy that test if applied.  Indeed, we discern no abuse of discretion in the district court's decision to approve the *Dubric* class settlement.  *See Marcuse*, 123 Nev. at 286, 163 P.3d at 467 (reviewing a district court's approval of a class action settlement for an abuse of discretion).  The record demonstrates that respondents reached the settlement as the result of lengthy negotiations

---

[5]We decline to consider appellants' argument that the district court lacked subject matter jurisdiction to approve the *Dubric* settlement because appellants fail to support this argument with citation to relevant authority. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (explaining that a party is responsible for supporting its arguments with salient authority).  We also decline to address appellants' request that this court impose monetary sanctions against Dubric's counsel pursuant to NRS 7.085, raised for the first time in their reply brief. *See Phillips v. Mercer*, 94 Nev. 279, 283, 579 P.2d 174, 176 (1978).

[6]We note that *Churchill Village*, 361 F.3d at 575, concerned whether a proposed class settlement was fair and adequate, an explicit requirement under the Federal Rules of Civil Procedure, whereas the Nevada Rules of Civil Procedure do not contain the same requirement. *Compare* FRCP 23(e)(2) (providing that a court may only approve a proposed settlement upon "finding that it is fair, reasonable, and adequate"), *with* NRCP 23(f) (requiring court approval before "[a] class action [may] be dismissed or compromised").

after conducting a significant amount of discovery and with the assistance of both a jointly retained expert and an experienced judicial officer. And although there were objections to the settlement, the number of objections represented only a small fraction of the total class, and those objectors chose not to opt out of the settlement. Lastly, we note that no Nevada caselaw or statute requires the district court to make specific findings regarding the individual objections to a proposed class settlement or its basis for approving such a settlement as appellants suggest. Based upon the foregoing, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Parraguirre

_____, J.          _____, J.
Hardesty                                              Silver

cc:    Hon. Kathleen E. Delaney, District Judge
       William C. Turner, Settlement Judge
       Leon Greenberg Professional Corporation
       Rodriguez Law Offices, P.C.
       Bourassa Law Group, LLC
       Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A

6

# EXHIBIT C

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MICHAEL MURRAY; MICHAEL RENO; MICHAEL SARGEANT, INDIVIDUALLY AND ON BEHALF OF A CLASS OF PERSONS SIMILARLY SITUATED; MARCO BAKHTIARI; MICHAEL BRAUCHLE; THOMAS COHOON; GARY GRAY; JORDAN HANSEN; ROGER KELLER; CHRIS D. NORVELL; POLLY RHOLAS; AND GERRIE WEAVER, Appellants, vs. JASMINKA DUBRIC, INDIVIDUALLY AND ON BEHALF OF THOSE SIMILARLY SITUATED; A CAB, LLC, A NEVADA LIMITED LIABILITY COMPANY; A CAB SERIES LLC; EMPLOYEE LEASING COMPANY, A NEVADA SERIES LIMITED LIABILITY COMPANY; AND CREIGHTON J. NADY, AN INDIVIDUAL, Respondents. | No. 83492  FILED  AUG 1 1 2022  ELIZABETH A. BROWN CLERK OF SUPREME COURT BY _____ DEPUTY CLERK |

## ORDER OF AFFIRMANCE

This is an appeal from a district court order approving a class action settlement. Eighth Judicial District Court, Clark County; Kathleen E. Delaney, Judge.[1]

Appellants and respondent Jasminka Dubric are taxi drivers who allege that their employer, respondents A Cab, LLC, and A Cab Series LLC, Employing Leasing Company (collectively, the A Cab respondents)

_____

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted.

22-25183

failed to pay them and other drivers minimum wage. The taxi drivers filed two separate class action suits against the A Cab respondents: the underlying matter brought by Dubric (the *Dubric* action) and another brought by appellants Michael Murray, Michael Reno, and Michael Sargeant (collectively, the Murray intervenors) (the *Murray* action).[2] The Murray intervenors secured a judgment against the A Cab respondents in the *Murray* action, *see A Cab, LLC v. Murray*, 137 Nev., Adv. Op. 84, 501 P.3d 961 (2021), and then intervened in the *Dubric* action, objecting to the proposed class action settlement because of its potential impact on the judgment in the *Murray* action. The remaining appellants are unnamed class members of both the *Murray* action and the *Dubric* action who objected to the *Dubric* settlement.

The Murray intervenors unsuccessfully sought to recuse or disqualify Judge Kathleen Delaney from presiding over the *Dubric* action due to alleged bias toward their counsel. After sending notice to all potential class members, class counsel in the *Dubric* action received nine objections to the proposed class settlement and only one member, in addition to the Murray intervenors, opted out.[3] Thereafter, the district court conducted a final fairness hearing and granted respondents' joint

---

[2]While there is some overlap of class membership, the *Dubric* class action settlement encompasses claims that go beyond the timeframe of those resolved in the *Murray* class action.

[3]This court denied appellants' previous request for extraordinary relief in which they sought an order requiring the district court to allow their class counsel to opt out from the *Dubric* settlement on behalf of all members of the *Murray* class. *See Murray v. Eighth Judicial Dist. Court*, No. 82126, 2020 WL 7296993 (Nev. Dec. 10, 2020) (Order Denying Petition for Writ of Prohibition or Mandamus).

motion to approve their proposed settlement, finding that the settlement was fair, reasonable, and adequate and in the best interest of the class members. Appellants now challenge the order granting final approval of the *Dubric* settlement, as well as the order denying the Murray intervenors' motion to disqualify Judge Delaney.

