LEON GREENBERG, ESQ., SBN 8094
RUTHANN DEVEREAUX-GONZALEZ, ESQ., SBN 15904
Leon Greenberg Professional Corporation
1811 South Rainbow Blvd- Suite 210
Las Vegas, Nevada 89146
(702) 383-6085
(702) 385-1827(fax)
leongreenberg@overtimelaw.com
ranni@overtimelaw.com

LAW OFFICES OF GABRIEL DEL VIRGINIA
30 Wall Street, 12th Floor
New York, New York 10005
Telephone: 212-371-5478
Facsimile: 212-371-0460
*gabriel.delvirginia@verizon.net*
Admitted *Pro Hac Vice*

Attorneys for Creditor
Leon Greenberg Professional Corporation
Attorneys for *Murray* Case Creditors

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

-------------------------------------------------------X

**In re:**

**A CAB, SERIES L.L.C.**
    **fka A CAB, LLC,**

                  **Debtor.**

-------------------------------------------------------X

**Case No. BK-22-14361-nmc**

**Chapter 11**

Hearing Date: February 14, 2023
Hearing Time: 9:30 am

### REPLY TO DEBTOR'S OPPOSITION TO MOTION FOR
### ORDER GRANTING LEON GREENBERG, ESQ PERMISSION TO FILE A
### SINGLE ITEMIZED PROOF OF CLAIM FOR 661 CREDITORS

Michael Murray and 660 additional creditors, (the "*Murray* Case creditors") file

this reply to Debtor's opposition to the *Murray* Case Creditors' motion to file a single

itemized proof of claim document with the Court in lieu of filing 661 such proof of claim documents.

## I.    IN REPLY TO DEBTOR'S STATEMENT OF FACTS

### A.    The prior history of the parties' dispute, the chapter 11 proceedings already taken, and the Debtor's proposed Plan, <u>(that is seriously misrepresented) are not relevant to the motion.</u>

Debtor's opposition extensively discusses the pre-petition history of the parties' dispute, the history of these Chapter 11 proceedings, and the claimed merit of Debtor's Plan filed on February 6, 2023.   Those recitations of history are rife with untrue assertions (which is why they are also undocumented).   They are not discussed in this reply because they are irrelevant to the motion.

The Debtor's proposed Plan is riddled with problematic terms, incorrect assumptions, and ignores established facts that render it non-confirmable.   Although the proposed Plan's lack of merit is not relevant to this motion, the Court can take note that it asserts Debtor's over 100 taxi medallions have no liquidation value when that value is substantial, estimated to be approximately $2,000,000 or more; it asserts certain fraudulent conveyance claims known to involve transfers of at least $1,900,000 have no value; and it asserts the Debtor needs to pay very large monthly expenses that are at least 25% greater than during its last full year of pre-petition operations and that do not seem plausible, such as $52,000 a month in legal and professional costs.  The *Murray* case creditors will be making those, and many other infirmities in the proposed Plan, the subject of a Rule 2004 examination.

**B.    The Debtor's claims about the relationship between the *Dubric* and *Murray* proceedings are irrelevant because they cannot be addressed by this Court but only by the Nevada Supreme Court in the debtor's pending appeal; those claims also have no legal basis.**

Debtor extensively (and inaccurately) discusses the *Dubric* and *Murray* proceedings, essentially urging this Court to deny the motion by finding that *Dubric* released the 661 *Murray* Case creditors' judgments.[1]   Yet Debtor ignores that the state district court has already rejected that argument and found the *Murray* Case creditor judgments are not, under Nevada law, impaired by the *Dubric* proceedings.   Ex. "A," order in *Murray* entered on November 11, 2022, modifying the final judgment.[2]   That finding by the state district court may not be examined and overruled by this Court, it can only be modified through action by the Nevada Supreme Court in Debtor's pending appeal of that order.

