UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (LAS VEGAS)

|  |  |  |
|---|---|---|
| | . | |
| IN RE: | . | Case No. 22-14361-nmc |
| | . | Chapter 11 |
| A CAB, SERIES, L.L.C., | . | |
| | . | 300 Las Vegas Blvd. South |
| | . | Las Vegas, NV 89101 |
| Debtor. | . | |
| | . | Tuesday, April 25, 2023 |
| . . . . . . . . . . . . . . . . | . | 10:04 a.m. |

TRANSCRIPT OF STATUS HEARING RE: APPLICATION FOR ORDER
EXPANDING THE POWERS OF THE SUBCHAPTER V TRUSTEE NATHAN F.
SMITH WITH PROPOSED ORDER WITH CERTIFICATE OF SERVICE FILED BY
RUTHANN DEVEREAUX-GONZALEZ ON BEHALF OF LEON GREENBERG PROF.
CORP., MICHAEL MURRAY [94];
ORAL RULING RE: MOTION TO COMPEL FOR ORDER COMPELLING
COMPLIANCE WITH SUBPOENA BY THE NEVADA TAXICAB AUTHORITY WITH
PROPOSED ORDER WITH CERTIFICATE OF SERVICE FILED BY RUTHANN
DEVEREAUX-GONZALEZ ON BEHALF OF LEON GREENBERG PROF. CORP.,
MICHAEL MURRAY [115]
BEFORE THE HONORABLE NATALIE M. COX
UNITED STATES BANKRUPTCY COURT JUDGE

TELEPHONIC APPEARANCES:

| | |
|---|---|
| For the Debtor: | Larson & Zirzow, LLC |
| | By:  MATTHEW ZIRZOW, ESQ. |
| | 850 East Bonneville Avenue |
| | Las Vegas, NV 89101 |
| | (702) 382-1170 |

APPEARANCES CONTINUED.

| | |
|---|---|
| Audio Operator: | Benji Rawling, Remote ECR |
| Transcription Company: | Access Transcripts, LLC |
| | 10110 Youngwood Lane |
| | Fishers, IN 46048 |
| | (855) 873-2223 |
| | www.accesstranscripts.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

TELEPHONIC APPEARANCES (Continued):

| | |
|---|---|
| For the Murray Claimants: | Leon Greenberg Professional Corporation<br>By: LEON GREENBERG, ESQ.<br>1811 South Rainbow Boulevard<br>Las Vegas, NV 89146<br>(702) 383-6085 |
| | Law Office of Gabriel Del Virginia<br>By: GABRIEL DEL VIRGINIA, ESQ.<br>30 Wall Street, 12th Floor<br>New York, NY 10005<br>(212) 371-5478 |
| Subchapter V Trustee: | NATHAN F. SMITH, ESQ.<br>2112 Business Center Drive<br>Irvine, CA 92612<br>(949) 252-9400 |
| For the U.S. Trustee: | Office of the United States Trustee<br>By: EDWARD MCDONALD, ESQ.<br>300 Las Vegas Boulevard South #4300<br>Las Vegas, NV 89101<br>(702) 388-6600 |
| For Nevada Taxicab Authority: | Barnett Csoka<br>By: LOUIS V. CSOKA, ESQ.<br>3883 Howard Hughes Parkway<br>Suite 790<br>Las Vegas, NV 89169<br>(702) 323-4799 |

(Proceedings commence at 10:04 a.m.)

THE COURTROOM DEPUTY:  The next two matters on the calendar are A Cab, Series LLC, Case Number 22-14361.  May I have appearances please?

MR. ZIRZOW:  Morning, Your Honor.  This is Matt Zirzow with Larson Zirzow, counsel to the debtor.

MR. GREENBERG:  Good morning.

MR. SMITH:  Good morning, Your Honor.  This is Nathan Smith, the Subchapter V Trustee.

MR. GREENBERG:  Good morning, Your Honor.  This is Leon Greenberg, counsel for the Murray creditors.

MR. MCDONALD:  Edward McDonald, Department of Justice for the U.S. Trustee.  Good morning, Your Honor.

MR. DEL VIRGINIA:  Good morning, Your Honor, please.  Gabe Del Virginia, co-counsel with Mr. Greenberg.

MR. CSOKA:  Good morning, Your Honor.  Louis Csoka, Senior Deputy Attorney General on behalf of the Taxicab Authority.

THE COURT:  I'm sorry, Counsel.  I coughed while you were making your appearance.  Can you go ahead and repeat that for me?

MR. CSOKA:  Louis Csoka, Senior Deputy Attorney General on behalf of the Taxicab Authority, Your Honor.

THE COURT:  All right, thank you.

MR. CSOKA:  Thank you.

THE COURT:  All right.  Good morning to everyone.  All right.  We have two matters on.  The first one is the status hearing.  Let's just start with that.  I know there were a couple of status reports filed.

Mr. Smith, I'd like to start with you.

MR. SMITH:  Yes, Your Honor.  And I have reviewed the underlying fraudulent conveyance action that was filed in state court.  I also received documents from debtor's counsel on the 18th regarding certain transfers and withdrawals to insiders, the same individuals who are identified as defendants in the complaint.

I'm currently reviewing those, and I anticipate being in a position to file a further report by May 5th, Your Honor.  And that report will contain specifics regarding my findings in connection with the withdrawals and my position on the viability of the fraudulent conveyance action.

