LEON GREENBERG, ESQ., SBN 8094
RUTHANN DEVEREAUX-GONZALEZ, ESQ., SBN 15904
Leon Greenberg Professional Corporation
1811 South Rainbow Blvd- Suite 210
Las Vegas, Nevada 89146
(702) 383-6085
(702) 385-1827(fax)
leongreenberg@overtimelaw.com
ranni@overtimelaw.com

LAW OFFICES OF GABRIEL DEL VIRGINIA
30 Wall Street, 12th Floor
New York, New York 10005
Telephone: 212-371-5478
Facsimile: 212-371-0460
*gabriel.delvirginia@verizon.net*
Admitted *Pro Hac Vice*

Attorneys for Creditor
Leon Greenberg Professional Corporation
Attorneys for *Murray* Case Creditors

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

--------------------------------------------------------------X

**In re:**

**A CAB, SERIES L.L.C.**
    **fka A CAB, LLC,**

              **Debtor.**

--------------------------------------------------------------X

**Case No. BK-22-14361-nmc**

**Chapter 11**

Hearing Date: October 3, 2023
Hearing Time: 9:30 am

**RESPONSE TO DEBTOR'S OBJECTION TO
PROOF OF CLAIM NO. 16 FILED BY
LEON GREENBERG PROFESSIONAL CORPORATION**

**TABLE OF CONTENTS**

*Page*

SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IN RESPONSE TO THE DEBTOR'S FACTUAL ASSERTIONS
AND STATEMENT OF PRIOR HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.     The Debtor's Statement of Facts is
       almost entirely irrelevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.    There has been no "Stonewalling of Discovery" on the
       unliquidated claims and the Debtor has failed to seek
       the discovery it asserts it was denied about those claims.. . . . . . . . . . . . . . . 6

       A.     The Debtor requested no timely discovery and
              no discovery except for copies of non-existent
              "Legal invoices" that had never been prepared;
              it never sought time records or other documents
              upon which such invoices could be based. . . . . . . . . . . . . . . . . . 6

              1.     The Debtor served no timely discovery requests.. . . . . . . . . . . 6

              2.     The Debtor was furnished a full and proper
                     response to its untimely discovery request;
                     it never requested the discovery, such as
                     time records, it now insists was denied. . . . . . . . . . . . . . . . 7

IN RESPONSE TO THE DEBTOR'S LEGAL ARGUMENT . . . . . . . . . . . . . . . . 10

I.     The *Murray* Counsel's unliquidated claim is
       sufficiently set forth in the Proof of Claim and
       appropriate proceedings must be held to establish
       its amount as required by governing state law.. . . . . . . . . . . . . . . . . . . . 10

       A.     The unliquidated claims are properly set forth
              in the Proof of Claim; they cannot be denied as
              unsupported when the Debtor has never requested
              available supporting documentation.. . . . . . . . . . . . . . . . . . . . . 10

              1.     The Proof of Claim is facially sufficient. . . . . . . . . . . . . . . . 10

              2.     No basis exists to deny the
                     unliquidated claim for a failure to
                     provide documentation; the Debtor never
                     requested the available documentation. . . . . . . . . . . . . . . . . 11

       B.     The objection erroneously asserts the
              unliquidated claims are barred in whole
              or in part as a matter of law. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Page

1.    Whether the *Murray* Counsel can be awarded attorney's fees for their post-petition work is a state law issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

2.    The *Murray* state court has already ruled the *Murray* Counsel are entitled under Nevada law to attorney's fees "in any action" to enforce their clients' minimum wage claims and that would include this case; other precedents also support that conclusion. . . . . . . . . . . . . . . . . . . . . . . . . 15

3.    The Nevada Supreme Court in the *Murray* judgment appeal held time sheet submissions are not needed to award attorney's fees and Nevada's trial courts have broad discretion in determining how to calculate attorney fee awards; the *Murray* Counsel must be given a fair opportunity to present their fee claim. . . . . . . . . . . . . . . 19

4.    The *Murray* Counsel are entitled to fees for the time spent defending and collecting their fees ("fees on fees"); the Debtor seeks to have the Court misconstrue *Baker Botts*. . . . . . . . . . . . . . . . . . . 21

5.    The co-counsel of Leon Greenberg Professional Corporation in the *Murray* case have properly filed their Proof of Claim through that office as their agent. . . . . . . . . . . . . . . . . . 23

II.   The *Murray* Counsel's unliquidated post-petition claim for fees on the pending state court appeal is not necessarily subject to treatment as a pre-petition claim reduced by the Debtor's Plan; the determination of that issue is best deferred at this time . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

A.    Because the *Murray* Counsel's fee claims on the currently pending state court appeal arise solely from post-petition conduct by the Debtor they may not be subject to any Plan . . . . . . . . . . . . . . . . . . . . . . . . . . 24

III.  The *Murray* Counsel provide information for the Court to use in liquidating the Claim if it elects to so proceed at this time. . . . . . . . . . . . . 26

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Leon Greenberg Professional Corporation files this response to the Debtor's Objection to its Proof of Claim, Claim No. 16.

**SUMMARY**

**The Objection is premature; the Claim's liquidation involves state law issues and should be resolved in the state case awaiting remand; the Debtor never sought the Claim discovery it says it was <u>denied; no basis exists to deny or limit the Claim as a matter of law.</u>**

The Objection is to an unliquidated amount of attorney's fees and costs claimed by Leon Greenberg Professional Corporation, and their co-counsel, (the "*Murray* Counsel") resulting from their prosecution of class action claims for unpaid minimum wages in *Murray v. A Cab*, Eighth Judicial District Court of Nevada, A-12-669926-C, (the "Murray Case"), removed to this Court as Adversary Case No. 22-01163, on December 14, 2022.   On January 20, 2023, a motion to remand the *Murray* Case was filed and heard on March 23, 2023, with the Court finding it was "…skeptical of the removal['s] propriety" (Ex "A" p. 41, l. 11-12) but continuing its decision on the remand motion.

The *Murray* Case state court prior to the petition's filing reduced to judgment a portion of the *Murray* Counsel's attorney fee claims.  The *Murray* Counsel was requesting the state court determine the remainder of those claims when the Petition was filed, and the *Murray* Case was removed.   The *Murray*

1

Counsel's right to those unliquidated fees and their amount involve questions of Nevada law. The *Murray* Counsel are awaiting remand of the *Murray* Case to continue with their stayed request to have the amount of those claimed fees determined by the state court (but only paid as approved by this Court).

The Debtor's objection is premature; or at least raises issues not sensibly resolved by this Court.[1] The Court should remand the *Murray* Case for the state court to: (1) determine any limitations on the *Murray* Counsel's claims under Nevada law (the Debtor alleges Nevada law limits those claims); and (2) determine the amount of such claim, as allowed for by Nevada law (liquidate the claim). While this Court could make those determinations, there is no reason for it to do so or retain the removed *Murray* Case and be burdened with determining other issues in *Murray* that are irrelevant to this case.[2]

---

[1] It is also presented in a jurisdictionally or procedurally inappropriate (or at least irregular) manner. FRBP 3007(b) specifies "relief of a kind specified in Rule 7001" shall not be made in an objection to an allowance of a claim but a party "may include the objection in an adversary proceeding." FRBP 7001(10) specifies an adversary proceeding is "a proceeding to determine a claim or cause of action removed" from state court. Debtor is seeking relief from a liability, an attorney fee claim, created by the removed (and now adversary) *Murray* Case and should have filed its objection in that adversary case.

[2] For example, the *Murray* Counsel have a right to seek reimbursement from their client's recoveries in *Murray* for expenses advanced by such counsel but not awarded to it separately. There is over $300,000 of appeal bond funds that are not property of the Debtor's Estate and that need to be distributed between the *Murray*

2

The Debtor has not been denied discovery on the Claim.   It never sought attorney time records, invoices documenting the costs claimed, answers to interrogatories, a deposition, or any similar disclosures before the close of discovery.   It only sought "itemized legal invoices or fee statements" for the unliquidated claim and was referred to the only such existing materials (a pending state court motion itemizing a $46,400 portion of the Claim).  The *Murray* Counsel had no paying clients to present an invoice to for payment, were never directed by the *Murray* Court to prepare any, and had none to furnish to the Debtor.   The Debtor could have sought germane information (time records) on the Claim but failed to do so.

As discussed, *infra*, the Debtor's assertions the Claim is limited or should be denied as a matter of law (most of those arguments involving issues of state law) are without merit.   If the Court elects to resolve those issues, and liquidate the Claim without remanding the *Murray* Case, fairness dictates that it should grant the *Murray* Counsel time to fully present evidence on the value of that claim (to the extent the Court finds the claim is not denied for other reasons).  The *Murray* Counsel been given no notice of a need to present such evidence (prepare their

---

Counsel and the *Murray* Case plaintiffs.  Neither of those issues are of concern to the Debtor or involve any issues germane to this case.

3

attorney fee claims) and that they could not await a decision on the remand of the *Murray* case.   It provides such evidence (Ex. "G" includes redacted time records supporting a minority portion of its claim) as it was able to assemble on short notice.   It does so out of respect for the Court, though it submits that fairness warrants granting the *Murray* Counsel more time to assemble and present evidence on the amount of that claim (make a fully prepared attorney fee request).   A full liquidation of the *Murray* Counsel's post-petition claims is also not possible at this time, as this case is not concluded (there is no confirmed Plan).   Nonetheless, an attempt is made to provide the Court with information germane to the amount of such claim for liquidation purposes.   Ex. "G" ¶ 9, the *Murray* Counsel's expenditure of 538 hours of attorney time in this case has resulted in an amended Plan significantly benefitting their clients.

**IN RESPONSE TO THE DEBTOR'S**
**FACTUAL ASSERTIONS AND STATEMENT OF PRIOR HISTORY**

I.    **The Debtor's Statement of Facts is almost entirely irrelevant.**

Debtor submits a lengthy irrelevant discussion of prior and related state court proceedings and the supposed merits of its proposed Plan. (¶¶ 3-39, p. 2 -11; ¶¶ 49-54, p. 15-16).   To the extent it purports to address the relevant facts or history bearing on the unliquidated claim at issue it misstates facts or ignores that history.   In response to the same, the Court is urged to take notice that:

4

- The *Murray* Counsel's pending motion to the state court to liquidate a portion of their fee claims, and their preparation of motions for that court to liquidate all of those clams, were stayed by the Debtor's Petition and its removal of the *Murray* Case to this Court.   Ex. "B" ¶ 2,  Dec. of Leon Greenberg.  The *Murray* Counsel have been awaiting remand of the *Murray* Case since March 23, 2023, so they can proceed with the liquidation of those claims (upon being granted permission by this Court to do so).  *Id.* ¶ 3.  If this Court declines to Order that remand, the *Murray* Counsel can promptly proceed with that liquidation before this Court and have done their best to provide the Court with currently available information germane to its liquidation.  *Id.*

- The *Murray* Counsel do not, and their Proof of Claim did not, assert any administrative claim, something the Debtor could have confirmed by an inquiry.

- The *Murray* Counsel's right to a post-Petition award of attorney's fees as a matter of state law, subject to reduction as a pre-Petition

5

claim under the Debtor's Plan, was determined by a ruling of the state court before the Petition's filing.   Ex. "C" discussed more fully *infra*.   That ruling is currently on appeal to the Nevada Supreme Court and not subject to examination by this Court.

- Murray Counsel's post-Petition claim for attorney's fees in connection with the state court appeal the Debtor abusively initiated post-Petition is not subject to discharge as a pre-Petition claim.  This is discussed *infra*.

**II.      There has been no "Stonewalling of Discovery" on the unliquidated claims and the Debtor has failed to seek <u>the discovery it asserts it was denied about those claims.</u>**

The Debtor at Sections "F" and "G" of its Objections (¶¶ 40 – 48, p. 11-15, "The Greenberg Claim" and "Greenberg P.C.'s Stonewalling of Discovery on the Greenberg Claim") untruthfully asserts the *Murray* Counsel have failed to provide discovery on the Claim that the Debtor never requested.

**A.      The Debtor requested no timely discovery and no discovery except for copies of non-existent "legal invoices" that had never been prepared; it never sought time records or other <u>documents upon which such invoices could be based.</u>**

Debtor *never* timely sought any discovery on the Claim, much less the discovery it insists was requested and withheld.

6

**1.      The Debtor served no timely discovery requests.**

The Debtor sought a brief discovery period, an issue subject to disputes and motion practice, and discovery was allowed until July 18, 2023. Doc. 110, 200, 235. It made no prompt, or timely, request for discovery, mailing its only such request on June 16, 2023, a Rule 34 request for production of documents (Ex. "D"). By operation of FRCP Rules 34 and 6, and FRBP 9006, no response was required by the request until 33 days after its mailing. It was ineffective as it did not require a response until July 19, 2023, a date *after* the date the Court allowed (at the Debtor's request) for discovery. The Debtor failed to properly exercise any right to discovery.

**2.      The Debtor was furnished a full and proper response to its untimely discovery request; it never requested the <u>discovery, such as time records, it now insists it was denied.</u>**

The Debtor requested production of six types of documents with only two of those requests (1 and 2) being for documents arguably germane to the *Murray* Counsel's unliquidated claim. The only truly relevant request[3], No. 1, is misstated in the Objection as seeking three things "…legal invoices, fee statements and ledgers evidencing…" (Doc. 338, p. 15, l. 10, ¶ 46). That request only sought

---

[3] Request No. 2. sought "representation agreements… …evidencing the terms and conditions" of the *Murray* Counsel's retention. The only such documents are the state court's orders in *Murray* appointing the *Murray* Counsel as class counsel in that case. It was the state court's orders, not a "representation agreement," that set forth the terms of their representation in *Murray.*

7

two things: "itemized legal invoices or fee statements."  It did not seek "ledgers" that could include a "ledger" of attorney time entries constituting "evidence" for a future attorney fee application.   That request (Ex. "D") and response is below:

**REQUEST FOR PRODUCTION NO. 1:**

All detailed or itemized legal invoices or fee statements evidencing the $789,924.54 in "unliquidated" amounts asserted in your Proof of Claim filed in the Debtor's Chapter 11 Case, including without limitation, of Leon Greenberg, P.C. or any persons also working associated with that firm, including without limitation, Christian Gabroy/Gabroy Law Offices, and Gabriel Del Virginia/the Law Offices of Gabriel Del Virginia.

**Objection:**   The request is unclear and assumes the requested "detailed or itemized legal invoices or fee statements" will "evidence" an "unliquidated claim" for "$789,924.54" asserted in a proof of claim filed in this case.   Such proof of claim speaks for itself.

**Response:**   Notwithstanding the foregoing Objection, the only documents that the responsive party can understand to constitute "detailed or itemized legal invoices or fee statements" within the meaning of this request are set forth in "Plaintiffs' motion for an award of attorney's fees on appeal of order denying receiver, opposing mooted motion for attorney's fees, and for costs on appeal" filed with the Eighth Judicial District Court, State of Nevada, on February 22, 2022, in *Murray v. A Cab*, A-12-669926-C, seeking an award of $46,400 in legal fees.   That document is in the possession of the Debtor.  No other documents constituting "invoices" or "fee statements" as can reasonably be understood as being within the meaning of the request have been prepared by the responding party.

The *Murray* Counsel kept detailed, contemporaneous, attorney time records but did not prepare "itemized legal invoices or statement" documents.   Greenberg Dec., Ex. "B," ¶ 4.   They had no reason to prepare such documents; they had no client to present such invoices to for payment. *Id.*   As state court appointed class

8

action contingency fee counsel, they awaited success in the *Murray* case for a determination of their fee. *Id.* If they were successful that fee would be settled or set by the state court. *Id.* Only at such time, if the state court fixed their fee, would they present a written "statement" to that court of what they asserted such fee should be. *Id.* ¶ 5. That statement would be "itemized" to the satisfaction and direction of the state court. *Id.* The state court in *Murray* has not required such "itemization" include attorney time records. *Id.*

The Debtor requested "itemized legal invoices or statements" that would evidence the *Murray* Counsel's unliquidated claim and got a fully proper response. The only such "legal invoice or statement" that has been prepared was for $46,400 in legal fees sought as part of that unliquidated claim and set forth in the February 22, 2022, motion filed in state court. Ex. "E." That "statement" was itemized in the fashion required by the state court. Ex. "B" ¶¶ 5-6. There were no other "legal invoices or statements" regarding the unliquidated claim. *Id.* Nor did the *Murray* Counsel have any obligation to create such documents.

The Debtor could have, but did not, request the *Murray* Counsel's time records. Having failed to timely request those records (or "ledgers" possibly inclusive of such documents that they untruthfully insist to the Court they requested), they cannot now complain they were denied discovery of those documents. There has been no "stonewalling" or denial of discovery on the

9

unliquidated claim; only a failure by the Debtor to seek the discovery it disingenuously insists it was denied.

**IN RESPONSE TO THE DEBTOR'S LEGAL ARGUMENT**

I.     **The *Murray* Counsel's unliquidated claim is sufficiently set forth in the Proof of Claim and appropriate proceedings must be held to establish its amount as required by governing state law.**

Debtor's Objections alleged both that (1) The Proof of Claim is completely deficient, for lack of support, in respect to the unliquidated fee and costs claim of the *Murray* Counsel; and (2) As a matter of law portions of the unliquidated claim must be disallowed and/or subject to reduction under the Debtor's Plan.   The first allegation must be rejected because it rests on the Debtor's erroneous assertion that it was denied evidence corroborating the claim, evidence it never requested.   The second allegation must be rejected because it misstates controlling state law and Ninth Circuit precedent in respect to the issues raised, including the *Murray* Court's pre-Petition finding (now under appeal) that the *Murray* Counsel are entitled to fees for activities undertaken outside the *Murray* Case.

A.     **The unliquidated claims are properly set forth in the Proof of Claim; they cannot be denied as unsupported when the Debtor has never requested available supporting documentation.**

1.     **The Proof of Claim is facially sufficient.**

As the Debtor recognizes, a Proof of Claim omitting documentation directed

10

by FRBP Rule 3001 will not be disallowed solely on that basis. *See, Heath v. Am. Express Travel Related Services Co. Inc.*, 331 B.R. 424, 436-37 (BAP 9th Cir. 2005). The *Murray* Counsel's unliquidated fee and costs claim in their Proof of Claim complies with Rule 3001 by providing a written description of the claim and significant details about elements of that claim. It explains certain amounts are owed for distinct litigation activities: $46,400 as set forth in a pending state court motion for fees on an appeal; $459,128 for other post-judgment litigation activities in state court since August 18, 2018, based on attorney time expenditures of 996.8 hours at $400 an hour and 251.7 hours at $240 an hour, etc. It asserts such claim is subject to further review and adjustment by, among other things, a further examination of the attorney time expenditures and billing rates that might be appropriately considered. Under the standard articulated in *Heath* the unliquidated claim cannot be denied because of any omission of information in the Proof of Claim. Nor does the Debtor assert it can be denied on that basis.

> **2.    No basis exists to deny the unliquidated claim for a failure to provide documentation; the Debtor never <u>requested the available documentation.</u>**

*Heath* also recognized that "a creditor's lack of adequate response to a debtor's formal or informal inquiries" seeking substantiation of a claim may provide a basis to "object to the unsupported aspects of the claim." *In re Campbell,* 336 B.R. 430, 436 (BAP 9th Cir. 2005) *citing and quoting Heath.* The

Debtor's assertion the unliquidated claim should be denied on that basis is specious.

As discussed, *supra*, the Debtor requested only one item respecting the unliquidated claim: "itemized legal invoices or fee statements."  The *Murray* Counsel referred the Debtor to the only such "fee statement" that had been prepared, the prior motion to the state court seeking $46,400 in fees on an appealed issue.   Ex. "B" ¶ 6.  The *Murray* Counsel received no "formal" or "informal" request by the Debtor for any other materials supporting the unliquidated claim.  *Id.*   The *Murray* Counsel possesses contemporaneously maintained attorney time records that it could have produced (subject to a small number of redactions) but it was never asked to produce such records.   *Id.*   Nor was it asked to produce documents in its possession (paid invoices) for its litigation costs claims.  *Id.*

The *Murray* Counsel remains agreeable to producing appropriate documentation supporting its attorney fee and costs claim (and has produced what it can on short notice at Ex. "G").   But that is a process best overseen by the state court upon remand of the *Murray* case.

**B.    The Objection erroneously asserts the unliquidated <u>claims are barred in whole or in part as a matter of law.</u>**

The Debtor's Objection also makes erroneous assertions that the unliquidated claim must be denied or limited as a matter of law.   It asserts:

(1)    Bankruptcy law does not allow the *Murray* Counsel to collect attorney's fees for work performed in this case since Nevada law limits their right to fees to the *Murray* Case state court action and appeals arising therein;

(2)    If the *Murray* Counsel are entitled to attorney's fees they have failed to properly present their claim for the same with time records as required by state law and this Court and they are now barred from collecting those fees;

(3)    The *Murray* Counsel are not entitled to attorney's fees for work performed collecting their fees;

(4)    The *Murray* Counsel cannot properly present a Proof of Claim for attorney's fees owed based on their co-counsel's work.

Argument (1) has already been resolved pre-petition by the state court, which held no such limitation exists under state law (a ruling now on appeal to the Nevada Supreme Court).  Argument (2) was resolved against the Debtor by the Nevada Supreme Court in the prior appeal of the *Murray* judgment.  It held Nevada does not require attorney time records be presented to the Nevada court awarding attorney's fees.  The *Murray* Counsel are awaiting an opportunity to present (have liquidated) their fee claims and were prevented from doing so by the Debtor's removal of the *Murray* case.   Argument (3) has already been rejected by the state court pre-petition and is subject to review on a pending appeal to the Nevada Supreme Court; it is also contrary to established precedent.   Argument (4)

13

is nonsensical, as Rule 3001 specifically allows an authorized agent to file a Proof of Claim, the process followed in this case.

These objections also almost entirely involve state law issues and the Court is urged to promote judicial efficiency by promptly remanding the *Murray* Case to state court where those issues are more efficiently addressed.

> **1. Whether the *Murray* Counsel can be awarded attorney's fees for their post-petition work is a state law issue.**

While the Bankruptcy Code confers "[n]o general right to attorney fees" a "prevailing party in a bankruptcy proceeding may be entitled to an award of attorney's fees in accordance with applicable state law…"  *In re Baroff,* 105 F.3d 439, 441 (9th Cir. 1997).  *Baroff* concluded that since state law applied to the contract law issue decided by the Bankruptcy Court, and state law provided for an award of attorney's fees in such situations, those attorney's fees had to be awarded in the Bankruptcy Court's proceedings.  *Id.*, 105 F.3d 442-43.

*Baroff* establishes it is the *scope* of the state law right to attorney's fees  that determines whether such a right exists in proceedings conducted by the Bankruptcy Court.  The Debtor errs in claiming *Eruchalu v. U.S. Bank*, 2016 WL 1064921 p. 2 (D. Nev. July 28, 2016), and *Bos v. Board of Trustees*, 818 F.3d 486, 490 (9th Cir. 2016), support a finding the *Murray* Counsel have no right to such fees for time spent advocating for their clients in this Court.

14

*Eruchalu* concerned an award of attorney's fees as a sanction for vexatious conduct, per 29 U.S.C. § 1927. *See, Eruchalu*, 2017 WL 1173913, p. 2 (D. Nev. March 29, 2017). The *Eruchalu* report cited by Debtor, citing *Baroff*, denied attorney's fees for certain bankruptcy work because it was presented with nothing indicating that work involved state law issues or was even necessary. 2016 WL 1064921 p. 2. While the *Eruchalu* report does not elaborate, to the extent it did not deny those fees because they involved unnecessary work, it was finding that no state law right to such fees was presented as in *Baroff.* It did not, as Debtor implies, hold that no such right exists in any bankruptcy case.

Debtor's reliance on *Bos* is similarly inapposite. *Bos* recognized that California law allows attorney's fee awards in certain lawsuits brought "on a contract." 818 F.3d at 489. It affirmed a denial of an award of attorney's fees in a bankruptcy nondischargeability action because no determination was made as to the contract's validity or breach; it was not an action "on a contract" as provided for by Cal. Civ. Code 1717(a). *Id.*

      **2.**      **The *Murray* state court has already ruled the *Murray* Counsel are entitled under Nevada law to attorney's fees "in any action" to enforce their clients' minimum wage claims and that would include this <u>case; other precedents also supports that conclusion.</u>**

This Court must award the *Murray* Counsel attorney's fees as allowed by state law. Judge Gall examined and ruled on that issue in the *Murray* Case in her

15

order of November 17, 2022, currently on appeal to the Nevada Supreme Court.

She found the *Murray* Counsel are entitled to attorney's fees for their work "in any action" they "prevail" in and that "enforces" their client's minimum wage rights, a holding that includes their work in this case:

> As an initial matter, the Court finds that the plain language of the Minimum Wage Amendment allows for an award of attorney's fees incurred on appeal. The relevant language provides for fees to a prevailing employee "in any action," to enforce the minimum wage amendment. This necessarily includes the appeal, even if the appeal could be considered an action separate from the district court case. Ex. "D" p. 2, l. 9-13.

If the *Murray* Counsel "prevail" in this "action" by establishing the *Murray* Case plaintiffs have a right to payments from the Debtor's bankruptcy estate, such counsel is entitled to an award of attorney's fees for that work.  That determination by the state court is *res judicata* as to that issue.  *See, In re Rubin Family Irrevocable Stock Trust,* 516 B.R. 221, 228-29 (Bank. Ct. EDNY 2014) (Judgment granting right to attorney's fees on post-judgment collection activities is binding on Bankruptcy Court which allowed claim for those fees arising post-petition).

