LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for the Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

In re:

A CAB, SERIES L.L.C,

Debtor.

Case No. 22-14361-nmc
Chapter 11

**DEBTOR'S NOTICE OF REDLINE COMPARE OF ORIGINAL**
**CHAPTER 11 PLAN OF REORGANIZATION TO AMENDED PLAN**

A Cab, Series L.L.C., f/k/a A Cab, LLC, a Nevada series limited liability company, as debtor and debtor in possession (the "Debtor"), hereby provides a redline comparison attached as **Exhibit 1** pursuant to LR 3019 of its *Amended Chapter 11 Plan of Reorganization* filed on June 3, 2024, as compared with its Original Plan filed on February 6, 2023 [ECF No. 65], and prior to any amendment thereto, including but not limited to the amendment at ECF No. 375.

Dated: June 3, 2024.

By: /s/ Matthew C. Zirzow
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for the Debtor

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

# EXHIBIT 1

Debtor name: **A Cab, Series L.L.C.**

United States Bankruptcy Court for the: **District of Nevada**

Case number: **22-14361-nmc**

☒ Check if this is an amended filing

Official Form 425A

---

**Plan of Reorganization for Small Business Under Chapter 11**    **02/20**

**A CAB, SERIES L.L.C.'S *AMENDED* CHAPTER 11 PLAN OF REORGANIZATION, Dated** ~~February 6, 2023~~**June 3, 2024**

**Background for Cases Filed Under Subchapter V**

**A. Description and History of the Debtor's Business**

**1. Overview of the Corporate Structure.**

A Cab, Series L.L.C, f/k/a A Cab, LLC (the "Debtor"), is a Nevada series limited liability company. Creighton J. Nady ("Mr. Nady") is the Debtor's manager, and the Laurie Nady Family Trust (the "Trust") is the sole member. Mr. Nady and his wife are the trustees of the Trust, and thus indirectly control the Debtor. The Debtor operates as a taxicab service in the Las Vegas area, and is licensed by the Nevada Taxicab Authority (the "Taxicab Authority"). ~~As of the Petition Date, the Debtor's various cells collectively had about 76 active taxicabs in use. Additionally, one of the Debtor's cells owns Taxi Leasing Company ("TLC"), which also has numerous cells as well, and which collectively had about 54 active additional taxicabs in use as of the Petition Date. The Debtor itself does not have any employees, however, TLC has various cells, including one that enters into leases with drivers, as well as other cells that have employees, and engage in various designated tasks, including for example, administration, operations, and repairs among other matters. The Debtor is the "master" or "parent" in the series LLC, and thus all of its cells and the specific assets of those cells, are part of this bankruptcy case. Attached as **Exhibit 1** are the Debtor's and TLC's most recent pre-petition consolidated balance sheet and profit and loss statements for 2021 and YTD 2022 through November 30, 2022.~~

The Debtor originally was organized in 2000 and became a series limited liability company ("LLC") in 2011, but did not change its name to its current form until 2017. A series LLC is a flexible form of LLC that is different from normal LLCs because it can have a "master," "parent" or "top-level" LLC, and then can have a virtually unlimited number of "series," "cells" or "divisions" under it. The "top-level" LLC in a series LLC and specific series within a Series LLC may enter into contracts, hold assets, and sue and be sued in their own stead. The assets of each series are shielded from the liabilities of the other series and the top-level LLC itself. The series concept is useful because it allows for the formation of a single legal entity that is composed of separate and distinct asset portfolios, and also allows for the possibility of a different ownership and management structures in each division. Series LLCs allow multiple businesses to find protection independently of one another. For example, if anyone files a lawsuit against any of the series LLCs or the parent LLC, this lawsuit should not affect the other businesses with it.

The Debtor has various active series within it that engage in various aspects of its administration and operations. A Cab Series LLC Administration Company is used to make draw payments and tax payments. All other management companies under the Debtor are dormant. There are 177 individual taxicab accounts that are either active, semi-active, or dormant. Specifically, 85 have taxicabs on the balance sheet, 64 are active taxicabs, and 21 have taxicabs that have passed the 10-year age limit imposed by the Taxicab Authority, and thus are no longer in use, and the majority of the

Debtor    **A Cab, Series, L.L.C.**                                    Case number:  **22-14361-nmc**
          Name

others will age-out under this same regulation in the next 18 months.

The Debtor also has individual taxicab series, which own the vehicle in their individual cell. Series cells that are run a "leasing model," which have leasing contracts directly with the driver leasing he vehicle, have contracts with Taxi Leasing Company, Taxi Administration Company, and Taxi Maintenance Company. By contrast, series cells run on an "employee model," where the driver is an employee of the company, have contracts with Taxi Employee Leasing Company, Taxi Administration Company, and Taxi Maintenance Company.

Taxi Employee Leasing Company Two employs 28 employees, and these employees are leased out to other series cells as drivers, mechanics, dispatch or administrative personnel.

Taxi Administration Company leases employees from Taxi Leasing Company Two, and provides various services for Taxi Maintenance Company and individual taxicab series that follow the "employee model," which are charged at a contracted rate.

Taxi Leasing Company leases employees from Taxi Employee Leasing Company Two, and performs various services for Taxi Maintenance Company and individual taxicab series under the "leasing model," which are also charged at a contracted rate.

Taxi Maintenance Company leases employees from Taxi Employee Leasing Company Two, and provides maintenance services for individual taxicab series, which are charged at a contracted rate. It also has an agreement with Taxi Administration Company to receive administration services charged at an agreed upon rate.

Both the Debtor as the top level LLC, and each of the active series within it, each have their own operating agreement, assets, and bank account. Mr. Nady is the manager of all of the active series within the Debtor.

For ease of presentation, the Debtor prepares consolidated financial statements, collectively with its series, and attached as **Exhibit 1** are the most recent consolidated balance sheet and profit and loss statements for 2022 and 2023.

On December 12, 2022 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing its bankruptcy case (the "Chapter 11 Case"). The Debtor elected to be treated under Subchapter V of chapter 11 of the Bankruptcy Code, and thus is authorized to continue operating its business as a debtor in possession pursuant to § 1184 of the Bankruptcy Code. Nathan Smith has been appointed as Subchapter V trustee in the Debtor's Chapter 11 Case.

**2. The Murray Case**

Since October 2012, the Debtor has been a party to class action litigation pending in the Eighth Judicial District Court, Clark County, Nevada (the "Nevada State Court"), styled as Murray, *et al.* v. A Cab, Series L.L.C., Case No. A-12-669926-C (the "Murray Case"), which originally involved claims by 890 former taxi drivers (collectively, the "Murray Plaintiffs") for alleged violation of the Nevada Minimum Wage Act under the Constitution of the State of Nevada. More recently, the Debtor has been advisedMurray Plaintiffs have taken the position that the actual number of claimants has been reduced to approximatelyis 601 in total.

On August 21, 2018, the Nevada State Court (Judge Kenneth Cory) entered judgment in favor of the Murray Plaintiffs, which was subsequently amended by an order entered October 22, 2018. The Debtor thereafter appealed that final judgment and certain post-judgment orders to the Nevada Supreme Court.

Debtor    **A Cab, Series, L.L.C.**                           Case number:  **22-14361-nmc**
          Name

On or about September 17, 2018, the Murray Plaintiffs executed on various bank accounts held by ~~an affiliate of~~various specific series within the Debtor, but not the Debtor itself, in the collection of their judgment, which resulted in a garnishment in the total amount of $233,620.54. ~~This~~The Debtor asserts that not only were such funds not its property or held in its accounts, as the only entity specifically liable on the judgment, but also this collection action was done shortly before payments to taxicab drivers were due, and almost resulted in the near catastrophic shutdown of the entire business.