As a preliminary matter, we first reject the A Cab respondents' arguments that appellants lack standing to bring this appeal, as appellants are potentially aggrieved by the *Dubric* settlement order in that it appears to release some of the class claims against the A Cab respondents for less than the amount of the judgments obtained in the *Murray* action. *See Valley Bank of Nev. v. Ginsburg*, 110 Nev. 440, 446, 874 P.2d 729, 734 (1994) (defining an aggrieved party as one whose personal or property rights are adversely and substantially affected). Although the Murray intervenors cannot demonstrate that they are *individually* aggrieved because they were not included in the *Dubric* settlement class, we conclude that they have standing as class representatives to assert claims on behalf of those *Murray* class action members who may be adversely affected by the *Dubric* settlement. *See Las Vegas Police Protective Ass'n Metro, Inc. v. Eighth Judicial Dist. Court*, 122 Nev. 230, 239, 130 P.3d 182, 189 (2006) (providing that intervenors have "a right to appeal independent from that of the original parties" so long as they are also aggrieved parties pursuant to NRAP 3A(a)). And this court has previously recognized that unnamed class members who objected to a proposed settlement have standing to appeal that settlement. *See Marcuse v. Del Webb Cmtys., Inc.*, 123 Nev. 278, 285, 163 P.3d 462, 467 (2007) (concluding that unnamed class members "had standing to object to [a] proposed settlement and to appeal the district court's order dismissing the class action based on the settlement").

Next, we reject appellants' challenge to the order denying the motion to disqualify Judge Delaney. The Murray intervenors' motion to intervene in the *Dubric* class action was still pending when they sought Judge Delaney's disqualification. Therefore, the Murray intervenors were not yet parties to the *Dubric* class action, *see Aetna Life & Cas. Ins. Co. v. Rowan*, 107 Nev. 362, 363, 812 P.2d 350, 350 (1991) ("[A] proposed intervenor does not become a party to a lawsuit unless and until the district court grants a motion to intervene."), and thus lacked standing to move to disqualify Judge Delaney. *See* NRS 1.235(1) (providing that "[a]ny *party* to an action [may] seek[ ] to disqualify a judge for actual or implied bias" (emphasis added)). As such, we conclude that the district court did not abuse its discretion when it denied the motion to disqualify. *See Ivey v. Eighth Judicial Dist. Court*, 129 Nev. 154, 162, 299 P.3d 354, 359 (2013) (reviewing the denial of a motion to disqualify for an abuse of discretion).

We also reject appellants' challenge to Dubric serving as the class representative because she is a judgment debtor of the A Cab respondents in a related federal action. The judgment that forms the basis of Dubric's purported conflict of interest did not arise until after the respondents reached a settlement in the *Dubric* action and the record does not otherwise demonstrate that she had an injury or "interest in the outcome of the litigation" that differed from the other class members such that she could not "fairly and adequately protect the interests of the class."[4] *Jane Doe Dancer I-VII v. Golden Coin, Ltd.*, 124 Nev 28, 34-35, 176 P.3d 271, 275-76 (2008) (discussing the prerequisites for serving as a class representative).

_____

[4]We are not persuaded by appellants' remaining arguments regarding Dubric's standing to serve as class representative.

Finally, while appellants advance several arguments contesting the *Dubric* settlement terms, they fail to point to any Nevada caselaw or statute that would require reversal.[5]  And although we decline appellants' invitation to adopt the Ninth Circuit's eight-factor test for determining whether a proposed class action settlement is fair, adequate, and reasonable at this time, *see Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004),[6] we note that the district court here appeared to consider many of those factors and the *Dubric* settlement would likely satisfy that test if applied.  Indeed, we discern no abuse of discretion in the district court's decision to approve the *Dubric* class settlement.  *See Marcuse*, 123 Nev. at 286, 163 P.3d at 467 (reviewing a district court's approval of a class action settlement for an abuse of discretion).  The record demonstrates that respondents reached the settlement as the result of lengthy negotiations

---

[5]We decline to consider appellants' argument that the district court lacked subject matter jurisdiction to approve the *Dubric* settlement because appellants fail to support this argument with citation to relevant authority. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (explaining that a party is responsible for supporting its arguments with salient authority).  We also decline to address appellants' request that this court impose monetary sanctions against Dubric's counsel pursuant to NRS 7.085, raised for the first time in their reply brief. *See Phillips v. Mercer*, 94 Nev. 279, 283, 579 P.2d 174, 176 (1978).

[6]We note that *Churchill Village*, 361 F.3d at 575, concerned whether a proposed class settlement was fair and adequate, an explicit requirement under the Federal Rules of Civil Procedure, whereas the Nevada Rules of Civil Procedure do not contain the same requirement. *Compare* FRCP 23(e)(2) (providing that a court may only approve a proposed settlement upon "finding that it is fair, reasonable, and adequate"), *with* NRCP 23(f) (requiring court approval before "[a] class action [may] be dismissed or compromised").

after conducting a significant amount of discovery and with the assistance of both a jointly retained expert and an experienced judicial officer. And although there were objections to the settlement, the number of objections represented only a small fraction of the total class, and those objectors chose not to opt out of the settlement. Lastly, we note that no Nevada caselaw or statute requires the district court to make specific findings regarding the individual objections to a proposed class settlement or its basis for approving such a settlement as appellants suggest. Based upon the foregoing, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Silver

cc:   Hon. Kathleen E. Delaney, District Judge
      William C. Turner, Settlement Judge
      Leon Greenberg Professional Corporation
      Rodriguez Law Offices, P.C.
      Bourassa Law Group, LLC
      Eighth District Court Clerk