And if the Court were to examine Debtor's claim the *Dubric* proceedings vacated the *Murray* Case creditor judgments it would find that claim (and the Debtor's pending appeal seeking to raise that claim) frivolous.   The *Murray* Case creditor judgments were

---

[1]  Page 5, Lines 15-18 of opposition: "Critically also, this decision approving the Dubric settlement and Bourassa Law Group as counsel was entered on August 31, 2021, and thus was fully finalized well before the Murray Case was concluded in late 2022, and thus obviously takes precedence."

[2]  Page 5, lines 8-15: "The *Dubric* Issue. Defendants assert that there is a [sic] presently an overlap of claimants between this case and the *Dubric* case; that the overlapping claimants released their claims against Defendants through the *Dubric* case; and therefore, Defendants must be released from such duplicative claims that remain in this case. The Court disagrees. As Plaintiffs assert, this Court can find no basis that allows the subsequent proceedings in *Dubric* to release this Court's earlier judgment that was appealed and affirmed, with the exception of the recalculation of damages from October 8, 2010 forward."

entered in 2018 and could not be impaired by the later 2021 judgment in a different case, *Dubric*.   Debtor, ignoring that chronology, insists the *Murray* 2018 judgment (Motion Ex. "E") ceased to exist at some point in time prior to August 31, 2021, when the *Dubric* judgment was issued with the *Murray* judgment only becoming effective on November 17, 2022, when an order modifying it (reducing certain damages upon remittitur) was entered (Motion Ex. "C").   That reasoning was already rejected by the Nevada Supreme Court in its order of February 3, 2022, imposing interest on the modified *Murray* 2018 final judgment from 2018 since its modification of that judgment on December 30, 2021, "….was, in effect, an affirmation of the original judgment" *citing Schiff v. Winchell*, 237 P.3d 99, 101 (Nev. Sup. Ct. 2010).  Ex. "B, p. 2."[3]

## II.    IN REPLY TO THE DEBTOR'S LEGAL ARGUMENT

### A.    There is no "default rule" requiring 661 separate "individual proof of claim" documents be filed.

Debtor asserts it is "the normal, default rule in every chapter 11 case" that each claimant "in a bankruptcy must file their own individual proofs of claim to participate in

---

[3] The chronology of the *Dubric* proceedings and the *Murray* final judgment appeal also establish the frivolousness of the Debtor's current appeal of the order modifying that final judgment.   The Nevada Supreme Court affirmed, as modified, the *Murray* final judgment on December 30, 2021.  *See*, 501 P.3d 961.  The *Dubric* final judgment which the Debtor claims vacated the *Murray* final judgment was entered four months earlier, on August 31, 2022.   Debtor had the opportunity, prior to the Nevada Supreme Court's affirmance of the *Murray* final judgment, to raise the impact of the *Dubric* proceedings in its appeal of that final judgment.  It cannot in its current appeal of the order modifying that final judgment properly seek to vacate the *Murray* final judgment based on events and arguments it could have presented prior to the issuance of the *Murray* Opinion affirming that final judgment.

a reorganization and obtain consideration from the estate" citing Fed. R. Bankr. P. 3003(c).   There is no such "default rule" and the cited provision says nothing of the sort. There is no requirement for the physical, mechanical, filing of "individual" proof of claim documents or electronic docket entries by each claimant.   There is a requirement that every proof of claim, for every claimant, contain certain specific information, and be filed by the claimant or their identified, authorized, agent.   The motion includes a proposed filing with the Court, to be made in a single mechanical action and docket entry by the *Murray* Case creditors' counsel, that will fully comply with those substantive requirements for the 661 *Murray* Case creditors.  Debtor does not argue that such a proof of claim filing will ignore, or evade, any of those substantive requirements (its argument moving counsel lacks authority to file a proof of claim for any of those 661 creditors is discussed *infra*).  Nor can it.  It just vacuously insists 661 individual proofs of claim must be filed.