THE COURT:  All right, great.  That's moving quite along.

All right.  Then Mr. Greenberg, I believe your clients also filed a status report.  Do you want to be heard?

MR. GREENBERG:  Yes, Your Honor.  As I had explained in the report we filed, we have many issues that affect this case, Your Honor.  There's questions of the liquidation value.  There's questions of the projections underlying the plan.

And there's many moving parts here, Your Honor.

There clearly has come to my attention this one extremely dispositive issue, which has to do with the proposed tax treatment of the debtor in respect to its asserted liability for these IRS -- these Internal Revenue Service income tax payments.

And as I tried to explain in the status report, this is essentially a $2 million issue in respect to the plan and the unsecured claims. You know, the foreign access of the impairment that's proposed for the unsecured creditors. And it's a -- purely an issue of law, Your Honor.

So if the Court were to take the view that I have espoused very briefly in the status report -- of course, this needs to be briefed and the Court needs to hear from all parties and consider the issues. If this was to be ruled upon in the fashion I believe is appropriate, Your Honor, this current plan cannot proceed. There would have to be an amended plan.

We are not adverse to reaching an understanding with the debtor regarding a plan. Our position and concern has been that the proposed plan is going to impair us, and we don't believe that's appropriate. We believe any plan that would be properly approved would have to pay our claims in full.

So it would be our hope that the Court would rule on this issue and would also direct that the parties have a settlement conference to explore whether they can come to some

understanding as to a consensual plan.  I think there's great potential here, Your Honor, to avoid a great deal of additional work by the parties and by the Court exploring these issues: Again, you know, relating to the, you know, what is the debtor's operating history; you know, what are these projections in the future that they're proposing?  What is the liquidation value?  Which the Court, you know, would also have to, I expect, make certain rulings on.  In fact, you have a ruling you were going to announce today regarding the production of the materials from the Taxicab Authority, which goes to the liquidation value, Your Honor.

And if this other route I was proposing to the Court was taken and did result in a finding as to this tax classification issue, we wouldn't actually need to, presumably, explore every document for what the liquidation value is because it would seem clear that the plan would have to pay us in full.  So it's not a question of the plan, not, you know, exceeding the -- what our rights would be otherwise through liquidation, Your Honor.

THE COURT:  All right.  Well, other than it affecting the subpoena to the Taxicab Authority, what would be the difference between holding an evidentiary hearing in the next couple weeks versus just going forward with a, you know, a contested confirmation hearing and taking evidence at that time?  It seems, in fact it seems very unlikely that we would

even find a date in the next couple of weeks you're all available. There's -- I'm going to be out of town at the district conference for part of the week of May 8th.

The 17th, I believe, is the date set for the confirmation hearing. At this point, I'm not ready to move it. I know that that has been suggested, and it may be necessary. It may be necessary just based on what I'm going to say on the -- with respect to the motion to compel. But just based on the status reports, I'm not inclined yet to make that change.

There is one thing that I will make the parties aware of that could force the Court to do a change unless the parties are available to do this. We're in flux right now on what is being allowed of the courts to do remote hearings, and it's possible that we would have to be in the courtroom for the evidentiary hearing sooner than what the order of the chief judge is right now, which was July 1st. Since our hearing and evidentiary hearing is scheduled from May 17th, it is possible that that date could be one that we are in court on. So if that is not a good date for the parties, I want you to consider that, you know, and any witnesses. But I'm not making any changes right now, and there is, when I say it's in flux, there are -- we are still getting some information from the Administrative Office of Courts as to what exactly is and is not going to be allowed in the near future. So I throw that out there just to give you a heads up that that issue may be

coming to a head sooner rather than later.

But obviously, Mr. Greenberg, you indicated, you know, these issues that you've brought up are going to have to be brought to me in turn and, you know, through motion practice.  I'm not going to do anything today on it, of course.  And I would certainly want to have everyone have an opportunity to be heard, but it sounds like you've contemplated that.  So I will just anticipate seeing these issues come before me.

Does anybody else want to be heard on the status?

Mr. Zirzow, did you want to be heard?

MR. ZIRZOW:  Yes, Your Honor, please.  Just I think you've already indicated how you're going to dispose of the matter, but as to the request to stay the entire bankruptcy so Mr. Greenberg can have his one legal issue that he believes is, you know, the death knell of the plan, there are obviously procedural devices including a motion for summary judgment he could have brought.  He's absolutely wrong on the law.  I will -- I'll address that in my confirmation brief.  His case has nothing to do with the proposition he cited, and his position is directly controverted by Judge Bonapfel's bible on Subchapter V which basically says that the determination of disposable income is post-tax, so his position is utterly meritless.  I'll address that in my confirmation brief, Your Honor.

So secondly, I'm concerned that the debtor is now

hearing, you know, on the verge of confirmation, that Mr. Greenberg wants to have a settlement conference. I'm very concerned he's trying to delay matters. We already had one continuance of this confirmation hearing. As you know, we were set to go in March.

Greenberg has done a good job mucking things up with respect to discovery on the plan to buy more time and is now apparently angling for yet another continuance of the confirmation hearing. I'm concerned about that, but Your Honor, the timing issue is actually more confused than you may realize. As you know, you entered a -- an order setting the evidentiary hearing, which reset confirmation for May 17th and 18th.