While the Nevada Supreme Court has not addressed the issue, other courts have found attorney's fees are to be awarded for post-judgment work to collect unpaid minimum wages or on other claims where a statutory right to attorney's fees is provided.  *See, Velez v. Vassallo*, 203 F. Supp. 2d 312, 315 (S.D.N.Y. 2002) (Additional attorney's fees awarded for post-judgment collection work in case

16

under New York and Federal minimum wage laws); *Weyant v. Okst*, 198 F.3d 311, 316 (2nd Cir. 1999) (Section 1983 plaintiffs must receive attorney's fees for "...opposing defendant's unsuccessful post-judgment motions."); *Torres-Rivera v. O'Neill-Cancel,* 524 F.3d 331, 335, 341 (2nd Cir. 2008) (Recognizing "presumption" that Section 1983 plaintiffs are to be awarded attorney's fees for compelling collection of judgment); *Lindsay v. Pacific Topsoils*, 120 P.3d 102, 109 (Wash. Ct. App. 2005) (If statute allows award of attorney's fees it should also apply to post-judgment litigation, citing *Weyant* and other authorities) (Washington Law); and other cases.

The Debtor also argues the *Murray* Case plaintiffs' post-judgment entitlement to attorney's fees cannot extend under Nevada law to proceedings beyond those in the *Murray* Case and appeals in that case.  Except for merely insisting that is so, it cites no authority, from Nevada or any other jurisdiction, so holding.  As discussed, *supra*, every analogous case dealing with whether attorney's fees are available for post-judgment work, when a statute awards attorney's fees to a prevailing plaintiff, have found an unrestricted right to such post-judgment fees.

*Felker v. Southwestern Emergency Medical Services, Inc.,* 584 F.Supp. 2d 1120, 1121-22 (S.D. Ind. 2008) adopted the same analysis as Judge Gall in the *Murray* Case state court proceedings and reached the same conclusion.  *Felker* was

17

determining an award of attorney's fees for collecting wages owed under the federal Fair Labor Standards Act (the "FLSA") and Indiana state law.   At issue were attorney fees for a pre-judgment Bankruptcy Court proceeding that did not involve determining the employer's responsibility for the unpaid wages owed.  *Id.* *Felker*, upon examining the varying language of the FLSA and Indiana law, found that fees for the Bankruptcy Court representation were collectable under that state law's broader language but not the FLSA's more restrictive language.  *Id.*  That was because the FLSA grants attorney's fees in "an action to recover *the liability*" (emphasis in original) for unpaid wages and no such liability had been established in *Felker* (nor did the Bankruptcy Court case involve establishing or collecting any such liability). *Id.*

Under *Felker's* analysis, as well as Judge Gall's in the *Murray* Case state court proceedings — and that of every other analogous case — the *Murray* Case plaintiffs are entitled to attorney's fee in "any action," including this case, to enforce their Nevada minimum wage rights.  The Nevada Constitution's language, Article 15, Section 16, says as much: "An employee who **prevails in any action to enforce** this section shall be awarded his or her reasonable attorney's fees and costs." (emphasis added).   Employees have a right to attorney's fees for prevailing in "any action" needed to "enforce" their rights under the Nevada Constitution's minimum wage provisions.   And even if that language was more restrictive, akin

to the FLSA's "action to recover the liability" language discussed in *Felker*, the

*Murray* Counsel would still be entitled to attorney's fees for their work in this

action to "recover" the Debtor's already determined minimum wage liability.

> **3.      The Nevada Supreme Court in the *Murray* judgment appeal held time sheet submissions are not needed to award attorney's fees and Nevada's trial courts have broad discretion in determining how to calculate attorney fee awards; the *Murray* Counsel must be <u>given a fair opportunity to present their fee claim.</u>**

Debtor discusses some of the language of NRCP Rule 54 and then states:

> The reference in NRCP Rule 54(d)(2)(B)(v)(b) to "documentation concerning the amount of fees claimed" is a reference to counsel's production of itemized legal invoices detailing the time incurred, and is notably a separate and distinct requirement from the requirement of a declaration from counsel seeking the fees, which is made clear by it being listed as a separate requirement and the use of the word "and" in the statute, thus clearly providing that both are required.   p. 21, l. 3-8.

The Nevada Supreme Court, in the appeal of the *Murray* Case final judgment

rejected this argument, now made again by the Debtor:

> A Cab argues the attorney fees award was excessive and that the drivers did not provide proper documentation for the district court to calculate the amount awarded. **The drivers supported their request for attorney fees with a declaration by counsel that detailed the experience of the advocates, the difficulty of the work, and the time devoted to the work through a review of "contemporaneous time records" (which were not attached)**. A Cab argues this did not meet NRCP 54(d)(2)(B)'s requirement at the time that a request for fees must, among other things, "state the amount sought or provide a fair estimate of it; and be supported by counsel's affidavit swearing that the fees were actually and necessarily incurred and were reasonable, [as well as] documentation concerning the amount of fees claimed.".…  .…**We conclude that the declaration of**

19

**counsel constituted the "documentation" required under NRCP 54(d)(2)(B)**, and A Cab has not shown that the attorney fees award was unsupported or excessive beyond asserting that the drivers did not provide the appropriate documentation. *A Cab LLC v. Murray*, 501 P.3d 961, 975 (Nev. Sup. Ct. 2021) (en banc) (emphasis added).

Nevada's state courts "….have discretion regarding which method is used to determine the fees [awarded to attorneys] but must consider the four factors [attorney's qualifications, nature of litigation, work performed and results] outlined in *Brunzell v. Gold Gate National Bank,* 455 P.2d 31, 33 (Nev. Sup. Ct. 1969)." *A Cab*, 501 P.3d at 975.  A Nevada trial court can direct production of detailed time records in connection with a fee award determination but need not do so.   To the extent the Debtor seeks to have such a production made, it should direct that request to the *Murray* Case state court upon remand (or make it in the adversary case if this Court does not direct that remand).

The *Murray* Counsel was proceeding to have the remainder of their unliquidated fees determined by the *Murray* Case state court, prior to its removal, in the manner approved of by the Nevada Supreme Court in the *Murray* judgment appeal.  Ex. "E," seeking $46,400 in fees for certain appeal work, as supported by a declaration and analysis of time records (but without submitting those time records).

20

**4.    The *Murray* Counsel are entitled to fees for the time spent defending and collecting their fees ("fees on fees"); the <u>Debtor seeks to have the Court misconstrue *Baker Botts.*</u>**

The Debtor argues that the *Murray* Counsel cannot be awarded "fees on fees" (fees for defending and collecting their fees) and states:

> Similarly, to the extent the Greenberg Claim asserts a recovery of attorney's fees and cost Greenberg P.C. allegedly incurred in defense of its own claims for attorney's fees and costs, such fees and costs are not compensable as a matter of law, and due again to the lack of any express authorization for them in the applicable governing authorities. *Baker Botts L.P. v. Asarco*, 576 U.S. 121 (2015) [no pin cite provided] (citing *Aleyska Pipeline Service Co.*, 421 U.S. at 260)  p. 22, l. 26 – p. 23, l. 3.

This argument by Debtor ignores that *Baker Botts* recognizes attorneys, such as the *Murray* Counsel, *are* entitled to "fees on fees" under a "fee-shifting statute that trumps the American Rule."   576 U.S. at 127.   It also asks this Court to misapply the limitations on "fees on fees" awards recognized by *Baker Botts.*

*Baker Botts* addressed whether a bankruptcy trustee's professionals were authorized, under 11 U.S.C. 330(a)(1), to receive "fees on fees" for their work successfully defending objections to their fee requests.   In answering that question in the negative, the Supreme Court examined Section 330(a)(1) and found it only authorized compensation for "actual, necessary services rendered" to "assist the administrator of the estate."   576 U.S. at 127-28.  It did not authorize the Bankruptcy Court in such situations "…to shift the costs of adversarial litigation from one side to the other—in this case, from the attorneys seeking fees to the

administrator of the estate—as most statutes that displace the American Rule do." *Id.* As a result, *Baker Botts* denied "fees on fees" awards under 330(a)(1) for defending attorney fee claims even though such "fees on fees" awards are proper under typical adversarial fee shifting statutes. *Id.*

As discussed, *supra¸* the *Murray* Counsel's fee claim is based on the sort of "adversarial litigation fee-shifting statute" that was lacking in *Baker Botts* and they are entitled to "fees on fees" for defending those fee claims and collecting those fees. This situation is adeptly analyzed in *In re Rosenberg¸* 2017 WL 1102864 (Bank. Ct. S.D. Fl. 2017) and other cases. *Rosenberg* addressed the "fees on fees" right afforded by 11 U.S.C. 303(i). That section *did* contain the "adversarial litigation fee-shifting" statutory language lacking in 330(a)(1) and the *Baker Botts* "fees on fees" award limitation was inapplicable. 2017 WL 1102864 at p. 5. As a result, "fees on fees" were awarded for work performed enforcing and defending the judgment for attorney fees, as denying such "fees on fees" would deny aggrieved parties the "make whole" remedies provided by those fee shifting statutes. *Id.* p. 7, citing, among other cases, *Balark v. Curtin*, 655 F.2d 798, 803 (7th Cir. 1981) (Denying fees on fees for collecting civil rights judgments is

22

contrary to that law's fee-shifting provisions and would act to create a "hollow victory" against losing defendants who obstruct the collection of such judgments).[4]

*In re John Richards Homes Bldg. Co. LLC*, 475 B.R. 585, 589 (E.D. Mich 2012), *affirmed* 552 Fed. Appx. 401 (6th Cir. 2013), *cert denied*, 572 U.S. 1101 (2014), cited by *Rosenberg*, is also informative.  "[G]iven the policies animating fee-shifting provisions, it should not matter whether post-judgment litigation is pursued in the forum where the judgment was entered, or another forum" in respect to the right to a fees on fees award.  *Id.*  And when a judgment debtor on a fee-shifting statutory attorney's fee award files for bankruptcy protection, the judgment creditor attorney "has no choice but to follow the debtor into the bankruptcy court in order to preserve the viability of the judgment."  *Id.*  As a result, "fees on fees" are properly awarded for such Bankruptcy Court proceedings; the precise and controlling circumstances of this case.  *Id.*

> **5.    The co-counsel of Leon Greenberg Professional Corporation in the *Murray* Case have properly filed <u>their Proof of Claim through that office as their agent.</u>**

The Proof of Claim advises it includes unliquidated attorney's fees claims for work performed by *Murray* Case (and this case) co-counsel (whom it identifies

---

[4] This reasoning in *Balark* has been uniformly adopted by the Circuit Courts of Appeal in decisions too numerous to cite.  *See*, among other cases, *Spain v. Mountanos*, 690 F.2d 742, 747 (9th Cir. 1981) citing other Ninth Circuit cases.

by name) affiliated with Leon Greenberg Professional Corporation. The Debtor's assertion that such co-counsel must file their own separate Proofs of Claim is specious. Under Rule 3001(b) a Proof of Claim may be filed by an "authorized agent" for the creditor. Leon Greenberg Professional Corporation has done so on behalf of its co-counsel and advised those attorney fee claims are subsumed within (part of) that firm's single Proof of Claim seeking statutory attorney fees. That is completely proper and no authority (none is cited by Debtor) or sensible interpretation of this Court's Rules supports the Debtor's assertion that those claims must be set forth in separate Proofs of Claim.

II. **The *Murray* Counsel's unliquidated post-petition claim for fees on the pending state court appeal is not necessarily subject to treatment as a pre-petition claim reduced by the Debtor's Plan; <u>the determination of that issue is best deferred at this time.</u>**

A. **Because the *Murray* Counsel's fee claims on the currently pending state court appeal arise solely from post-petition <u>conduct by the Debtor they may not be subject to any Plan.</u>**

The *Murray* Counsel do not believe their post-Petition claim for attorney's fees, in connection with the Debtor's pending Nevada State Court appeal, is subject to treatment (reduction) as pre-petition claim. *In re Ybarra*, 424 F.3d 1018, 1025 (9th Cir. 2005), citing and quoting *In re Siegel*, 143 F.2d 525, 533-34 (9th Cir. 1998), held "…post-petition attorney fee awards are not discharged where post-petition, the debtor voluntarily "pursue[d] a whole new course of litigation,"

24

commenced litigation, or "return[ed] to the fray" voluntarily. The Debtor has engaged in such a "returning to the fray" post-petition conduct in respect to the pending Nevada Supreme Court Appeal — it initiated that appeal *after filing its Petition*. As a result, it cannot seek to discharge in this case the *Murray* Counsel's post-petition fees accrued in that appeal.

The Debtor filed its Petition on December 12, 2022. At that time the *Murray* Case state court judgement, as modified in November of 2022, was final. The Debtor had the right to seek discharge of that judgment, and claims arising from that judgment (including the *Murray* Counsel's post-petition fees arising from that judgment) under its Petition. But the Debtor declined to let sleeping dogs lie, and on December 14, 2023, *after* filing that Petition, elected to file its appeal of the *Murray* Case judgment. Ex. "F."

By initiating an entirely new (and abusive) proceeding post-Petition the Debtor waived any right to seek discharge from the liabilities it will incur as a result of that post-Petition conduct. Under *Ybarra* the *Murray* Counsel will be entitled to have their claim for attorney's fees for successfully opposing that appeal treated as a post-Petition claim not subject to discharge.

The Court need not, and should not, determine at this time whether the *Murray* Counsel's claim for post-petition appeal fees will be (potentially) subject to discharge. The amount of that claim is currently unknown. The *Murray*

25

Counsel also believes any Plan approved by the Court will have to provide enough funds to pay all current and future accruing unsecured claims in full, rendering this issue moot.                                                         `

### III.    The *Murray* Counsel provide information for the Court to use in liquidating the Claim if it elects to so proceed at this time.

It would be inequitable to require the *Murray* Counsel to gather, and submit, all of their evidence in support of their unliquidated claim in connection with the hearing on the Debtor's Objections (and then liquidate that claim without further submissions from the *Murray* Counsel).   The *Murray* Counsel have waited patiently, and respectfully, for the Court to grant their long-pending motion to remand the *Murray* Case and proceed with the liquidation of their claim in state court.  They have been provided with no notice of any need to marshal and present evidence to this Court of their unliquidated claim's value (present an attorney's fee motion), much less a reasonable schedule for doing so.

While the *Murray* Counsel submit it would be very unfair for the Court to now liquidate their claim without affording them further notice and opportunity to present it, they seek to be respectful of the Court.  If the Court is going to proceed to liquidate their claim (in whole or in part) without affording them further notice or opportunity to present evidence on the value of that claim, they provide an as detailed as possible at this time submission on the proper valuation of that claim,

materials in support of the same, and an explanation of why they should be afforded an opportunity to more fully document that claim. Ex. "G."

## CONCLUSION

For all the foregoing reasons, the Court should deny the Objection, grant the pending motion to remand (Adversary Case No. 22-1163 Doc. 9) the *Murray* case, and grant the *Murray* Counsel leave to have the amount of their unliquidated claim determined by the *Murray* state court with its payment subject to this Court's further determination.

Dated: September 25, 2023

Respectfully submitted,

**Leon Greenberg Professional Corporation**

By:  /s/ *Leon Greenberg*

Leon Greenberg (NSB 8094)
1811 South Rainbow Boulevard, Suite 210
Las Vegas, Nevada 89146
Telephone: 702-383-6085
Facsimile: 702-385-1827
Email: leongreenberg@overtimelaw.com
*Counsel to Murray Case Creditors*

27

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was electronically filed using the Court's CM/ECF system on this 25th day of September 2023, which will send electronic notification of this filing to all counsel of record.

*/s/Ruthann Devereaux-Gonzalez*
Ruthann Devereaux-Gonzalez

28

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (LAS VEGAS)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 22-14361-nmc |
|  | . | Chapter 11 |
| A CAB, SERIES, L.L.C., | . |  |
|  | . |  |
| Debtor. | . |  |
| . . . . . . . . . . . . . . . . | . |  |
| MICHAEL MURRAY, Individually | . | Adv. No. 22-01163-nmc |
| and on behalf of others | . |  |
| similarly situated, | . |  |
| MICHAEL RENO, Individually | . |  |
| and on behalf of others | . |  |
| similarly situated, | . |  |
|  | . |  |
| Plaintiffs, | . |  |
|  | . |  |
| v. | . |  |
|  | . |  |
| A CAB TAXI SERVICES LLC, | . | 300 Las Vegas Blvd. South |
| A CAB, LLC, and | . | Las Vegas, NV 89101 |
| CREIGHTON J. NADY, | . |  |
|  | . | Thursday, March 23, 2023 |
| Defendants. | . | 9:48 a.m. |
| . . . . . . . . . . . . . . . . | . |  |

TRANSCRIPT OF SCHEDULING CONFERENCE RE:  ADVERSARY CASE
22-01163 MICHAEL MURRAY, MICHAEL RENO AGAINST A CAB TAXI
SERVICES LLC ET AL [1];
MOTION FOR REMAND WITH CERTIFICATE OF SERVICE FILED BY RUTHANN
DEVEREAUX-GONZALEZ ON BEHALF OF LEON GREENBERG, ESQ. [9];
BEFORE THE HONORABLE NATALIE M. COX
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES CONTINUED.

Audio Operator:          Benji Rawling, Remote ECR

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46048
                         (855) 873-2223
                         www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (LAS VEGAS)

|  |  |  |
|---|---|---|
| | . | Case No. 22-14361-nmc |
| IN RE: | . | Chapter 11 |
| | . | |
| | . | 300 Las Vegas Blvd. South |
| A CAB, SERIES, L.L.C., | . | Las Vegas, NV 89101 |
| | . | |
| | . | Thursday, March 23, 2023 |
| Debtor. | . | 9:48 a.m. |

. . . . . . . . . . . . . . . . . .

TRANSCRIPT OF STATUS HEARING RE:  CHAPTER 11 SUBCHAPTER V
VOLUNTARY PETITION NON-INDIVIDUAL.  FEE AMOUNT 1738.  FILED BY
MATTHEW C. ZIRZOW ON BEHALF OF A CAB, SERIES L.L.C.
CHAPTER 11 PLAN SUBCHAPTER V [1];
OST RE:  APPLICATION FOR ORDER EXPANDING THE POWERS OF THE
SUBCHAPTER V TRUSTEE NATHAN F. SMITH WITH PROPOSED ORDER WITH
CERTIFICATE OF SERVICE FILED BY RUTHANN DEVEREAUX-GONZALEZ ON
BEHALF OF LEON GREENBERG PROF. CORP, MICHAEL MURRAY [94]
BEFORE THE HONORABLE NATALIE M. COX
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES CONTINUED.

Audio Operator:          Benji Rawling, Remote ECR

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46048
                         (855) 873-2223
                         www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (Continued):

| | |
|---|---|
| For A Cab, Series L.L.C.: | Larson & Zirzow, LLC<br>By:  MATTHEW C. ZIRZOW, ESQ.<br>850 E. Bonneville Ave.<br>Las Vegas, NV  89101<br>(702) 382-1170 |
| For Leon Greenberg Prof. Corp.: | Leon Greenberg Professional Corporation<br>By:  LEON GREENBERG, ESQ.<br>     RUTHANN DEVEREAUX-GONZALEZ, ESQ. (Telephonically)<br>1811 S. Rainbow Blvd.<br>Las Vegas, NV  89146<br>(702) 383-6085 |
| | Law Offices of Gabriel Del Virginia<br>By:  GABRIEL DEL VIRGINIA, ESQ.<br>30 Wall Street, 12th Floor<br>New York, NY  10005<br>(212) 371-5478 |
| Subchapter V Trustee: | NATHAN F. SMITH, ESQ.<br>2112 Business Center Drive<br>Irvine, CA 92612<br>(949) 252-9400 |
| For the U.S. Trustee: | Office of the United States Trustee<br>By:  EDWARD MCDONALD, ESQ.<br>300 Las Vegas Boulevard South #4300<br>Las Vegas, NV 89101<br>(702) 388-6600 |

3

(Proceedings commence at 9:48 a.m.)

THE COURT:  The next four matters in the adversary case of <u>Murray, et al. versus A Cab Taxi Services</u>, and also in the bankruptcy case of <u>A Cab Taxi Services</u>.  The adversary number is 22-01163 and the bankruptcy number is 22-14361.  May we have appearances, please?

MR. ZIRZOW:  Good morning, Your Honor.  This is Matt Zirzow with Larson & Zirzow, counsel to the debtor.

MR. GREENBERG:  Good morning, Your Honor.  This is Leon Greenberg for Murray case creditors.  I have with me today Mr. Del Virginia and Ms. Gonzalez.

MR. DEL VIRGINIA:  Good morning, Your Honor.  Gabe Del Virginia pro hac vice.  Thank you.

MR. SMITH:  And good morning, Your Honor.  This is Nathan Smith, the Subchapter V Trustee.

MR. MCDONALD:  Edward McDonald, Department of Justice for the U.S. Trustee, Your Honor.  Appearing in the bankruptcy matters.  Thank you.

THE COURT:  All right.  Good morning.  So I guess, Mr. Zirzow, I just asked for kind of an update on where we are. I know we just had a hearing a couple of days ago, but if you could just tell me where things are at today.

MR. ZIRZOW:  Certainly, Your Honor.  So when last we were here before you on Tuesday, the Court directed the parties and/or me to do several things.  First of all, file a renewed

or amended procedures motion, which we have done resetting the Chapter 11 plan confirmation hearing in this case for the May 17 and 18 days.  And then you also requested that the parties prepare and confer regarding a discovery plan or plan confirmation.  I did prepare a draft of that.

I did circulate it to Mr. Greenberg.  We did discuss the matter.  However, he was not willing to agree to what I proposed.  In particular, I believe his objection is just that he believes the confirmation hearing should be bumped out, which I think the Court has already addressed.  Otherwise, we did file a discovery plan as Docket 132, you know, in the main case.  It did only have my signature, just so we're clear.  But again, Mr. Greenberg and I certainly did meet and confer to try and discuss various matters.

Just to highlight a few items in the discovery plan. So given the confirmation hearings set for mid-May, it had a discovery cut off at the end of April.  It expedited the deadlines for discovery to 20 days.  And as to the converted subpoena from the Murray creditors that we dealt with on Tuesday, that actually required responses before the end of the month.  So in about a week.

So it expedited those even more to really get this process rolling.  And it set other dates, deadline, to the extent there would be experts, one week before the confirmation hearing required a list of witnesses and exhibits, five days

before trial for motions in limine, and then requesting a pretrial conference about one week before the confirmation hearing.

So from the debtor's perspective, Your Honor, it's some pretty standard fare as far as a discovery plan, including expedited dates. And I honestly expect most, if not all discovery to be incoming to the debtor, not by the debtor going out to creditors. So if anybody is prejudiced by the expedited deadline, it's the debtor, because the debtor is going to have to be the one that's responding to all the discovery.

So I thought it was a pretty neutral discovery plan, but Mr. Greenberg, I think he's just looking for more time for the confirmation hearing. And quite candidly, the debtor's response is, well, you've already had two months, and now the judge has given you another month and a half. We think that's more than enough time to get to a confirmation hearing with an appropriate level of discovery.

Again, this isn't a state court trial. This is a focused matter involving Chapter 11 plan confirmation. And we believe that it's now going to be three-and-a-half months of discovery is more than adequate for a Subchapter V, Chapter 11 plan of this size and magnitude. So we did file the discovery plan, and it was only signed by us, just to be clear. And so that's our status from the debtor side, debtor's perspective, with respect to the Chapter 11.

I would just add, Your Honor, one more thing. I would like to get some structure in place with a discovery plan. Just so again, we know the ground rules heading into the confirmation hearing. And in fact, if anything, I pushed all the deadlines as far as I could to allow for a maximum amount of time for discovery by requiring witness lists and exhibits, you know, a week before and motions in limine five or six days before and expediting discovery. I was really trying to allow for a maximum amount of discovery here. So I just don't really think there's any prejudice. I think it's an appropriate plan and should be approved.

THE COURT: All right.

Mr. Greenberg, I'll let you respond to that.

MR. GREENBERG: Your Honor, I'd like to just compliment Mr. Zirzow and conferred with me yesterday and reassure, Your Honor, as you represented to me a couple of days ago, I have not dealt with Mr. Zirzow before, that Mr. Zirzow does try to exercise his obligations to confer and to deal with counsel and to be professional. I had some difficulty in respect to the prior matters, which are before the Court on Tuesday in our communications, but that is history.

He did listen to my concerns, Your Honor. He did make some small adjustment to the schedule. Those concerns still are here. Your Honor, I would point out that we don't actually have any production from the debtor. Mr. Zirzow has

agreed to move that up to March 31st. But under the schedule, all discovery needs to close by the 28th, including depositions, including follow-up requests, which would have a 20-day turnaround. So, you know, effectively, I have maybe a week after getting that production to put out follow-up requests that may come from that production. So we have concerns.

Your Honor, I don't know that the Court wants to actually address the issue of changing the schedule. Mr. Zirzow did pledge to me yesterday that if we run into difficulty with the schedule, he will certainly try to work with me to cooperatively adjust it, perhaps with the Court's agreement. So I don't actually want to impose on Your Honor to change the schedule right now.

In respect to the confirmation hearing, we went through this on Tuesday. We do have concerns. I was not able to get back to Mr. Zirzow to sort of finalize our discussion because Mr. Del Virginia was unavailable. He's on East Coast time. We were getting late in the day. But if Your Honor is going to order this, I understand, and we will -- all counsel clearly is going to make an effort here to make things work appropriately. If for some reason we run into issues, we may be back in two or three weeks sometime next month to address those issues with Your Honor. That's, I guess, the best I can tell the Court about it.

THE COURT:  Sure.  I understand.  And obviously, that's what the Court's here for.  If there is a dispute that the parties can't resolve themselves, I'm always hopeful, though.  Would much prefer that the parties do that without court intervention.  But I understand litigation.  I do want to keep firm right now the confirmation hearing dates, and I do think it's appropriate to enter this discovery plan.