On December 31, 2021, the Nevada Supreme Court issued an opinion and remittitur, which directed certain modifications to the Murray Plaintiffs' judgment, including a reduction of the amount of damages awarded. After remand of the matter back to the Nevada State Court, on November 17, 2022, that Court, with a different judge presiding (Judge Maria Gall), entered various relevant orders. ~~as hereinafter detailed.~~

*First*, the Court directed the entry of a judgment in favor of the Murray Plaintiffs in the principal amount of $685,886.60 as of August 21, 2018, plus post-petition interest accruing thereon, for alleged wages owing for the period of October 8, 2010 through December 31, 2015. ~~Accordingly, although the claims in the Murray Case are for alleged wage and/or overtime claims for drivers, they all involve claims for time periods outside of the 180-day lookback period prior to the Petition Date to qualify for priority treatment pursuant to § 507(a)(4) of the Bankruptcy Code, and thus are general unsecured claims.~~

*Second*, the Nevada State Court entered a modified awards of fees and costs in favor of the Murray Plaintiffs' counsel in the principal amount of $541,271, together with interest accruing thereon from August 21, 2018, as well as an additional award of a principal amount of at least $46,528.07 in additional attorneys' fees arising from the latest appeal in the Nevada Supreme Court. Inclusive of interest through the Petition Date, the total claims of the Murray Plaintiffs, collectively, are alleged to be approximately $870,000, and the total claims of ~~Leon~~ Greenberg, P.C., as their counsel, are alleged to be approximately $744,000, for a total of about $1.615 million.

The Murray Plaintiffs thereafter ~~filed a motion seeking to disburse $303,694.54 in funds held in their counsel's trust account to satisfy, in part, the Murray Judgment and the payment of their counsel's fees, and also~~ continued with their request for the appointment of a receiver over the Debtor's business, ~~both of~~ which ~~were~~wase set for hearing on December 15, 2022. Accordingly, faced with the possibility of the Murray Plaintiffs and their counsel seeking ~~an~~ imminent collection of their judgment and fee awards, which the Debtor lacked the financial ability to pay, at least all at once, and in order to bring about a resolution of all of these matters, while preserving its operations to protect value and avoid the severe disruption, if not complete shutdown, that would occur if those matters were enforced ~~like they were previously in September 2018~~, as well as to avoid the cost and dislocation that would occur if a receiver were appointed to operate the business, the Debtor sought bankruptcy reorganization. The Debtor's bankruptcy filing stayed the Murray Case, and various other litigations involving the Debtor by operation of the automatic stay in § 362 of the Bankruptcy Code.

~~The Murray Plaintiffs have also separately asserted that they allegedly have an alter ego claim against~~ On March 20, 2023, the Murray Case was administratively re-assigned to yet another judge (Judge Jacob Reynolds), who has no prior experience with the case.

**3.** ~~Mr.~~ ~~Nady, and apparently in aid of collection of the same sums, however, the Debtor asserts that such claim, if such a claim even exists, which is itself disputed, became property of the bankruptcy estate upon the filing of the Debtor's Chapter 11 Case.~~

**Other Litigation**

Debtor    **A Cab, Series, L.L.C.**                                    Case number:  **22-14361-nmc**
　　　　　Name

The Debtor also had various other litigations pending against it or involving it as of the Petition Date, which included the following:

*First*, the Debtor has a similar class action wage and hour litigation commenced against it by nearly identical plaintiffs as the Murray Plaintiffs in Nevada State Court, styled as Dubric, *et al.*, v. A Cab, Series, L.L.C., Case No. A-15-721063-C (the "Dubric Case"). On August 31, 2021, the Nevada State Court approved a settlement with nearly all of the plaintiffs in this litigation (the "Dubric Plaintiffs"), and the Debtor thereafter caused this settlement to be fully funded in the amount of $224,529 to the class action plaintiffs, as well as attorney's fees and costs to the Bourassa Law Group, as counsel, of an additional $57,500. TheOn September 19, 2023, Bourassa Law Group filed its latest status report in the Dubric Case was filed with the Nevada State Court on August 18, 2022, and which indicated that as of that date, only 347397 of the 867 checks sent had cleared, which consisted of about $120,000comprised $134,804.93 of the settlement funds, thus leaving about $10090,000 yet to be distributed to the remaining plaintiffs. As of February 1, 2023, the Debtor has been advisedThis latest status report also indicated that about $92,000 of the foregoing sum still remains in Bourassa Law Group's IOLTA account (the "Bourassa Trust Account") undisbursed dueLaw Group was continuing to an inabilitytry to locate certain plaintiffs.  The Debtor reserves all rights and remedies against any of the foregoing amounts not already disbursedother unpaid claimants.

*Second*, on March 11, 2019, an unspecified number of the Murray Plaintiffs filed a new complaint in Nevada State Court, styled as Murray v. Nady, *et al.*, Case No. A-19-790884-C (the "Recovery Case"), which pled claims against Mr. Nady and his various family members, including his wife and children, among others, for the avoidance and recovery of alleged fraudulent transfers pursuant to NRS chapter 112. Specifically, this complaint in the Recovery Case alleged that during the time the Murray Case was pending, these insiders engaged in "equity withdrawals" from the Debtor totaling in excess of $2,000,000, and during a time that the Murray Plaintiffs allege that the Debtor was insolvent, and thus that those insiders should be forced to return such monies back to the Debtor to satisfy creditor claims. The Recovery Case was later staystayed pursuant to the parties' stipulation dated May 31, 2019, and also due to the Murray Plaintiffs and their counsel filing an involuntary bankruptcy petition against the Debtor, as explained more fully below. The defendants in the Recovery Case assert that the fraudulent transfer claims are without meritmeritless because all payments made to them were made in the ordinary course of business, and for legitimate business expenses, including but not limited to, for actual and necessary services rendered to or for the benefit of the Debtor's business.  Upon the commencement of the Chapter 11 Case, these claims now belong to the bankruptcy estate.  Based on the foregoing, however, the Debtor asserts that these claims have no value, and indeed should not, as they cannot be pursued in light of the distributions provided by this Plan as well.expected to work for free .

*Third*, on April 12, 2019, certain of the Murray Plaintiffs, their counsel, and others, as petitioning creditors, filed an involuntary petition for chapter 7 liquidation against the Debtor, Case No. 19-12252-mkn, in the Bankruptcy Court, and on the theory that their potential recovery from the Debtor needed to be protected pending the outcome of certain appeals then pending from the Murray Case before the Nevada Supreme Court. On September 26, 2019, the Bankruptcy Court entered an order abstaining in the form of a dismissal as toand dismissing this involuntary bankruptcy case, and in its written decision, specified that it did so principally because certain unresolved appeals from the Murray Case remained pending at the time before the Nevada Supreme Court.

*Fourth*, on September 20, 2019, a matter styled as A Cab, Series L.L.C., Administration Company v. Gagliano, *et al.*, Case No. A-19-802346-C (the "Gagliano Case") was filed in Nevada State Court, which asserted claims against various former parties in its employ for breach of contract and related claims for breaching certain Severance Agreements and Releases, which agreements also contained confidentiality provisions. The defendants in the Gagliano Case were represented by Leon Greenberg, P.C., who is also counsel to the Murray Plaintiffs in the Murray Case. These defendants

| Debtor | **A Cab, Series, L.L.C.** | Case number: | **22-14361-nmc** |
| | Name | | |

included a witness in the Murray Case who was previously employed with the company, and many of the Murray Plaintiffs. The defendants in the Gagliano Case, in turn, counterclaimed for abuse of process. ~~As of the Petition Date, the Galiano defendants' motion for judgment~~By minute order dated ~~on the pleadings was pending. In spite of being advised of the Debtor's bankruptcy and notice of the automatic stay, on~~or about January 19, 2023, the Nevada State Court ~~entered a minute order on the matter, and apparently will be entering a written order with more detailed determinations. In general, the Nevada State Court~~ held~~, on a post-petition basis,~~ that the original plaintiff in this litigation was not the Debtor, and ~~that the Debtor never sought or was granted leave to substituted in as the proper plaintiff, and therefore~~ dismissed the claims against the ~~Defendants. The Debtor reserves all rights with respect to this post-petition ruling.~~defendants therein.