**B.    This case does not present a "class proof of claim" issue.**

As discussed in the moving papers, there were no pending class claims in the state court when the Petition was filed.   The "class action" issues, and litigation, between the Debtor and the 661 *Murray* case creditors, have long since been resolved by the entry of final judgments, in varying amounts, against the Debtor and in favor of those 661 persons.   Accordingly, there are no "class action" issues or "class proof of claim" issue presented in this case.  Debtor does not explain how that analysis of the situation is flawed or inappropriate.  Nor does it cite any precedent that would support this Court disagreeing with that analysis.

*In re Great Western Cities, Inc. of New Mexico*, 107 B.R. 116 (N.D. Tex. 1989) found, in analogous circumstances, no "class" proof of claim or "class action" issues were presented (overruling contrary findings by the bankruptcy court) and that the filing of a single proof of claim document for many claimants is proper.   In that case approximately 2,500 persons, each of whom was named individually as a plaintiff in a pending civil lawsuit, attempted to file proofs of claim through their counsel.  107 B.R. at 117.   They did so through nine proof of claim documents, each annexing a filed complaint and list of all plaintiffs in that case, but that did not include any statement of the dollar amount of each claim or any writing confirming authority by counsel to file the claim.  *Id.*   The district court found the bankruptcy court had erred by finding that this circumstance involved any "class" proof of claim issue or any "class" involving the essential element of class litigation: a class representative.   107 B.R. at 118.   That was because every single claimant was being joined as a party, perhaps with similar or identical claims only varying in amount of damages.  *Id.*   As *Great Western* observed "They are in no sense a 'class' within the meaning of Fed.R.Civ.P. 23."  *Id.*

*Great Western*, after recognizing the filing of 2,500 claims on behalf of individually recognized persons did not present a "class claim" issue, expressly held that the nine itemized proofs of claim filed for those persons were sufficient:

> 11 U.S.C. § 501 provides that a proof of claim may be filed by a "creditor or indenture trustee." Section 501 is complemented by Rule 3001,which is the "definitive authority" concerning the contents of a proof of claim. 8 Collier on Bankruptcy ¶ 3001.03 (15th ed. 1989). Rule 3001(b) provides that a "proof of claim shall be executed by the creditor or creditor's authorized agent except as provided in Rules 3004 and 3005." Neither section 501 nor Rule 3001 prohibits an agent with authority from filing

claims on behalf of a large group of individuals. **The court finds no support for the absurd practice that would flow from a contrary rule, pursuant to which the bankruptcy court and clerk would be inundated by 2,500 separate proofs of claim rather than one or more documents that expressly identify each creditor.** The Trustee has offered no plausible rationale for insisting on such a requirement.   107 B.R. at 119 (emphasis provided).

Debtor does not provide any argument that should lead this Court to reach a conclusion different than that in *Great Western*.  Instead it discusses the inquiry undertaken to approve a class proof of claim, as per *In Re Musicland Holding Corp.*, 362 B.R. 644, 651 (S.D.N.Y. 2007).  That discussion is superfluous, as amply demonstrated by the non-existence of what the Debtor notes a proponent of a class proof of claim must do in the first instance: "make a motion to extend the application of Rule 23 to some contested matter."  Opp. p. 15, l. 4-5.  No such contested matter exists and none is identified by Debtor.  Movants do not seek to resolve any contested questions on a class basis under Rule 23.  The 661 *Murray* Case creditors have had all contested matters with the Debtor resolved, with their claims against the Debtor reduced to specific judgment amounts.  They are not a class of claimants acting through a representative but, as in *Great Western*, 661 individual creditors who, while possessing judgments subject to identical circumstances (but in varying amounts), do not constitute a "class" and do not present any "class claims."

C. **Moving counsel indisputably has the authority, if not the obligation, to file a proof of claim for each of the 661 *Murray* case creditors under the state court's order.**

As discussed in the moving papers, the judgment entered by the state court on August 21, 2018, (Motion, Ex. "E" at p. 33-34, bates 107-108) appointed moving

counsel as the attorney for all of the 661 *Murray* Case judgment creditors and stated such counsel was "authorized to proceed with whatever remedies it deems advisable to enforce the money judgments rendered…"   That judgment was appealed to the Supreme Court which did not alter that appointment and grant of authority to moving counsel.   Upon remand of that appeal, the state district court, when entering its order modifying and reducing the judgment's award of certain damages, did *not* modify that appointment stating that "…the Court's Order and Judgment entered August 21, 2018, shall remain in effect in all other respects except as modified herein…"   Motion, Ex. "C" at p. 4, l. 1-6, bates 54.