The issue is that there are actually declarations due the end of this week. And having done those before, they're very extensive, obviously. And let me just try and move this along and help everybody, including the Court, hopefully. The debtor isn't opposed to a minor continuance, two or three weeks here. I just don't want this turning into another two- or three-month delay of the confirmation hearing. Again, I know Mr. Greenberg. The debtor did produce all of its voluminous documents that he wanted last Thursday as the Court required. I think a lot of the delay was due to Mr. Greenberg's failure to agree to a reasonable confidentiality stipulation, but he did just get documents last Thursday.

And I'm, you know, I understand he's entitled to do his deposition and presumably before the parties actually submit their trial declarations.  So, Your Honor, I'm, you know, honestly, I'm trying to avoid any appellate issue; him being able to claim he's been denied due process.  So I -- you know, the issue, and I, understand the technology issues with the Court and appearing in person like we all used to do pre-COVID.

I just wanted you to know there's an acute timing issue because those declarations for confirmation, you know, those are testimony in lieu of direct.  And as the debtor and the proponent of the plan, as you know, my declarations will be extensive.  I'll probably be spending a, you know, a couple of days on them.  And, you know, I acknowledge that Mr. Greenberg is entitled to take a deposition, for example, based upon the documents he's gotten.  It's very difficult to do all that between now and Friday.

So, you know, I'm loath to agree to a continuance because of what's already happened in this case.  But another two or three weeks isn't going to kill anything here.  I just didn't want this turning into perpetual continuances because of what I think is discovery gamesmanship, with all due respect.  And the debtor's ready to go.  We can comply with the current deadlines, but I acknowledge the hardship that exists.

I'm always amenable to a settlement conference, but I

don't want that used as an excuse to delay confirmation.  Quite candidly, Your Honor, the parties have tried to settle.  But even before my involvement in the bankruptcy, Mr. Greenberg and I have also had casual discussions, but no fruit has been borne because of those settlement discussions, because frankly, I think the parties are very far apart and, you know, ultimately see the world very different ways, and that's their entitlement to do so.

So Your Honor, I just wanted you to know we probably need to attend to the matter today as far as, you know, what are we doing going forward?  And again, I'm loathe to agree to a continuance, but I understand why we may need to.  Again, I just didn't want this turning into a two-month delay.  And just to understand from the debtor's perspective, we'll obviously live with whatever ruling you want, but I, you know, as far as when to proceed.  But at the same time, we have to understand the procedural posture of things and you know, where we are. And I'm a sporting person.  I want to have it out.  I want to have this confirmation hearing, but I don't want to provide an excuse or an issue for appeal from some due process issue, given the timing here.

So, Your Honor, from the debtor's perspective, it's a difficult, you know, issue.  We want to proceed.  We want to get this case done.  I think all of the arguments in response to confirmation are just meritless including the fraudulent

transfer allegations, and we'll deal with those in due course. And he has the discovery. He can proceed with whatever other deposition -- depositions he believes he needs. But you know, it also depends on, Your Honor, quite candidly, what you rule with respect to the taxicab subpoena. Are we going to be opening up five other taxicab companies to discovery on valuation issues?

I mean, at a certain point we've just got to cut this off. You know, this is discovery on a plan, not, you know, an indictment of the entire cab industry, not an audit of everything the debtor's ever done. It's just merely what's relevant to confirmation. We believe we responded more than adequately to a very voluminous document request, and it's time, in very short order, to move this forward to a confirmation hearing and have this issue out.

And so, Your Honor, I want to live within the Court's confines, but I also acknowledge that another two or three weeks, if we could find some date in June, or if there's other technological issues or other issues with the Taxicab Authority subpoena that we need to attend to, I understand. I just don't want to be doing this in August or September. That's all.

Thank you, Your Honor. I'm happy to answer any questions you have regarding my comments.

THE COURT: I appreciate that. Thank you. We'll talk about -- I'm going to give my ruling here in a second and

then we can talk again about whether or not a continuance is appropriate based on that ruling.

Let's see.  I guess we haven't heard from, let's see, Mr. McDonald, did you want to be heard?

MR. MCDONALD:  Edward McDonald, Department of Justice for the U.S. Trustee, Your Honor.  And I'm just sort of taking it all in, seeing what's going on.  I don't have anything to add, Your Honor, but thank you for asking me.

THE COURT:  Certainly.  All right, Mr. Csoka, I know you're here on the next issue, the ruling.  But is there anything that you want to add to the status?

MR. CSOKA:  No, Your Honor.  Thank you.

THE COURT:  All right, well, I'm going to get to what I had originally intended to be an oral ruling.  After spending quite a bit of time looking at the issues, I just have determined that I need more information from the parties. Again, this will now play into, at the end, we'll discuss the -- when the confirmation hearing will be had, but I'm just going to jump in and frankly, I'm going to go through and just tell you what my questions are.  The areas I have concern; the areas that I want more information.

I think this is an important issue.  We have the rights of third parties here who I -- appears have never received any notice that their information is at risk of disclosure.  I've not prejudged whether that is absolute, that

they -- that all of these documents are not only confidential, but do not require to be turned -- are not required to turn over.

So I'm going to -- I summarize this issue I think pretty simply. You know, we have a creditor party in interest. The Murray creditors who are seeking to establish an objection to confirmation by seeking unrelated, but potentially relevant information from non-parties, including buyers and sellers who may or may not have privileged or confidential information in those records that are being sought and who's not received notice.