Again, I understand that there may be some tight deadlines here.  And if there's some, you know, good faith efforts put into trying to resolve those and the parties can't resolve it, I will.  So we'll deal with it that way.  So I guess that part is resolved.  And I do appreciate the parties meeting and conferring before today and trying to work this out.

So we have -- let's see in the main case, in the bankruptcy case, we have the application for an order expanding the powers of the Subchapter V Trustee.  I'd like to start there.  Is there anything before we start that that needs to be brought to my attention?

MR. GREENBERG:  This is Leon Greenberg, Your Honor.  As movant, I'm not aware of any additional developments that are not discussed in the reply which was filed on Tuesday.  Hopefully Your Honor has had an opportunity to review that.

THE COURT:  I have.  All right, then.  All right.  Well, let's go forward.

Mr. Greenberg, if you want to go ahead and proceed on your motion, you may.

MR. GREENBERG: Yes. Thank you, Your Honor. I think that it is not disputed by anybody here that if action is not taken in the state court in respect to the fraudulent conveyance action by April 22nd in respect to securing this jurisdiction over Laurie Nady as a defendant, there could be a very significant problem with the prosecution of those claims, which is why we brought this to Your Honor.

If this was a situation where we could simply defer dealing with this until, you know, sometime in the future when the Court was more generally, you know, reviewing the proposed plan and the debtor's, you know, situation, we would have. But for that reason, we needed to bring it now. And since action needs to be taken now, we've tried to craft a approach here that is as limited as possible, that preserves this important asset for the estate for the benefit of the creditors.

And that being understood, the fundamental problem here, Your Honor, is that there's an inherent and really indisputable conflict of interest here between the debtor having control over the fraudulent conveyance claims and their fiduciary duty to the creditors as debtor in possession here. It's somewhat unusual that you would have a fiduciary who's, in fact, been found in contempt, which the debtor was.

The debtor is under an order for $94,000 in contempt

that was found in the state court proceedings.  They've never purged themselves of that contempt finding.  And that is discussed in the reply.  You have the discussion from Judge Cory at page 5 of the reply about his findings on this.  But even setting that aside, Your Honor, Your Honor doesn't need me to explain the problem here.

The debtor is, in fact, controlled by Mr. Nady and his family.  They are also the defendants in the fraudulent conveyance case.  Laurie Nady has not come forward to accept jurisdiction and resolve the immediate problem in the fraudulent conveyance case.  And of course, she has no obligation to do that.  And the debtor is a separate legal entity.  They don't control her.

But given the relationship of the parties here, it's just not, you know, feasible to imagine the debtor here, you know, taking action to preserve the asset.  Which is why, again, we tried to craft this release within the narrowest confines possible in consultation with Mr. Smith, who did discuss the issues with us and agreed that he was supportive of the limited request we were making here, that he would act to report and preserve and investigate the asset and advise the Court on this.

And in respect to this issue of, you know, the merits, well, Your Honor, we have this report from the Special Master, which is in the record.  And the Special Master does

document this removal of $1.9 million during this three-year period from the debtor. So it's not as though we're proceeding just completely in the dark here. And, you know, the Special Master found those withdrawals of equity at that time. This was in 2019, shortly after the judgment was entered in 2018.

We're putting the debtor in a very precarious position in terms of being able to pay the judgment. I understand that's not conclusive, Your Honor. Your Honor isn't here to make any determination about the merits. I know in the opposition there are various arguments presented about the merits of the claims, actually the supposed lack of merits. But there is actually nothing presented except the assertions that the claims have no merits.

Which brings us to this issue of potentially alternative relief, which is that if the claims don't have merit, then the estate shouldn't be burdened with them. We are accused, Your Honor, and I'm trying to not use such harsh language here, in bringing this motion of trying to offload these claims to burden the estate and to draft the trustee in sort of our arm here to pursue them for our personal benefit, the Murray creditors, that is.

And of course, that's not, you know, correct in the sense that if the claims are successful, they benefit all the creditors, although conceitedly, we are the three-quarter creditor here or more with an interest, but we're willing to

assume the responsibility and the burden of prosecution here, Your Honor.  You know, we don't have to burden the estate, and this is discussed there are alternative reliefs that are possible that the Court could fashion here that would not burden the estate in any fashion.  That's discussed at pages 11 and 12 of my reply.

I don't really want to just repeat myself of what's in the reply, Your Honor.  I don't think that's a productive use of your time.  I would certainly like to answer the Court's questions.  I'd like to have a little time to respond to whatever argument is made by the debtor.

THE COURT:  I have a question for you.  In the paragraph just above the conclusion in the motion where you're describing the relief that you're requesting.

MR. GREENBERG:  Yes, Your Honor.

THE COURT:  And it would be having the fraudulent -- the Chapter V's Trustee's powers expanded to include investigation of the fraudulent conveyance action.  And it also mentioned preserved.  That having the fraudulent conveyance asset further investigated and preserved.  What are you requesting with respect to the preservation of this?

MR. GREENBERG:  Well, Your Honor, to be candid, and I must be candid with the Court.  We do need some sort of action in the state court case to take care of this April 22nd deadline, which is threatening the asset.  So it would be

essentially a limited grant of authority to the trustee to appear in that case solely for the purpose of authorizing and conducting the publication that's necessary against Laurie Nady to secure jurisdiction. Hopefully, we can impress upon the state court to stay that case. I've repeatedly tried to do that.

I have another conference with the state court judge in two weeks. He's declined to stay the case, so it would be limited to just doing that at this point. He would not proceed with any prosecution or any other action in respect to the case, just simply to preserve it. So he would be granted some authority, very limited authority, in respect to that particular necessary issue. If he had to do something else to preserve the asset, I suppose, you know, that could be specifically brought to Your Honor to keep it under a very sort of tight control.

I understand that the Court is not necessarily inclined to want to, you know, broadly expand his powers to be going down that path. And Mr. Smith can speak for himself. In my dialogue with him, he was not contemplating that was my understanding either. You know, my concern is to preserve this. I believe Mr. Smith presumably shares that concern, but also wants to investigate and develop more information about this. I am hopeful we can do that, actually, in the discovery that we're seeking in the Chapter 11 case.

I don't know that we're going to have to do that in respect to the -- in the state court action. Obviously, we can bring non-parties in, in the Chapter 11, to give testimony or whatever. You know, we got to get started with all that. So it'd be a little speculative to say how we're going to develop the information or what we're going to get on that, but I would obviously work under his direction.

We're certainly willing to undertake the cost of the publication against Ms. Nady and do any work that would be involved with that to minimize any burden on the estate. So hopefully that answers the Court's question as to that particular issue.

THE COURT: Well, it does. It's what I suspected you were going to say. And what concerns me is that I'm not sure the Bankruptcy Code authorizes the Subchapter V Trustee to act in that role of preserving it by appearing in the courts, and I don't know, you know, requesting a stay or whatever that may be. I'm comfortable that the Subchapter V sections do allow the expansion of his powers to investigate, to essentially act as an examiner, essentially.

That I'm comfortable with. Not so much without further briefing, would I be comfortable with ordering any type of preservation actions on the part of the Subchapter V Trustee. But I do want to hear from, of course, Mr. Zirzow. And I will hear from Mr. Smith.

I guess, Mr. Smith, since we're on the topic of your powers, why don't you go ahead and speak to this if you'd like.

MR. SMITH:  Your Honor, I think that it would be valuable to have an objective party investigate these claims and then file a statement with the Court.  With regard to expanding my authority to preserve the claims, I agree with Your Honor that I think that issue may require further briefing.  I know that 1183(b)(2) provides that I shall perform certain duties if ordered by the Court and refers to 1106.  And 1106 provides for an investigation regarding acts, conducts, assets, liabilities, and financial condition of the debtor and to file a statement regarding that investigation.

So I think that, Your Honor, in my opinion, would be appropriate under the circumstances, just based on the nature of these claims to have an objective investigation performed, but with regard to preservation, I agree with Your Honor.

THE COURT:  All right.  Thank you, Mr. Smith.

Mr. Zirzow?

MR. ZIRZOW:  Yes, Your Honor.  I think I can really help here and really remove what I would say is manufactured emergency here.  First of all, let me just say there's absolutely no danger and it is very much disputed that these claims could disappear come April.  That's just false.  These claims are property of the bankruptcy estate.  They are protected by the automatic stay.  Any removal or dissipation of

them by a state court, that order would be void and unenforceable.  Plain and simple.

Now, if we need a protective stipulation, which I would be willing to enter into, that says that the claims are preserved, I'd be more than willing to do that.  So this whole premise of this motion that we have to do something that's going to be -- something's going to happen come April is just false.  The state protects them and I'm willing to enter into a stipulation to provide for the preservation of them.  And basically an order of this Court saying, hey, these claims are preserved.  And if the state court is out there violating the stay, I guess I can understand the consternation with that.

But suffice it to say, for purposes of the bankruptcy and the preservation of these -- again, we dispute the allegations, obviously, but the claims themselves, I would agree to that.  So there's no need to have Mr. Smith do anything more or Mr. Greenberg, if the debtor is willing to preserve them.

I'm not trying to run out the clock by dragging my feet here and having those claims dismissed by a state court.  Far from it.  Frankly, we have a state court who's unilaterally acting that's probably in violation of the stay.  So again, Your Honor, it's a very simple matter to remove any allegation of manufactured prejudice here by just saying the claims are property of the estate, which Mr. Greenberg even agrees with,

as he has to, and they are preserved for the benefit of the estate.

And, you know, unfortunately, we do have a state court acting independently, and that's I will tell you a concern with a lot of what's going on today, including the motion of remand.  Maybe the state court doesn't appreciate that these are property of the estate and thus need to be preserved until some disposition of them can happen.

So the whole idea that these are going to go away is just false.  They're protected by the stay.  And I'm willing to stipulate, you know, on top of that, that they are stayed, that they're property of the estate.  And thus, even if a state court does enter some order unilaterally purporting to dictate that, you know, the state court can dismiss claims that belong to the estate, that is void and ineffective.  So that's an easy one to take care of.

Let's get to the actual relief, though, in this, which is rather extraordinary.  I've never seen it before, but Subchapter V is only about three years old now, and it's seeking to empower the Subchapter V Trustee to conduct an investigation that the Murray creditors are already doing.  They're already doing it.  They already have pending discovery.

We've already actually assembled most of the discovery responsive to these allegations, and the only evidence, you know, they have is a two- or three-page state

court master report that says, yeah, the debtor paid out this amount for these three years. There's no indication from the master report as to anything improper. The only indication is that money went out. Well, as I've already indicated in multiple pleadings, the debtor will show that this was a payment of salaries, okay? And that's what the discovery will show.

So based upon that threadbare evidence, they want you to launch into a rather extraordinary remedy that is already under investigation. Why can't Mr. Greenberg proceed? And he's going to get documents responsive to this in a week on the 31st. Proceed with that. And if Mr. Smith really believes he also needs to be involved, he can get the same discovery and they can both participate in a deposition of Mr. Nady and whatever other confirmation discovery which is already in process and proceed. Why do we need to do anything more than that?

So the claims are preserved. They're already being investigated, thus this motion is really unnecessary. And then in the reply, for the first time, without any reference in the motion, the Murray creditors seek a grant of derivative standing. Well, first of all, Your Honor, I would submit you should not consider a new matter if it raised for the first time in a reply.

Second, Your Honor, I'm sure --

THE COURT:  Mr. Zirzow.  Mr. Zirzow, you don't even need to go into it.  I agree.  So that both sides know, I am not -- anything that's raised as a new affirmative request that would normally require any motion notice I'm not going to consider because it's in the reply.  It's not fair.  It doesn't provide due process.  So you don't need to go into that.

MR. ZIRZOW:  Great.  Your Honor, so not to be repetitive of the opposition, but the basic position is Mr. Greenberg has submitted a substantial amount of document requests that we are very much wading through the discovery. He's already started that process.  Let that process play through.  If he still believes there is actual evidence, then he could bring a derivative standing motion or whatever other relief he believes is appropriate.  And I'm sure we will also, frankly, deal with this issue in confirmation.

He's already raised the issue of well, you know, you value those Chapter V causes of action at zero in your liquidation analysis.  Therefore, you're not paying -- you don't satisfy the best interest of creditors.  1129(a)(7), I think it is.  So all these issues, they're already lined up. They're already lined up in discovery, they're already lined up in the pleadings.  They're already, frankly, really, in my opinion, set for the confirmation hearing at mid-May.  So why are we doing this extraordinary relief of empowering a third party, you know, the trustee, to investigate things.

Mr. Greenberg should carry his own water.  You know, he likes to tout that he's 80 or 90 percent of the creditor base.  Well, then, fine.  You prove your case and show why the debtor's position is wrong and why these are valid claims.  You have to show actual evidence more than just a Special Master report that makes the general finding that the debtor paid its employees.  I mean, that's not enough.

You've got to show that these were improper transfers.  That they were done for no value.  And again, the debtor will submit evidence at the appropriate time as to why that's incorrect and false and that the salaries, in fact, if anything, were rather modest, and payment of normal tax obligations and things like that.  So we'll get to that.

And this process is already underway.  There's just no need for a separate, you know, deputizing of the Subchapter V Trustee into some kind of independent counsel to investigate these.  He can participate in the investigation already underway by Mr. Greenberg, quite frankly.  So it's just unnecessary in this case.

You know, I'm concerned also with the cost.  Obviously, unlike Mr. Greenberg's claims, Mr. Smith, his fees and costs are an administrative claim in the case and do impose a burden on the debtor.  And so for all those reasons, Your Honor, we do request that this kind of extraordinary relief is unnecessary at this juncture.  There's plenty of protections

and processes in place willing to stipulate to preservation to avoid that.

I think it's a red herring anyway because of the stay such that there's no prejudice in denial of this motion and allow the normal machinations that you'd expect in a case, including discovery on plan confirmation and arguing about these matters at the confirmation hearing to proceed.  Thank you.

THE COURT:  All right.  Thank you.

All right.  Mr. Greenberg, just a brief response.

MR. GREENBERG:  Your Honor, we certainly have no objection to having the status quo frozen, so to speak, to preserve the claim and to remove our concern regarding the expiration of the claim against Laurie Nady.  Because the debtor was not a party to the fraudulent conveyance case when the petition was filed.  They weren't a defendant, they weren't a party.  Otherwise there was no automatic stay.  It is true that as an operation of law, the prosecution right of that has now passed to the debtor's estate.

If this Court has the authority to order a stipulation of the parties based on that authority of the debtor to simply stay that case, which will, you know, stop the clock running against Laurie Nady as a defendant in terms of this jurisdictional issue, we don't have an objection to that. This has not been discussed previously.

And I must confess, Your Honor, I am not well-versed in the jurisdictional question that I'm raising to the Court. My co-counsel, Mr. Del Virginia, probably is.  He probably could address that more fully.  But I just want to stress to the Court we want to cooperate with the Court.

Our motivation here was simply to preserve the asset at this point.  That was our overriding obligation not to burden the estate, not to force any additional burden on the Court.  We certainly are willing to also brief this issue of giving the trustee these preservation powers we were discussing earlier, Your Honor.

THE COURT:  Well, so if the parties were to -- if I were to continue this, to give the parties time to actually address this proposed, you know, stay preservation, whatever you want to call it, if that would be helpful.

And Mr. Greenberg, if that means that you would no longer be pursuing the request to have the expansion of the trustee's powers, then I think it's worthwhile to continue this out for a few days to allow that to happen.  Is that what you were saying?  That if this is the agreement that you think it is, that you could possibly just withdraw the rest of the request?

MR. GREENBERG:  Your Honor, the alternative resolution here that Mr. Zirzow was proposing makes much sense as a matter of judicial economy and economy and interest of the

parties.  I was raising a jurisdictional question, okay, a process question, which, again, I confess a lack of intimate knowledge with.

Your Honor, I am not generally a bankruptcy practitioner.  I am a pretty experienced litigator.  So I do not know the contours of the jurisdictional question there.  Do we, in fact -- does Your Honor, in fact, have the power to so order the stipulation of the parties that will, in fact, be binding to stay that state court proceeding when the debtor, in fact, is not a party to it, but does now have standing and control over the prosecution as an asset of this estate?  I don't know the answer to that, Your Honor.

THE COURT:  And --

MR. ZIRZOW:  Your Honor -- I'm sorry, Your Honor.  Your Honor, if I may.  I think there's much of what Your Honor says and I may say what all the parties have said.  So I think Your Honor's proffered suggestion that at least the whole matter be carried for a few days while we do confer and perhaps even do some quick research would be well taken.  Just given the date, it's the 23rd today, so we do have a little bit of time.  It is teed up before Your Honor.

So if there is no resolution and there's a reason that we do have to proceed thereafter, obviously, Your Honor, the procedural rules would contemplate an expedited return to this, but I think it would be best for us to reconnoiter and

address it both collectively and with all the parties.

THE COURT:  And I think that sounds appropriate as well.  I was looking at Ms. Rawling.  Is the 30th a good date?  That's one week.

THE COURTROOM DEPUTY:  Yes, Your Honor.

MR. DEL VIRGINIA:  That works for me here in New York.  Yeah.

MR. GREENBERG:  Yeah, that's fine for creditors, Your Honor.

THE COURT:  Mr. Zirzow?  That would be March 30th.

MR. ZIRZOW:  Yes, that works for the debtor, too.  Thank you.

THE COURT:  All right.  So we'll go ahead and continue this particular matter to that date and time.  Preferably if the parties don't -- I guess, importantly, I'm not going to allow -- well, I'm thinking out loud here.  If the parties don't agree and you are going to go forward with the motion, and the creditors are going forward with the motion.  I would like additional briefing on the issue of the preservation portion of the request.  That may or may not be something that needs to be done at the same time.

I think if we went forward on the motion and the Court were -- and I'm not just saying I am, I'm just saying -- and the Court were to grant the relief at least as to the expansion of the powers with respect to like the investigation

and the writing up of the investigation, I think there still would be time to address the preservation issue.

So thinking through that out loud, I think I am not going to ask that there be any additional briefing. The parties can discuss this potential resolution to this matter. If you don't resolve it, we'll plan on going forward on the 30th as is with the papers that are currently on file.

MR. GREENBERG: Yes, Your Honor.

MR. ZIRZOW: Very fine, Your Honor.

MR. MCDONALD: Your Honor, this is Edward McDonald. If there's additional briefing on something other than the expansion of the powers under 1183(b)(2) and 1106(a)(3) and (4), something other than that, would other parties be able to submit briefs as well, Your Honor?

THE COURT: Yes, Mr. McDonald. I will let the U.S. Trustee's office brief that as well. In fact, I would welcome that.

MR. MCDONALD: Thank you, Your Honor.

THE COURT: All right. So let me get back to the rest of the matters on my calendar here. So let's see. So that gets us now -- I think we've covered everything in the main case. Let's go to the adversary where we have the motion to remand and -- let's see, one second. Okay. We also have the scheduling conference.

So Mr. Greenberg, if you want to proceed on the

motion to remand. I'll tell the parties I have read the papers, so you don't have to reiterate everything that's stated therein, but I will let you go ahead and argue. So go ahead.

MR. GREENBERG: Thank you, Your Honor. And I don't want to take up the Court's time reiterating what's in the papers. Fundamentally, Your Honor, this is a matter confined to your discretion, and I cannot tell the Court that there are, you know, absolute guideposts here in respect to what the Court should or shouldn't do regarding a remand in this situation.

But I would stress to the Court that there is no threat to the administration of the estate by the state court making all of the decisions and conducting all the activities that the state court would conduct if this case had remained in the state court. And fundamentally, the only item here that I think is really raised by the debtor regarding how the state court might somehow have interfered with the administration of the estate is the question of these appeal bond funds.

And as I have explained to the Court, it's very clear that these appeal bond funds are not property of the estate. There is no contrary authority. I mean, the authorities that have looked at this have agreed in this situation when these funds are put up and an appeal has run its course and it's been a remand, it's gone back downstairs to the trial court and then the debtor, you know, subsequently files for relief, those funds have passed. They've passed out of the debtor's hands.

They're not part of the bankruptcy estate.

And there is no concern to this Court. There is no concern to the debtor's proposed plan of reorganization. So there is no contrary authority, and the debtor doesn't claim there's contrary authority to that principle. Your Honor, what the debtor claims is really two things or three things, which is that somehow these funds were seized on a judgment execution, and therefore should be returned to the debtor. And that's really incorrect in the sense that these funds were on the verge of being distributed to my clients because they were seized on a judgment execution.

And the debtor came into the state court and persuaded the state court to put them into a bond. Got the state court to order that with the debtor's consent at the debtor's urging, to forestall further judgment execution while the appeal was pending.

So clearly they were put into an appeal bond. They did not remain just in limbo as an execution on the debtor's funds, you know, shortly prior to the petition filing which would be subject to a return, you know, to the debtor's estate. And in fact, they added $100,000 to these funds. So $100,000 of these funds never came from any kind of seizure from the debtor, and they ignore that issue in their papers, Your Honor. They don't even address that.

The other argument they raise is that somehow this

provision of the state law NRS 31.291, somehow constitutes just a lien right by the Murray creditors to these funds, and that they aren't really -- the debtor was somehow never dispossessed of ownership of them prior to the petition.  And that's really a misconstruction of the statute.  The statute deals with financial institutions and how financial institutions are to process garnishments on accounts when judgment executions come in.  So it's just not accurate.  And again this is discussed at page 5 of the reply, Your Honor.

This third argument they raise is this question of how, because the state court, when it put these funds into the bond, did not simply authorize me to distribute them to my clients when the appeal was over, which would be the normal course, obviously, but directed that I had to get authority from the state court to effect any distribution.

And Your Honor, this is like an interpleader situation.  I mean, I have, you know, 600 claimants who have interest in these funds.  So the state court had to retain continuing jurisdiction to oversee any distribution of these bond funds once the appeal was resolved and they were ripe for distribution.

Again, this is not a question of a distribution of the estate's property, and to the extent that these funds are distributed by the state court, they're not going to complicate the administration.  I mean, they will reduce the claims of the

unsecured creditors who get those payments so the debtor will get the full benefit of those distributions. So there really is no issue.

The only other issue that's raised to Your Honor is the question of this alter ego claim. And again, this is discussed in the papers. I think it's very clear from the ACON case and the Ninth Circuit authority and the nature of these claims which do not allege -- they're not alleging that the corporation somehow doesn't exist or has been, you know, a Ponzi scheme or something of that sort.

These are very personal individual claims to my clients regarding these minimum wage law violations and an intentional act by Mr. Nady to violate the minimum wage laws for his own personal benefit at the expense of my clients, not at the expense of any other creditors or any other people dealing with the debtor.

Therefore, they're not property of the bankruptcy estate under the Ninth Circuit's holding. I could go on, Your Honor. I don't want to take up the Court's time reiterating what is in the papers. Perhaps the Court has questions. I'd certainly like an opportunity to respond further after you hear from the debtor.

THE COURT: Well, one of the issues that concerns me is that it's not just the dispute regarding the appeal bond and the disbursement of that, but it also includes a request

regarding a receiver and the imposition of a receivership, which I find very problematic here.

MR. GREENBERG:  Your Honor --

THE COURT:  I'm delegating the overseeing of this bankruptcy case to a receiver in state court and I don't want to do it through a remand of this case.  Can you address that?

MR. GREENBERG:  My apologies, Your Honor.  Absolutely not.  There is no receiver request.  The state court can't appoint a receiver.  I have no intention of asking for that.  I think it is clear from the minutes that were put in the moving papers that when the bankruptcy petition was filed, the state court indicated that the case was stayed for all purposes, and the only thing that the state court judge was going to consider was the disposition of these bond funds.  So absolutely not, Your Honor.

All the state court can do at this point is dispose of those bond funds, perhaps, you know, proceed with the alter ego claims against Mr. Nady because he's not a party to the bankruptcy case and it can liquidate my claims. I mean, I have claims for attorney's fees and costs that it had never made rulings on which do need to be determined.  But obviously there can't be any enforcement of the judgment.

If the state court makes those determinations, they have to come back to this case, to this Court for administration, for disposition as part of the claims in the

bankruptcy case.  So I apologize, Your Honor, if that was not made clear.

THE COURT:  No, I just wanted to make sure that was the case.  It wasn't clear to me.  But you've now cleared it up.  What is the harm if the Court were to continue this to the confirmation date?  It's coming up pretty quickly, May 17th, and have this issue, because the plan does contemplate that there will be a resolution of this issue with respect to the appeal bond.  I mean I understand that it's just delayed for your client.  There's been lots of delays for quite a long time it looks like, in this case.  But is that the only emergency, if you will.

MR. GREENBERG:  Your Honor, I don't want to use the term "emergency."  Okay?  I don't believe that's appropriate. I need to be deferential to Your Honor's deliberative process here.  Okay?  Your Honor has many matters to deal with.  I don't think this case is a typical Sub V case, to say the least.  In fact, this litigation is not a typical litigation.

If Your Honor gets any sense of how long it's been pending, the multiple appeals that have been happening in the state court, the contempt findings, all sorts of things that have gone on.  Your Honor, fundamentally, if these funds are not estate property, and they clearly are not, there is no reason that this should be delayed.

The case should be remanded to the state court.  The

state court should deal with this, should figure out what to do with those funds.  The debtor's plan proposes to distribute those funds to all general unsecured creditors.  This is a significant infirmity in the plan.  We're not hearing objections to the plan at this point because those funds don't belong to all the creditors.  They belong just to my group of creditors, although admittedly, that's 80 percent of the unsecured creditors.

So Your Honor, would Your Honor be wrong to defer this into the future?  I cannot say Your Honor would be wrong. I want to be supportive of Your Honor's deliberative process. I want Your Honor to think things through, to feel comfortable with the decisions you're making.  So I don't want to press the Court.  I don't want to tell the Court this is an emergency.  I mean, look, my clients are owed unpaid minimum wages dating back to 2010.