*Fifth*, ~~as of the Petition Date, there were at least five (5) known auto~~the Debtor is a named party, whether rightfully or wrongfully, in various automobile negligence ~~cases pending in Nevada State Court~~and personal injury actions allegedly involving ~~the Debtor as a defendant. Although such litigations are an unfortunate reality of being~~it a taxicab associated with it, or really more accurately, one of its specific series. The Debtor has entered into numerous stipulations for stay relief in its Chapter 11 Case with nearly all personal injury claimants, all or nearly all of which resulted in those claimants waiving any claims against the Debtor's bankruptcy estate itself (to the ~~taxicab business, these litigations do impact~~extent the ~~Debtor because it has a self-insured retention of $25,000, thus requiring it to often bear~~claimant even had any to begin with), while still allowing the ~~brunt~~claimant to proceed with the adjudication or liquidation of their claim to the extent of ~~the costs from many of these claims.~~ any available insurance coverage, if any. The Debtor reserves all rights, claims, defenses, and remedies in these litigations~~, including without limitation, to assert that it is not the real party in interest and/or that it is not liable for the specific debts of its individual cells that owns the individual taxicabs in question and leased them to the specific drivers that are at issue in each of these various litigations.~~.

### **4. Other Recent Challenges**

The Debtor also faces other challenges to its business, which include~~, but are not necessarily limited to,~~ the following:

*First*, the Debtor also experienced significant hardships during the COVID-19 pandemic, and had to cease operations from late March through early June 2020, and then with significantly scaled back operations for the rest of 2020. During this time, the Debtor survived by getting various Paycheck Protection Program Loans totaling about $1.186 million (the "PPP Loans"), and the SBA Loan, as well as Mr. Nady personally infusing $179,000 to sustain operations, which were funds he had resulting from the sale of an unrelated business located in Arizona. The Debtor also furloughed some staff and others took pay cuts to survive during this difficult time. By around June 2021, however, the Debtor's operations had rebounded back, and in late 2021, the company received full forgiveness of PPP Loans. The forgiveness of the $1.186 million in PPP Loans accounts for the abnormally high net income on the Debtor's 2021 financials.

*Second*, the Debtor, just like all other taxicab companies, also continues to experience competition from ridesharing companies like Uber and Lyft, ~~among~~and also more recently from other ~~services.~~ larger taxicab companies that have flooded the market with taxis. The Debtor ~~also~~ operates under substantial regulatory and reporting requirements by the Taxicab Authority, including for example a requirement that its vehicles must be retired within ten (10) years of the date of their manufacture, and the compiling of annual financial reports and filing them with the Taxicab Authority, which impose additional costs and burdens on operations as well, including most importantly, the need to spend money to replace such aged-out cabs with new ones in order to preserve the same revenue stream as projected. Without such continued capital expenditures of new cab purchases to replace the existing aged-out ones, the Debtor's revenues will not remain as projected, and will decrease significantly.

Debtor    **A Cab, Series, L.L.C.**                                          Case number:  **22-14361-nmc**
          Name

### 5. Procedural History ~~to Date~~ in the Chapter 11 Case

The purpose of this bankruptcy case is to preserve the Debtor's business, and to allow it to continue operating in the ordinary course, and without the danger of an immediate enforcement of the Murray Plaintiffs' claims and/or receiver appointment that could shut down or have substantially deleterious effects on its operations, which will allow it to restructure its debts, maintain its ~~drivers'~~ jobs, and preserve value for the benefit of all creditors and parties in interest.

During its Chapter 11 Case, the Debtor filed various "first day" initial emergency motions, which included: (1) a motion to approve the designation of Mr. Nady as the responsible person for the Debtor in the case; (2) a motion to approve the use of cash collateral, subject to a budget and the continuation of adequate protection payments to the SBA at the same rate as the SBA Loan requires; and (3) a motion with respect to utility providers to avoid interruptions in service and put in place procedures to resolve potential additional adequate assurance demands for such providers. The Bankruptcy Court approved the foregoing matters on an emergency interim basis after an initial hearing on December 22, 2022, and approved them on a final basis at a continued hearing on January 31, 2023.

On December 13, 2022, the Bankruptcy Court entered an *Order Setting Status Conference, et al.* [ECF No. 12], which set certain dates and deadlines in the Chapter 11 Case, which are incorporated herein.

On December 14, 2022, the Debtor filed an appeal from the Nevada State Court's determinations in the Murray Case to the Nevada Supreme Court where the appeal remains pending as Appeal No. 85850 (the "Murray Appeal"). On that same day, the Debtor also removed the remainder of the Murray Case pending in Nevada State Court to the Bankruptcy Court, where it is now pending as Adv No. 22-01163-nmc (the "Murray Adversary"). ~~Notwithstanding the removal of this litigation to the Bankruptcy Court, the Nevada State Court still held a hearing in the Murray Case post-removal.~~ On January 20, 2023, the Murray Plaintiffs, acting through ~~Leon~~ Greenberg, P.C., filed a motion to remand the Murray Case back to Nevada State Court~~, which is set for hearing on February 23, 2023, and thus remains unresolved as of the filing of this Plan. As of the filing of this Plan, Leon Greenberg, P.C. has not filed any statement pursuant Fed. R. Bankr. P. 2019 regarding its multiple representation of the Murray Plaintiffs~~.

The Debtor's 341 meeting of creditors was held on January 12 and 19, 2023, and concluded at that second date, and its subchapter V status hearing was held on January 31, 2023. ~~The Debtor has also been advised that Leon Greenberg, P.C. will be filing a motion seeking permission to file some kind of "joint," "class" or "group," proof of claim on behalf of the Murray Plaintiffs, but that matter is not scheduled to be heard by the Court until February 14, 2023, and thus it is unknown, as of the submission of this Plan, whether and to the extent that may be granted.~~ ***The Debtor strongly encourages all claimants to file their own proofs of claim, as there is no guaranty that the foregoing motion will be granted and the failure to file a proof of claim may result in a claimant being entitled to no distribution in the case.*** On March 31, 2023, the Court entered an order expanding the powers of the Subchapter V Trustee to investigate and report regarding potential avoidance actions of the estate.

On April 13, 2023, the Court entered an order staying further proceedings in the Recovery Case in Nevada State Court pending further order of the Court.

The ~~Debtor~~ Court has ~~also sought to employ~~ approved the Debtor's employment of Larson & Zirzow, LLC as its bankruptcy counsel, ~~and~~ the Law Office of Esther Rodriguez as special counsel for corporate and state court litigation matters, and ~~will likely~~ the law firm of Lewis Roca Rothgerber & Christie, LLP as special counsel for the Murray Appeal, and may retain other professionals. The compensation of the Debtor's professionals~~, including~~ and its Subchapter V ~~trustee, is~~ Trustee are subject to the normal fee application process ~~and approval by~~.

| Debtor | A Cab, Series, L.L.C. | | Case number: | 22-14361-nmc |
|---|---|---|---|---|
| | Name | | | |

On September 1, 2023, the Bankruptcy Court entered an order granting stay relief to allow the Murray Appeal to proceed before the Nevada Supreme Court. As of the filing of this Plan, briefing on the Murray Appeal is completed, however, it is unknown when the Nevada Supreme Court may rule.

### 6. The Debtor's Assets

The Debtor's bankruptcy *Schedules* and *Statement of Financial Affairs* (the "SoFA") [ECF Nos. 41, as amended by 43]schedules detailed its various assets and liabilities. Although the Debtor, as well as the top level series LLC and its recent operating performance. The Debtor's principal assets include, but are are separate and distinct from each of its series, because the Debtor proposes its Plan herein seeking to substantively consolidate the Debtor solely for purposes of calculating distributions under the Plan, and not necessarily limited to: (for any other purpose, the Debtor summarizes its assets across the enterprise on a) consolidated basis as follows: (a) potential return of money garnished in 2018 and held in the Leon Greenberg, P.C. attorney trust account for collection in the Murray Case of $203,620.54, which is disputed because the Murray Claimants and Greenberg P.C. have claimed these funds have been transformed into an appeal bond and/or are no longer property of the estate; (b) an undisbursed appeal bond held in the Leon Greenberg, P.C. attorney trust account arising from the Murray Case in the amount of $100,000.00, which is also disputed property; (c) a Cab Series L.L.C., Series 220's interest in TLC, and thus also all of TLC's cells and for the assets therein; (dsame reasons; (c) office furniture and leasehold improvements, and office/computer equipment; (ed) cash code validators, taxi meters, and taxi cameras used in the operation of the business; (fe) approximately 130 taxicabs of various makes, models, years and condition, either titled in the name of the Debtor's or TLC's specific cells; (g; (f) various radios/telephone and various shop equipment used in the maintenance and repair of taxicabs; (hg) taxi and lease and fleet medallions from the Taxicab Authority, which are not transferable; (ih) an Employee Retention Tax Credit ("ERTC") of up to $570,905, which has been applied for, but not yet received, but is expected sometime in 2023; and (jwhich the IRS has continually sent notices indicated that it needs more time to review; and (i) various asserted or potential litigation claims, including an alleged alter ego claim in the Murray Case, and fraudulent transfer claims in the Recovery Case or otherwise, both of which are also disputed. As previously explained, the Debtor is the "master" or "parent" in the series LLC, and thus all of its cells and the specific assets of those cells, are part of this bankruptcy case. The Debtor may also have other assets in addition to the foregoing list, and the foregoing list is only meant to be illustrative, and not necessarily exhaustive of all potential assets.