Debtor is baselessly insisting the authority granted to moving counsel by the state court's judgment and order of August 21, 2018, that was appealed, affirmed, and re-authorized upon remand, has lapsed.   Having been appointed counsel for the 661 *Murray* Case creditors, moving counsel would (arguably) be committing malpractice if they failed to file a proof of claim for those clients to protect their rights.   Debtor's related argument, that the 661 *Murray* judgments have been vacated by the *Dubric* proceedings, and therefore no proof of claim can be filed for any of those persons, has, as discussed, already been rejected by the state court, a decision that this Court must respect.

Nor is the communication status of the 661 *Murray* Case creditors, the ease with which they can be reached, or if they can ever be located, germane.   The state court awarded judgments, property rights, to those 661 persons, retained jurisdiction to enforce those rights, barred Debtor from satisfying any of those judgments without a

further order from the court in the *Murray* case (to guard against overreach by the Debtor vis-a-vie these low-wage and presumptively unsophisticated workers), and directed moving counsel take action to enforce such rights.  In the event those rights are vindicated (money is collected) the disposition of that property is a separate issue to be decided by the state court.   Nevada law provides a mechanism for the distribution of abandoned property, a process that will presumably be followed if funds owed to, and collected for, any of those 661 judgment creditors cannot be distributed to such persons. Just because some judgment creditors may never be located does not give the Debtor a right to evade paying some of those judgments since they are for unpaid minimum wages under the Nevada Constitution.[4]  In any event, that is an issue of state law that the state court must deal with.[5]

---

[4] The Nevada Constitution (Art. 15, § 16, ¶ B) in respect to minimum wage violations states:

An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and **shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section**, including but not limited to back pay, damages, reinstatement or injunctive relief. (emphasis provided).

The foregoing directs Nevada's courts to remedy *violations* of the state's minimum wage requirements, not merely recompense particular aggrieved employees to whom payment of those unpaid minimum wages is possible.  By imposing a forfeiture upon the Debtor for those unpaid minimum wages, irrespective of whether the aggrieved employee can be located and paid, it remedies the injury Debtor's minimum wage violations cause to employers who pay proper minimum wages and who would otherwise be at a competitive disadvantage.

[5] The state court may direct such funds escheat to the State of Nevada as they do under the federal minimum wage law.  *See*, 29 U.S.C. § 216 (c) (providing that monies collected for federal minimum wage violations escheat to the United States Treasury after three years if they cannot be paid to the workers owed such wages).

Debtor's final argument, that moving counsel will somehow need to be disqualified because they will become a "fact witness" by preparing and filing the proposed proof of claim, is baseless and unexplained.   The authority cited by Debtor involves cases where counsel was making factual determinations relative to the claims presented.  No such determinations are made by moving counsel in respect to the proposed proof of claim − all amounts and facts recited in the same are from the record of the state court proceedings.  Having made no factual determinations and conducted no independent observations, moving counsel is not a fact witness to anything relative to the proposed proof of claim document.  Nor does Debtor explain how they are.

If the Court is unwilling to conclusively rule, at this time, that moving counsel has authority to file a proof of claim on behalf of the 661 *Murray* judgment creditors, and may properly do so, it should grant the motion but reserve Debtor's right to dispute that authority, and potentially disallow those claims on that basis, at a later date.  Denying the motion, which would lead to the filing of 661 individual proof of claim documents by counsel with uncertain authority to do so, would serve no purpose.

**III.**

**CONCLUSION**

For all the foregoing reasons, the Court should grant the relief requested along with

such other relief it deems appropriate.