The issues raised by the, and I'm going to refer to the Taxicab Authority as the Authority, has not been presented to me in the form of a privilege log, for example. So I'm not looking at particular now -- I'm not asked to look at in-camera, at documents. There's been a wholesale objection to discovery requests. And that, you know, suggests the Authority believes it has no documents that are discoverable or required to be turned over. And that's, you know, the basis of their argument goes through their reasoning for feeling that way.

I've reviewed sections of the NRS and the NAC that the Authority relies on. I've expanded my search beyond that, but I have questions. Let me start with the first one.

NAC 706.1325 states, with certain exceptions, that all documents filed with the Authority become public record.

So is the Authority arguing that none of the requested documents are public record?  And how about the sales?

MR. CSOKA:  Well --

THE COURT:  Go ahead.  Is that Mr. Csoka?

MR. CSOKA:  Yes, Your Honor.  No, we're not arguing that.  Certainly insofar as applications are made and they go to an agenda before the Taxicab Authority board, those materials are normally available through the website of the Taxicab Authority, the agendas and the applicant and the materials.  What we're talking about here is the audited information of the taxicab companies, the yearly audits, and those files are not subject to public records requests.  They are confidential pursuant to regulation.

THE COURT:  And Mr. Csoka, that's my fault for not actually stating my intention here.  I'm going to ask that there's additional briefing.  So I -- and I, and again, it's my fault.  I wasn't anticipating or expecting you to answer off the top of your head any of these questions today, although it sounds like you're able to on this one.

I am going to ask though that there'd be additional briefing with respect to these issues.  And I can go over them again, but essentially you know, I've just started on my questions, but the first one being related to the public record.

And Mr. Csoka, in particular, I want to talk about

just the sales contracts themselves without any of the underlying documents that would have been associated with coming up with this contract.  Are the sales contracts considered confidential and does the Authority believe them to be confidential or are those available to the public?

MR. CSOKA:  So we're talking about the purchase and sale agreements relative to various taxicab companies that they may have filed with the Authority, correct?

THE COURT:  Correct.  The ones that are listed in their document requests.

MR. CSOKA:  Okay.

THE COURT:  So I'm wanting to, you know, specifically, you know, in general, is it all documents?  But in particular, what about the sales contracts?

And then I want to -- I'm going to get into NAC 706.3949, which appears to require that a series of steps for entities to undertake when such entities deem those documents that they provided to the Authority to which would typically be public but are now deemed confidential.  So did those steps occur?

MR. CSOKA:  Yeah.

THE COURT:  Go ahead.

MR. CSOKA:  Yeah, I apologize, Your Honor.  I would just interject that the section you're referencing, Your Honor, actually is controlling relative to the Nevada Tax --

Transportation Authority.  So, NAC 706.3949 applies to the Nevada Transportation Authority.  It does not apply to the Nevada Taxicab Authority.

The -- there -- it's a bit confusing because the statutes and regulations of the Transportation Authority and the Taxicab Authority are codified both in an NAC 706 and NRS 706, but the higher numbers that are lower than the 800 series, typically apply only to the Transportation Authority.  The binding regulations relative to the Taxicab Authority are in the NRS 800 series, both in the statutes and regulations.  I don't know if that makes sense.

THE COURT:  So there isn't -- so any of the Taxicab Authority documents that would be requested here would not have this option of --

MR. CSOKA:  No.

THE COURT:  -- you know, the process of requesting that documents be held?

MR. CSOKA:  No.  Yeah, those --

THE COURT:  Okay.

MR. CSOKA:  Yes, Your Honor.  Those are applicable to the Transportation Authority.  They're not regulations that have been adopted by the Taxicab Authority.  They're the Transportation Authority regulations.

THE COURT:  All right.  Well, I --

MR. CSOKA:  And I know it's confusing because they've

been codified under one chapter and, you know, so it is confusing. But it -- the higher number was that are 800 -- below the 800 series, typically, those apply to the Transportation Authority.

THE COURT: Well, again, I'll ask that you brief that for me and explain that in the brief, and I'll be able to --

MR. CSOKA: Yes, Your Honor.

THE COURT: -- and process it in that sense. All right. All right. Let's see.

MR. CSOKA: And --

THE COURT: And I guess I would just ask if there's any type of equivalent provision that would govern the Taxicab Authority and its work. I would just ask that you address that if there is a similar provision.

And what the Authority did cite to, and I've been referring to apparently cites that were not cited by the Taxicab Authority, but these, as I go forward here, have been.

The Authority cites NAC 706.479 as a basis for its confidentiality objection, at least one of these sections. As I read that section, I believe it applies only to the annual financial report. And even those, it appears, could be released pursuant to an order issued by a court of competent jurisdiction. So I want --

MR. CSOKA: Right.

THE COURT: -- you know, further discussion about

that.  I'm not -- I don't believe that these documents were specifically requested.  You can tell me if I'm wrong, but when I read the request, it may be that you believe that those -- they'll fall within the broad scope of those requests.  And if so, I would like you to address that issue about the, you know, that being an applicable section here that would give confidentiality to those documents.  And then --

MR. CSOKA:  Your Honor -- sorry, Your Honor.

THE COURT:  Let me go through it, and you can -- it would be helpful to have all of this, you know, in a response that just better explains some of these sections and their applicability.

NAC 706.558 is also cited by the Authority as a basis for the confidentiality objection.  That, to me, appears only to raise internal accounting requirements on the company's subject to the Authority's jurisdiction.  Again, if the Authority believes that those are part of the broad scope of that request, then certainly I want to hear more about this and how it applies here.