I think it is somewhat of an outrage that this matter has gone on so long.  But that's got nothing to do with Your Honor.  This case has been before this Court for a very brief period of time.  Okay.  There's been a lot of delays in the state court proceedings.  So Your Honor needs to exercise your judgment as you believe is appropriate.  That's not my job.  If it was to my determination, Your Honor, I would urge Your Honor to make the determination today, remand this case, because there is nothing here that Your Honor should be burdened with

deciding.  It just makes no sense.

Your Honor is busy enough to retain jurisdiction here to make decisions over purely questions of state law, which, clearly the state court is better vested to do in determining what my fees are, in determining if Mr. Nady, in fact, is liable as an alter ego pursuant to state law.  Figuring out how these appeal bond monies should be distributed, given the state court's granting of class action certification under state law, and so forth, Your Honor.

THE COURT:  All right.  Thank you.

Mr. Zirzow, as I understand the papers, you know, and as I recall from just previous hearings and whatnot, the debtor isn't opposed to remand, it's more of a timing issue, correct?

MR. ZIRZOW:   That's fair, Your Honor.  Under the plan by design, I thought the plan was a pretty elegant solution for this issue, quite frankly.  I guess that isn't shared.  Hello?

THE COURT:  We're hearing something in the background.  If you could please mute your line if you're not speaking.

Go ahead, Mr. Zirzow.

MR. ZIRZOW:   Thank you, Your Honor.  Your Honor, I agree.  I thought the plan provided, I could say, a pretty elegant solution to this issue to avoid litigation on these kind of matters by ultimately providing a limited remand.

Because the plan, by design, basically says, hey, we have this large group of creditors.  There's an appeal pending before Nevada Supreme Court.  That appeal should play through, and we're going to park money until that decision, which, you know, the Nevada Supreme Court, unfortunately, is not in a hurry to decide things.  That may take a year or two, but we're going to park money, we're going to fund it into a reserve.  In the meantime, these monies are going to stay in Mr. Greenberg's trust account until we know the Nevada Supreme Court tells us, you know, if there's a reversal.

We're going to go back and see what the state court does.  If there's an affirmance, then the plan contemplates that there would start being distributions, including from these funds.  So I thought the plan, you know, just tries to give guidance to everybody.  It also provides a limited remand to basically allow that to happen.  That way, the state court isn't worried about, oh, am I ruling on claims and whether they're allowed in the bankruptcy?  Am I disposing of property of the estate in violation of the stay?  So I thought the plan really provides a nice solution to all of the issues that Mr. Greenberg is raising.

And let me just say what those are.  You know, he first talks about, oh, well, I have additional claims for attorney's fees I'm owed.  And, well, actually, ten days after he filed this motion to remand, he filed a proof of claim in

this bankruptcy case, Claim Number 16. He filed it on December -- or excuse me, February 20th, that asserted these claims. They're now proofs of claim at the bankruptcy. Why are we going to have a state court -- why are we remanding to a state court to decide whether that's an allowed proof of claim?

Secondly, he says, well, we need to know how the funds should be distributed. Well, that's the function of the plan in this Court. The debtor believes they're property of the estate. Mr. Greenberg can't just come in on a contested matter and say, well, we think they're not property of the estate. Well, actually, that requires an adversary, and that's the proper way to determine whether these are property of the estate. And in the meantime, nothing should be done with them.

So why remand a matter to a state court when this Court has exclusive jurisdiction to determine what is or is not property of the estate? I understand his arguments. He thinks I'm wrong. I think he's wrong on whether these funds are property of the estate or not. But the point is that matter won't be decided today and certainly not by the state court. It requires an adversary in the bankruptcy court.

Again, ultimately the debtor wasn't in a hurry to demand a turnover or file an adversary to adjudicate these matters. Instead, the debtor said hey, we're just going to deal with this in the plan. They are the largest, you know, asserted creditor. We dispute that. But they're at least on

paper the plan will provide a mechanism to deal with this either way.

So I think I totally agree with Your Honor's suggestion to defer this matter. There's no need to run back into state court on anything. He's filed his claim. The plan provides a mechanism to deal with this without litigation. Why are we going to have a state court running parallel track to this Court on deciding matters that impact this estate? I just think that's inappropriate. I think it's an invitation for disaster, too.

Your Honor seized on the issue of are we talking about a general remand of the entire case, including the receivership? Obviously, Mr. Greenberg had to say no to that. But what about other aspects here? Is Mr. Greenberg going to file other motions for sanctions or whatever else in state court? And are we going to have just an untoward, you know, uncontrolled process in state court when we have a debtor in bankruptcy?

Why would we multiply the costs in having two different parallel proceedings when we have a very simple solution that's up for confirmation in two months, actually less than two months, that provides, I think a very good solution that I think is also very fair to Mr. Greenberg's clients. It says if you have allowed claims, you get the money. If you don't, you return it. I mean, it's as simple as

that.

And for Your Honor's benefit you don't have to decide whether the Murray creditors have allowed claims.  The Nevada Supreme Court and, you know, if the debtor's belief is correct, the Nevada Supreme Court will reverse, then the Nevada state court will adjudicate, you know, if there are any claims left.  So the plan provides for that process.

It's a normal process that allows the state court to play through, the Nevada Supreme Court to play through, in the rules they should, but doesn't allow this to go off the rails in state court like I think Mr. Greenberg is trying to do with, you know, adding to claims and doing any other kind of relief.

And also, quite frankly, even if you filed stuff today, and it's not going to get to hearing before our plan confirmation.  So why not see what the plan does?  I think it provides a very good solution.  It stops all this parallel track litigation that Mr. Greenberg is trying to do.  It keeps things in bankruptcy court where they frankly belong, and it actually cuts down on the litigation costs, if you ask me, and focuses the parties on what's most important right now, which is the plan and avoids too much of a free for all here.

So look, his arguments, it is disputed that the funds in his trust account, which obviously he only has control over, you know, he doesn't have ownership of.  And then the alter ego claims I'm sorry, the Nevada Federal District Court has entered

several decisions on this issue.  At least it's in Nevada law on the issue.  It's very clearly established, notwithstanding his attempts to argue around those as to whether those are property of the estate.

So, Your Honor, I think you have to turn back to the original question I asked, which is what's the purpose of a remand?  What do we need the state court to do right now between now and confirmation?  And the short answer is absolutely nothing.

We don't need it to adjudicate Mr. Greenberg's claim, his proof of claim filed in this bankruptcy case.  We don't need it to decide what is or is not property of the estate, vis-à-vis, the funds in his trust account.  We don't need it to decide the alter egos claims.  Those are property of the estate.  We don't need it to do anything.

So why not let the plan play through that provides, I think, a very good solution to this.  And I would share the comments of Mr. Greenberg and the Court with this is unfortunately a very lengthy litigation saga, and why don't we focus on cutting down on some of that instead of breeding collateral proceedings at the same time we're having a bankruptcy?

So for those reasons, I do believe the matter should be either denied without prejudice or deferred to the confirmation hearing.  And look, Your Honor, if the plan

suddenly is just patently unconfirmable and you find that in May, which I don't think you will, then it may, you know, be time to unleash the dog, so to speak, and say, hey, this debtor had his chance and there's just real problems here.

And I do see a reason for the state court to now weigh in.  We can, you know, revisit the issue at that point, but let the plan at least play through.  That's what bankruptcy is designed to do here, to bring us a real solution, not breed collateral litigation that just multiplies attorneys' fees, introduces jurisdictional issues between Your Honor and the state court.  I think it's a recipe for a jurisdictional nightmare remanding this case back to the state court.

So for those reasons, Your Honor, we request denial, or at least denial without prejudice or deferral to the confirmation hearing.  Thank you.

THE COURT:  Mr. Greenberg, I will let you have a short response.  Go ahead.

MR. GREENBERG:  Yes, Your Honor.  I just want to emphasize to the Court that the defendant -- excuse me, in the state court, the debtor here is not entitled to a stay of the appeal's effects.  I mean, the debtor is certainly entitled to its reorganization rights, and releasing these bond funds is not going to affect its reorganization in any fashion, Your Honor.  They're not property of the debtor's estate.

And the debtor is not allowed to use this Court in

lieu of the state processes for getting a stay of judgment -- excuse me, stay, you know, an appeal bond in lieu of an appeal bond.  Obviously, by filing for relief here, all judgment enforcement, all proceedings that threaten the debtor's property in the state court are stayed.  We understand that.  Nobody disputes that, Your Honor.  That's the law.  But these funds, again, are not property of the debtor's estate.

And the debtor says, well, we have this elegant solution.  You know, we're going to have the plan confirmed, and these funds will be held along with funds paid under the plan until the appeal runs its course in another two years or whatever.  Well, Your Honor, they're not entitled necessarily to that relief under state law in respect to these $300,000 of appeal bond funds.  They already appealed once.  They lost.  It was remanded.  The judgment is for greatly in excess to those funds.

They can plead their case to the state court.  They could have pleaded their case to the state court in December.  They declined to do so.  Instead, they removed it to this Court.  And there's no reason this Court should be making that decision.  It's purely a question of state law.  And I understand they're insisting that this is disputed as to, you know, the status of the funds, but Your Honor has the briefings on this.  You have their explanations as to why these funds are not -- are estate property.

As I told Your Honor, $100,000 of it was voluntarily deposited as an appeal bond.  It doesn't even apply to their arguments otherwise.  So I'm repeating myself, Your Honor.  I don't want to take up Your Honor's time.  I would urge Your Honor to make a decision, because we've already explained this.  If Your Honor is going to defer a decision, I respect Your Honor's judgment on this.  Of course I must, and I certainly want Your Honor to be thoughtful about the issues.  This is not a typical situation coming before Your Honor, I'm sure.

THE COURT:  And I appreciate that, and I appreciate the argument.  And I have to say that I am skeptical of the removal propriety.  But that being said, I believe the property of the estate issue is one that would now need -- that would require an adversary proceeding.

I think that in weighing prejudice here, that it would be minimal, given the quick time line that we're on.  I am not inclined at this moment, and I've said this earlier, to be continuing this confirmation hearing date.

I think it's important to everyone to try their very, very best to make sure that they can meet that deadline.  So with that all being said, I am going to continue this matter to May 17th, to be heard in conjunction with the confirmation hearing.

MR. GREENBERG:  I understand, Your Honor.  We, of course, respect your decision.  I appreciate you listening to

42

our concerns.

THE COURT:  Certainly.  And that would leave the scheduling conference for today, and I think it makes sense at this point to also continue that to the May 17th date.  So we'll go ahead and continue all the matters in the adversary to the confirmation date.  All right.  Is there anything else?

MR. ZIRZOW:  Stay order on the -- I guess it's a deferral of or continuance of the motion, or is that just taken care of by a minute order?

THE COURT:  That will show up in a minute order.  So all of the matters today that were continued would show up as a minute order.

MR. ZIRZOW:  Thank you, Your Honor.

THE COURT:  All right.  Thank you.  We'll go ahead and adjourn the hearing.  Thank you, everyone.

(Proceedings adjourned at 10:47 a.m.)

* * * * *

**C E R T I F I C A T I O N**

I, Lisa Luciano, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, to the best of my ability.

_____

LISA LUCIANO, AAERT NO.  327          DATE:  July 19, 2023

ACCESS TRANSCRIPTS, LLC

# EXHIBIT "B"

LEON GREENBERG, ESQ., SBN 8094
RUTHANN DEVEREAUX-GONZALEZ, ESQ., SBN 15904
Leon Greenberg Professional Corporation
1811 South Rainbow Blvd- Suite 210
Las Vegas, Nevada 89146
(702) 383-6085
(702) 385-1827(fax)
leongreenberg@overtimelaw.com
ranni@overtimelaw.com

Attorney for Creditor
Leon Greenberg Professional Corporation
Attorney for *Murray* Case Creditors

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

-------------------------------------------------------X

**In re:**

**A CAB, SERIES L.L.C.**
    **fka A CAB, LLC,**

               **Debtor.**

-------------------------------------------------------X

**Case No. BK-22-14361-nmc**

**Chapter 11**

**DECLARATION**

     Leon Greenberg, an attorney duly licensed to practice law in the State of Nevada, and a member of the bar of this Court, hereby affirms, under penalty of perjury, as follows:

     1.     I am submitting this declaration in support of my office's opposition to the Objection (Doc. 338) filed by the Debtor to the Proof of Claim of Leon Greenberg Professional Corporation (Claim #16).

     2.     My office was diligently pursuing a resolution of its claims for an award of statutory attorney's fees and litigation expenses in the case of *Murray v. A Cab,* Nevada

Eighth Judicial District Court, A-12-669926-C, when that case was removed to this Court on December 14, 2022, Adversary Case. No. 22-01163. It had a filed, fully briefed, and pending motion for an award of certain appeal fees of $46,400 before the *Murray* state court when the *Murray* Case was removed (motion copy at Ex. "D" of this opposition). My office had been working on preparing a motion for an award of costs (litigation expenses) and intended to proceed promptly with a motion to have the remainder of its attorney's fees (through the date of that motion) also determined in the *Murray* Case.

3. My office promptly filed a motion to remand *Murray* to the state court on January 20, 2023, and that motion was heard on March 23, 2023, and remains *sub judice* with the Court. My office has been awaiting the resolution of that motion and the remand of the *Murray* Case so they can proceed to have their attorney fees and litigation cost claims fully determined by the state court (with the permission of this Court). Alternatively, if this Court declines to grant that remand, my office was intending, upon being furnished with an appropriate schedule and directions by this Court, to have those claims determined (liquidated) by this Court in the adversary case. It had not, since the removal of the *Murray* case, worked on preparing a request to have those fees and costs determined. It was not going to burden this Court with such a request since it had no idea if the Court would retain jurisdiction over *Murray* (and my office had requested it remand, not proceed with, the adversary case). But my office is prepared to promptly present its request to have those fees and costs determined by this Court, though it should in fairness be afforded additional time to do so. It has demonstrated that commitment, and the need

to be afforded such additional time, through an additional submission (Ex. "G" to the Opposition to the Objection).

4.      My office, as contingency fee compensated class action counsel, must keep, and does keep, contemporaneous, detailed, time records of attorney time expenditures. Those records are used to prepare, when necessary, a request for an award of attorney's fees if my office is successful in such litigation.  But until that success is secured, and it is also apparent that a formal fee application to a court is needed to determine my office's fee, no written itemized "statement" of that fee's amount, or "legal invoice," or any similar sort of document is prepared.   My office has no client to pay such an invoice or statement upon its presentation.   Often class action case settlements include an agreement for the payment of my office's fees.  In those situations, the court must approve my office's fee but will not require submission of attorney time records for review or an "itemized legal invoice or statement" in a form that would be given to an attorney's client.

5.      My office will prepare a written submission explaining its requested fee award, if a court must determine that award at the case's conclusion (there is no settlement of that fee by the parties).  When that occurs in cases, such as *Murray*, I prepare that submission, which is akin to a "statement" of my office's fee, in a form that is satisfactory to that court.  I was not required by the state court in *Murray* to submit my attorney time sheets as part of the fee award requests in that case, though I did inform that court about the amount and nature of the attorney time expenditures set forth in such records.

6.      My office, in response to the Debtor's request for production of all "itemized legal invoices and statements" in respect to the $789,924.54 in "unliquidated" amounts discussed in its Proof of Claim furnished the only "statement" that had been prepared: the pending motion (Ex. "D") to the *Murray* Court for $46,400 in fees related to an appealed issue involving a receiver application.   My office possessed its attorney time records, and invoices and records regarding its litigation expense payments, and such items could have been produced (subject to some limited redactions).   But the Debtor made no request to my office for the production of any of those items.   Nor did the Debtor make any sort of "informal" request for production of such items during a telephone discussion, in an email, or in any other fashion.

I have read the foregoing and affirm the same is true and correct.

Affirmed this 25th day of September, 2023

/s/ *Leon Greenberg*
Leon Greenberg, Esq.

# EXHIBIT "C"

Electronically Filed
11/17/2022 9:37 AM
CLERK OF THE COURT

ORDR

## DISTRICT COURT

## CLARK COUNTY, NEVADA

MICHAEL MURRAY and MICHAEL RENO, individually and behalf of others similarly situated,

Plaintiffs,

vs.

A CAB TAXI SERVICE, LLC, et al.

Defendants.

Case No.: A-12-669926-C

Dept. No. IX

## ORDER GRANTING PLAINTIFFS' MOTION
## FOR AWARD OF ATTORNEY'S FEES ON APPEAL

On February 17, 2022, Plaintiffs Michael Murray and Michael Reno, individually and on behalf of others similarly situated, filed a motion for an award of attorney's fees on appeal. On March 3, 2022, Defendants filed an opposition to the motion. On August 12, 2022, Plaintiffs filed a reply in support of the motion.

This case had previously been stayed until the Nevada Supreme Court decided a pending appeal in Nevada Supreme Court Case No. 83492, referred to in the papers as *Dubric*. On September 19, 2022, this Court issued an order lifting the stay given that, at that point, the *Dubric* appeal had been decided, with rehearing denied. However, the Court indicated that given the developments in this case, including in the *Dubric* matter, the parties could each file and serve one additional, omnibus brief in support of or opposed to any pending motion. The parties filed supplemental briefs on September 30, 2022. Having considered those supplemental briefs, along with the motion and related briefing and all pleadings and papers on file, the Court GRANTS the motion consistent with the following:

Plaintiffs filed a motion before the Nevada Supreme Court in connection with the appeal of the final judgment asking the Supreme Court to award attorney's fees or direct the district court to award attorney's fees pursuant to Article 15, Section 16

of Nevada's Constitution.  Article 15, Section 16, Subsection B (the Minimum Wage Amendment) states that "[a]n employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs."  In denying the motion without prejudice, the Supreme Court found that the determination of reasonableness called for by the Minimum Wage Amendment should be addressed in the first instance by the district court with greater fact-finding capabilities.  Plaintiffs now ask for $63,760 for their attorney's work on the final judgment appeal.  Plaintiffs support their request with the Declaration of Leon Greenberg.

As an initial matter, the Court finds that the plain language of the Minimum Wage Amendment allows for an award of attorney's fees incurred on appeal.  The relevant language provides for fees to a prevailing employee "in any action," to enforce the minimum wage amendment.  This necessarily includes the appeal, even if the appeal could be considered an action separate from the district court case.

The fees, however, must be reasonable.  In determining what of Plaintiffs' fees are reasonable, the Court relies upon the *Brunzell* factors: "(1) the qualities of the advocate: his ability, his training, education, experience, professional standing and skill; (2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) the work actually performed by the lawyer: the skill, time and attention given to the work; (4) the result: whether the attorney was successful and what benefits were derived."  *Brunzell v. Golden Gate Nat. Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969).  Importantly, in setting forth the *Brunzell* factors, the Nevada Supreme Court advised that "good judgment would dictate that each of these factors be given consideration by the trier of fact and that no one element should predominate or be given undue weight."  *Id.*

Here, the Court agrees with Mr. Greenberg on his view of the *Brunzell* factors as set forth in his declaration supporting the motion.

2

With regard to the first factor, Mr. Greenberg—who was the sole attorney for Plaintiffs on the appeal—is a fine advocate with significant experience litigating in Nevada courts. Defendants do not dispute this.

With regard to the second factor, the final judgment appeal raised a number of complex issues that were significantly important to the ultimate outcome of this case. The work took not insignificant time and skill. The Court considers the time expended, in assessing the work counsel actually performed (the third factor).

Thus, in analyzing the second and third factors in tandem, the Court reviews the declaration Mr. Greenberg submitted with the motion, along with his billing rate. Although the *Brunzell* factors do not expressly mention billing rates, the Court is of the position that reasonableness of billing rates is a necessary consideration in assessing the reasonableness of fees, including through the lens of the second and third factors.

The Court finds that the $400 hourly rate Mr. Greenberg asks for reasonable not only consistent with prevailing rates in the Las Vegas area, but also lower than what the Court would have expected for someone of his experience.

The Court now reviews the time spent on the appeal. Mr. Greenberg's declaration attests that he spent 179.9 hours in connection with the final judgment appeal, and then goes on to categorize those hours between the various tasks connected with the appeal (e.g., mediation, preparation of answering brief, reviewing appellant's appendix, preparation for oral argument).

Importantly, including with regard to the fourth factor that looks at the results and benefits achieved on appeal, Mr. Greenberg excludes from his fee request that 17.3 hours he spent on the unsuccessful statute of limitations issue and 3.2 hours he spent on issues that were either more administrative in nature or related to his own confusion concerning the completeness of the record.

Defendants assert that Plaintiffs were not successful in the result of the appeal because "the case has been reversed and remanded on several overriding issues."

3

Defendants mischaracterize what happened on the appeal of the final judgment. Plaintiffs largely prevailed on that appeal, with the Nevada Supreme Court reversing and remanding on only a few narrow issues. Mr. Greenberg has accounted for his time on such issues.

Accordingly, the Court finds that all four *Brunzell* factors weigh in favor of finding the requested fees reasonable.

***

For the foregoing reasons, the motion is GRANTED. The Court makes an award of $63,760 in favor of Plaintiffs and against Defendants in connection with Plaintiffs' attorneys' fees for the appeal of the final judgment.

IT IS SO ORDERED.

Dated this 17th day of November, 2022

7DA ABE 7DA7 CC60
Maria Gall
District Court Judge

4

# EXHIBIT "D"

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>A CAB, SERIES L.L.C.,<br><br>Debtor. | Case No. 22-14361-nmc<br>Chapter 11 |

**A CAB, SERIES L.L.C.'S FIRST SET OF REQUESTS FOR**
**PRODUCTION OF DOCUMENTS TO LEON GREENBERG, P.C.**

TO:     LEON GREENBERG P.C., Alleged Creditor

A Cab, Series, L.L.C., a Nevada series limited liability company, as debtor and debtor in possession (the "Debtor"), and pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7034, which incorporate Federal Rules of Civil Procedure 26 and 34, hereby request that you produce for inspection and copying the documents described herein.  Responses should be returned to Larson & Zirzow, LLC, 850 E. Bonneville Ave., Las Vegas, Nevada 89101, within thirty (30) days from the service of this document.

**DEFINITIONS**

The following definitions and rules of construction apply to these discovery requests:

1.     Document.  The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a) and shall include,

1

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

by way of example and without limitation, Electronic Data, Archives, the original and all non-identical copies, or handwriting, typewriting (including computer word processing and electronic mail), printing, photostating, photographing, microfiche, microfilm, tapes, cassettes, discs, audio recordings, completed video recordings, and every other means of recording upon any tangible thing, any form of communication or representation, including correspondence, letters, words, pictures, sounds or symbols, or combination thereof and any and all methods of electronic, mechanical or electrical data storage or retrieval.  A draft or non-identical copy is a separate document within the meaning of this term and must be produced.

2.    Electronic Data.  The term "Electronic Data" when used in the definition of the term "document" herein means all information of all kinds maintained by electronic or Computer processing systems including all non-identical copies of such information.  Electronic Data includes, but is not limited to, Computer Programs (whether private, commercial, complete, or work-in-progress), programming notes or instructions, input and/or output used or produced by any Software program or utility (including electronic mail messages and all information referencing or relating to such messages anywhere on the Computer system, word processing Documents and all information stored in connection with such Documents electronic spreadsheets, databases including all records, fields and structural information, charts, graphs and outlines, arrays of information, and all other information used or produced by any Software), operating systems, source code of all types, programming languages, linkers and compilers, peripheral drivers, TIF files, PDF files batch files, ASCH files, and any and all miscellaneous files and/or fragments, regardless of the media on which they reside and regardless of whether said Electronic Data consists in an active file, deleted file or file fragment.  Electronic Data includes any and all information stored in Computer memories, hard disks, floppy disks, CD-ROM drives, USB drives, flash media devices of all types and their equivalent, magnetic tape of all types, microfiche, punched cards, punched tape, Computer chips, including but not limited to EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital Data storage and/or transmittal. The term Electronic Data also includes the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with the information described above.

2

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

3. <u>Archive</u>. The term "archive(s)" when used in the definition of the term "document" herein means all processes for copying and storage, whether temporary or permanent, of Electronic Data in a Computer system, other than active files in on-line storage. "Archive" or "Archiving" refers to any system for maintaining Electronic Data off-line, whether referred to as an Archive, dump, purge, or by other terms, and also to any system for storage of electronic media that is not in current use on the system.

4. <u>Person</u>. The term "person" is defined as any natural person or business, legal, or governmental entity or association.

5. <u>Concern(ed/ing)</u>. The term "concern" or "concerning" means relating to, referring to, describing, evidencing, or constituting.

6. <u>Relat(ed/ing).</u> The term "relate(s) to" or "relating to" means in any way pertaining to, relating to, concerning, referring to, regarding, depicting, describing, evidencing, memorializing, embodying, containing, or constituting, in whole or in part.

7. <u>Involv(ed/ing) / Refer (red/ring).</u> The term "involving" or "referring" means showing, memorializing, containing, recording or otherwise revealing information that is the subject of the request.

8. <u>All/Each</u>. The term "all" and "each" shall be construed as all and each.

9. <u>And/Or</u>. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

10. <u>Murray Case</u>. The term "Murray Case" refers to the litigation proceeding in the Eighth Judicial District Court, Clark County, Nevada, styled as *Murray, et al. v. A Cab, Series L.L.C.*, Case No. A-12-669926-C, any appeals therefrom, and the subsequent removal to the U.S. Bankruptcy Court for the District of Nevada as Adv. No. 22-1163.

11. <u>Bankruptcy</u>. The term "Bankruptcy" refers to the Chapter 11 bankruptcy case filed on or about December 12, 2022 as Case No. 22-14361-nmc in the U.S. Bankruptcy Court, District of Nevada.