The Debtor's SoFA also lists payments to Mr. Nady in the one (1) year before the Petition Date totaling $142,500, which were his normal salary, and to the IRS of $211,133.40, which were for taxes for the company's operations. Accordingly, the Debtor asserts that these payments were for normal and necessary operating expenses associated with the operation of the business, and thus proper and not avoidable.

Shortly after the Petition Date, the Debtor made written demand on Leon Greenberg, P.C. for a turnover of all sums being held in its trust account in favor of the Murray Plaintiffs and their counsel pursuant to § 542 of the Bankruptcy Code, however, that request was refused. The Debtor reserves all rights in that regard.

### 7. The Debtor's Liabilities

The Debtor has one (1) secured creditor, the U.S. Small Business Administration (the "SBA"), for an Economic Injury Disaster Loan (the "SBA Loan") that the company obtained in May 2020 during the COVID-19 pandemic and in order to assist it through that difficult period. The SBA Loan had a balance of $123,217.04 as of the Petition Date, and is secured in substantially all of the Debtor's assets. Under the terms of the SBA Loan, the Debtor is required to pay the SBA $731.00 per month until paid in full for the next 28 years approximately.

| Debtor | **A Cab, Series, L.L.C.** | Case number: | **22-14361-nmc** |
|---|---|---|---|
| | Name | | |

~~The Debtor has one (1) priority unsecured creditor, the Internal Revenue Service (the "IRS"), which is owed approximately $220,000 for 2022 income tax obligations. The Debtor has not filed its income tax return for TY 2022.~~

The Debtor's potential general unsecured claims include~~, but are not necessarily limited to,~~ the following: (a) ~~approximately $300,000 in taxes owing for 2015, which remain disputed and unresolved; (b) the disputed~~the claims in the Murray Case, including allegedly owing to the Murray Plaintiffs and also to their various counsel, which allegedly total in excess of $1.~~615~~85 million ~~as previously detailed, and which are the subject of the Murray Appeal~~; and (b) various trade claims of about $90,000. The Debtor also previously had various personal injury claims asserted against it, however, as previously noted~~; and (c) the contingent and unliquidated claims in the various auto negligence cases presently pending in Nevada State Court, and for which the Debtor has a self-insured retention (the "SIR"),~~ the Debtor has already stipulated with nearly all of ~~$25,000 per incident, but also available~~them to grant them relief from the automatic stay to pursue potential insurance ~~coverage for amounts in excess~~recoveries, provided that they waive their claims against the estate, and anticipates completing any remaining stay relief stipulations by the time of ~~its SIR, which also remain contingent, unliquidated and disputed as~~the confirmation hearing on this Plan.

As of the filing of this Plan~~as well.~~, the Debtor has the following potential administrative claims, and which are subject to final allowance by the Bankruptcy Court: (a) Larson & Zirzow, LLC, the Debtor's general bankruptcy counsel, is owed about $90,000; and (b) the Subchapter V Trustee is owed about $67,000 in fees and costs. Fees and costs to professionals, continue to accrue, and the ultimate final amounts claimed by these professionals will be higher though the end of this Chapter 11 Case, and are subject to allowance by the Court pursuant to the normal fee application process.

**8. The Debtor's Original Plan and the Debtor's Claim Objection to Greenberg P.C.'s Proof of Claim**

On February 6, 2023, as amended on October 3, 2023, the Debtor filed its original Plan of Reorganization (the "Original Plan").

On August 31, 2023, the Debtor filed an Objection to a portion of the Greenberg P.C. POC and sought disallowance of the unliquidated portion thereof, including alleged fees and costs incurred in this Chapter 11 Case (the "Claim Objection"). On October 3, 2023, Court held a hearing on the Debtor's Claim Objection to the Greenberg POC and took the matter under advisement for determination at a later date.

On October 12, 2023, the Debtor and the Murray Claimants entered into a stipulation providing that: (a) the pendency of the Murray Appeal is a pending objection that currently renders the Murray Claimants Proofs of Claim disputed in the Debtor's Chapter 11 Case, and thus that those claims are not presently "deemed allowed" pursuant to 11 U.S.C. § 502(a), and the ultimate allowance or disallowance of those claims in the Chapter 11 Case is contingent on the result of the Murray Appeal; and (b) the parties reserve all rights, arguments, and remedies in the Murray Appeal, or with respect to the confirmation of the Debtor's Plan.

On October 11 and 13, 2023, the Court held an evidentiary hearing on confirmation of the Debtor's Original Plan. On March 5, 2024, the Bankruptcy Court held a hearing where it put on the record in open court its findings of fact and conclusions of law with respect to the Debor's Original Plan, wherein the Court orally denied confirmation of the thereof, but without prejudice, and indicated that it may not rule on the Debtor's Claim Objection to the Greenberg Claim, and instead believing that the Nevada State Court may have the expertise and experience to rule on that matter.

This Plan amends the Original Plan to address issues identified by the Court in its oral ruling denying confirmation.

Debtor    **A Cab, Series, L.L.C.**                                          Case number:  **22-14361-nmc**
       Name

### 9. The Procedures Order

Together with the filing of this Plan, the Debtor is also ~~filed~~filing an *ex parte* motion seeking the entry of an order approving deadlines and procedures related to the Plan (the "Procedures Order"), including the scheduling of a confirmation hearing on the Plan, and of various other deadlines in relation to the Plan. *Creditors should refer to that separate Procedures Order for the deadlines applicable to this Plan.* At this confirmation hearing, the Debtor will be seeking the entry of a confirmation order (the "Confirmation Order"), thereby approving this Plan on all creditors and parties in interest.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit 2**.

### C. Ability to make future plan payments and operate without further reorganization

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate its business. The Debtor has provided projected financial information attached as **Exhibit 3**.

The Debtor's financial projections show that it will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of a total of $~~900~~1,656,000 over the next five (5) years. The final Plan payment is expected to be paid by ~~March 2028~~August 2029, assuming the Plan is confirmed and goes effective in ~~April 2023.~~ July 2024. This timetable may change if confirmation of the Plan is delayed. The Debtor's Projections are *pro forma* projections and premised on what it believes are reasonable assumptions.

**Consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1: Summary

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code proposes to pay the Debtor's creditors from cash flow from ongoing and future operations, and other items as specific herein.

This Plan provides for:          **1** class of priority claims;
                              **2** classes of secured claims;
                              **1** class of non-priority unsecured claims; and
                              **1** class of equity security holders.

This Plan also provides for the payment in full of Allowed administrative and priority claims. All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim and interests.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### Article 2: Classification of Claims and Interests

Debtor    **A Cab, Series, L.L.C.**                                        Case number:  **22-14361-nmc**
       Name

2.01  **Class 1………...**  All Allowed unsecured claims entitled to **Priority** under § 507(a) of the Bankruptcy Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

2.02  **Class 2………...**  The claim of the **U.S. Small Business Administration**, to the extent Allowed as a secured claim under § 506 of the Bankruptcy Code, and arising from a Loan Authorization and Agreement with an effective date on or about May 30, 2020, Loan No. *7804 in the original principal amount of $150,000, and in the amount as of the Petition Date of $123,217.04, and as more particularly set forth in Proof of Claim No. 1 on file in this Chapter 11 Case.

2.03  **Class 3………..**  The claim of any **Other Secured Claims**, to the extent Allowed as a secured claim under § 506 of the Bankruptcy Code. This class includes any claim that is secured by a lien on property in which the Debtor's bankruptcy estate has an interest, which lien is valid, perfected, and enforceable pursuant to applicable law or by reason of an order of the Bankruptcy Court, but only to the extent of the value of the applicable creditor's interest in the bankruptcy estate's interest in such property. Each claim in Class 3 shall ~~be considered to~~ be within its own separate subclass.