Respectfully submitted,

**Leon Greenberg Professional Corporation**

**By:**  **/s/ *Leon Greenberg***
**Leon Greenberg (NSB 8094)**
**1811 South Rainbow Boulevard, Suite 210**
**Las Vegas, Nevada 89146**
**Telephone: 702-383-6085**
**Facsimile: 702-385-1827**
**Email: leongreenberg@overtimelaw.com**

***Counsel to Murray Case Creditors***

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was electronically filed using the

Court's CM/ECF system on this 13th day of February 2023, which will send electronic

notification of this filing to all counsel of record.

*/s/Ruthann Devereaux-Gonzalez*
Ruthann Devereaux-Gonzalez

## INDEX TO EXHIBITS

A. Order Modifying Judgment in Case No.:                    6 pages
    A-12-669926-C

B. Order In Nevada Supreme Court
    Case No: 77050                    4 pages

# EXHIBIT "A"

Order Modifying Judgment in Case No.:
A-   12-669926-C

Electronically Filed
11/11/2022 4:05 PM

CLERK OF THE COURT

ORDR

# DISTRICT COURT

# CLARK COUNTY, NEVADA

| | |
|---|---|
| MICHAEL MURRAY and MICHAEL RENO, individually and behalf of others similarly situated, | Case No.: A-12-669926-C |
| | Dept. No. IX |
| Plaintiffs, | |
| vs. | |
| A CAB TAXI SERVICE, LLC, et al. | |
| Defendants. | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF A MODIFIED JUDGMENT AS PROVIDED FOR BY REMITTITUR

On December 30, 2021, the Nevada Supreme Court issued an opinion affirming in part, reversing in part, and remanding this case to the Eighth Judicial District Court for further proceedings consistent with the Supreme Court's opinion. On February 14, 2022, Plaintiffs Michael Murray and Michael Reno, individually and on behalf of others similarly situated, filed a motion for entry of a modified judgment as provided for by the Supreme Court's remittitur. On February 28, 2022, Defendants filed an opposition to the motion. On August 12, 2022, Plaintiffs filed a reply in support of the motion.

This case had previously been stayed until the Nevada Supreme Court decided a pending appeal in Nevada Supreme Court Case No. 83492, referred to in the papers as *Dubric*. On September 19, 2022, this Court issued an order lifting the stay given that, at that point, the *Dubric* appeal had been decided, with rehearing denied. However, the Court indicated that given the developments in this case, including in the *Dubric* matter, the parties could each file and serve one additional, omnibus brief in support of or opposed to any pending motion. The parties filed supplemental briefs on September 30, 2022. Having considered those supplemental briefs, along with the

motion and related briefing and all pleadings and papers on file, the Court GRANTS the motion consistent with the following:

The Nevada Supreme Court "affirm[ed] the district court's summary judgment", Opinion p. 20, but "reverse[d] the summary judgment as to damages for claims outside the two-year statute of limitations," Opinion p. 32, and "remand[ed] to the district court to recalculate damages based on the two-year statute of limitations," Opinion p. 20. More specifically, the Nevada Supreme Court "conclude[d] that the drivers' claims extend backwards only two years before their suit was filed." Opinion p. 14. Based on that conclusion, the Nevada Supreme Court "remand[ed] [the case] to the district court to recalculate damages for this shorter time period." Opinion p. 14.

Plaintiffs filed this case on October 8, 2012. Thus, based on the Nevada Supreme Court's remand instructions, this Court must calculate damages from October 8, 2010 forward. This is a relatively simple task that Defendants try to complicate by coming forth with a number of arguments that, in this Court's view, do not hold water. The Court addresses each of their arguments below.