And there is a reference by the Authority to NRS 49.325 in -- as a basis for its confidentiality objection.  And that section deals with trade secret -- secrets, which arguably the Authority would not have standing to raise.  I would think that any trade secret issues have -- would be the party -- the other party to these contracts, would be their issue, which,

you know, is a concern for this Court as to whether or not they have to be noticed.  But NAC 706.3949 and Mr. Csoka, is that one of the sections that doesn't apply to the Taxicab Authority?  That's a Transportation Authority section?

MR. CSOKA:  I believe, Your Honor, and as I'm looking at these regulations, the ones that have been adopted by the Taxicab Authority, like as I'm looking at it online, it says -- it will say underneath the regulation, that it is added to NAC by Taxicab Authority.  So those are being adopted and I think it's the 3, 4, and the one you're referencing right now.  Let me just take a look at it real fast.  334 --

THE COURT:  39.  So it's 706.399.

MR. CSOKA:  Okay.  I think that's only Transportation Authority, 3949.  So the other ones you discussed, Your Honor, they were all adopted by the Taxicab Authority.  But the one that you're -- this current one, 3949, I believe that's only a Transportation Authority regulation.  And I'm looking it up right now as we speak.

Yeah, that's the, that's only by the -- so it, you know, I'm looking at the online version of the regulations and it's only adopted by the Transportation Services Authority, not by the Taxicab Authority, 3949.

THE COURT:  All right.  And I -- can I --

MR. CSOKA:  But the other, the 706 that we talked about earlier, they are -- they have been adopted by the

Taxicab Authority.

THE COURT:  And I appreciate the explanation.  I mean, this is, in part, why I am doing this as I am, and asking for further information because I was concerned that I wasn't fully understanding exactly what the basis for the confidentiality objection was.  And so this will be very helpful, Mr. Csoka, if you can put that in a -- an additional brief to explain these issues.

Then the last one that was raised by the authority regarding the confidentiality objection, the additional statute was the NRS.  That was NRS Section 239B.030, and NRS 239B.040.  And those deal with disclosure of personally identifiable information and that information appears by statute to be subject to disclosure based on a valid court order.  And even if that's required, I would think that those are items that could be located and redacted if the Court were to order documents be provided.  But I would like a little further analysis on that as I believe the authority essentially just cited these sections, but there wasn't a lot of application to this particular case.

And I -- I'm cognizant of the -- what I think is a legitimate argument that the Authority makes with respect to the burden, the potentially undue burden, that is going to fall on their shoulders if the Court is to grant this request.  And I'm aware of the requirements in Federal Rule of Bankruptcy

Procedure 9016, which incorporates Federal Rule of Civil Procedure 45(d)(1) and (d)(2) provide that the Court has to consider those burdens.

And Mr. Csoka, there was a lot of discussion regarding that there was a burden, but there wasn't a lot of specifics. I would like to know the extent of the burden here because I'm not familiar with how many documents would be responsive to this request. So I'd like to hear a little bit more specifics about the estimation of time and/or expense that would be expended here or have to be if the Court were to grant the motion to compel.

MR. CSOKA: Understood, Your Honor.

THE COURT: All right. Thank you. An important aspect in all of this analysis is that we're not here for something such as a 363-sale motion where information regarding the proposed purchaser is likely relevant. This is a 2004 subpoena, representative seeking information necessary to analyze the liquidation analysis under 11 U.S.C. 1129(a)(7). Because of its representative purpose, it really shouldn't be treated as a subpoena.

It should be treated, I should say, as a subpoena in a contested matter. It shouldn't have the fishing expedition nature that seems to be going on here. The rules of discovery should be more strictly applied here, more like a subpoena in a contested matter in light of the non-parties' interests

involved.

Mr. Greenberg, I want the Murray creditors to do a deeper dive into the relevancy of these requests.  The creditors made a comparison.  Your clients made a comparison between the request and review of comparable real estate transactions in support of its claims that the request may lead to discovery of admissible and relevant evidence related to confirmation, including analysis under 1129(a)(7)'s liquidation analysis.  I want more of an explanation and support for this position because as I sit here today, I'm not convinced that any of the requests, other than possibly copies of the requested contracts, without any of the related documents, is even relevant.

In its current posture, the plan places a $0 value on the certificates in the balance in its liquidation analysis. All that would be required to discredit that assumption is to adequately demonstrate some value.  I do not see any relevance in the requested backup documents.  Instead, I'm concerned that there is an improper, ulterior basis for those requests, as has been suggested.

I want, Mr. Greenberg, a much more in-depth analysis of the relevancy here because, again, I'm concerned, and as I sit here, I believe that, at most, the contracts are what may be appropriate to allow for discovery.  But I'm not making a decision.  The whole purpose of today was to let you know that

I have lots of questions, and I want some further information and assistance from the parties in getting to the bottom line.

I mean, the bottom line being I want to know what is confidential, what isn't, what the confidentiality is based on, and whether or not that prohibits their disclosure.  And I also want to know from the Murray credit -- creditors exactly what it is they are hoping to get out of this because right now this is certainly a fishing expedition and potentially even outside of the parameters of what a 2004 exam would allow.  And all of those things concern me, and I want to take time to be able to consider these issues.  It's an important one not only to the case, but it's important as to the other parties.