3

12.    Proof of Claim.  The term "Proof of Claim" refers to the *Proof of Claim* filed by Leon Greenberg, P.C., being Claim No. 16 filed on February 17, 2023, and any and all amendments or supplements thereto.

13.    You / Your.  The term "you" or "your" refers to Leon Greenberg, P.C. in this action, and/or any person(s) or entities acting on its behalf or at its request, including but not limited to counsel of record.

14.    Leon Greenberg P.C.  The term "Leon Greenberg P.C." refers to the law firm of which Leon Greenberg, Esq. and any attorneys working at their behest, as well as any associated counsel, including without limitation, Christian Gabroy, Esq. of the law firm Gabroy Law Offices, and Gabriel Del Virginia, Esq., of the Law Offices of Gabriel Del Virginia.

15.    Number.  The use of the singular form of any word includes the plural and vice versa.

16.    Capitalization.  Any defined term in these Definitions will have the meaning set forth in this section whether or not capitalized in the requests.

**INSTRUCTIONS**

If you contend that any document which production is called for by these requests is privileged or otherwise beyond the scope of Rule 26 of the Federal Rules of Civil Procedure, please identify that document with the following information:

1.    The type of document (e.g., report, letter, notes, notice, contract, etc.);

2.    The number of pages it comprises;

3.    The name of the person or persons who prepared or authored the document;

4.    The name of each person to whom the document was addressed or distributed or shown;

5.    The date of the documents preparation and the date the document was transmitted or shown;

6.    A general description of the subject matter of the document; and, if applicable;

7.    The name of the person who asked that the document be prepared.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

4

If you contend that only a portion of a document which production is called for by these requests is privileged or otherwise not subject to production, please produce a copy of the entire document deleting the privileged or objectionable portion. With respect to the deleted portion, to the extent that the produced portion of the document does not do so, you should provide the same information which would be provided if the entire document were withheld as privileged.

If any document otherwise required to be produced pursuant to this Request has been destroyed or lost, state: (a) the approximate date on which the destruction occurred; (b) the manner in which the destruction occurred; (c) the reason for the destruction; (d) the specific contents and form of the document; (e) the name of each person or persons who prepared or authored the document; (f) the name of each person to whom the document was addressed or distributed; (g) the name of each person who received a copy of the document; and (h) the date on the document.

Finally, these requests reach all documents which are within your possession, custody, or control. A document is deemed within your possession, custody, or control if you have the legal right to obtain it, whether or not you now have physical possession of it. Thus, you must obtain and produce all documents within the possession or custody of people or entities over whom you have control, such as secretaries, employees, attorneys, experts, accountants, agents, or others. If you have knowledge of the existence of documents responsive to these requests but contend that they are not within your possession, custody, or control, please provide the following information:

1.    A description of the documents, including in your description as much detail as possible;

2.    The identity of the person or entity, including his, her, or its address, believed by you to have possession or custody of the documents or any copies of them at this time; and

3.    A description of the efforts, if any, you have made to obtain possession or custody of the documents.

This discovery request is continuing in nature, and Debtor hereby demands that any responsive document coming to the possession of Leon Greenberg, P.C. subsequent to its original response to this discovery request be promptly furnished to Debtor pursuant to FRCP 26(e).

5

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

## DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 1:**

All detailed or itemized legal invoices or fee statements evidencing the $789,924.54 in "unliquidated" amounts asserted in your Proof of Claim filed in the Debtor's Chapter 11 Case, including without limitation, of Leon Greenberg, P.C. or any persons also working associated with that firm, including without limitation, Christian Gabroy/Gabory Law Offices, and Gabriel Del Virginia/the Law Offices of Gabriel Del Virginia.

**REQUEST FOR PRODUCTION NO. 2:**

All legal representation agreements, legal engagement letters, or other documents evidencing the terms and conditions of the retention of Greenberg, P.C. (inclusive of Christian Gabroy/Gabroy Law Offices, and Gabriel Del Virginia/the Law Offices of Gabriel Del Virginia) on behalf of any of the claimants in the Murray Case and/or in the Debtor's Bankruptcy.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents evidencing that Leon Greenberg, P.C. retains in its attorney trust/IOLTA account, including without limitation at Wells Fargo Bank, N.A., Account No. *0226, the sum of approximately $303,694.54 as asserted in your Proof of Claim filed in the Debtor's Chapter 11 Case, including without limitation, a bank statement dated on or after May 2023 reflecting that balance on hand as held arising out or related to the Murray Case.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents you have evidencing any work performed by Resolution Economics, LLC in the Murray Case, including without limitation, any detailed or itemized legal invoices or fee statements for work it performed.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents you have sent since January 1, 2018 to the present seeking a potential buyer for the Debtor's assets.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents you have received pursuant to any third-party subpoena you have served in the Debtor's Bankruptcy, and which have not already been produced to the Debtor's counsel.

Dated: June 16, 2023.

By:   /s/ Matthew C. Zirzow                       
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for Debtor

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

7

**CERTIFICATE OF MAILING**

I hereby certify that on the 16th day of June, 2023, I served the A CAB, SERIES L.L.C.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO LEON GREENBERG, P.C., by placing a copy in the United States Mail, postage prepaid at Las Vegas, Nevada, and by e-mail to the following:

Leon Greenberg, Esq.
Ruthann Devereaux-Gonzalez, Esq.
LEON GREENBERG P.C.
1811 South Rainbow Blvd-Suite 210
Las Vegas, NV 89146
Email : leongreenberg@overtimelaw.com;
         ranni@overtimelaw.com

Gabriel Del Virginia, Esq.
LAW OFFICES OF GABRIEL DEL VIRGINIA
30 Wall Street, 12th Floor
New York, NY 10005
Email: Gabriel.delvirginia@verizon.net

/s/ Carey Shurtliff
An employee of Larson & Zirzow, LLC

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

8

# EXHIBIT "E"

Electronically Filed
2/22/2022 4:54 PM
Steven D. Grierson
CLERK OF THE COURT

**MOT**

LEON GREENBERG, ESQ., SBN 8094
RUTHANN DEVEREAUX-GONZALEZ, ESQ., SBN 15904
Leon Greenberg Professional Corporation
2965 South Jones Blvd- Suite E3
Las Vegas, Nevada 89146
(702) 383-6085
(702) 385-1827(fax)
leongreenberg@overtimelaw.com

CHRISTIAN GABROY, ESQ., SBN 8805
Gabroy Law Offices
170 S. Green Valley Parkway - Suite 280
Henderson Nevada 89012
Tel (702) 259-7777
Fax (702) 259-7704
christian@gabroy.com

Attorneys for Plaintiffs

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| MICHAEL MURRAY, and MICHAEL RENO, Individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>A CAB TAXI SERVICE LLC, A CAB SERIES LLC formerly known as A CAB, LLC, and CREIGHTON J. NADY,<br><br>        Defendants. | Case No.: A-12-669926-C<br><br>Dept.: 2<br><br>**PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEY'S FEES ON APPEAL OF ORDER DENYING RECEIVER, OPPOSING MOOTED MOTION FOR ATTORNEY'S FEES, AND FOR COSTS ON APPEAL**<br><br>**HEARING REQUESTED** |

Plaintiffs, through their attorneys, Leon Greenberg Professional Corporation, hereby submit this motion for an award of attorney's fees in connection with their successful appeal of this Court's Order of February 22, 2021; for opposing defendants' now mooted motion filed March 15, 2021, seeking attorney's fees in response to the plaintiffs' properly presented motion seeking the appointment of a receiver, and for costs on such appeal. This motion seeks relief pursuant to the Nevada Constitution, Article 15, Section 16, the Nevada Minimum Wage Amendment (the "MWA") and NRAP 39.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**ARGUMENT**

**I.      Plaintiffs are prevailing parties in this litigation by a final judgment and under Nevada's Constitution must receive <u>attorney's fees for work performed in post-judgment proceedings.</u>**

Plaintiffs secured a final judgment in their favor under the Nevada Constitution, Article 15, Section 16, the Nevada Minimum Wage Amendment (the "MWA"), providing that "....an employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs."   Plaintiffs prevailed in this Court and secured a final judgment in their favor on August 21, 2018, that judgment being modified on appeal only to the extent of disallowing damages awarded for the period prior to October 8, 2010, such judgment otherwise being fully affirmed.[1] They are "prevailing employees" in this litigation who must receive appropriate awards of attorneys fees (motions concerning their award of pre-judgment attorney's fees and attorney's fees on their successful response to defendants' final judgment appeal are currently pending with the Court).

In these post-judgment proceedings the plaintiffs have already secured "prevailing party" status through a final judgment awarding them unpaid minimum wages and their attorney's post-judgment actions taken to enforce or defend that judgment must also receive an award of attorney's fees.  *See, Velez v. Vassallo*, 203 F. Supp. 2d 312, 315 (S.D.N.Y. 2002) (Additional attorney's fees awarded in case under New York and Federal minimum wage laws for post-judgment attorney work); *Weyant v. Okst*, 198 F.3d 311, 316 (2nd Cir. 1999) (Section 1983 plaintiffs must receive attorney's fees for "...opposing defendant's unsuccessful postjudgment motions."); *Torres-Rivera v. O'Neill-Cancel,* 524 F.3d 331, 335, 341 (2nd Cir. 2008) (Recognizing "presumption" that Section 1983 plaintiffs are to be awarded attorney's

---

[1]  As discussed in plaintiffs other pending motion, that judgment was affirmed for $686,770 (66.48%) of its original amount of $1,033,027.

2

fees for compelling collection of judgment);  *Lindsay v. Pacific Topsoils*, 120 P.3d 102, 109 (Wash. Ct. App. 2005) (If statute allows award of attorney's fees it should also apply to post-judgment litigation, citing *Weyant* and other authorities) (Washington Law); and other cases.

**II.      Plaintiffs should be awarded attorney's fees for securing reversal of the Court's Order, adopted at the defendants' urging, denying plaintiffs a hearing on the merits of  their request for a receiver and in opposing defendants' retaliatory motion for attorney's fees.**

As established by the Supreme Court's Order of February 17, 2022, (Ex. "A") the plaintiffs must have their request for a receiver heard on the merits.   That request was an attempt to collect their judgment and never considered on the merits because the Court was misled by the defendants' erroneous argument the plaintiffs had no right to such consideration.   If defendants had, properly, confined themselves to opposing that request on the merits, and not leading this Court to commit error, plaintiffs would not have had to prosecute such appeal.   Accordingly, the plaintiffs must now be awarded their attorney's fees for successfully prosecuting that appeal and overcoming defendants' unsuccessful post-judgment obstruction of the plaintiffs' right to enforce their judgment.

Any claim by defendants that such fees are unwarranted because plaintiffs have yet to secure, on the merits, the appointment of a receiver, is irrelevant to the this fee application.  Plaintiffs had an absolute right to a hearing on the merits of their request for a receiver and defendant improperly obstructed the plaintiffs' exercise of that right.  Plaintiffs must be awarded fees for securing that right through their successful appeal and opposition to defendants' related motion for attorney's fees.  That award is required to ensure defendant,  a "deep pocket losing party," does not, through its "recalcitrance," evade the purpose of attorney's fee awards in cases such as this by causing an "....erosion of fees awarded to the plaintiff for time spent obtaining the favorable judgment by requiring additional time be spent thereafter without compensation." *See*, *Hines v. City of Albany*, 862 F.3d 215, 222-23 (2nd Cir. 2017),

citing and quoting *Weyant,* 198 F.3d at 316, and *Gagne v. Maher,* 594 F.2d 336, 344 (2nd Cir. 1979), *affirmed* 448 U.S. 122 (1980).   Defendants could have entirely avoided their liability for such fees by allowing plaintiffs' motion for a receiver to properly proceed on its merits in the first instance.

Defendants further improperly obstructed plaintiffs' rights by filing defendants' retaliatory, baseless and now mooted, March 15, 2021, motion for attorney's fees. They must now also pay plaintiffs' attorney's fees for the time they forced plaintiffs' counsel to expend opposing the same.

### III.    Plaintiffs' counsel should be awarded fees of $46,400.

Plaintiffs' counsel should be awarded fees of $46,400.   That fee is based upon applying a lodestar rate of $400 per hour for 116 hours of attorney time, as discussed in the annexed Ex. "B" declaration of Leon Greenberg.  The hourly rate requested ($400) was approved as reasonable for Leon Greenberg's time in this Court's prior Orders of February 6, 2019, granting attorney's fees and the Discovery Commissioner's Report and Recommendation of December 11, 2015, filed on March 4, 2016.  A far higher hourly rate would also be appropriate, as such counsel in 2016 was awarded fees of $720 an hour by the Ninth Circuit Court of Appeals and the federal district court.  *Id.*, ¶ 4.

The controlling law guiding this Court on determining an appropriate award of attorney's fees,  *Brunzell v. Golden Gate National Bank*, 85 Nev. 345 (1969), and its progeny, does not mandate a "line by line" analysis of attorney time records.  Or even necessarily require a fee award based upon a "lodestar" rate/hours formulation.  But it certainly approves of, and perhaps favors, relying upon a time/lodestar rate approach to awarding attorney's fees.  It also directs the consideration of four factors (the four *Brunzell* factors) by this Court when it considers the appropriate attorney fee award. Those four factors are discussed in Ex. "B" and more that justify the proposed award of $46,400 as calculated based upon a lodestar rate/hours

**IV.    Plaintiffs' counsel should be awarded costs of $291.50.**

As discussed in Ex. "B" ¶ 8 plaintiffs incurred court filing fees of $291.50 in connection with this matter and should be awarded that $291.50 in costs against defendants.

**CONCLUSION**

For all the foregoing reasons, plaintiffs' motion should be granted.

Dated: February 22, 2022

LEON GREENBERG PROFESSIONAL CORP.

/s/ *Leon Greenberg*
Leon Greenberg, Esq.
Nevada Bar No. 8094
2965 S. Jones Boulevard - Ste. E-3
Las Vegas, NV 89146
Tel (702) 383-6085
Attorney for the Class

PROOF OF SERVICE

The undersigned certifies that on February 22, 2022, she served the within:

**PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEY'S FEES ON APPEAL OF ORDER DENYING RECEIVER, OPPOSING MOOTED MOTION FOR ATTORNEY'S FEES, AND FOR COSTS ON APPEAL**

by court electronic service to:

TO:

Esther C. Rodriguez, Esq.
RODRIGUEZ LAW OFFICES, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, NV   89145

Jay A. Shafer, Esq.
PREMIER LEGAL GROUP
1333 North Buffalo Drive, Suite 210
Las Vegas, NV 89128

/s/ *Ruthann Devereaux-Gonzalez*

Ruthann Devereaux-Gonzalez

6

# EXHIBIT "A"

IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL MURRAY; AND MICHAEL
RENO, INDIVIDUALLY AND ON
BEHALF OF OTHERS SIMILARLY
SITUATED,
Appellants,
vs.
A CAB TAXI SERVICE LLC; A CAB,
LLC; AND CREIGHTON J. NADY,
Respondents.

No. 82539

**FILED**

FEB 17 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

### ORDER OF REVERSAL AND REMAND

This is an appeal from a district court post-judgment order denying a motion to appoint a receiver in a class action. Eighth Judicial District Court, Clark County; Carli Lynn Kierny, Judge.[1]

Appellants are taxi drivers who secured a judgment against their former employer, respondent A Cab, LLC, for failing to pay them minimum wage. *See A Cab, LLC v. Murray*, 137 Nev., Adv. Op. 84, __ P.3d __ (2021). When appellants encountered difficulties satisfying the judgment, they moved the district court to appoint a post-judgment receiver. The district court denied appellants' first motion without prejudice and instead appointed a special master to submit a report as to whether appointing a receiver was feasible. The district court later ordered the special master to prepare a second report based on respondents' updated financials, but the special master passed away before completing this task or otherwise advising the district court. Appellants then renewed their

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted.

SUPREME COURT
OF
NEVADA

(O) 1947A

22-05374

request for a receiver,[2] while also seeking alternative relief to help secure their rights as judgment creditors. The district court denied the motion, finding that it was untimely and improper under various local rules because appellants' request for a receiver had already been denied several times.

As a preliminary matter, we first address respondents' contention that this court lacks jurisdiction over this appeal. Although the district court construed appellants' motion as one for reconsideration, its order also explicitly denied appellants' request to appoint a receiver. Accordingly, this court has jurisdiction pursuant to NRAP 3A(b)(4), which provides for an appeal from an order "refusing to appoint a receiver."

Appellants argue that the district court abused its discretion in denying their motion by misconstruing it as a motion for reconsideration. *See Bowler v. Leonard*, 70 Nev. 370, 383, 269 P.2d 833, 839 (1954) (providing that the decision to appoint a receiver is within the discretion of the district court). We agree. The district court's finding that appellants' motion had already been brought and denied several times was clearly erroneous.[3] *See Weddell v. H2O, Inc.*, 128 Nev. 94, 101, 271 P.3d 743, 748 (2012) (explaining that this court will uphold the district court's factual findings unless clearly erroneous or not supported by substantial evidence). Our review of the record reveals that appellants moved for the appointment of a receiver twice before their present request. The first time, the district court denied the

---

[2]At this time, a different judge had been assigned to preside over the case.

[3]Notably, the district court's finding that appellants' prior request for a receiver had been denied squarely conflicts with this court's prior order concluding that the district court had *not* denied appellants' request. *See Murray v. A Cab Taxi Serv. LLC*, No. 81641, 2020 WL 6585946, at *2 (Nev. Nov. 9, 2020) (Order Dismissing Appeal).

request without prejudice and sent the issue to a special master. Thus, the motion was not resolved at that time and appellants could renew their request at a later date. *See Sicor, Inc. v. Sacks*, 127 Nev. 896, 903, 266 P.3d 618, 623 (2011) (holding that a district court order denying a motion without prejudice "[did] not fully resolve the issues presented and contemplate[d] further action"). And the second time, in addition to the district court asking a special master to consider the issue, we concluded that the district court "neither granted nor denied [appellants'] request to appoint a receiver" when dismissing appellants' appeal from that second order. *Murray v. A Cab Taxi Service LLC*, No. 81641, 2020 WL 6585946, at *2 (Nev. Nov. 9, 2020) (Order Dismissing Appeal). Indeed, in both instances, the district court indicated that it would consider appointing a receiver but wanted guidance from a special master before making a final decision. And in both instances the district court did not receive the guidance it sought or enter a final order denying appellants' request. Thus appellants' request remained pending at the time they brought the motion underlying this appeal. Because appellants' request for a receiver was still pending, we conclude that the district court abused its discretion when it declined to consider the merits of appellants' motion.[4] We therefore reverse the district

---

[4]Although EDCR 7.12 generally prohibits re-filing a pending motion, district courts must balance this procedural rule with Nevada's policy of resolving cases on their merits. *See Stoecklein v. Johnson Elec., Inc.*, 109 Nev. 268, 271, 849 P.2d 305, 308 (1993) ("[T]he district court must consider the state's underlying basic policy of deciding a case on the merits whenever possible.").

court's order and remand this case for the district court to consider appellants' request on the merits.[5]

It is so ORDERED.[6]

_____, C.J.
Parraguirre

_____, J.                    _____, Sr.J.
Hardesty                                         Gibbons


cc:    Hon. Carli Lynn Kierny, District Judge
       Leon Greenberg Professional Corporation
       Hutchison & Steffen, LLC/Las Vegas
       Rodriguez Law Offices, P.C.
       Cory Reade Dows & Shafer
       Eighth District Court Clerk

---

[5]Because reversal and remand is warranted for the district court to consider the merits of appellants' request, we decline, at this time, to consider their arguments regarding the facts they claim support their request to appoint a receiver. *See Ryan's Express Transp. Servs., Inc. v. Amador Stage Lines, Inc.*, 128 Nev. 289, 299, 279 P.3d 166, 172 (2012) ("An appellate court is not particularly well-suited to make factual determinations in the first instance.").

[6]The Honorable Mark Gibbons, Senior Justice, participated in the decision of this matter under a general order of assignment.

# EXHIBIT "B"

LEON GREENBERG, ESQ., SBN 8094
RUTHANN DEVEREAUX-GONZALEZ, ESQ., SBN 15904
Leon Greenberg Professional Corporation
2965 South Jones Blvd- Suite E3
Las Vegas, Nevada 89146
(702) 383-6085
(702) 385-1827(fax)
leongreenberg@overtimelaw.com

CHRISTIAN GABROY, ESQ., SBN 8805
Gabroy Law Offices
170 S. Green Valley Parkway - Suite 280
Henderson Nevada 89012
Tel (702) 259-7777
Fax (702) 259-7704
christian@gabroy.com

Attorneys for Plaintiffs

## DISTRICT COURT
## CLARK COUNTY, NEVADA

| | |
|---|---|
| MICHAEL MURRAY, and MICHAEL RENO, Individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>A CAB TAXI SERVICE LLC, A CAB SERIES LLC formerly known as A CAB, LLC, and CREIGHTON J. NADY,<br><br>    Defendants. | Case No.: A-12-669926-C<br><br>Dept.: 2<br><br>ATTORNEY'S DECLARATION |

## DECLARATION

Leon Greenberg, an attorney duly licensed to practice law in the State of Nevada, hereby affirms, under penalty of perjury, that:

1.    I am one of the attorneys for the plaintiffs and was the sole attorney for the plaintiffs in the appeal taken by plaintiffs from the Court's Order of February 22, 2021, denying plaintiffs' request for the appointment of a receiver, such Order reversed by the Nevada Supreme Court's Order of February 17, 2021.  I was also the sole attorney for the plaintiffs in connection with their opposition to the defendants' now mooted motion filed March 15, 2021, seeking an award of attorney's fees to defendants for securing the Court's now reversed order of February 22, 2021.

2.      I am presenting this declaration in connection with plaintiffs' motion for an award of attorney's fees in connection with their successful appeal of this Court's Order of February 22, 2021, and for opposing defendants' now mooted motion filed March 15, 2021, seeking attorney's fees in response to the plaintiffs' properly presented motion seeking the appointment of a receiver; and for costs on such appeal. Prior to drafting this declaration I have reviewed the contemporaneous time records I personally maintained of the work I performed in connection with that appeal.  All such time entries are recorded in increments of a tenth of an hour, with each such entry including the date such work was performed and a description of the work so performed.   There are 64 such time entries through today, February 22, 2022.   Those 64 time entries corroborate that I expended at least  the following amounts of time (all figures are rounded down) for which attorney's fees should be awarded;

116   hours of my time in total, consisting of:

23   hours on the initial motion for a receiver, including replying to defendants' opposition to that motion;

11   hours responding to defendants' motion filed March 15, 2021, seeking attorney's fees for opposing plaintiffs' motion for a receiver (1.5 hours of travel time was consumed in addition to those 11 hours);

75   hours on the appeal of the Court's Order denying plaintiffs' motion to appoint a receiver;

7   hours preparing this motion for fees and costs.

3.      This fee request includes no requested fee based on the time expenditures of my law clerk or based on any travel time (1.5 hours of travel time is not charged).

4.      The hourly rate ($400 an hour) upon which I am basing this fee request ($400 x 116  = $46,400) is the same rate found by this Court in its order of February 6, 2019, to be reasonable for a fee award based on my time expenditures prior to final judgment (at  p. 5, l. 5).  The Supreme Court also found in its decision that this Court's

award of attorney's fees based on that hourly rate was not excessive or performed in an inappropriate manner. 501 P.3d at 975. That hourly rate is also appropriate given my experience and qualifications. I am a 1992 *magna cum laude* graduate of New York Law School where I received the Trustee's Prize for having the highest GPA of all graduating evening division students, graduating first in my division and third out of 358 day and evening division students. I am a member of the bars of the States of Nevada, California, New York, New Jersey and Pennsylvania and have continuously practiced law full time since 1993. I have appeared as appellate counsel in at least 15 cases and orally argued in the Nevada Supreme Court at least 10 times since 2008. That hourly fee amount is also reasonable as I have been awarded fees at the considerably higher rate of $720 an hour in 2016 by both the Ninth Circuit Court of Appeals for appellate work and by the United States District Court for the District of Nevada. *See, Tallman v. CPS Security,* United States Court of Appeals for the Ninth Circuit, appeal No. 14-16508, Docket 42, Order filed September 8, 2016, and motion granted by such Order and later district court proceedings in that case*,* 09-cv-944, Order of November 29, 2016. I believe the foregoing adequately demonstrates the proposed fee award is appropriate under the first *Brunzell* factor, dealing with the quality of the advocate performing the work.

5.      The second *Brunzell* factor concerns the intricacy, importance and difficulty of the work I performed. This appeal involved a convoluted record that was confusingly presented by defendant to this Court and extensive research and briefing on the relevant legal standard, the latter not being significantly addressed by Nevada's jurisprudence. Significant time was expended on the appeal briefs as a result.

6.      In respect to the third *Brunzell* factor, the skill, time and attention I gave to this appeal, I expended substantial time on this appeal, as discussed. I also did so in a skillful manner, as confirmed by the quite successful outcome of the appeal for the plaintiffs.

3

7. In respect to the fourth *Brunzell* factor, the results achieved and benefit conferred, I submit the overwhelmingly favorable results achieved for plaintiffs on the appeal establish that factor is also satisfied. The results achieved for the plaintiffs, a requirement that this Court examine the merits of the plaintiffs' request for a receiver to assist them in collecting their award of over $686,000 in unpaid minimum wages for 662 taxi cab drivers, was outstanding and justifies the requested fee award under such *Brunzell* factor.

8. My office expended at least the following $291.50 in costs in connection with this appeal and the proceedings in this Court:

| Paid to | For | Amount |
|---|---|---|
| Supreme Court | Appeal Fee | $250 |
| District Court | Notice of Appeal Fee | $24.00 |
| Wiznet | $3.50 per filing at least five filings | $17.50 |
| TOTAL | | $291.50 |

I affirm this 22th day of February that the foregoing is true and correct under the penalty of perjury.