2.04  **Class 4………..**  All **Non-Priority General Unsecured Claims** as are Allowed under § 502 of the Bankruptcy Code, including any unsecured claims of any secured creditors resulting from the bifurcation of their claims pursuant to § 506 of the Bankruptcy Code.

2.05  **Class 5………..**  All Allowed **Equity Interests** of the Debtor.

Official Form 425A  **Plan of Reorganization for a Small Business Under Chapter 11**                page 10

Debtor **A Cab, Series, L.L.C.**          Case number: **22-14361-nmc**
        Name

### Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim Allowed under § 503 of the Bankruptcy Code will be paid in full, in cash, over time pursuant to § 1191(e) of the Bankruptcy Code, any fees and costs as Allowed by the Court, as follows: (1) any professionals holding retainers may apply such retainer funds to the payment of any Allowed fees and costs; (2) any remaining unpaid professional fee claims and any other administrative expense claims, including without limitation any claim for fees and costs of the Subchapter V Trustee, shall be paid their *pro rata* share of not less than $~~5~~15,000.00 per month commencing on the 15th of the month following the allowance of their claims after the Effective Date, and continuing on the same basis by the same date on each and every month thereafter until such allowed claims are paid in full. The deadline for filing requests for allowance of administrative expense claims shall be thirty (30) days after the Effective Date. In the event any request for allowance of an administrative expense claim is not filed by this deadline, then it shall be forever barred and unenforceable against the Debtor or Reorganized Debtor. |
| 3.03 | **Priority tax claims** | The holders of Allowed Priority Tax Claims will be paid in full in cash in equal monthly installments their Allowed Claims, plus interest, ~~in months 1 50~~within five (5) years of ~~this Plan after~~ the ~~Effective~~Petition Date. Such payments shall commence by the 15th of the month following the Effective Date, or the date their claim is Allowed on a final basis, whichever is later, and continue to made by no later than the 15th of each and every month thereafter until paid in full. |
| 3.04 | **Statutory and quarterly fees** | Not applicable pursuant to 28 U.S.C. § 1930(a)(6)(A), however, to the extent any are owed, they will be paid in full by the Effective Date. |

### Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 - Priority Claims** excluding those in Article 3 | ☐ Impaired<br>☒ Unimpaired | Unless the holder agrees to other treatment, each holder of a Class 1 Allowed priority claim pursuant to Bankruptcy Code § 507 (excluding the priority tax claims addressed in Article 3.03) will be paid in full, in cash, upon the later of the Effective Date of this Plan, or the date on which such claim is allowed by a Final Order. Class 1 is unimpaired and is deemed to accept the Plan. |
| **Class 2 – Secured Claim of the U.S. Small Business Administration** | ☐ Impaired<br>☒ Unimpaired | The holder of the Class 2 Allowed secured claim shall retain its liens in and to any and all of its collateral, and shall continue to receive monthly payments of $731.00 per month, and consisting with and subject to the terms and conditions in its applicable loan and security documents, until any remaining balance is paid in full. Class 2 is unimpaired and is deemed to accept the Plan. |

| Debtor | **A Cab, Series, L.L.C.** | Case number: **22-14361-nmc** |
|---|---|---|
| | Name | |

| | | |
|---|---|---|
| **Class 3 – Other Secured Claims** | ☐ Impaired<br>☒ Unimpaired | Each holder of a Class 3 Allowed secured claim shall receive, on or as soon as reasonably practicable after the latest to occur of (i) the Effective Date and (ii) the date on which each such Secured Claim becomes an Allowed Claim, each Holder of such an Allowed Claim, if any, shall receive, on account of, and in full and complete settlement, release and discharge of and in exchange for such Allowed secured claim, at the election of the Debtor or Reorganized Debtor (as applicable), (a) payment in full, in cash, of such Allowed secured claim; (b) satisfaction of any such Allowed secured claim by delivering the collateral securing any such claim. Class 3 is unimpaired and is deemed to accept the Plan. |
| **Class 4 – Non-Priority General Unsecured Creditors** | ☒ Impaired<br>☐ Unimpaired | Each holder of an Allowed general unsecured, non-priority claim shall receive ***payment in full*** of its *pro rata* share of claims over time, from various payments,sources as follows: <br><br>1. Disposable Income Payment. SuchPayments. All Allowed claims in this class shall first be paid their *pro rata* share of the aggregate sum of $9001,656,000, or such greater amount as the Court may require at the confirmation hearing pursuant to §§ 1190 and 1191 of the Bankruptcy Code, by receiving its *pro rata* share of per the following sumsschedule: (a) YearQuarters 1: $39-6: $30,000 per quarter; (b) Year 2: $42Quarter 7: $36,000 per quarter; (c) Year 3: $45Quarter 8: $60,000; (d) Quarters 9-12: $105,000 per quarter; (d) Year 4: $48,000 per quarter; and Year 5: $51e) Quarters 13-20: $120,000 per quarter. The foregoing quarterly payments shall commence by June 15, 202315th day of third (3rd) month following the Effective Date, and continue by that same date each September 15, December 15, March 15, and June 15quarter thereafter for a period of sixty (60) months.<br><br>2. Greenberg Trust Account Monies. SuchThe Allowed claims of the Murray Plaintiffs and Greenberg P.C. will also be paid their *pro rata* share of all funds held in the attorney trust account of Leon Greenberg, P.C., which are believed to be in the total sum of $303,694.54, if recovered, but subject fully to the procedures set forth in Paragraph 4 below. .<br><br>3. ERTC Monies. Such Allowed claims in this class will also be paid their *pro rata* share of all monies, if any, the Debtor actually receives from its ERTC, which it estimates will be approximately $570,905, if and when received, and which the Debtor expects to receive sometime in 2023, but subject fully to the procedures set forth in Paragraph .<br><br>4 below. Remainder Payment. To the extent there are any remaining sums owed to any holders of Allowed claims in this class as of month 60 of the Plan, that have not already been paid in full by Nos. 1-3 above, then the Debtor shall make final payment to them by no later than the end of month 60, such |

| Debtor | **A Cab, Series, L.L.C.** | Case number: | **22-14361-nmc** |
|---|---|---|---|
| | Name | | |

that all Allowed claims in this class are paid in full.

4.  Payment Procedures.

a.  Pending Allowance.  Because the claims of the Murray Plaintiffs and their counsel, Leon Greenberg, P.C., are presently Disputed Claims within the meaning of Section 5.01 because of the pendency of the Murray Appeal, any funds potentially payable to them shall remain undistributed, and thus in or subject to the Disputed Claims Reserve, and without any distributions thereon, unless until such claims are Allowed by Final Order, and subject further to the terms and conditions in Paragraph 4(b) or (c), as may be applicable, below.

b.  If Murray Plaintiffs Prevail.  If the claims of the Murray Plaintiffs and/or their counsel do become Allowed pursuant to Final Order, then counsel for the Debtor and the Murray Plaintiffs shall confer regarding the appropriate distribution of all funds to be made available pursuant to this Plan.  If the parties are able to agree, then they shall submit a written joint stipulation to that effect, including the proposed distributions to the Court for entry.  If the parties are unable to agree after conferring for at least fifteen (15) business days, then the Debtor shall file a motion seeking to approve the proposed distributions of such funds from the Bankruptcy Court by filing a motion for approval thereof, which may be opposed.  In all cases, an Allowed claimant in this Class shall be entitled to only a single satisfaction of its specific alleged debt only, and thus to the extent there are any monies made available by the terms of this Plan that are in excess of the full Allowed amount of all claims in this Class, then such excess need not be paid by the Debtor, and/or should be returned to the Debtor, as applicable.

c.  If Murray Plaintiffs Do Not Prevail.  If the claims of the Murray Plaintiffs and/or their counsel are disallowed by Final Order, including without limitation, as a result of a reversal on appeal in the Murray Appeal, or other related proceedings thereafter, then all funds held in the Leon Greenberg, P.C. trust account, and in the Disputed Claims Reserve shall be released back to the Debtor, and without further order of the Court, and the Murray Plaintiffs and Leon Greenberg, P.C. shall receive no distribution.