**The Class Certification Issue.** This Court entered its class certification order on February 10, 2016, finding that "[t]he class shall consist of the claims as alleged in the Second Amended and Supplemental Complaint of all persons employed by any of the defendants as taxi drivers in the State of Nevada at any time from July 1, 2007 through December 31, 2015 . . . ." Defendants argue that the class must now be decertified pursuant to the Nevada Supreme Court opinion to exclude class members who claims fall prior to October 8, 2010. Defendants also argue that the class must be decertified for the time period following June 26, 2014, because there are only 4 claimants after June 26, 2014. Defendants effectively seek post-judgment reconsideration of the Court's class certification order, which became final and appealable at the time the Court entered its prior judgment. The Court declines to reconsider its order, which Defendants could have appealed at the time they appealed the summary judgment decision.

2

**The Revised Spreadsheet Issue**. Defendants assert that "[a] brief review of the proposed spreadsheets demonstrate that it is fraught with errors.  Even after reviewing the 'core group' of named representative Plaintiffs, the Court can see that Michael Murry is listed twice for a double recovery.  Attached also is a chart of additional errors contained in the spreadsheets."

The Court has reviewed Defendants' "chart of additional errors," which, as an initial matter, is not helpful to the Court.  The chart identifies nine (9) class members.  For two (2) of these class members Defendants' notes on the chart indicate "Leon's[1] had the wrong amount," but does not identify what the correct amount should be.  For five (5) of these class members Defendants' notes on the chart indicate "Pd but not on Leon's list."  The Court does not know what this means.  For the remaining two (2) of these class members, Defendants' notes indicate that the amounts were credited to the wrong individual.  Again, the Court does not know what this means.

Perhaps more importantly, the spreadsheet of data and calculations Plaintiffs provide for the modified judgment is based on the spreadsheet of data and calculations Plaintiffs previously provided to this Court and on which summary judgment was granted.  Defendants did not appeal the accuracy of the prior spreadsheet, and the Court will not entertain what is effectively another request for reconsideration now.

But even if the Court reconsidered the data and the calculations, the Court cannot figure out what is wrong with the data and calculations for the 9 class members in Defendants' "chart of additional errors," and more importantly, what data and calculations should be used for these 9 class members.  At bottom, it is not the Court's job to decipher Defendants' "notes."

---

[1] By "Leon" Defendants presumably refer to Plaintiff's counsel, Leon Greenberg.

That said, in their reply, Plaintiffs do concede that there is a proposed award to Plaintiff Michael Murray that is listed twice and that the modified judgment should not grant this award twice. Given the concession, the Court shall not allow this award to be made twice in the modified judgment.

**The Department of Labor Issue.** Defendants claim that they have already paid out any alleged underpayment for the time period of October 1, 2010 and October 1, 2012, through a settlement with the Department of Labor and that these monies were paid in full. Defendants ask for an offset for these settlements. Defendants further advise that the Department of Labor has been unable to locate 243 claimants who cannot be found or have refused to accept payment. Defendants refer to these claimants as "ghost" claimants.

In response Plaintiffs assert that prior judgment expressly accounted for the Department of Labor payments to the extent Defendants were able to establish the existence of the payments and that the data and calculations in Plaintiffs' proposed modified judgment carries such information forward. Plaintiffs further assert that the inability to currently locate the so-called "ghost" claimants has no bearing on the entry or enforcement of the amended judgment.

The Court agrees with Plaintiffs. The Nevada Supreme Court affirmed this Court's prior judgment with the narrow exception of damages prior to October 8, 2010. This Court has direction from the Nevada Supreme Court to recalculate damages from October 8, 2010 forward. The Court does not intend to otherwise modify its prior judgment.

**The "Appropriate Defendant" Issue.** Defendants assert that Plaintiffs sued the wrong entity and that the Nevada Supreme Court stated that this Court "erred without taking evidence on what corporate entities existed and were actually liable for the judgment." Defendants contend that this determination must be made before issuing an amended judgment. Defendants have either misread or are misrepresenting the Nevada Supreme Court's opinion on this issue.

4

As an initial matter, the Nevada Supreme Court's statement does not arise from the reversal and remand of summary judgment; it arises from the reversal of a post-judgment order denying a motion to quash. As Plaintiffs point out, the Nevada Supreme Court only granted Defendants the right to a further hearing upon remand on whether that judgment execution should be quashed and did not direct any findings on remand as to A Cab Series LLC's liability—as the "now known as" entity—for the judgment.