Mr. Csoka, one thing that I don't think I mentioned earlier was that I want some sort of analysis on whether there's some obligation to have on either side, to have served the third parties.  I know the Authority suggests that they should have been served with a subpoena.  I don't think there's any obligation under the discovery rules that a party be forced to do discovery on, say, the other side of a transaction.  I don't think it's per se a violation of any of those rules to just ask one side of a -- to do it.

But here, there is a concern about whether or not there's any notice to these third parties whose information would be disclosed, and the Authority believes to be confidential.  So I would like a discussion about that and

whether or not there's been proper notice here.

And is that clear?  Does anybody have any questions?

MR. CSOKA:  I do have some comments, Your Honor.

THE COURT:  Okay.  Go ahead.

MR. CSOKA:  One, I would note that.  You know, in looking at the actual subpoena versus what the motion to compel contained, one of the things that we found confusing is that in the motion to compel, the only pushback we had from the Murray creditors was, "We want the debtor's records."  That was -- that's what they spelled out in their motion.  And so, you know, we were confused as to whether we're complying with a very vague and ambiguous subpoena, or whether we're complying in what they put in their motion to compel.

So I think if you're -- if we're going to have further briefing on this, I think it would be helpful, Your Honor if more specifically and more clearly the debtor would identify to us -- I understand the contracts aspect of this which you identified in your analysis, but I think it would be very helpful if the Murray creditors could spell out more specifically, here's the -- here's specifically the documents we have to have for this bankruptcy proceeding, and here's why. And then we would respond to that in a brief.

And with the issues you've identified to us, to further brief, Your Honor.

THE COURT:  Mr. Greenberg, do you want to respond?

MR. GREENBERG:  Yes, Your Honor.  It was conceded when we were before the Court before and in our reply that the subpoena does not apply to anything from the debtor.  Okay.  That was a mistake on behalf of my office.  I apologize again for that confusion.  The subpoena only seeks materials relating to other parties or transactions between non-parties to this litigation.

I do have a thought, Your Honor, that perhaps it would be good for me to confer with counsel for the TA here and discuss exactly what I -- in my view, would be appropriate here, Your Honor, for production.  Because I understand Your Honor's concerns regarding extensive -- you used the term "backup documents" and I, and again, our interest is really in two things, maybe just one thing, which is, you know, what was the price that was agreed upon in these transactions?  And if that's in a contract and it's clear from the contract itself what that valuation -- what portion of that price relates to evaluation for the medallions, you know, for the operating license, then that's what we need.  If there's some separate schedule that goes with the contract where these assets were separately evaluated or, you know, put together for the entire transaction price, you know, such as the medallions, the other equipment, whatever was sold, then we would want those materials.

We are not interested in materials relating to the

financial, internal operations of any purchaser or seller of the medallions.  It's not germane to what we're trying to understand here, Your Honor.

THE COURT:  I mean, so essentially it boils down to documents that demonstrate how the medallions, if they were specifically valued, if there was some separate valuation?

MR. GREENBERG:  That is correct, Your Honor.  It is conceivable that a transaction was negotiated, and it covers medallions, it covers other property, and everything is just recited as one general lump sum, and that's all we're going to find.  And if that's all there is, then that's all there is, Your Honor.

It would be my anticipation that there would be some further information in these transactions that would lead to some more itemized understanding as to the particular components, the particular assets that were being purchased because these -- there are different assets here besides the medallions.

THE COURT:  Would the parties even need to be known?  Is that important to this?  I mean, if you're simply looking for what you know, number of medallions and their value, how they were valued, why would you even need to know about these third parties and have any of that information?  Why wouldn't just the particular valuation be pertinent?

MR. GREENBERG:  Your Honor, if I -- we would be fine

with accepting that.  We have no issue with having to identify the particular purchasers in these transactions.  I mean, the -- presumably the debtor would have an opportunity or right to know that if they wanted to explore this further or dig into whether this information was in fact accurate or if there's other issues presented regarding its relevancy or applicability to valuing the medallions.

But from our perspective, Your Honor, that would be fine.  We don't need to know who the purchaser or the seller was.  We just need to be able to bring to the Court, you know, some evidence that the Court would be willing to consider as to what happened in these transactions in respect to how these assets were valued.

THE COURT:  I always would prefer the parties to confer.  Again, I'm cognizant of the timeframe, and I appreciate that that was discussed earlier.  And I am willing, and I have found dates that I'm available.  This summer, I'm taking some time off.  So there are dates that are somewhat hard to find in the middle of the summer.  But I have two dates, the mid-June that we could move the confirmation hearing to, which would then provide some breathing room on these deadlines coming up to prepare for confirmation.

And those dates would be the 14th and 16th.  Is that problematic for anybody?  June 14th and 16th?  That's a Wednesday?

MR. GREENBERG:  Your Honor, this is Leon Greenberg, Your Honor.  I will be away from the 19th through the 30th. But if, you know, our time is limited to the 14th and 16th, I could make myself available.  But that -- that's my inability in June is those last two weeks, Your Honor.

THE COURT:  Right.  Mr. Zirzow?

MR. ZIRZOW:  Your Honor, from the debtor's perspective, we are fine with June 14th and 16th.  As you probably know from my prior comments, we want to get this hearing moving and, you know, another month shouldn't, you know, shouldn't be a hardship on anybody.  I just -- I hope that as part of that we're going to reset the table, if you will, on all the other deadlines in your prior order.