*/s/ Leon Greenberg*
Leon Greenberg

4

# EXHIBIT "F"

Electronically Filed
12/14/2022 4:30 PM
Steven D. Grierson
CLERK OF THE COURT

**NOAS**
Esther C. Rodriguez, Esq.
Nevada Bar No. 6473
RODRIGUEZ LAW OFFICES, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
702-320-8400
info@rodriguezlaw.com

Jay A. Shafer, Esq.
Nevada Bar No. 9184
CORY READE DOWS & SHAFER
1333 North Buffalo Drive, Suite 210
Las Vegas, Nevada  89128
702-794-4411
jshafer@crdslaw.com
*Attorneys for Defendants*

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| MICHAEL MURRAY and MICHAEL RENO, Individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>A CAB TAXI SERVICE LLC; A CAB SERIES, LLC f/k/a A CAB, LLC; and CREIGHTON J. NADY,<br><br>Defendants. | Case No.:    A-12-669926-C<br>Dept. No.    IX |

**NOTICE OF APPEAL**

Notice is given that Defendants A CAB, LLC, and A CAB SERIES, LLC ("Defendants")

hereby appeal to the Supreme Court of Nevada from:

1. All judgments and orders in this case;

2. "Order Granting Plaintiffs' Motion for Entry of a Modified Judgment as Provided for

by Remittitur," filed on November 11, 2022, notice of entry of which was served electronically on

November 14, 2022 (Exhibit A);

3. "Order Granting Plaintiffs' Motion for Entry of a Modified Award of Pre-Judgment

Page 1 of  3

Rodriguez Law Offices, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel (702) 320-8400
Fax (702) 320-8401

Attorney's Fees as Provided for by Remittitur," filed on November 11, 2022, notice of entry of which was served electronically on November 14, 2022 (Exhibit B);

4.    "Order Granting Plaintiffs' Motion for Award of Attorneys' Fees on Appeal," filed on November 17, 2022, notice of entry of which was served electronically on November 17, 2022 (Exhibit C);

5.    "Order Continuing Decision on Plaintiffs' Motion for an Award of Attorneys' Fees on Appeal of Order Denying Receiver, Opposing Mooted Motion for Attorney's Fees, and For Costs of Appeal," filed on November 17, 2022, notice of entry of which was served electronically on November 17, 2022 (Exhibit D);

6.    "Order Amending the Class," filed on November 17, 2022, (Exhibit E);

7.    "Order Modifying Final Judgment Entered on August 21, 2018," filed on November 17, 2022, notice of entry of which was served electronically on November 17, 2022  (Exhibit F);

8.    "Order Modifying Order of February 6, 2019, Granting Plaintiffs an Award of Attorneys' Fees and Costs," filed November 17, 2022, notice of entry of which was served electronically on November 18, 2022 (Exhibit G);

9.    "Order Denying Defendants' Motion for Sanctions," filed on November 17, 2022, notice of entry of which was served electronically on November 17, 2022 (Exhibit H);

10.    "Order Granting Motion to Stay, Offset, or Apportion Award of Costs,'" filed November 17, 2022 (Exhibit I);

11.    "Order Denying Defendants' Motion for Costs" filed November 17, 2022, notice of entry of which was served electronically on November 17, 2022 (Exhibit J); and

. . .

. . .

. . .

. . .

. . .

. . .

. . .

Rodriguez Law Offices, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel (702) 320-8400
Fax (702) 320-8401

**Rodriguez Law Offices, P.C.**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel (702) 320-8400
Fax (702) 320-8401

12.     All rulings and interlocutory orders made appealable by any of the foregoing.

DATED this __14th__ day of December, 2022.

**RODRIGUEZ LAW OFFICES, P. C.**


__/s/   Esther C. Rodriguez, Esq._____
Esther C. Rodriguez, Esq.
Nevada State Bar No.  006473
10161 Park Run Drive, Suite 150
Las Vegas, Nevada  89145
*Attorneys for Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this __14th__ day of December, 2022, I electronically filed the foregoing with the Eighth Judicial District Court Clerk of Court using the E-file and Serve System which will send a notice of electronic service to the following:

Leon Greenberg, Esq.
Leon Greenberg Professional Corporation
1811 South Rainbow Boulevard
Las Vegas, NV 89146

Christian Gabroy, Esq.
Gabroy Law Offices
170 South Green Valley Parkway # 280
Henderson, Nevada 89012
*Co-Counsel for Plaintiffs*


__/s/ Susan Dillow_____
An Employee of Rodriguez Law Offices, P.C.

# EXHIBIT "G"

LEON GREENBERG, ESQ., SBN 8094
RUTHANN DEVEREAUX-GONZALEZ, ESQ., SBN 15904
Leon Greenberg Professional Corporation
1811 South Rainbow Blvd- Suite 210
Las Vegas, Nevada 89146
(702) 383-6085
(702) 385-1827(fax)
leongreenberg@overtimelaw.com
ranni@overtimelaw.com

Attorney for Creditor
Leon Greenberg Professional Corporation
Attorney for *Murray* Case Creditors

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

-------------------------------------------------------X

**In re:**

                                               **Case No. BK-22-14361-nmc**

**A CAB, SERIES L.L.C.**
     **fka A CAB, LLC,**                    **Chapter 11**

            **Debtor.**

-------------------------------------------------------X

**DECLARATION OF LEON GREENBERG**

**Re: Liquidation of Unliquidated Claim of
Leon Greenberg Professional Corporation
Claim No. 16**

Leon Greenberg, an attorney duly licensed to practice law in the State of Nevada, and a member of the bar of this Court, hereby affirms, under penalty of perjury, as follows:

1. I am the attorney for the *Murray* Creditors and have presented Claim No. 16 in this case. That claim includes a description of yet to be liquidated amounts owed to my office for the attorney services my office, and its co-counsel, have provided to the *Murray* Creditors since the entry of the *Murray* state court judgment in 2018. While the *Murray* litigation was commenced in 2012, all attorney's fees owed by the Debtor to the *Murray* counsel for their services prior to the entry of the *Murray* judgment in 2018 have been liquidated and exactly determined by the state court pre-petition (as detailed in the Claim). The unliquidated claims include claims for litigation expenses advanced by my office that the Debtor is responsible for paying (as the losing party in the *Murray* litigation) since the commencement of the *Murray* state court litigation in 2012.

**Purpose of this Declaration**

2. This declaration is submitted to explain to the Court the need, as a matter of fundamental fairness and equity, for my office to be granted a reasonable period of time, and a reasonable process, to present its yet to be liquidated claims for attorney's fees and litigation costs for a just and proper determination. The Debtor's pending Objection to those claims urges the Court to deny those claims as a matter of law and does not propose any process to allow for their determination. This declaration also provides, *infra,* to the extent currently possible, certain detailed information germane to the liquidation of a minority portion of those claims, if the Court elects to make rulings as to their proper value at this time. In the interests of justice, the Court should make no such rulings at this time, but I am mindful that it is the Court's prerogative to determine how

it should proceed.   As a result, I provide that limited currently available information if the Court elects to so proceed at this time.

**It would be manifestly unfair to deny my office a reasonable period of time to present and assemble its evidence and arguments <u>supporting its unliquidated attorney fee and litigation expense claims.</u>**

3.    The Debtor filed its objections to my office's unliquidated claims on August 31, 2023.  Those objections are set for hearing on October 3, 2023.   The Debtor's counsel agreed to defer a response to those objections until September 25, 2023, but declined my request that we defer the hearing and response on those objections for 30 days or more, until after the scheduled October 11, 2023, Plan confirmation hearing.   The period of time afforded to my office (25 days) to submit its arguments and evidence as to the proper liquidation value of those claims is insufficient for it to fairly do so.  It must also respond to the Debtor's extensive arguments (having nothing to do with the proposed value of those claims) that those unliquidated claims must be denied as a matter of law.  It must also prepare for the Plan confirmation hearing and attend to other matters.  It would be manifestly unfair to my office for the Court, at the October 3, 2023, hearing, to "close the record" in respect to those claims and proceed to liquidate them and determine their value based upon the submissions made to the Court as of that date.

4.    In the normal course, my office would submit appropriate fee applications in support of its unliquidated claims to the *Murray* state court, which is charged with determining and awarding attorney's fees and costs in *Murray*.   It had one such request pending in *Murray* (copy at Ex. "E" to my office's response to the Debtor's claim

objection) and intended to submit others when the Debtor removed the *Murray* case to this Court. Remand of that case was requested 36 days after its removal; that request was heard and argued on March 23, 2023, and remains *sub judice*. In the interim, my office has not been provided with any notice that this Court would impose a schedule for hearing and determining those claims (which my office believes are more efficiently determined post-remand by the state court).

5.     My office maintains detailed attorney time records and expense records that it will consult to make its fee requests. An example of that request made to the *Murray* state court is at Ex. "E." That request for $46,400 in fees on one litigation issue discussed a relevant lodestar rate and lodestar hours (attorney time expenditures) based on a review I conducted of my office's attorney time records but did not include copies of those time records. *Id.* That was because the Nevada Supreme Court in the *Murray* appeal held I did not need to submit those time records for review if the district court did not request them. *A Cab LLC v. Murray*, 501 P.3d 961, 975 (Nev. Sup. Ct. 2021) (en banc). I have not received any request by the *Murray* state court to present my office's attorney time records in connection with any claim for attorney's fees.

6.     Preparation of attorney fee requests (motions) are time consuming. I must review my office's attorney time records, evaluate to what extent certain time expenditures may not be properly included in a fee request, and then explain the reasons for the fee so requested. For example, preparation of the fee request motion at Ex. "E" consumed seven hours of my time (discussed in my declaration at Ex. "B" to Ex. "E" p. 2, l. 21). And that did *not* include the time that would be needed to properly present a

copy of my relevant time records in connection with such a motion.  Preparing and presenting such time records is additionally time consuming, as they must be redacted to remove privileged communication entries and to spell out any abbreviations used.  For example, I am providing at Ex. "1," Ex. "2" and Ex. "3" to this declaration three sets of my redacted time records, discussed *infra*, relating to certain portions of my office's fee claims.   Reviewing and redacting those records (they consist of 520 lines of time entries) consumed over 5.5 hours of my time.   My office is capable of presenting all relevant attorney time records for review in connection with its fee claims if the Court deems that necessary.  But doing so would require a review of well over 1,000 lines of individual time entries not just for myself but for my co-counsel as well.   It should be afforded a reasonable opportunity to do that if the Court directs such records be so produced.

**My office presents its attorney time records establishing it is owed
at least $237,848 for a minority portion of its unliquidated fee claim.**

7.      At Ex. "1" to this declaration are my redacted time records that would serve as the basis for a fee claim for my time expenditures after January 1, 2022, and through the December 12, 2023, filing of the Petition.   Those records exclude any time expenditures for which fees were otherwise sought, or for work for which fees may be sought that was performed in any court proceeding besides *Murray v. A Cab*, and indicate I should be awarded a fee for the same based upon 255 attorney work hours and 5.4 attorney travel time hours.   At Ex. "2" to this declaration are my redacted time records that would serve as the basis for a fee claim for my time expenditures after entry

of final judgment in *Murray* in August of 2018 and through December 31, 2021.   Those records exclude any time expenditures for which fees were otherwise sought or awarded, or for work for which fees may be sought that was performed in any court proceeding besides *Murray v. A Cab*, and indicate I should be awarded a fee for the same based upon 203.9 attorney work hours and 11 attorney travel time hours.  At Ex. "3" to this declaration are my redacted time records that served as the basis for my Ex. "E" motion (they were not submitted to the state court with that motion).  Those records confirm I should be awarded a fee, as requested in that motion, for 117.4 hours of attorney time expenditures (that motion not requesting an award for the 1.5 hours of travel time shown in those records).   At Ex. "4" to this declaration are redacted time records that would serve as the basis for a fee claim for the time expenditures of Ruthann Gonzalez, my office's associate attorney, for work performed in the *Murray* case from January 1, 2022 through December 9, 2022.  Those records confirm a fee of 31.2 hours are properly awarded for such attorney time expenditures.

8.      The annexed redacted time records at Exhibits 1 to 4 establish an entitlement to attorney's fees for 575.9 hours of my time expenditures (plus 17.9 hours of travel time) and 31.2 hours for my associate.   If my 575.9 hours were awarded at $400 an hour, and my associate's 31.2 hours at $240 an hour, fee rates awarded in *Murray* in 2018, those records support a fee award of $237,848 (plus travel time).   I would request a fee award that was greater than that amount based on the delay in receiving payment for those time expenditures and my entitlement, personally, to a higher hourly rate.

**My office possesses additional claims for attorney's
fees for which it has not yet provided redacted time records;
those claim may be in excess of $500,000 and a fair and
<u>reasonable process for their determination should be implemented.</u>**

9.    My office has had insufficient time to itemize and support, through properly organized and redacted time records, every aspect of its attorney's fee claims. There are numerous other expenditures of attorney time for which fees are properly claimed, for a collective amount that may well exceed $500,000.   I have only been able to conduct a preliminary and partial review of the time records that would support those claims.  Those records indicate the existence of the below substantial additional claims for attorney's fees which my office should be granted a reasonable opportunity to detail and present for determination:

- I have spent over 400 hours of my time since the *Murray* final judgment was rendered in 2018, and prior to the filing of the Petition, on other, collateral, litigations related to *Murray*.  Most of that time was spent responding to abusive proceedings pursued by the Debtor to subvert the *Murray* judgment.   These include the *Dubric* case and the defense of other cases abusively filed against my clients by the Debtor (*Gagliano* and *A Cab v. Murray,* both dismissed with sanctions being imposed against the Debtor's counsel).  They also include time spent prosecuting a fraudulent conveyance lawsuit against the Debtor.

- I have spent over 600 hours of time since the filing of the Debtor's

Petition on the proceedings in this case.   Those proceedings are still ongoing, rendering a determination of the full amount of those post-petition claims not possible at this time.  At least 538 of those hours were spent prior to the Debtor agreeing to significantly amend its Plan for the benefit of my clients, meaning those attorney hours may be properly awarded as a fee on that basis.   That fee, at $400 an hour, would be at least $215,200.

- Other attorneys working with my office have expended hundreds of additional hours of time for which fees are properly sought.   My office has time records for its associate, Dana Sniegocki, that may establish a fee claim for her time expenditures that exceed 200 hours.  My other co-counsel, Gabriel Del Virginia and Christian Gabroy have also expended significant time for which fees are properly sought.

**My office should be given a reasonable opportunity to present
its claim for litigation expenses that are in excess of $65,000.**

10.   My office has pre-petition claims for litigation expenses that are in excess of $61,000.[1]   In addition, it has substantial post-petition expenses (including court reporter deposition costs) that are in excess of $5,000.  It possesses documentation on those expenses (invoices, cancelled checks, etc.) and is prepared to adequately

---

[1] A typographical error in the Proof of Claim compiled those expenses as $71,389.29, the proper number was $61,389.29.

establish the same.   But it cannot gather and submit such supporting documentation on such short notice and should be granted an opportunity to do so on some reasonable schedule.   At this time, I can provide the following summary/itemization of the majority of those expenses:

| Expense | Amount |
|---|---|
| Process Server, Runner, Overnight Delivery | $358.06 |
| Court Filing Fees Including WIZNET fees for filing documents | $2,158.97 |
| Transcripts of Court Hearings, Court Reporter Fees for Depositions, and $990 Fee paid for Deposition Appearance of Defendants' Expert | $10,680.68 |
| Fees paid to Experts and Computer Data Consultants to Assist in Prosecution of Case and Extracting Information from Defendants' Computer Data Files | $29,022 |
| Class Notice Costs of Postage and Mailing Materials | $1,491.59 |
| Online Investigation Costs | $168.19 |
| Charges Paid to Defendant for Duplication of Defendants' Records (Trip Sheets) as Per Defendants' Insistence | $918.34 |
| TOTAL EXPENSES | $44,797.83 |
| | |

I have read the foregoing and affirm the same is true and correct.

Affirmed this 25th day of September, 2023

/s/ *Leon Greenberg*
Leon Greenberg, Esq.

# EXHIBIT "1"

ATTORNEY TIME CHARGES - LEON GREENBERG
January 3, 2022 through December 9, 2022 - Pre-Petition
(Excludes time charges in cases besides *Murray v. A Cab* 2012 case
and time charges sought for payment by any other fee application)

| Redacted Time Records<br>Attorney Leon Greenberg<br>Abbreviations:<br>CG - Co-class counsel Christian Gabroy<br>SS - Legal Assistant Sydney Saucier<br>DS - Associate Dana Sniegocki<br>RG - Associate Ruthann Gonzalez | Time to tenth of an hour | Travel Time | Time not credited on fee claim request |
|---|---|---|---|
| January 3, 2022 - Review NRAP on post decision issues on fees, etc. | .4 | | |
| January 3, 2022 - Letter to defendant counsel on status, settlement issues on modified judgment, calculation on  interest owed | 1.4 | | |
| January 3, 2022 - telephone with REDACTED | .3 | | |
| 1/4 & 1/5 - NO TIME CHARGE - figure out issue with 3.9k discrpency in damanges amounts/time periods, make notes on the same | | | |
| January 4, 2022 - Work on motion for fees on appeal, lexis on same | 6.4 | | |
| January 5, 2022 - Finish motion on fees, interest, post-appeal - | 4.3 | | |
| January 6, 2022 - Final proofs, edits, on motion for fees, have same file.... | 1.2 | | |
| January 13, 2022 - Start, draft out almost all, of motion fees reply on appeal | 4.2 | | |
| January 14, 2022 - Finish reply on motion for fees on appeal & interest | 3.3 | | |

Page 1 of  12

| | | | |
|---|---|---|---|
| January 21, 2022 - Review Esther Rodriguez motion on appeal costs, itemize same & issues, email her re: requests are not compliant with rule, let us figure out & avoid motion on the same | .9 | | |
| January 25, 2022 - Telephone with Esther Rodriguez on trying to see if can work out issues overall = REDACTED | .5 | | |
| January 25, 2022 - Telephone with Esther Rodriguez on issues with  costs on appeal, she concedes bond requests are not proper but refuses to agree to take out, try to get her to continue till after 2/16, refuses, 1st says will give time on response then refuses & says send stipulation & hangs up - prepare and send stipulation for 1 week on response. | .4 | | |
| January 31, 2022 - Letter to Esther Rodriguez on failure to cooperate on issues on costs appeal, her improper cost claims | .3 | | |
| January 31, 2022 - WORK ON opposition on appeal costs | 1.3 | | |
| February 1, 2022 - Draft opposition on appeal costs, do all issues, itemization of cost amounts | 3.2 | | |
| February 2, 2022 - Edits/finalize motion opposition on costs, draft declaration for same & turn over to RG to get in final, filed | 2.4 | | |
| February 3, 2022 - Final review of appeal costs opposition, edits, have RG assist/file same | .2 | | |
| February 7, 2022 - Review documents, materials, on original judgment & record on same, draft declaration for C Bass on entry of modified judgement, gather the materials on same, memo to him on doing/documenting | 6.8 | | |
| February 8, 2022 - Telephone x2 with  C Bass on revising judgment, locate & send him materials, he drafts out revised spreadsheet, discuss with him, he to work up more... | .9 | | |
| February 9, 2022 -Telephone C Bass on status of work, modified judgment table | .2 | | |

| | | | |
|---|---|---|---|
| February 9, 2022 - Review new C Bass spreadsheet, email him on next step, review materials in record to confirm match up of analysis, revise his draft declaration on same | 1.1 | | |
| February 9, 2022 - Review additional workup in spreadsheet for modified judgment list from C Bass, discuss with him, he to do PDF list for judgment | .2 | | |
| February 10, 2022 - Review Esther Rodriguez reply saying costs are under NRAP 39 & uncontested = file supplement that if so costs are limited to $500 | .5 | | |
| February 10, 2022 - Review C Bass work, OK his pdf list, email him | .2 | | |
| February 10, 2022 - Work up C Bass draft declaration | .3 | | |
| February 10, 2022 - Start work on motion to modify judgment | 2.6 | | |
| February 11, 2022 - Finish draft out of motion to modify judgment, do order for same, finalize C Bass declaration & send to him | 3.2 | | |
| February 11, 2022 - Review Esther Rodriguez motion for "dec relief" send her letter to withdraw the same or face attorney fees for same | .5 | | |
| February 14, 2022 - Finalize motion, edits, to modify judgment, collect exhibits, get RG to proof, file same | 1.3 | | |
| February 15, 2022 - Prep for status conference, motion hearing, issues to discuss on case with court, make notes on same | 1.2 | | |
| February 16, 2022 - Appear and argue motion, sent to Judge Sturman  = reporters costs given, others denied/reduced | 1.1 | 1.2 | |
| February 16, 2022 -Telephone with  CG on status, costs motion | .2 | | |
| February 16, 2022 - Do motion on fees for Pre-judgment work, as reduced by appeal, have RG assist and file the same | 3.1 | | |
| February 16, 2022 - Draft motion on fees for appeal | 2.2 | | |

| | | | |
|---|---|---|---|
| February 17, 2022 - Final review, have RG assist and file, motion on appeal fees | .2 | | |
| February 17, 2022 - email with client REDACTED | .1 | | |
| February 17, 2022 - LETTER to Esther Rodriguez on her motion, respond to her letter of 2/15 | .2 | | |
| February 18, 2022 -Telephone client REDACTED | .1 | | |
| February 22, 2022 - Do errata, lexis, on motion for fees on pre-judgment work Re: accrual of interest | 2.2 | | |
| February 23, 2022 - finish errata, lexis, on motion for fees on pre-judgment work Re: accrual of interest, have same filed = question of pre-judgment interest... | 1.1 | | |
| February 23, 2022 - Start work on declaration on costs award with more documentation for judgment, set up same & instruct RG on gathering info & fixing up | 1.2 | | |
| February 24, 2022 -Telephone with  Charles Bass on his expert work/costs issue | .2 | | |
| February 24, 2022 - go over clerk fees, witness fees, further on declaration on costs for judgment | .7 | | |
| February 24, 2022 - work with  RG on issues with deposition costs, transcript costs, on cost motion | .2 | | |
| February 24, 2022 - work on C. Bass costs for costs motion | 2.1 | | |
| February 25, 2022 - work on opposition to motion for declatory relief & counter-motion for fees | 3.7 | | |
| February 25, 2022 - draft letter responding to Esther Rodriguez letter & stipulation in today on "decertification" of class | .5 | | |
| February 28, 2022 - final review of letter drafted 2/25 to Esther Rodriguez send out same | .1 | | |
| February 28, 2022 - review motion on ost from Esther Rodriguez seeking stay, consider issues on appeal or just collateral attack issue | .6 | | |

| | | | |
|---|---|---|---|
| March 1, 2022 - Review opposition on motion modify judgment | .4 | | |
| March 1, 2022 - work on opposition on motion on OST to stay | 2.6 | | |
| March 2, 2022 - work on opposition on motion on OST to stay, finish draft out of subject matter jurisdiction issue, go through no injury, start on issue of unfairness to plaintiffs from stay | 5.2 | | |
| March 3, 2022 - finish draft of motion opposition on stay, do declaration for same, assemble info on same | 4.7 | | |
| March 4, 2022 - finalize opposition on motion  stay, have same assisted with/filed by RG | 2.1 | | |
| March 4, 2022 - work on declaration on motion on costs, finish declaration draft for C.Bass on same | .8 | | |
| March 8, 2022 - FURTHER work on motion on costs | .2 | | |
| March 8, 2022 - Review Esther Rodriguez reply, prep for hearing on motion on OST for stay for 3/9 | .4 | | |
| March 9, 2022 - appear in Court on motion to  stay | 1.4 | 1.4 | |
| March 9, 2022 -Telephone client REDACTED | .2 | | |
| March 15, 2022 - Start work on writ petition - stay improper - draft presentation of nature of relief sought, history | 3.8 | | |
| March 16, 2022 - further work on writ petition on stay being improper, go through most of statement of facts | 3.4 | | |
| March 17, 2022 - work on writ petition on stay being improper, finish, edits, to facts statement, summary, request for relief, tee up reason for writ relief - also start to assemble appendix docs | 7.4 | | |
| March 18, 2022 - work on writ petition on stay being improper, edits, draft of reasons for relief, legal standard, how Kierny abused discretion | 6.6 | | |
| March 21, 2022 - finish draft out of writ petition on stay being improper including need for detailed relief, lexis too on transfer issue, review same, start on edits | 5.8 | | |

| | | | |
|---|---|---|---|
| March 23, 2022 - edits on writ petition on stay being improper, gather up appendix materials & instruct RG on same | 5.6 | | |
| March 24, 2022 - edits on writ petition on stay being improper, work to condense length, etc., do about 70% of same | 3.1 | | |
| March 25, 2022 - edits on writ petition on stay being improper, about another 10% | 1.3 | | |
| March 28, 2022 - finish edits on writ petition on stay being improper, go over record, put in all references = ready for assembly & filing... | 6.8 | | |
| March 28, 2022 - do correction declaration on C. Bass duplicate Murray listing in judgment, email with him to get same | .6 | | |
| March 29, 2022 - work with RG to finalize writ petition on stay being improper, OK final form & have filed | .4 | | |
| April 26, 2022 - Nevada Supreme Court Order directs district court order be provided & answer to writ petition on stay being improper be filed, review same, do district court order, letter to defendant counsel on same | .4 | | |
| April 27, 2022 - review Esther Rodriguez order draft for district court, letter to her on problems with the same. | 1.4 | | |
| April 28, 2022 - Send out letter on district court form of order to Esther Rodrigurez | .1 | | |
| April 28, 2022 - respond to Esther Rodriguez email, letter, by email on Judge Kierney Order form | .3 | | |
| April 29, 2022 - email x3 with Esther Rodriguez on order for Judge kierny, she submits same 5pm | .3 | | |
| May 2, 2022 - letter to J. Kierny on Esther Rodriguez order submitted 4/29, send in form of same | .9 | | |