To illustrate and calculate the estimated payments to Class 4, and assuming for the sake of analysis only that all alleged claims in Class 4 are Allowed (including even the presently Disputed Claims of the Murray Plaintiffs and Leon Greenberg, P.C.), see the estimates in **Exhibit 5**.  Class 4 is impaired and is entitled to vote on the Plan.

| Class 5 – Equity Security Holders of the Debtor | ☐ Impaired<br>☒ Unimpaired | The Holders of Class 5 Equity Interests shall retain their Equity Interests, subject to the terms and conditions of this Plan. Class 5 is unimpaired and is deemed to accept the Plan. |
|---|---|---|

Debtor   **A Cab, Series, L.L.C.**                                    Case number:  **22-14361-nmc**
     Name

| Debtor | **A Cab, Series, L.L.C.** | Case number: | **22-14361-nmc** |
|---|---|---|---|
| | Name | | |

## Article 5: Allowance and Disallowance of Claims

| 5.01 | **Disputed Claim** | A "Disputed Claim" is a claim that has not been allowed or disallowed by a Final Order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor has filed an objection thereto; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. Disputed Claims shall be provided for in the Disputed Claims Reserve in Article 10, ¶ 5 pending the determination of their allowance of disallowance. For the avoidance of doubt, the claims of the Murray Plaintiffs and their counsel are Disputed Claims given the pendency of the Murray Appeal. |
|---|---|---|
| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a Disputed Claim unless such claim is Allowed by a Final Order. |
| 5.03 | **Settlement of disputed claims** | The Reorganized Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Fed. R. Bankr. P. 9019. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | **Assumed executory contracts and unexpired leases** | The Debtor proposes to assume all executory contracts and unexpired leases as of the Effective Date as listed on **Exhibit 4**, and asserts that no cure claims are owing for those proposed to be assume herein. With respect to all other executory contracts and unexpired leases not listed on Exhibit 4, the Debtor will be deemed to have **rejected** those as of the Effective Date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this Section 6.01 must be filed no later than **30** days after the date of the entry of the order confirming this Plan, or it will be barred. The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumptions and rejections described herein pursuant to § 365 of the Bankruptcy Code, as of the Effective Date. |
|---|---|---|

## Article 7: Means for Implementation of the Plan

| 7.01 | **Funding** | This Plan will be funded through cash flow generated from future operations of the Debtor's business, inclusive of ~~TLC's operations as well, and inclusive of~~ all specific cells of them, which are all deemed substantively consolidated herein ~~solely~~ for purposes of calculating the required amount of disposable income required to be paid pursuant §§ 1190 and 1191 of the Bankruptcy Code, and for making distributions under this Plan, but for no other purpose. Additionally, the Plan will be funded from the amounts currently being held in the trust accounts of ~~Leon~~ Greenberg, P.C. as specified herein, as well as the Debtor's anticipated receipt of its ERTC funds. Mr. Nady may also contribute funds from a sale or other transaction of the Bruce Property or otherwise to fund the Plan, if necessary, as well. |
|---|---|---|

Official Form 425A   **Plan of Reorganization for a Small Business Under Chapter 11**                    page 15

Debtor    **A Cab, Series, L.L.C.**                    Case number:  **22-14361-nmc**
              Name

| | | |
|---|---|---|
| 7.02 | ~~Limited~~ **Remand of Murray Adversary** | Upon the occurrence of the Effective Date, the Murray Adversary shall be remanded~~, on a limited basis,~~ back to the Nevada State Court, and for the ~~sole and exclusive~~ purpose of allowing ~~the~~ for any remaining claim adjudications or liquidation of claims to proceed before the Nevada Supreme Court in the Murray Appeal~~, and~~ ~~any further subsequent proceedings related thereto in the~~ /or Nevada State Court, ~~to proceed for the sole purpose of determining by Final Order~~ as may be necessary; *provided, however,* that any payments, distributions, and/or enforcement shall only proceed consistent with the terms and conditions of this Plan, and thus Court expressly reserves jurisdiction over the ~~final~~ interpretation, implementation and enforcement of this Plan and such matters. Notwithstanding the foregoing remand, all distributions to any holders of Allowed ~~amount, if any, of the claims of~~ Claims shall only proceed in accordance with and be fully consistent with the ~~Murray Plaintiffs and/or their counsel.  Given that the limited purpose of the remand is only to adjudicate the final allowed amount~~ terms and conditions of ~~the foregoing claims only, including principally via the Murray Appeal,~~ this Plan, and any order entered by the Nevada State Court ~~is prohibited from entering any order: (a) enforcing any judgment or award in favor~~ that alters or amends the terms and conditions of ~~the Murray Plaintiffs or their counsel; (b) ordering, authorizing or directing any release, application or distribution~~ this Plan shall be of ~~any and all funds, including the $303,694.54 held in the Leon Greenberg, P.C. trust account; (c) granting any other further relief that is otherwise inconsistent with the terms and conditions of this Plan, including without limitation any relief or enforcement against the Debtor or its specific cells or assets therein.~~ no force or effect. |
| <u>7.03</u> | **<u>Preservation of Avoidance Actions</u>** | <u>Upon the occurrence of the Effective Date, the Recovery Case shall be dismissed without prejudice; *provided, however,* that all claims for relief and remedies under chapter 5 of the Bankruptcy Code (collectively, the "Avoidance Actions") shall be fully preserved for the benefit of creditors and any applicable statute of limitations are tolled unless and until all creditors are paid in full their Allowed Claims under this Plan. For the avoidance of doubt, provided that this Plan is not in Material Default, there shall be no commencement or continuation of any of the Avoidance Actions, and they shall be fully released only upon the Debtor's payment in full of all Allowed Claims and the entry of the discharge in this case.</u> |

Debtor    **A Cab, Series, L.L.C.**                                         Case number:  **22-14361-nmc**
              Name

| 7.04 | **Limitation on Sale or Other Transaction of the Bruce Property.** | Mr. Nady personally owns another entity called Four Fours, LLC ("Four Fours"), which in turn, owns certain real property commonly known as 800 North Bruce Street, Las Vegas, Nevada 89101 (the "Bruce Property"). Allegations have been made that the Debtor, or one of its series, has caused certain payments to be made to or on behalf of Four Fours and/or related to the Bruce Property, and thus it has been alleged that those may give rise to potential transfers that may be avoidable and/or recoverable for the benefit of creditors of the estate pursuant to chapter 5 of the Bankruptcy Code. Accordingly, and in addition to the remedies provided in Section 7.03, the Debtor and Mr. Nady agree that to the extent there is any sale, financing, or other disposition of the Bruce Property, the net proceeds of such transaction (after subtracting any real estate commissions, and other closing and reasonable costs), shall be used to first pay any remaining Allowed Claims under this Plan, and that there shall be no distribution to Mr. Nady or any other owner of Four Fours, or any entities they own or control, of such net proceeds, unless and until all creditors with Allowed Claims under this Plan are paid in full and a discharge is entered, unless otherwise consented to by counsel to the Murray Claimants in writing. |
| 7.05 | **Reservation of Rights for Murray Case and Murray Appeal** | Notwithstanding anything herein to the contrary, nothing herein is intended or should be construed as waiving any rights, claims, arguments, defenses, and remedies the Debtor may have with respect to the Murray Case or the Murray Appeal, including without limitation, in the event of a reversal any judgment, order or other decision, the Debtor reserves the right to seek a disgorgement, return, refund, or other recovery of any sums paid, as well as any other remedies at law or equity related thereto. For the avoidance of doubt, all creditors shall only be allowed a single satisfaction of their respective claims. |

## Article 8: General Provision

| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions: |
| | **Bar Date** | This term means February 21, 2023 for all creditors (except for governmental units) and is the date by which they are required to file proofs of claim, except with respect to claims that were scheduled by the Debtor in its filed bankruptcy schedules as undisputed, non-contingent, and liquidated. For governmental units, the bar date for their filing of claims is June 12, 2023. |