The *Dubric* Issue. Defendants assert that there is a presently an overlap of claimants between this case and the *Dubric* case; that the overlapping claimants released their claims against Defendants through the *Dubric* case; and therefore, Defendants must be released from such duplicative claims that remain in this case. The Court disagrees. As Plaintiffs assert, this Court can find no basis that allows the subsequent proceedings in *Dubric* to release this Court's earlier judgment that was appealed and affirmed, with the exception of the recalculation of damages from October 8, 2010 forward.

***

For the foregoing reasons, the motion is GRANTED. Defendants shall forthwith submit to the Department inbox their proposed "Order Modifying Final Judgment Entered on August 21, 2018" attached as Exhibit G to their motion, but as amended to account for the duplicate entry discussed above.

IT IS SO ORDERED.

**Dated this 11th day of November, 2022**

_____

**1EA E39 BB42 F334**
**Maria Gall**
**District Court Judge**

5

# EXHIBIT "B"

Order of February 3, 2022 in the

Nevada Supreme Court case number 77050

IN THE SUPREME COURT OF THE STATE OF NEVADA

A CAB, LLC; AND A CAB SERIES, LLC,
                    Appellants,
          vs.
MICHAEL MURRAY; AND MICHAEL
RENO, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY
SITUATED,
                    Respondents.

No. 77050

**FILED**

FEB 03 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
          DEPUTY CLERK

*ORDER DENYING MOTION*

Respondents filed a motion requesting that this court award attorney fees or direct the district court to award attorney fees pursuant to Article 15, Section 16 of Nevada's Constitution, and to include in its mandate upon remand instructions about the allowance of interest, pursuant to NRAP 37(b). Appellants have filed an opposition to the order and respondents have filed a reply.

As an initial matter, this court's opinion already concludes that the district court must reconsider the award of attorney fees in light of this court's decision. Article 15, Section 16, Subsection B of Nevada's Constitution, the Minimum Wage Amendment, states that "[a]n employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs." However, the determination of a "reasonable" attorney fee involves questions of fact and "should be addressed, in the first instance, by the district court with its greater fact-finding capabilities." *Musso v. Binick*, 104 Nev. 613, 615, 764 P.2d 477, 478 (1988). Accordingly, respondents' motion for an award of attorney's fees on

SUPREME COURT
OF
NEVADA

(O) 1947A

22-03633

appeal is denied without prejudice to respondents' right to raise this motion in the district court.

NRAP 37(a) provides that "if a money judgment in a civil case is affirmed, whatever interest is allowed by law is payable from the date when the district court's judgment was entered." NRAP 37(b) provides that if this court "modifies or reverses a judgment with a direction that a money judgment be entered in the district court, the mandate must contain instructions about the allowance of interest."

This court has previously held that an affirmation in part and reversal in part of a money judgment is treated as an affirmation of that judgment for the purposes of NRAP 37 and the calculation of interest. *Schiff v. Winchell*, 126 Nev. 327, 330-31, 237 P.3d 99, 101 (2010). As noted by respondents, this court's opinion issued December 30, 2021, affirmed in part and reversed in part the district court's money judgment but did not include instructions as to any allowance of interest. *Schiff* applies here, and the modification on appeal was, in effect, an affirmation of the original judgment. Therefore, NRAP 37(a) governs the interest on judgments and whatever interest is allowed by law is payable from the date when the district court's judgment was entered. Accordingly, respondent's request for a modification of the mandate to include instructions based on NRAP 37(b) is denied.

The clerk shall issue the remittitur.

It is so ORDERED.

 C.J.

cc:    Hon. Kenneth C. Cory, District Judge
       Rodriguez Law Offices, P.C.
       Cory Reade Dows & Shafer
       Hutchison & Steffen, LLC/Las Vegas
       Leon Greenberg Professional Corporation
       Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A

3