I just need to know, you know, when we're going to be doing everything.  Your order was very detailed, you know, required declarations submitted pursuant to a very specific schedule and, you know, exhibit lists and witness lists.  So I just want to make sure we all know what the new deadlines are.

We also do have a discovery plan keyed off of the May 17th and 18th dates.  So we would need to redo that.  Again, one month is welcome.  I just want to get this hearing done, and I don't want complaints about, you know, lack of due process.

I'm very concerned about this kind of collateral issue, Your Honor, between the Taxicab Authority and the Murray

claimants and it delaying things.  You know, what's relevant is the debtor's assets.  And I would be willing to bet all these APAs just have one purchase price.  And so we're doing all of this, and we're taking another month or two over stuff that's really irrelevant.

Plus, by the way, it's a liquidation analysis, not a true sale analysis.  So you need to look at liquidation values for things, which is not how things would be valued in a third-party true sale like this discovery is relevant to.  So I just think this is a -- with all due respect, a collateral matter that is the tail wagging the dog.  It -- it's irrelevant really to what the issues at confirmation are.

In any event, the date works, Your Honor, for us.

THE COURT:  And I acknowledge that this, you know, the request, I am somewhat pleased to hear of the narrowing down of the what is really needed.  And perhaps this is something -- if it's as easy as the Taxicab Authority responding to requests that says they have nothing in response, I mean, that certainly would, you know, speed things along too, if that's -- that is true.

So I am going to move the confirmation hearing to the -- to June -- I'm sorry, 14th and 16th.  That's a Wednesday and a Friday starting at 9:30.  I am going to set it as an in-person hearing for the two days, both as in-person hearings.  And I would just ask that I guess, Mr. Zirzow, I believe you

were -- prepared the scheduling order the last time, the procedures order.  If you would just, you know, move the dates accordingly, you know, back out based on the new date and so that there'll be new dates for all of the -- all the things that need to be filed:  the disclosure statements, witness lists, and so on.  And do the same as well with the discovery plan.  I want those to be moved accordingly, essentially moved one month up or let's see.  Besides the discovery plan and the procedures order --

MR. ZIRZOW:  Your Honor?

THE COURT:  -- was there any other order?  Yes, go ahead.

MR. ZIRZOW:  I'm sorry, Your Honor.  Just to jog your memory, we actually had -- the parties did a discovery plan, although Mr. Greenberg refused to sign it.  And that actually, Your Honor did the order scheduling the evidentiary hearing with all of those dates, vis-a-vis the --

THE COURT:  Okay.

MR. ZIRZOW:  -- evidentiary hearing on confirmation. I'm happy to propose basically rolling the dates forward keyed off of those new June -- the new June dates and send it to Mr. Greenberg.  Again, I'm not trying to jam anybody up here. I just need to know deadlines for planning purposes, that's all.  I'm happy to do that instead of Your Honor and combining it all together to reset the table if you will, regarding the

new dates.

THE COURT: That -- and that's fine, and it can be done in one document if that's more simple. But yes, I would appreciate all of -- any dates that have been set that now need to be altered because of this, I would just ask that you do an amended order that references that and the new dates.

MR. ZIRZOW: Okay.

MR. GREENBERG: And Your Honor --

MR. ZIRZOW: If I may?

THE COURT: Go ahead, Mr. Zirzow.

MR. ZIRZOW: Just really -- I'm sorry, Your Honor, just really briefly. So as I understand your comments, you do want me to do an amended procedures motion to reset again the confirmation hearing as well? Is that right?

THE COURT: You don't have to do a new motion. You can just upload a --

MR. ZIRZOW: Okay.

THE COURT: Do a new amended order that has, and it can combine all of those, just all of the dates related to the confirmation hearing and the, you know, the related discovery and so on that's part of it. And just -- you can just do that in an amended order, and we'll just relate it back.

MR. ZIRZOW: Okay, Your Honor.

THE COURT: Go ahead and just, you know, it'll be related back to those other documents.

MR. ZIRZOW: Understood. Thank you.

THE COURT: All right. Thank you. Mr. Greenberg, you need to be heard? Go ahead.

MR. GREENBERG: The -- yes, Your Honor. Your Honor has made clear how you wish to proceed, and I want to work as best as I can in compliance with Your Honor's instructions.

In respect to the materials that were produced by the debtor last week, which I got on Friday, I have very serious concerns about deficiencies with those. I do need to take them up with the debtor's counsel. If we cannot reach an understanding to cure those deficiencies, is there some period of should I proceed on an order shortening time to bring this to Your Honor? Is there some schedule timeframe that the Court would want me to follow and respect, to try to resolve that and bring it to the Court's attention if I can't get it resolved given our circumstances?

THE COURT: I will grant shortened time, but I would ask that you go through the process for requesting it. I don't want to set a time right now, mostly because I don't have a lot open. And just ask that you, sooner rather than later, get these issues to me.

MR. GREENBERG: I will do so, Your Honor.

THE COURT: All right. That --

MR. GREENBERG: Yeah, I intend to confer with Mr. Zirzow today. I'm going to try to get him something today

about this, and hopefully we can get something moving on this very quickly.

Your Honor, my other question was regarding this issue that Mr. Zirzow had said would be more properly addressed by a motion for summary judgment regarding the tax treatment issue. Would Your Honor be willing to entertain that on an order shortening time and, I mean, I can have that motion filed tomorrow, and give us a hearing date on that? Because I do believe it would be completely dispositive of the need for an evidentiary hearing on the current plan and would require the parties to, you know, start at square one here on an amended plan.