Page 6 of 12

| | | | |
|---|---|---|---|
| May 3, 2022 - Kierny signs our order, Telephone Supreme Court to clarify appendix supplement needed, get RG to enter Order & do supplemental appendix | .2 | | |
| May 16, 2022 - review Esther Rodriguez order on costs award, email CG on same for thoughts, revize & consider that case stayed, send draft to Esther Rodriguez with  email on same | .4 | | |
| May 16, 2022 - Esther Rodriguez submits order with out conferral, email her on same, she says may confer 5/17 | .1 | | |
| May 17, 2022 - Esther Rodriguez calls, cannot get agreement to stay costs or on how costs handled REDACTED | .3 | | |
| May 17, 2022 - do Order on costs, letter to judge on same | .7 | | |
| May 17, 2022 -Telephone from client REDACTED | .2 | | |
| May 24, 2022 - review Esther Rodriguez request to extend time on writ, email her on same | .1 | | |
| May 24, 2022 - do motion to attach A Cab right to return of *dubric* monies once paid, lexis on same | 3.8 | | |
| May 26, 2022 - do motion to apportion appeal costs | 1.1 | | |
| May 31, 2022 - finalize motion to apportion appeal costs, reconsider, have RG put together & file.... | .4 | | |
| June 3, 2022 - email x2 with  Esther Rodriguez on 2nd order entered today on costs, she no cooperate... | .4 | | |
| June 6, 2022 - email  & letter to Esther Rodriguez re: Order entered 6/3, her non-cooperation with dealing with | .8 | | |
| June 7, 2022 -Telephone with clients REDACTED | .1 | | |
| June 8, 2022 - review stuff, lexis, needed to deal with defendant motion  for attorney fees, letter to defendant on same | 1.6 | | |
| June 9, 2022 -Telephone with client REDACTED | .1 | | |

| | | | |
|---|---|---|---|
| June 14, 2022 - email with client REDACTED | .1 | | |
| June 14, 2022 - investigate REDACTED  see memo | .8 | | |
| June 14, 2022 - Notice of appeal on costs orders on A Cab appeal costs | | | .2 |
| June 15, 2022 -Telephone with client REDACTED | .1 | | |
| June 20, 2022 - work on reply on motion  to turnover dubric refund rights | 1.3 | | |
| June 20, 2022 -Telephone with REDACTED | .3 | | |
| June 21, 2022 - work on reply on motion  turnover dubric refund rights, finish most including discussion of judgment final | 2.8 | | |
| June 22, 2022 - finish motion turnover reply = most time on explaining dubric/prior proceedings counter Esther Rodriguez incorrect statements | 3.6 | | |
| June 23, 2022 - do reply on motion  reconsider, apportion costs | 3.8 | | |
| June 24, 2022 - finish almost all of motion  reply reconsider, apportion costs | 5.7 | | |
| June 28, 2022 - prep for motion 6/29 to attach dubric $$ | .3 | | |
| June 28, 2022 - review answer to writ petition from Esther Rodrigurez, lexis on issues with  same, take notes | 1.4 | | |
| June 29, 2022 - appear, argue, motion  on turnover order = decision reserved | 1 | 1.4 | |
| June 29, 2022 - finish reply on motion  reconsider costs, apportion = denied but can renew | 2.2 | | |
| June 30, 2022 - Do 2 letters to judge & draft Order to correct Esther Rodriguez misrep to court on ruling on 6/29, she tries to continue stay to prevent renewal | 1.2 | | |
| July 11, 2022 - start reply on writ petition, do intro, start on background of why relief needed by writ | 3.7 | | |

Page 8 of  12

| | | | |
|---|---|---|---|
| July 12, 2022 - work on writ reply, explain dubric irrelevant, remand ministerial/math, start on other claims of defendant. | 7.2 | | |
| July 13, 2022 - finish reply on writ, start proof/edits | 7.7 | | |
| July 14, 2022 - final edits/proof on reply on writ, give to RG to assist get in form to file | 2.2 | | |
| July 15, 2022 - finish up on writ reply with  RG & have her file same | .8 | | |
| July 17, 2022 - review status, start work on reply on motion  enter amended judgment | 3.8 | | |
| July 18, 2022 - finish reply on motion  enter amended judgment | 1.8 | | |
| July 18, 2022 - do reply on motion  amend fee award | 1.2 | | |
| July 18, 2022 - do reply on motion  fee award on appeal | 1.3 | | |
| July 19, 2022 - do reply on motion  fee award on receiver appeal | 2.2 | | |
| July 19, 2022 - do status report for court | 1.1 | | |
| July 20, 2022 - emails with  Esther Rodriguez in unsuccessful attempt to delay her Rule 11 x 3 motions till after 7/25 conf | .2 | | |
| July 20, 2022 - do reply on motion to reconsider J. Cherry signed Order | 2.6 | | |
| July 21, 2022 - Do Opposition to motions on sanctions, #1 (6.8) finish, draft/edit #2 (1.4) | 8.2 | | |
| July 22, 2022 - do opposition on motion  sanctions #3, finish #2, review all 3 & have filed | 1.9 | | |
| July 24, 2022 - review file, make notes for issues/prep for 7/25 conference on status | 1.4 | | |
| July 25, 2022 - appear at status conf = told to brief court on history of security, rulings on same | 1.2 | 1.4 | |
| July 27, 2022 - review filings for history on Bond, notes on same, collect materials, as per the Court's order of 7/25 | 2.6 | | |

| | | | |
|---|---|---|---|
| July 27, 2022 - do motion  supreme court for time on OST motion response on Costs appeal = Esther Rodriguez refuses to stip | | | .2 |
| July 28, 2022 - start work on supplemental brief on history of stay & bond | 4.2 | | |
| July 29, 2022 - finish supplemental brief for Judge Gall on stay & bond | 2.8 | | |
| August 1, 2022 - tell from client REDACTED | .2 | | |
| August 4, 2022 - review supplement for Judge Gall to file 8/8, fix up same | .3 | | |
| August 8, 2022 - final proof, file supplement for Judge Gall on bond issue | .2 | | |
| August 9, 2022 - send in Chambers Copy of supplement to Judge Gall on bond issue per request of court | .2 | | |
| August 12, 2022 - do motion to end stay & rule on remittitur motions, dubric decided | .8 | | |
| August 26, 2022 - answer OST Supreme Court | | | .4 |
| August 31, 2022 - review A Cab opposition on motion lift stay | .3 | | |
| September 13, 2022 - do reply on motion  lift stay | 5.2 | | |
| September 19, 2022 - review Order on motion to  lift stay, cancels hearing 9/20, further briefing, etc. | .2 | | |
| September 22 & 23, 2022, tel/email clients REDACTED | .1 | | |
| September 26, 2022 - respond to judicial notice filing from def | .6 | | |
| September 29, 2022 - work on omnibus brief for 9/30 | 1.4 | | |
| September 30, 2022 - finish omnibus brief, have same filed | 3.1 | | |
| November 4, 2022 - review & respond on Esther Rodriguez motion  for $49 costs on writ, lexis on same from prior date | 1 | | |

| | | | |
|---|---|---|---|
| November 14, 2022 - review decision on motion to modify judgment, assemble Order on same as directed by decision, email same to defendant for OK | .5 | | |
| November 14, 2022 - review decision on motion modify pre-judgment fee award per appeal, draft order on same & email to defendant for OK | .6 | | |
| November 15, 2022 - email defendant on orders submission, need to respond, will send in 11/16 | .1 | | |
| November 16, 2022 - email with Esther Rodriguez on Order on motion on pre-judgment fees | .3 | | |
| November 16, 2022 - further email with Esther Rodriguez on both Orders, cannot resolve issues, finalize & submit Orders | .6 | | |
| November 17, 2022 - ORDERs in from Judge, review same, instruct RG on entry of orders | .2 | | |
| November 17, 2022 - start work on costs pre-judgment motion, pick up where left off on same | .7 | | |
| November 18, 2022 - do motion on OST to release appeal bond funds, send in same | 3.1 | | |
| November 21, 2022 - email with Esther Rodriguez & court re; continue 12/8 hearing to 12/15 | .1 | | |
| November 21, 2022 - work on Motion for Pre-Judgment Costs, C. Bass Declaration on same | .6 | | |
| November 22, 2022 - finish draft of C. Bass Declaration on costs | .5 | | |
| November 22, 2022 - email with Esther Rodriguez on continuing 12/8 hearing to 12/15 | .1 | | |
| November 28, 2022 - work on pre-judgment costs motion, review expenses, tally same, work up declaration on same. | 1.4 | | |
| December 1, 2022 - email with client REDACTED | .1 | | |
| December 1, 2022 - email x2 with Esther Rodriguez re: her taking extra time on motion OST response | .2 | | |

| | | | |
|---|---|---|---|
| December 9, 2022 - do updated review of A Cab financials with RG help per Nevada Taxi Authority data & file with court on Receiver request, confirm Melech still OK to be receiver | 1.4 | | |
| December 9, 2022 - work on reply on motion release funds for hearing 12/15 | 2.2 | | |
| | | | |
| TOTALS | 255 | 5.4 | 0.8 |
| | | | |
| | | | |
| | | | |

# EXHIBIT "2"

ATTORNEY TIME CHARGES - LEON GREENBERG
August 22, 2018 through December 9, 2022 - Pre-Petition
(Excludes time charges in cases besides *Murray v. A Cab* 2012 case
and time charges sought for payment by any other fee application)

| Redacted Time Records<br>Attorney Leon Greenberg<br>Abbreviations:<br>CG - Co-class counsel Christian Gabroy<br>SS - Legal Assistant Sydney Saucier<br>DS - Associate Dana Sniegocki | Time to tenth of an hour | Travel Time |
|---|---|---|
| August 22, 2018 - Review judgment in full as signed, do motion to amend judgment so can be enforced against changed corp name of defendant | .8 | |
| August 24, 2018 - Letter to Judge Cory on motion to amend judgment | .1 | |
| September 4, 2018 - Prepare writ of execution & garnishment on judgment | 1.3 | |
| September 4, 2018 - Review data on vehicle titles and research on same via accurint | .3 | |
| September 10, 2018 - Review defendant motion to rehear judgment | .2 | |
| September 11, 2018 - Work with DS to get judgment executions issued. | .2 | |
| September 12, 2018 - Get judgment executions to Sheriff for service | .2 | |
| September 17, 2018 - Start work on declaration for attorney fee award motion for work prior to judgment, email CG on same, instruct SS to collect information. | .3 | |
| September 17, 2018 - Telephone call from Wells Fargo, they ask for EIN of debtor and will have response soon. | .1 | |
| September 19, 2018 - Do reply to defendant opposition on motion for amendment of judgment to the new name of the defendant | 2.3 | |

| | | |
|---|---|---|
| September 19, 2018 - Work on drafting attorney fee application for work performed prior to judgment | 2.2 | |
| September 20, 2018 - Finish draft, rough, of attorney fee application declaration for work performed prior to judgment, email CG on same & what is needed | 1.3 | |
| September 21, 2018 - Receive motion on OST seeking to quash Wells Fargo execution, start work on response | 4.8 | |
| September 22, 2018 - Further work on response to motion on OST to quash Wells Fargo execution | 1.1 | |
| September 23, 2018 - Further work on response to motion on OST to quash Wells Fargo execution, start work on on counter-motion for judgment enforcement remedies | 2.8 | |
| September 24, 2018 - Finish work on response to motion on OST to quash Wells Fargo execution, start work on on counter-motion for judgment enforcement remedies, have same filed. | 4.6 | |
| September 25, 2018 - Do DMV inquiry on assets, advise CG on doing  REDACTED  inquiry | .3 | |
| September 26, 2018 - Appear and argue motion on OST to quash Wells Fargo execution | 3.3 | 1.5 |
| September 26, 2018 - Work on supplement to opposition on  motion on OST to quash Wells Fargo execution | 3.1 | |
| September 27, 2018 - Finish work on supplement to opposition on motion on OST to quash Wells Fargo execution | 3.6 | |
| September 27, 2018 -Telephone call from Kevin at Judge Cory's chambers, says file all papers by 9 a.m. on 9/28 | .1 | |
| September 28, 2018 - Appear and further argue opposition on  motion on OST to quash Wells Fargo execution = told 10 a.m., delayed to 10:30 | 3.2 | 1.4 |
| October 2, 2018 - Telephone with Nevada DMV, they are getting debtor vehicle titles... | .1 | |
| October 4, 2018 - Work on motion for judgment debtor exam | .4 | |

| | | |
|---|---|---|
| October 5, 2018 - Work on judgment debtor exam motion | .2 | |
| October 5, 2018 - Review exemption claims to judgment received today, discuss with D.S. | .1 | |
| October 5, 2018 - Work on drafting attorney fee application for work performed prior to judgment | .2 | |
| October 8, 2018 - Work on drafting attorney fee application for work performed prior to judgment email with CG on same | .2 | |
| October 11, 2018 - Discuss collection case with potential co-counsel REDACTED | .2 | |
| October 11, 2018 - Work on drafting attorney fee application for work performed prior to judgment work, largely finalize same | 5.3 | |
| October 12, 2018 - Finish work on drafting attorney fee application for work performed prior to judgment fee motion, get it submitted | 1.4 | |
| October 15, 2018 - Do objections on judgment exemption claims, have D.S. send out. | 3.2 | |
| October 16, 2018 - Do reply to opposition on counter-motion for judgment enforcement relief | 1.8 | |
| October 16, 2018 - Work on Order denying motion on OST to quash Wells Fargo execution | 2.4 | |
| October 16 & 15, 2018 - Email w/ CG on status of investigation on judgment execution REDACTED | .1 | |
| October 17, 2018 - Do opposition to defendant's 2nd motion to dismiss because of no subject matter jurisdiction | 1.3 | |
| October 17, 2018 - Work on Order denying motion on OST to quash Wells Fargo execution | 6.1 | |
| October 18, 2018 - Finish order denying motion on OST to quash Wells Fargo execution and sent to defendant for their review | 3.7 | |
| October 19, 2018 - Telephone with potential co-counsel REDACTED on judgment collection issues REDACTED | .2 | |

| | | |
|---|---|---|
| October 19, 2018 - Prepare for arguments on 10/22/18, prepare order for Court and review status | .6 | |
| October 22, 2018 - Appear and argue, post-judgment motions to amend judgment for new defendant name and defendant seeking to vacate judgment | 3.2 | 1.4 |
| October 23, 2018 - Telephone with client REDACTED on status of judgment | .1 | |
| October 24, 2018 - Esther Rodriguez calls discuss REDACTED | .2 | |
| October 25, 2018 - Email with Jay Shafer on status of order for Judge Cory | .1 | |
| October 29, 2018 - Draft letter to Judge Cory for order denying motion on OST to quash Wells Fargo execution | .2 | |
| October 30, 2018 - Review redline from Jay Shafer on order denying motion on OST to quash Wells Fargo execution, email him on same... | .4 | |
| October 31, 2018 - Review assets information, vehicles, other records, for judgment enforcement actions | .3 | |
| November 1, 2018 - Order vehicle titles from DMV for judgment executions | .1 | |
| November 1, 2018 - Telephone w/ class member on judgment status | .1 | |
| November 1, 2018 - Work w/ DS on further judgment execution plans | .1 | |
| November 1, 2018 - Review defendant opposition on motion for attorney fee award for pre-judgment work | .1 | |
| November 7, 2018 - Work with D.S. on judgment executions | .2 | |
| November 8, 2018 - Work with DS on judgment executions, assemble information for the same | .4 | |
| November 8, 2018 - Do reply to defendant's opposition to motion for award of attorney's fees for pre-judgment work | 1.1 | |

| | | |
|---|---|---|
| November 9, 2018 - Get judgment executions on more banks finished and to Constable | .4 | |
| November 12, 2018 - Review motion on OST with TRO on judgment executions as to vehicles, draft from D.S., finalize same for her to get out.... | 1.2 | |
| November 13, 2018 - Finish motion on OST with TRO on judgment executions as to vehicles | .2 | |
| November 13, 2018 - Do judgment execution for Chase bank | .1 | |
| November 16, 2018 - Review defendant opposition on motion for judgment debtor exam | .1 | |
| November 19, 2018 - Do reply to defendant opposition on motion for judgment debtor exam | .8 | |
| November 26, 2018 - Do response on Special Master motion for fees | .4 | |
| December 3, 2018 - Prepare for motion hearing 10/4/18 on judgment enforcement, draft of order on same | .8 | |
| December 4, 2018 - Motion hearings on judgment enforcement, fees, etc. | 3.2 | 1.4 |
| December 5, 2018 - Email defendant on getting cooperation on judgment debtor exam as per 12/4/18 rulings/discussion in court | .3 | |
| December 5, 2018 - Work on draft of order for receiver, as per 12/4/18 Court hearing | .4 | |
| December 6, 2018 - Telephone with George Swarts and email with him, re: possible receiver | .5 | |
| December 6, 2018 - Do draft orders for both receiver and special master | 1.2 | |
| December 6, 2018 - Review draft orders w/ D.S. from def | .2 | |
| December 7, 2018 - Do letter to Judge Cory, finish proposed orders receiver and special master, send to him | 1.9 | |

| | | |
|---|---|---|
| December 7, 2018 - Email defendant again on judgment debtor order | .1 | |
| December 7, 2018 - Get order on atty fee award in final, email defendant on same | .3 | |
| December 11, 2018 - Telephone with CG on status on special master issues | .1 | |
| December 11, 2018 - Letter to Judge Cory, send in order on exemptions, turnover of Wells Fargo funds | .1 | |
| December 11, 2018 - tel w/ def, issue of OK on order denying def motions dismiss, etc. | .1 | |
| December 11, 2018 - Email defendant, review issues Re: exemption from judgment claim on Nevada state bank | .2 | |
| December 13, 2018 - Appear at hearing with Judge Cory, he appoints Special Master, does not proceed with turnover | 2.1 | 1.4 |
| December 14, 2018 - Telephone from Kevin with Judge Cory and email, re: status of orders, etc., to be done soon | .1 | |
| December 14, 2018 - Telephone with client REDACTED on status | .1 | |
| December 17, 2018 - Telephone from Dept. 1, on orders status, instructions on same | .2 | |
| December 17, 2018 - Email with defendant counsels on getting orders entered | .1 | |
| December 17, 2018 - Redo order on attorney's fees, per call from Dept. 1 | 1.4 | |
| December 17, 2018 - Telephone calls from class members | .1 | |
| December 17, 2018 - Review defendant motion to Supreme Court for stay, start work on opposition to same, gather info for same including on financials of company, make spreadsheet from financials | 1.2 | |
| December 18, 2018 - Do opposition on motion for stay at Nevada Supreme Court. | 6.2 | |

| | | |
|---|---|---|
| December 19, 2018 - Finish opposition on motion for stay at the Nevada Supreme | .5 | |
| December 20, 2018 - Email with George Swartz on Special Master appointment | .1 | |
| December 20, 2018 - Get opposition on motion to stay filed with Nevada Supreme Court | .1 | |
| December 20, 2018 - Letter to Judge Cory on amending Special Master appointment order | .3 | |
| December 20, 2018 - Work w/ D.S. on judgment execution on vehicles | .1 | |
| December 21, 2018 - Work on order on TRO, send to defendant for OK | .3 | |
| December 21, 2018 - Review Nevada Supreme Couert Order denying stay. | .1 | |
| December 31, 2018 - Telephone Jay Schaffer, per his call, leave message | .1 | |
| December 31, 2018 - Email with court and defendant counsel, Re: defendant has now withdrawn judgment exemption, hearing was 1/2/19 | .1 | |
| January 2, 2019  - Telephone with Swarts on doing Special Master work | .1 | |
| January 2, 2019 - Email with all counsel on Swarts work as Special Master | .2 | |
| January 3, 2019 - Get Wells Fargo funds in from Court, deposit same, consider issues with distribution, contact CPT Group on possible administration proposal for same and discuss with them | .6 | |
| January 8, 2019 - Email with Simpluris on distribution administration, come up with proposal to distribute funds, review numbers, create schedule, do motion & declaration for same, have it filed... | 4.2 | |
| January 8, 2019 - Email w/ Shaffer on request for more time for Special Master Swarts | .1 | |

| | | |
|---|---|---|
| January 17, 2019 - Email with defendant on Special Master work | .3 | |
| January 17, 2019 - Review defendant's motion on Special Master | .1 | |
| January 30, 2019 - Work wish DS on opposition to defendant motion on Special Master payment and counter-motion for vehicle turnover | .8 | |
| January 31, 2019 - call from Court, order ready on fees, send runner, discuss with D.S. information on writ on Curb Media per her call | .1 | |
| February 1, 2019 - review Special Master report, discuss with his counsel Parsons on getting finances, he is to see, REDACTED | .2 | |
| February 1, 2019 - Collect and 2017 & 2018 NV Taxicab Authority data on revenue, work up same, do supplement to file on Special Master report | 4.4 | |
| February 4, 2019 - Telephone with counsel for Curb Media on garnishment   REDACTED | .2 | |
| February 4, 2019 - finish response on Special Master report, have same filed | 3.8 | |
| February 4, 2019 - Email with Special Master & his counsel on SM report response.... | .2 | |
| February 4, 2019 - Work with D,S. & court staff on order on fees award that had been lost in cracks | .2 | |
| February 4, 2019 - Do reply on motion to disburse $$ to class members | .6 | |
| February 5, 2019 - Work with D.S. on proposed Orders for judgment | .7 | |
| February 6, 2019 - Attend hearing on Special Master  & judgment motions, continued to 2/27... | 3.2 | 1.4 |
| February 6, 2019 - Do response on garnishment interrogatories involving Curb Media | .6 | |
| February 8, 2019 - Get garnishment response in final, letter to Curb Media counsel on same, send out.... | .3 | |

| | | |
|---|---|---|
| February 11, 2019 - Email with Special Master counsel Parsons on settlement status | .3 | |
| February 11, 2019 -Email with Special Master counsel Parsons on settlement status and whether Special Master should do more, also draft of Order | .2 | |
| February 15, 2019 - Discuss status with Parsons, Special Master counsel REDACTED | .1 | |
| February 15, 2019 - start draft of subpoena to curb media | .2 | |
| February 20, 2019 - Telephone calls x2 with Parsons Special Master counsel on Special Master going forward, to meet on 2/21, email on same | .4 | |
| February 21, 2019 - Meet with Parsons and Special Master, agree on their proposed plan to go forward, they to advise further.... | 1.3 | 1.1 |
| February 25, 2019 - Emails with Parsons on Special Master appointmnet x 2 | .2 | |
| February 26, 2019 - Email with Parsons and defendant counsel on Special Master appointment and settlement status | .2 | |
| February 26, 2019 - Telephone with client Reno REDACTED | .1 | |
| February 27, 2019 - Email with Parsons on status of Special Master appointment, stay of collection... | .3 | |
| February 27, 2019 - Emails x3 & telephone with Parsons on status of SM appointment, collection | .4 | |
| February 28, 2019 - Email, telephone, with Parson on Special Master appointment, and with co-counsel on same | .2 | |
| March 1, 2019 - Get Judge Cory order on recusal, start OST Motion on same | 1.3 | |
| March 1, 2019 = Telephone, email with Parsons on Special Master appointment | .2 | |
| March 3, 2019 - Finish OST motion on Judge Cory Recusal order | 2.4 | |

| | | |
|---|---|---|
| March 4, 2019 - Revision on OST motion on Judge Cory recusal order, have same sent to court | .4 | |
| March 4, 2019 - Telephone with Parsons and email with him on Special Master appointment, status, REDACTED | .2 | |
| March 4, 2019 - Telephone with Esther Rodriguez REDACTED | .4 | |
| March 4, 2019 - Telephone with counsel on Curb garnishment, leave them message | .1 | |
| March 5, 2019 - Telephone with REDACTED on issues involved with collection of judgment | .2 | |
| March 5, 2019 - Do subpoena to Curb Media for contract & information related to garnishment | .3 | |
| March 6, 2019 Telephone from class member REDACTED | .1 | |
| March 7, 2019 - Email with defendant counsel on status, stay of case, etc.... | .4 | |
| March 8, 2019 - Email with Court on status of motion on OST | .1 | |
| March 11, 2019 - Letter to Esther Rodriguez confirming defendant is not joining in my waiver of recusal by Judge Cory | .2 | |
| March 14, 2019 - Consider issues with how case may proceed REDACTED . | .7 | |
| March 14, 2019 - Telephone with REDACTED on issues with case proceeding | .4 | |
| March 15, 2019 - Do preemption demand of Judge Scott, deal with issues on same and respond to defendant counsel's objections on the same | .4 | |
| March 18, 2019 - Emails with Parson, Special Master counsel, x3, on status | .2 | |
| March 18, 2019  - Call from Shafer = they say serving Declaratory Judgment action that also names me as defendant, pull same & review, advise co-counsel | .4 | |