Debtor   **A Cab, Series, L.L.C.**                                    Case number: __22-14361-nmc__
                Name

| | |
|---|---|
| **Allowed** | This term means, with reference to any claim: (a) any claim against the Debtor that has been listed in the Debtor's filed bankruptcy schedules, as such schedules may be amended from time to time in accordance with Fed. R. Bankr. P. 1009, as liquidated in amount, and not disputed or contingent and for which no contrary proof of claim has been filed; (b) any claim allowed (i) under the Plan, (ii) by Final Order; or (c) as to which a proof of claim has been timely filed by the Bar Date in a liquidated amount with the Bankruptcy Court, pursuant to the Bankruptcy Code or any order of the Bankruptcy Court, or has been filed with leave of the Bankruptcy Court after notice and a hearing, provided that no objection to the allowance of such claim or motion to expunge such claim has been filed by any party in interest before the deadline to object to confirmation of the Plan. For the avoidance of doubt, the pending Murray Appeal shall constitute an objection to any claims of the Murray Plaintiffs and their counsel, and thus any proofs of claims filed by the Murray Plaintiffs and/or their counsel shall not be Allowed until final resolution of the Murray Appeal, and any related proceedings, by Final Order. |
| **Final Order** | This term means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter (including without limitation, the Nevada Supreme Court as to the Murray Appeal, and any related proceedings ~~thereafter~~in the Nevada State Court, if necessary), as entered on the docket in the Debtor's Chapter 11 Case, or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal has expired (or otherwise been waived) or no appeal was been timely made, or as to which any appeal that has been taken that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed. |
| 8.02 **Effective Date** | The effective date of this Plan (the "__Effective Date__") is the first business day following the date that is 14 days after the entry of the Confirmation Order. If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 **Binding Effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 **Captions** | The headings contained in this Plan are for convenience only and do not affect the meaning or interpretation of this Plan. |
| 8.06 **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Nevada govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.07 **Corporate Governance** | Mr. Nady shall remain as the sole manager of the Debtor post-confirmation. |
| 8.08 **Retention of** | The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case following the Effective Date |

Debtor   **A Cab, Series, L.L.C.**                                    Case number:  **22-14361-nmc**
       Name

**Jurisdiction**   for the following purposes, it being expressly intended that such retention of jurisdiction shall extend to any actions or proceedings commenced prior or subsequent to the Effective Date, whether by Debtor or the parties specified herein, including without limitation: -To hear and determine any objections to the allowance of Claims; To determine any and all applications for compensation for any professionals; To modify the Plan or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code; To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of the Plan, including without limitation at is relates to the Debtor's licensure with the Taxicab Authority and/or 11 U.S.C. § 525, including injunctive relief related thereto, and any and all issues relating to the establishment, operation, implementation, enforcement and disbursements from the Disputed Claims Reserve; To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Bankruptcy Court entered in the Chapter 11 Case; To adjudicate all Claims to a security or ownership interest in any assets, or in any proceeds thereof; To determine all questions and disputes regarding recovery of and entitlement to any property of Debtor, or in any proceeds thereof; To determine issues and disputes concerning entitlement to distributions to be made under and pursuant to the Plan; To enter any order, including injunctions, necessary to enforce the title, rights and powers of Debtor's limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary or appropriate; To enter a discharge and final decree closing the Chapter 11 Case; To enforce the provisions of the Bar Date and the Plan; To make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof; enforce any claim or cause of action. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising under, arising in or related to the Bankruptcy Case for any reason, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction.

## Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt: -(i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due as otherwise provided in § 1192 of the Bankruptcy Code. -The Debtor will not be discharged from any debt: -(i) on which the last payment is due after the first 35 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Fed. R. Bankr. P. 4007(c).

## Article 10: Other Provisions

10.1.   Prepayment. -The Debtor may prepay any Allowed claims under the Plan in advance and without penalty.

Debtor    **A Cab, Series, L.L.C.**                                        Case number:  **22-14361-nmc**
          Name

10.2.  <u>Modified Treatment</u>.  A holder of an Allowed claim in any Class may voluntarily agree to a less favorable treatment of its claim than is as set forth in the Plan; *provided*, *however*, that such agreement must be in writing and signed by both the Debtor and that party.

~~10.3.  Interest Rate.  All interest to be paid under the Plan shall be paid at the Federal Judgment Rate pursuant to 28 U.S.C. § 1961(a) in effect as of the Petition Date, or such other amount as the Bankruptcy Court may order at the confirmation hearing on the Plan.~~

~~10.4.~~10.3.  <u>Disallowance of Claims Not Allowed and Tardy Proofs of Claim</u>. The occurrence of the Effective Date shall operate to disallow and expunge any claims of any creditor who received actual notice of the Chapter 11 Case and that: (a) were not listed on the Debtor's filed bankruptcy schedules and for which no proof of claim was filed on or prior to the Bar Date; (b) were listed on the Debtor's bankruptcy schedules as disputed, contingent or unliquidated, and for which no proof of claim was filed on or prior to the Bar Date; (c) are the subject of a proof of claim for a pre-petition claim, but which proof of claim was filed after the Bar Date.

~~10.5.~~10.4.  <u>Disputed Claims Reserve</u>.

    (a)  <u>Creation of Disputed Claims Reserve</u>.

    1.    From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, or Allowed or disallowed by Final Order, the Reorganized Debtor shall establish, for the benefit of each holder of a Disputed Claim, the Disputed Claims Reserve consisting of cash, and any income attributable thereto, in an amount equal to the pro rata share of distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed Proof of Claim relating to such Disputed Claim, or (ii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Reorganized Debtor.

    2.    For the avoidance of doubt, any cash retained and held for the benefit of a holder of a Disputed Claim as part of the Disputed Claims Reserve shall be treated as a payment and reduction on account of such Disputed Claim for purposes of computing any additional amounts to be paid in cash in the event the Disputed Claim ultimately becomes an Allowed Claim. Cash held in the Disputed Claims Reserve (including any earnings that have accrued on such cash, net of any expenses, including any taxes, relating thereto) shall be retained by the Reorganized Debtor for the benefit of such holders pending determination of their entitlement thereto under the terms of the Plan~~.~~, <u>including without limitation, the finalization of the Murray Appeal and/or any further proceedings in the Murray Case.</u>

    3.    Any cash shall be either (x) held by the Reorganized Debtor in an interest-bearing account or (y) invested in interest-bearing obligations issued by the United States government and guaranteed by the United States government, and having (in either case) a maturity of not more than 30 days. No payments or distributions shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof by Final Order.

    4.    This cash shall be held in a separate, segregated bank account, independent of any and all other generationg operating funds of the Reorganized Debtor. Cash held in the Disputed Claims Reserve will (i) be deposited in an interest-bearing account and held in trust pending distribution by the Reorganized Debtor for the benefit of holders of Allowed Claims, (ii) be accounted for separately and (iii) not constitute property of the Reorganized Debtor.

Debtor    **A Cab, Series, L.L.C.**                                    Case number:  **22-14361-nmc**
    Name

5.    Upon written demand, but not more frequently than every ninety (90) days, any creditor or party in interest may obtain an accounting from the Reorganized Debtor of the funds held in the Disputed Claims Reserve, which shall be limited to the provision of documentary proof such as a bank account statement setting forth the amount held therein.

(b)   Distributions After Allowance of Disputed Claims

1.    At such time as a Disputed Claim becomes an Allowed Claim, in whole or in part, the Reorganized Debtor shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan. Such distribution, if any, shall be made as soon as reasonably practicable after the date that the order or judgment allowing such Disputed Claim becomes a Final Order, but in no event more than ~~thiert~~thirty (30) days thereafter.

2.    Each holder of a Disputed Claim that ultimately becomes an Allowed Claim will have recourse first to the Disputed Claims Reserve for satisfaction of the distributions to which holders of Allowed Claims are entitled under the Plan, and second, to the Reorganized Debtor.

(c)   Distributions After Disallowance of Disputed Claims

If a Disputed Claim is disallowed, in whole or in part, by a Final Order, then the Reorganized Debtor shall distribute the cash held in the Disputed Claims Reserve back to itself, but in the event other Allowed claims remain unpaid under the Plan, then such funds so returned back to the Reorganized Debtor from the Disputed Claims Reserve shall be used to satisfy other Allowed claims under the Plan first, and only upon all other Allowed claims being paid in full, shall the Debtor be entitled to use such funds otherwise.