THE COURT: I'm just looking. I mean, I think you could have that heard if you filed it any time soon. It could be heard in the ordinary course and still be several weeks before the -- at least a couple weeks before the confirmation hearing. I'm somewhat -- let me see about my hearings. Let me see before I say that. One second.

We could set, in the ordinary course, a hearing on May 25th. I mean, so at this point, if you -- that wouldn't be my normal Tuesday calendar. It would be my Thursday calendar. But I mean, I'm just reluctant to do right now an order shortening time. I want to give everybody opportunity. I really -- and I think there would be time for the Court to -- for everybody to still move forward if that was, you know, with

that issue and then still go forward, confirmation on time. So, I'm not --

MR. GREENBERG:  Yes, Your Honor.

THE COURT:  I'm not right now going to grant an order shortening time.  If there is some -- I'm not precluding it. If there is actually some real emergency that arises that you need to tell the Court about and to set that, that's fine.  But right now I'm not setting it.

MR. GREENBERG:  I understand, Your Honor.  My only -- the only remaining issue I'd like to bring to the Court's attention was the motion for remand, which Your Honor heard argument back in March.  This was continued until May 17th.  I was hopeful that the Court would get a ruling on that soon, because I do believe it is a very important issue in respect to the plan because the plan makes certain assumptions about these appeal bond funds which are, you know, tied to the disposition of that motion.  So I want to just bring that to the Court's attention.

THE COURT:  All right.  Well I'm not going to do anything with that today, but I will take a look at that issue. And if we need to --

MR. GREENBERG:  Thank you.

MR. MCDONALD:  Your Honor?

THE COURT:  Yes, go ahead.

MR. MCDONALD:  It's Ed -- Edward McDonald.  I just

wanted to say that I'm going to be gone.  I'm going to be out of the country on June 14th and 16th.  Although the U.S. Trustee hasn't objected to the plan, I just wanted to let you know.  I guess if we need somebody there, because we do weigh in at some point, I'll get a replacement, but it won't be me. So I just wanted to let the Court know that.  Thank you.

THE COURT:  All right.  Thank you, Mr. McDonald.  All right.  Well, I will -- I -- what I'm going to do is I'm going to ask Mr. Greenberg and Mr. Csoka to, within a week, meet and confer on this issue.

And I want the issue to be narrowed down, Mr. Greenberg, to simply the valuation issue.  I want the parties to work together on that issue.  And depending on how the discussions work out, if there are still issues, I'd like, within two weeks, to have the additional briefs that I requested earlier related to the questions I mentioned earlier in this hearing.  If the parties --

MR. GREENBERG:  That is --

THE COURT:  -- come to an agreement -- if the parties come to an agreement and there's no longer objections being lodged, then you can just let my courtroom deputy know.

MR. GREENBERG:  Yes, Your Honor.  So is Your Honor -- does Your Honor -- going to set this for further status, or are we supposed to submit brief by May 9th from both parties if we can't fully resolve this?

THE COURT:  Yes, that is correct.  May 9th will be the deadline for that.  And I will -- I'm not setting another hearing.  But if you do notify -- I guess if there is some sort of settlement, I just ask that there may be some sort of status report that updates the Court on that.  And then you, just so that I'm aware, I'm not going to be receiving any briefs.  But no, no additional status here on it because I will make, if there are briefs filed, I will make my decision based on those. I'm not going to have further argument.

MR. GREENBERG:  And again, the parties should file simultaneous briefs as to their positions.

THE COURT:  Yes, that is --

MR. GREENBERG:  There's not going to be a response of any sort.  I understand, Your Honor.

THE COURT:  That's correct.  Yes.  Thank you for clarifying that.

All right, does anybody else have any questions?

MR. ZIRZOW:  Your Honor, I'm sorry, you've been really patient with us.  Just one more thing since we're resetting the table on things.  Did you want to set a further pretrial for the June dates with respect to confirmation?  As you can tell, we have -- parties seem to stumble into a lot of issues with each other.  That would be my one other thought is setting a pretrial on this to vet out any remaining issues.  Or perhaps, just given the pace of how things move and we're in

front of you every few weeks in this case, maybe we don't need to now.  I just thought I'd throw that out.

THE COURT:  Mr. Zirzow, not to be or make anything more difficult, but I think it would be helpful if you just reached out to my courtroom deputy and got that hearing date.

MR. ZIRZOW:  Will do.  Thank you, Your Honor.

THE COURT:  Thank you.  All right.  If there isn't anything else, we can go ahead and conclude the A Cab Series, LLC cases.

MR. GREENBERG:  Thank you, Your Honor.

MR. ZIRZOW:  Thanks again, Your Honor.

MR. SMITH:  Thank you, Your Honor.

MR. MCDONALD:  Thank you, Your Honor.

MR. DEL VIRGINIA:  Thank you, Your Honor.

(Proceedings concluded at 10:56 a.m.)

* * * * *

C E R T I F I C A T I O N


        I, Teresa Saint-Amour, do hereby certify that the foregoing is a correct transcript from the electronic sound recording provided for transcription and prepared to the best of my professional skills and ability.

_____

TERESA SAINT-AMOUR, AAERT NO. 2020   Dated:  May 14, 2023

ACCESS TRANSCRIPTS, LLC