| | | |
|---|---|---|
| March 19, 2019 - Get served on Declaratory Judgment action, review issues, emails with Shafer on same, email REDACTED ... | .8 | |
| March 20, 2019 - Telephone with REDACTED | .2 | |
| March 20, 2019 - Prepare with D.S. on 3/21 court with new judge | .2 | |
| March 20, 2019 - Email with Parsons on Special Master Status REDACTED | .1 | |
| March 25, 2019 - Get order from Judge Cory, he will not reconsider recusal... | .1 | |
| March 26, 2019 - Telephone with counsel for curb media REDACTED - send him follow up letter | .4 | |
| March 27, 2019 - Email with REDACTED | .3 | |
| March 27, 2019 - Court sets hearing on motions 4/16, Discuss with DS, telephone with Jay Shaefer, emails him & Dubowsky counsel for other judgment holder on resetting hearing date | .2 | |
| March 27, 2019 - Shaefer advises during telephone call Declaratory Judgment case versus me dismissed, confirm same on docket without prejudice | .1 | |
| April 10, 2019 - Telephone from class member REDACTED | .1 | |
| May 10, 2019 - Review stipulation from Jay Shaefer on moving hearings on motion to distribute funds, etc., review docket status of oustanding motions, edit stipulation to clear up issues | 1.1 | |
| June 5, 2019 - Email with Jay Shaffer on 6/21 motion on IOLTA funds, special master, we should table same... | .2 | |
| September 10, 2019 - Telephone with class member REDACTED | .1 | |
| September 27, 2019 - Telephone, email, with defendant counsel Ryan Works, re: settlement potential... | .5 | |
| September 27, 2019 Review, edit, execution/garnishement on choses in action of defendant | .3 | |

| | | |
|---|---|---|
| September 27, 2019 - Review status of Curb Mobility subpoena, do email to them on compliance | .3 | |
| October 1, 2019 - Do new motion to have IOLTA funds released, draft order for same, edit, get ready to file | 2.7 | |
| October 1, 2019 - Review status, further collection action options | 1.4 | |
| October 1, 2019 - Telephone from client Murray REDACTED | .1 | |
| October 2, 2019 - draft motion for judgment debtor exam | .4 | |
| October 2, 2019 - do Order for judgment debtor exam, revise prior order on same | .8 | |
| October 2, 2019 - review history - judgment debtor exam granted but no order entered, need protective order, so maybe no new motion, email counsel for advise... | .3 | |
| October 2, 2019 - work with D.S. on finalizing motion to release IOLTA funds | .2 | |
| October 2, 2019 - start work on motion to get execution on vehicles, review history on same | .4 | |
| October 2, 2019 - Telephone with REDACTED | .2 | |
| October 2, 2019 - Telephone counsel for curb media on writ, leave message | .1 | |
| October 3, 2019 - letter to counsel for curb media on writ, review his prior response on same, etc. | .5 | |
| October 3, 2019 - get letter from counsel on Curb media writ, respond by letter to him | 1.3 | |
| October 3, 2019 - finish motion on turnover of vehicles & order on same | 2.3 | |
| October 3, 2019 - do motion on judgment enforcement & order on same | 1.8 | |
| October 3, 2019 - final review of all 3 motions for court, have DS file same | .3 | |

| | | |
|---|---|---|
| October 3, 2019 - telephone special master, leave him message | .1 | |
| October 4, 2019 - do Order on judgement debtor exam to circulate to defendant counsel (work up/revise prior draft), send to defendant with email | 1.1 | |
| October 4, 2019 - Finalize letter to Curb counsel on writ REDACTED ... | .5 | |
| October 7, 2019 - Telephone with Special Master REDACTED | .2 | |
| October 7, 2019 - Email to Special Master and his counsel Parsons REDACTED | .8 | |
| October 8, 2019 - call REDACTED | .1 | |
| October 10, 2019 - review ltr from Esther Rodriguez re: no cooperate on judge debtor exam | .1 | |
| October 11, 2019 - Do letter to Judge Bare with exhibits explaining Order for Debtor Exam, defendant objections to it, etc. | 2.2 | |
| October 14, 2019 - Final proof, edits, to Judge Bare letter | .3 | |
| October 17, 2019 - Telephone from RyanWorks counsel for defendant - proposes settlement REDACTED | .4 | |
| | | |
| October 23, 2019 - Email x2 with Special Master and his counsel Parsons, REDACTED | .7 | |
| October 24, 2019 -  Email x2 with Special Master and his counsel Parsons, REDACTED | .8 | |
| October 28, 2019 = Telephone from Esther Rodriguez = need to move 10/29 hearing to 11/1, stip on same | .1 | |
| November 4, 2019 - start work on reply on motor vehicle judgment execution compliance | .4 | |

| | | |
|---|---|---|
| November 5, 2019 - finish reply on motor vehicle judgment execution comply motion | 3.2 | |
| November 5, 2019 - do reply on motion to distribute funds | 1.8 | |
| November 5, 2019 - do reply on motion for judgment enforcement, opposition to counter motion to stay enforcement | 1.4 | |
| November 6, 2019 - email x2 with Parsons & defendant counsel on issues with Special Master | .3 | |
| November 8, 2019 - email with parsons on status, Special master position of his client, etc. | .4 | |
| November 8, 2019 - prep for 11/12 hearing on motions on judgment | .6 | |
| November 11, 2019 - prep for 11/12 hearing - analyze judgment amounts, potential distribution to all | .7 | |
| November 18, 2019 - tel w/ MICHAEL RENO REDACTED | .1 | |
| November 18, 2019 -  Email x3 with Special Master and his counsel Parsons, REDACTED | .5 | |
| November 18, 2019 - review OST from Esther Rodriguez, not signed, wanting Bare to delay action on judgment enforcement... | .2 | |
| November 20, 2019 - Emails with Parsons on Ost for 12/3, status of Special Master etc. | .2 | |
| November 22, 2019 - start work on Opposition on OST to stay judgment... | 2.6 | |
| November 25, 2019 - work on opposition on OST to stay judgment, give to d.S. to proof & fix up | 2.3 | |
| November 26, 2019 - finish up Opposition on OST to stay judgment, have same filed, | .8 | |
| December 2, 2019 - prep for hearing 12/3 on judgment motions, defendant OST on same | .2 | |
| December 3, 2019 - appear on OST and motions, limited relief, must draft order.... | 2.6 | 1.4 |

| | | |
|---|---|---|
| December 3, 2019 - Email parsons with issues for Order | 1.1 | |
| December 10, 2019 - do order for debtor exam per minute order 12/6, email defendant on same | .3 | |
| December 10, 2019 - Email parsons on status of Special Master | .1 | |
| December 10, 2019 - work w/ DS on issues REDACTED | .1 | |
| December 11, 2019 - email with Jay schaefer on judgment debtor exam order | .2 | |
| December 12, 2019 - email with Shafer on order to Judge Bare.. | .1 | |
| December 13, 2019 - get email from Shafer on Order to Bare, he makes no good changes, review, detail to him issues & email him | .9 | |
| December 13, 2019 - further email w/ Shafer, he confirms is trying to limit examination, email him no good & discuss Monday... | .5 | |
| December 16, 2019 - telephone x2 & email w/ Shafer on order for debtor exam | .6 | |
| December 16, 2019 - lexis on receiver pay issue, direct DS on that | .9 | |
| December 16, 2019 - start draft of supplemental submission on receiver cost | .9 | |
| December 17, 2019 - finish supplement on receiver costs & get filed | 3.8 | |
| December 18, 2019 - email x4 with Jay Schaefer on debtor exam order | .4 | |
| December 19, 2019 - tel, email w/ Jay Schafer, no resolve debtor exam order | .4 | |
| December 19, 2019 - do order on debtor exam in final as can per telephone with Jay Shafer, letter to Judge Bare on same & send out | 1.2 | |

| | | |
|---|---|---|
| December 20, 2019 - email Parson RE: where is Order for Special Master | .1 | |
| January 2, 2020 - review def supp brief on receiver payment | .2 | |
| January 7, 2020 - email Parsons on status of receiver order | .1 | |
| January 8, 2020 - email with Esther Rodriguez on proposed order, review her edits, she changes improperly, make further draft, send her comments, etc., on same | 1.2 | |
| January 13, 2020 - Stip and Order to defendant counsel place judgment funds in interest bearing escrow, email to defendants on same | 1 | |
| January 17, 2020 - tel from Parsons on status of Order for Special Master | .1 | |
| January 17, 2020 - email parsons & Special Master on order form | .1 | |
| January 31, 2020 - telephone w/ Parsons = he now advises me REDACTED | .1 | |
| February 11, 2020 - telephone with client Murray REDACTED .. | .3 | |
| February 18, 2020 - email Jay Schafer on status of interest bearing  account for trust funds, settlement per his talk w/ DS | .2 | |
| February 18, 2020 - work on receiver "not in possession" order for Special Master | 1.4 | |
| February 19, 2020 - finish receiver order, email on same to Parson | 1.6 | |
| February 25, 2020 - email parson on receiver order | .1 | |
| February 28, 2020 - email x2 Jay Schaffer on getting trust funds in interest bearing account | .2 | |
| dates - email parsons on receiver | .2 | |

| | | |
|---|---|---|
| March 26, 2020 - get proposed Order from Esther Rodriguez on last hearing with Judge Bare, review record, locate transcript & minute order do not have, advise her will review, advise parsons of status of same | .4 | |
| March 31, 2020 - revise proposed order on stay from Esther Rodriguez, email with her on same | .7 | |
| April 15, 2020 - tel Parson (after emails 1 per week), he promises to advise in next 2 days on status with Special master | .2 | |
| April 17, 2020 - tel from Michael Reno REDACTED | .1 | |
| April 24, 2020 - Call from REDACTED | .1 | |
| April 20 & 21, 2020 - Email & telephone x2 with Parsons on receiver = he promises to have plan, word, by 4/27/20 | .1 | |
| April 29, 2020 - telephone Parsons, leave message, no hear from him | .1 | |
| May 12, 2020 - tel Parsons x2 prior week leave msgs, speak with him today = he to call today but does not - also telephone with REDACTED | .2 | |
| May 13, 2020 - telephone Parsons leave message | .1 | |
| May 18, 2020 - telephone Parsons leave message | .1 | |
| May 20, 2020 - telephone Parsons x2 = he says will go ahead and circulate proposed Order to get to judge, should be in 2 days.... | .3 | |
| May 27 + 28, 2020 - telephone Parsons leave message - send email = he calls, advised was in hospital & is now recovering, hopes to get order out asap... | .2 | |
| June 10, 2020 - telephone from class member REDACTED | .1 | |
| June 12, 2020 - telephone Parsons leave message send him email 2 days prior... | .1 | |
| June 16, 2020 - telephone Parsons REDACTED   will advise of status on 6/18... | .1 | |

| | | |
|---|---|---|
| June 16, 2020 - Review Esther Rodriguez Order/Letter sent 6/15 to Judge consider issues with  same | .7 | |
| June 18, 2020 - do ltr with corrected order to 6/15 Esther Rodriguez letter = she abusively fails to correct errors I told her about... | 1.4 | |
| June 18, 2020 - tel from class plaintiff REDACTED | .1 | |
| June 25, 2020 - tel from REDACTED | .2 | |
| June 26, 2020 - email x2 with Parsons on status | .4 | |
| July 8, 2020 - email Parsons on status (and prior dates) | .1 | |
| July 14, 2020 - email Parsons on status, he advises still working on... | .1 | |
| July 17, 2020 - Review order, Email Parsons on Bare Order on receiver pay = REDACTED | .3 | |
| August 2, 2020 - respond to Parsons on receiver order = lay out options to him | .3 | |
| August 3, 2020 - EMAIL to Parsons = REDACTED. | .3 | |
| August 12, 2020 - telephone with  plaintiff. murphy REDACTED | .2 | |
| August 13, 2020 - email with Parsons & Esther Rodriguez on receiver appointment options | .3 | |
| August 19, 2020 - telephone from M Reno REDACTED | .1 | |
| October 27, 2020 - call from REDACTED | .1 | |
| November 4, 2020 - call from REDACTED | .3 | |
| November 9, 2020 -call from REDACTED | .2 | |
| December 11, 2020 - call from REDACTED | .1 | |
| December 14, 2020 - call from REDACTED | .1 | |
| December 16, 2020 -call from REDACTED | .2 | |
| December 18, 2020 - email with class member REDACTED | .1 | |

| | | |
|---|---|---|
| December 22, 2020 - Telephone with parsons on plan for receiver, etc., he says REDACTED | .4 | |
| December 26, 2020 - call from REDACTED | .1 | |
| December 26, 2020 - advises Special Master is dead, email with parsons | .1 | |
| January 13, 2021 - telephone with class member REDACTED | .1 | |
| January 18, 2021 - call from REDACTED | .1 | |
| January 26, 2021 - telephone from class member REDACTED | .2 | |
| February 10, 2021 - telephone from class member REDACTED | .2 | |
| February 11, 2021 - telephone from class member REDACTED | .2 | |
| February 15, 2021 - telephone from class member REDACTED | .4 | |
| February 16, 2021 - telephone from class member REDACTED | .1 | |
| February 25, 2021 - telephone from class member REDACTED | .1 | |
| March 18, 2021 - telephone from class member REDACTED | .2 | |
| April 16, 2021 - telephone from class member REDACTED | .1 | |
| June 4, 2021 -telephone from class member REDACTED | .2 | |
| June 7, 2021 - NO TIME CHARGE - telephone from class member REDACTED | | |
| July 7, 2021 telephone from class member REDACTED | .3 | |
| July 20, 2021 -telephone from class member REDACTED | .1 | |
| August 4, 2021 - telephone from class member REDACTED | .1 | |

| | | |
|---|---|---|
| August 9, 2021 - telephone from class member REDACTED | .1 | |
| August 17, 2021 -telephone from class member REDACTED | .2 | |
| August 30, 2021 -telephone from class member REDACTED | .1 | |
| September 24, 2021 - telephone from class member REDACTED | .1 | |
| October 5, 2021 - telephone from class member REDACTED | .2 | |
| October 18, 2021 - telephone from class member REDACTED | .1 | |
| December 30, 2021 - review judgement on appeal | .4 | |
| TOTALS | 203.9 | 11 |

# EXHIBIT "3"

ATTORNEY TIME CHARGES - LEON GREENBERG
Motion for Appointment of Receiver and Successful Related Appeal
(These time charges are all sought for payment in
*Murray v. A Cab* motion filed on February 22, 2022)

| Redacted Time Records Attorney Leon Greenberg | time to tenth of an hour | travel time |
|---|---|---|
| December 28, 2020 - start work on motion for receiver | 1.1 | |
| December 29, 2020 - work on motion for receiver | 3.2 | |
| December 30, 2020 - FINISH motion for receiver, draft order, declaration in support of same, file same | 6.8 | |
| January 4, 2021 - receive hearing notice on receiver motion, REDACTED | .2 | |
| January 13, 2021 - email with Jay Shafer, he needs time on motion opposition on receiver | .1 | |
| January 15, 2021 - email from shafer, he is not done today confirm OK for 1/19/21 | .1 | |
| January 20, 2021 - review opposition on motion for reciever in today, gather financials & letter to Shaefer can motion be on submission? | .7 | |
| January 22, 2021 - try to locate potential receiver REDACTED | .3 | |
| January 22, 2021 - work on reply on Motion for receiver | 1.8 | |

Page 1 of 7

| | | |
|---|---|---|
| January 23, 2021 - telephone, email, REDACTED   on possible receiver position | .3 | |
| January 23, 2021 - further work on reply on motion receiver | 1.2 | |
| January 24, 2021 - email with REDACTED on receiver | .2 | |
| January 24, 2021 - Further on reply on motion for receiver, get taxi authority data & review | .9 | |
| January 25, 2021 - email REDACTED on receiver REDACTED | .3 | |
| January 25, 2021 - finish reply on motion for receiver, do declaration on same, proof/edit/file | 4.2 | |
| January 26, 2021 - email with REDACTED  possible receiver | .2 | |
| January 27, 2021 - tel, email, with REDACTED possible receiver, REDACTED | .3 | |
| January 29, 2021 - telephone x3 with REDACTED possible receiver REDACTED | 1.2 | |
| February 1, 2021 - review minute order denying receiver | .2 | |
| February 3, 2021 - email Shaffer on preparing receiver order denial | .1 | |

| | | |
|---|---|---|
| February 17, 2021 - email from defendant on order on receiver, proof same and give ok to /s/ sign same | .2 | |
| February 19, 2021 - telephone from REDACTED on status of receiver, REDACTED | .1 | |
| February 23, 2021 - do notice of appeal & appeal case statement on receiver order denial | .4 | |
| March 3, 2021 - work on appeal case statement | 1.1 | |
| March 17, 2021 - review defendant motion for costs on receiver motion, email Jay shafer for time on same | .2 | |
| March 26, 2021 - email, do stipulation with Jay Shafer on motion brief time on his motion for fees/costs on receiver request | .3 | |
| March 29, 2021 - get stipulation done, submitted, on time on motion for fees by defendant, argument 6/9 | .1 | |
| April 30, 2021 - work on opposition on motion for fees of defendant | 2.8 | |
| May 4, 2021 - finish opposition, declaration, on motion for fees | 5.3 | |
| May 5, 2021 - start work on receiver appeal brief | .3 | |
| May 6, 2021 - work on brief on receiver appeal | 1.6 | |

| | | |
|---|---|---|
| May 7, 2021 - work on brief on receiver appeal, discuss facts and summary of argument | 5.3 | |
| May 11, 2021 - work on brief on receiver, lexis on same | 1.8 | |
| May 12, 2021 - work on brief on appeal, standard of review issue | 3.8 | |
| May 13, 2021 - work on brief on appeal, lexis, standard of review issues | 2.7 | |
| May 14, 2021 - work on brief on appeal, finish standard of review issue | .9 | |
| May 17, 2021 - work on brief, review stuff from Joseph Adamiak on research, add to standard of review, edits | .8 | |
| May 18, 2021 - Start on argument, edits to receiver appeal brief | .4 | |
| May 19, 2021 - further work on arguments, edits, to receiver appeal brief | 3.7 | |
| May 20, 2021 - receiver appeal brief draft of argument, finish draft of analysis of J. Kierny order errors | 5.2 | |
| May 21, 2021 - work on brief revisions, go over Joey Adamiak corrections... | .4 | |
| June 8, 2021 - prep for argument on 6/9 in person per 6/7 email on fee request motion by defendant | 1.7 | |

| | | |
|---|---|---|
| June 9, 2021 - appear, argue defendant motion on fees on lost motion for receiver = Judge defers decision because pending appeal of receiver order.... declines to state whether any other relief is properly sought... | 1 | 1.5 |
| June 17, 2021 - work on receiver brief, edits, issue of abuse of discretion to deny.... | 4.1 | |
| June 18, 2021 - work on receiver brief, finish draft, cover issue of denial of judgment relief otherwise, begin further edits, proof | 4.6 | |
| June 22, 2021 - work with R. Gonzalez on proof of receiver brief, appendix | .2 | |
| June 23, 2021 - do stipulation on briefing time on receiver appeal | .2 | |
| June 30, 2021 - review appendix status, organization, from R. Gonzalez, see about extra needed stuff | .8 | |
| July 6, 2021 - proof, edits, to brief based on R. Gonzalez proof, it is in final but needs record cites | 4.2 | |
| July 8, 2021 - work on brief for appeal, appendix with R. Gonzalez | .4 | |
| July 10, 2021 - work on brief for appeal, AA references | .3 | |

| | | |
|---|---|---|
| July 12, 2021 - work on appeal brief, edits, line up AA references | 2.2 | |
| July 15, 2021 - work with R. Gonzalez on final review, edits, of receiver appeal brief, ensure is correct and Appendix is OK, get same filed | 2.4 | |
| August 9, 2021 - tel from Esther Rodriguez on appeal, Michael Wall deceased, she needs time for brief... | .1 | |
| September 10, 2021 - Esther Rodriguez emails = extend time on receiver appeal | .2 | |
| October 15, 2021 - review Esther Rodriguez brief on Receiver | .2 | |
| October 19, 2021 - work on reply on Receiver appeal | 5.1 | |
| October 20, 2021 - work on reply on receier appeal | 2.7 | |
| October 21, 2021 - work on receiver appeal reply .... | 3.2 | |
| October 22, 2021 - work on receiver appeal reply, get through reply on defendant claims record supports receiver denial | 5.4 | |
| October 25, 2021  work on receiver appeal reply brief | 4.1 | |

| | | |
|---|---|---|
| October 26, 2021 - finish draft of receiver reply brief, edits, give to R. Gonzalez, get back, do final edits & to R. Gonzalez to format, etc., for filing | 4.6 | |
| October 27, 2021 - final edits, review of reply brief, have R. Gonzalez file same | 1.1 | |
| February 17, 2022 - review Nev. Sup. Ct. Decision on receiver denial, consider issues.. | .2 | |
| February 18, 2022 - start work on motion for fees on receiver appeal, lexis on same, get cases, draft out motion on law, reasons, must get award | 5.8 | |
| February 22, 2022 - do motion for fees and costs on receiver appeal in final, declaration on same, have it filed | 1.8 | |
| | | |
| | | |
| | | |
| | | |
| TOTAL | 117.4 | 1.5 |
| | | |

# EXHIBIT "4"

Attorney Time Expenditures

Associate Attorney Ruthann Gonzalez – 1/1/22 through 12/9/22

| **DATE** | **ACTIVITY** | **HOURS** |
|---|---|---|
| 1/16/2022 | proof read declaration for reply to motion for attorney fees in appeal # 77050 and proof and edit reply to Defendant opposition in the same | 0.6 Hours |
| 1/18/2022 | edit and file Reply to Appellants opposition to motion for fees on appeal in appeal 77050 | 0.4 Hours |
| 1/26/2022 | Prepare stipulation and order and submit to Dept. 2 inbox for 1 week continuance on opposition to Motion for Fees | 0.4 Hours |
| 1/28/2022 | start table detailing motion/issues heard during proceedings for which Defendant seeks costs on appeal | 0.3 Hours |
| 1/31/2022 | complete analysis (and compile excel) of all transcripts claimed on A Cab's Motion for Appeal Costs | 1.4 Hours |
| 1/31/2022 | proof and file letter to Esther Rodriguez RE: motion for appeal costs | 0.3 Hours |
| 2/3/2022 | proof, edit and prepare Motion for costs opposition and declaration | 0.8 Hours |
| 2/3/2022 | file opposition to motion for appeal costs | 0.1 Hours |
| 2/7/2022 | review supplements used to determine judgment amount in an effort to prepare modified judgment | 1.9 Hours |
| 2/10/2022 | proof, edit and file supplement to defendant reply on motion for fees and costs | 0.2 Hours |
| 2/11/2022 | proof declaration of Charles Bass on modification of judgment | 0.3 Hours |
| 2/14/2022 | proof read and edit motion for modification of judgment and attorney declaration, bates number and create index for appendix, prepare for filing and file | 1.3 Hours |
| 2/16/2022 | Hearing on Defendant motion for costs | 1.5 Hours |
| 2/16/2022 | Review expenses related to transcripts of proceedings and depositions. Locate invoices and note missing invoices | 1.9 Hours |
| 2/25/2022 | proof edit and file opposition on motion for declaratory relief | 0.9 Hours |
| 3/1/2022 | REDACTED | 0.3 Hours |
| 3/2/2022 | compile A Cab revenue data from NTA and create spreadsheet calculated revenue, breaking out lease vs. non-lease trips | 2.1 Hours |
| 3/4/2022 | File opposition on motion for stay | 0.2 Hours |
| 3/4/2022 | proof opposition to motion to stay and attorney declaration | 0.9 Hours |
| 3/4/2022 | edit declaration on opposition to motion to stay to correct revenue numbers reflecting received FOIA information re: total 2021 lease trips and compile motion for filing | 1 Hours |
| 4/26/2022 | Draft order granting stay | 0.4 Hours |

| | | |
|---|---|---|
| 4/26/2022 | Draft letter to Esther Rodriguez RE: order granting stay | 0.3 Hours |
| 4/26/2022 | proof, draft, compile, and send email to Esther Rodriguez and Jay Shafer RE: proposed order granting stay in response to Supreme Court Order | 0.2 Hours |
| 5/2/2022 | Compile PDF and convert word perfect to word file and serve letter and order on Wiznet and email in draft order to chambers Submit order to Kierny on stay | 0.7 Hours |
| 5/3/2022 | Serve order granting stay with notice of entry, draft, compile and file supplemental appendix to writ as ordered by NSC | 1.1 Hours |
| 5/11/2022 | Go to court, attend status check hearing on remand of receiver after appeal, return to office court time (waiting and for status check) | 0.7 Hours |
| 5/31/2022 | proof, edit and prepare motion to apportion costs and for reconsideration and Declaration thereto. Compile all exhibits, bates number and create index. Review and file the same. | 2.1 Hours |
| 7/7/2022 | Requested 14 day phone extension for writ reply | 0.1 Hours |
| 7/12/2022 | spoke with client by phone REDACTED | 0.2 Hours |
| 7/14/2022 | proof and edit Writ Reply | 1.1 Hours |
| 7/15/2022 | Final proof and edits of Writ Reply (on stay) Draft table of contents, table of authorities, and cover page compile PDF | 2.1 Hours |
| 7/21/2022 | proof and edit opposition to Rule 11 #1 | 0.5 Hours |
| 7/27/2022 | Download and schedule opposition for motion for sanctions | 0.1 Hours |
| 7/28/2022 | Download and schedule opposition for motion for sanctions | 0.1 Hours |
| 8/9/2022 | Prepare Chambers copy of supplement on bond issue | 1.1 Hours |
| 8/12/2022 | prepare replies for 4 motions that were pending during stay file motions | 0.7 Hours |
| 8/12/2022 | proof read and edit motion to lift stay prepare motion and exhibits file motion | 0.6 Hours |
| 8/29/2022 | proof, edit, prepare and file Order to Show Cause Response costs appeal | 0.3 Hours |
| 9/30/2022 | proof edit prepare and file Brief to Judge Gall | 0.6 Hours |
| 11/17/2022 | prepare and file notice of entry of orders (modifying judgment, attorney fees etc.) | 0.5 Hours |
| 11/18/2022 | Proof edit prepare and file motion to distribute class funds on OST | 0.6 Hours |
| 12/5/2022 | Read and save opposition to motion to distribute class funds | 0.2 Hours |
| 12/9/2022 | proof and file second supplement to motion for receiver | 0.2 Hours |
| | **TOTAL TIME** | **31.2** |
| | | |