~~10.6.~~10.5. Elimination of Vacant Classes. Any class of claims that is not occupied as of the date of the commencement of the confirmation hearing by an Allowed claim shall be deemed eliminated.

~~10.7.~~10.6. Cure Claims. Any party to an executory contract or unexpired lease who objects to the cure amounts listed in <u>Exhibit 4</u> must file and serve an objection thereto by no later than the deadline set by the Bankruptcy Court for filing objections to the Plan. Failure to file and serve a timely objection shall be deemed consent to the cure amounts listed.

~~10.8.~~10.7. Plan Distributions. The Reorganized Debtor shall make all payments required under the Plan to creditors~~, and shall be entitled~~ directly, *provided*, *however*, that with respect to ~~offset any postage and mailing costs against~~ any distributions ~~made.~~ to the Murray Claimants and/or Greenberg P.C. on their Allowed Claims, the Reorganized Debtor shall pay such funds to the attorney trust account of Greenberg P.C. for that law firm to handle distributions to such claimants, but with such distributions in all events being consistent with this Plan.

~~10.9.~~10.8. Litigation Claims. The Debtor reserves any and all litigation claims against any and all creditor or party in interest, including without limitation any potential litigation claims listed in its bankruptcy schedules, as well as any pending appeals related to any claims, including without limitation, the Murray Appeal. ~~All such litigation claims and appeals, including the claims in the Recovery Case, shall revest in the Reorganized Debtor immediately on the Plan's Effective Date, and the Reorganized Debtor shall be entitled to proceed with respect to litigation claims and appeals in its sole and absolute discretion, subject only to the other terms and conditions of the Plan.~~

~~10.10.~~10.9.    Default Under Plan; Remedies. The confirmed Plan is binding on every creditor whose claims are

Debtor    **A Cab, Series, L.L.C.**                                 Case number:  **22-14361-nmc**
                Name

provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, including continuing with any pre-petition litigations, so long as the Debtor is not in Material Default (as hereinafter defined) under the Plan. In the event the Debtor fails to timely perform any of the obligations set forth in the Plan from and after the Effective Date, the applicable creditor or party-in-interest shall provide written notice thereof and sent via email to _all_ of the following: the Debtor's manager, Mr. Nady (cjnoui@yahoo.com), to the Debtor's corporate counsel, Esther Rodriguez of Rodriguez Law Offices, P.C. (esther@rodriguezlaw.com), _and_ to the Debtor's bankruptcy counsel, Matthew C. Zirzow, Esq. of Larson & Zirzow (mzirzow@lzlawnv.com), of the specific default in writing in accordance with the notice provisions herein. Such notice shall be ineffective unless transmitted via email to _all_ three (3) of the foregoing persons. If the Debtor fails within thirty (30) calendar days of the date of the email of the notice of default either: (i) to cure the default; (ii) to obtain from the Bankruptcy Court an extension of time to cure the default, which shall be given for good cause shown if the cure reasonably requires more than thirty (30) days to cure and the Debtor initiates reasonable steps to begin such cure and completes all reasonable and necessary steps to cure sufficient to produce compliance as soon as reasonably practical; or (iii) to obtain from the Bankruptcy Court a determination that no default occurred, then the Debtor is in "Material Default" under the Plan to all the members of the affected Class. If the Debtor fails to timely cure the default as provided above, the applicable creditor shall be free to pursue any and all rights and remedies it may have under the contract(s) between the parties and/or applicable law, as modified by this Plan, and without further action by or proceedings before the Bankruptcy Court. Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to chapter 7; or (ii) without further order of the Court, has relief from automatic stay and the Confirmation Order, to the extent necessary, and may pursue its lawful remedies to enforce and collect the obligations owing to it under the Plan, and only what is owed to it under the Plan, in any applicable court of appropriate jurisdiction.

10.11.    Exculpation.  Neither the Debtor nor any of its managers, members, employees, agents, attorneys or other professionals (collectively, the "Exculpated Parties") shall have or incur any liability to any holder of a claim against the Debtor, or any other party-in-interest, for any act, omission, transaction, or other occurrence in connection with, relating to, or arising out of the Chapter 11 Case, the pursuit of confirmation of the Plan, or the consummation of the Plan, except and solely to the extent such liability is based on fraud, gross negligence, or willful misconduct.  The Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to any of their duties and responsibilities under the Plan or in the context of the Chapter 11 Case.  No Holder of a claim against the Debtor, or any other party-in-interest, including their respective representatives, shall have any right of action against the Exculpated Parties, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation or administration of the Plan, except to the extent arising from fraud, gross negligence or willful misconduct.

10.12.    Injunction.  Upon entry of the Confirmation Order, and except as expressly set forth in this Plan, all holders of claims and parties in interest shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation and consummation of the Plan.  Except as expressly provided in the Plan or the Confirmation Order, all entities who hold claims against the Debtor, inclusive of its specific cells and/or any property of those specific cells, are and shall be permanently enjoined, on and after the Effective Date, with respect to any claims, from directly or indirectly (a) commencing, conducting, or continuing in any manner, any suit, action or other proceeding of any kind against or affecting the Debtor, or the property of the Debtor, (b) enforcing, levying, attaching, collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order against the Debtor, (c) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or encumbrance of any kind against the Debtor or the property of the Debtor, (d) asserting any right of setoff against any obligation due to the Debtor or against property of interests of property of the Debtor, except to the limited extent

Debtor    **A Cab, Series, L.L.C.**                                      Case number:  **22-14361-nmc**
                Name

~~permitted under §§ 553 and 1141 of the bankruptcy Code, and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.  For the avoidance of doubt, the Debtor for purposes of this Paragraph, includes the Debtor and any of its specific cells or their specific property as well.  The injunctions set forth herein shall extend to, and apply to any act of the type set forth in any of clauses (a)-(e) above against the Reorganized Debtor under this Plan as well.  For the avoidance of doubt, nothing herein is intended or should be interpreted as in any way prohibited a full and final adjudication of the Murray Appeal, and any proceedings thereafter related to the final determination of the allowed amount of the claims of the Murray Plaintiffs and/or their counsel, but in all events only to the extent necessary to liquidate the final allowed amounts of their claims to a Final Order.~~

~~10.13.~~10.10.        Governing Law.- Except to the extent that the Bankruptcy Code is applicable or as provided in the Plan, the rights and obligations of the Debtor and any other person arising under the Plan shall be governed by Nevada law.

~~10.14.~~10.11.        Entire Agreement. -This Plan, and its exhibits, set forth the entire agreement of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents. -No party hereto shall be bound by or may rely on any terms, conditions, definitions, understandings or representations with respect to the subject matter hereof other than as is expressly provided herein or in the Confirmation Order approving the Plan.

~~Respectfully submitted,~~

*[Rest of page intentionally left blank; signature page follows]*

Debtor    **A Cab, Series, L.L.C.**                                    Case number:  **22-14361-nmc**
                    Name

Dated:  ~~February 6, 2023~~June 3, 2024.

A CAB, SERIES L.L.C.,                              PREPARED AND SUBMITTED:
a Nevada series limited liability company:


By:  –   */s/ Creighton J. Nady*                   By:–   */s/ Matthew C. Zirzow*
        Creighton J. Nady                          LARSON & ZIRZOW, LLC
Its: Manager and Designated Responsible Person     MATTHEW C. ZIRZOW, ESQ., NV Bar No. 7222
1500 Searles Avenue                                E-mail: mzirzow@lzlawnv.com
Las Vegas, Nevada 89101                            850 E. Bonneville Ave.
                                                   Las Vegas, Nevada 89101
                                                   Tel: (702) 382-1170
                                                   Attorneys for Debtor


## **EXHIBITS**

Exhibit 1:  ~~Recent Financial~~Balance Sheet and Income Statements (~~11/~~2022 ~~YTD internal unaudited & 2021 compiled to Taxicab Authority~~and 2023)
Exhibit 2: Liquidation Analysis
Exhibit 3: *Pro Forma* Projections
Exhibit 4: List of Executory Contracts and Unexpired Leases Proposed to be Assumed
~~Exhibit 5:  Estimated Distributions to Class 4 (Assuming All Claims Are Allowed)~~

- Official Form 425A  **Plan of Reorganization for a Small Business Under Chapter 11**                    page 24