LEON GREENBERG, ESQ., SBN 8094
RUTHANN DEVEREAUX-GONZALEZ, ESQ., SBN 15904
Leon Greenberg Professional Corporation
1811 South Rainbow Blvd- Suite 210
Las Vegas, Nevada 89146
(702) 383-6085
(702) 385-1827(fax)
leongreenberg@overtimelaw.com
ranni@overtimelaw.com

LAW OFFICES OF GABRIEL DEL VIRGINIA
30 Wall Street, 12th Floor
New York, New York 10005
Telephone: 212-371-5478
Facsimile: 212-371-0460
*gabriel.delvirginia@verizon.net*
Admitted *Pro Hac Vice*

Attorneys for Creditor
Leon Greenberg Professional Corporation
Attorneys for *Murray* Case Creditors

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

-------------------------------------------------------X

**In re:**

**A CAB, SERIES L.L.C.**
    **fka A CAB, LLC,**

                **Debtor.**

-------------------------------------------------------X

**Case No. BK-22-14361-nmc**

**Chapter 11**

Hearing Date: August 20, 2024
Hearing Time: 9:30 am

**OPPOSITION TO FIRST INTERIM FEE APPLICATION OF LEWIS
ROCA ROTHGERBER CHRISTIE LLC AS SPECIAL COUNSEL
TO THE DEBTOR FOR THE ALLOWANCE OF
COMPENSATION FOR SERVICES RENDERED**

Michael Murray and 660 additional creditors and Leon Greenberg Professional Corporation (the "*Murray* Case creditors") file this opposition to the Debtor's First Interim Fee Application of Lewis Roca Rothgerber Christie LLP as Special Counsel for the Debtor for Services Rendered.

**I.      The *Murray* Creditors oppose the application for $111,192 in state court appeal fees until the Debtor has paid their claims in full.**

The Debtor, consistent with the Court's rulings rejecting its initial Plan of Reorganization (Doc. 482), has proposed an Amended Plan of Reorganization that it asserts will pay the *Murray* Creditors' claims in full.   Whether that Plan will do so is unknown and the *Murray* Creditors will be filing Objections to that Plan.   It is the potential for the Debtor to now pay clearly unwarranted counsel fees from its Estate, and for that Estate to later be unable to fully pay the *Murray* Creditors' claims, that cause the filing of this opposition.

**II.      The Court is urged to deny, at this time, the entirety of the requested $111,962 in fees and confirm any fee award may be disgorged if the Debtor fails to satisfy all of the *Murray* Creditors' approved claims.**

**A.      The Court is urged to make any fee award expressly subject to re-examination, and potential disgorgement, if the Debtor's Plan fails to fully pay its creditors' approved claims.**

It is well settled that any interim fee award now made pursuant to 11 U.S.C. § 331 is subject to re-examination prior to a final judgment in this case.   *See, In re Strand,* 375 F.3d 854, 858 (9th Cir. 2004) *citing and quoting Matter of Taxman Clothing Co.*, 49 F.3d 310, 314 (7th Cir. 1995) ("[A]ll awards of interim compensation are tentative, hence reviewable—and revisable—at the end of the case.") (Ordering return to debtor's estate

for benefit of creditors $78,000 of interim fees improvidently awarded to debtor's counsel).   The exact parameters of when such disgorgement should be ordered, a rare occurrence in practice, need not be examined by the Court — and hopefully never will be in this case.   It is requested any order granting a fee award expressly state such award is tentative and subject to further review and potential modification, if requested, prior to final judgment.  The proposed order submitted to the Court contains no such express language.

**B.    Special Counsel should not, at this time, be awarded any fees as there is no reason to believe the appeal was pursued in good faith; the Debtor's principal, Nady, testified he has authorized will continue to authorize litigation that he knows will confer no benefit to the Debtor and will do so solely to obstruct the the *Murray* Creditors and harass them and their counsel.**

It would presumably be inappropriate to ask the Court to make findings as to the lack of merit of the appeal pursued and for which the $111,962 in fees are sought.  That issue will be decided, in due course, by the Nevada Supreme Court.   But the Court does possess incontrovertible evidence that the Debtor's principal, Nady, has directed that appeal be pursued with complete indifference to its cost or merit.   And likely with full knowledge pursuing the same will not benefit the Debtor and only serve his goal of harassing the *Murray* Creditors and their counsel and delaying the payment of their claims.  He freely admits he has directed, and will direct, the Debtor to engage in litigation activity to harass the *Murray* Creditors or obstruct the payment of their claims irrespective of whether such activity costs the Debtor more than any potential gain.  Such proclivities were extensively, proudly, testified about by Nady before this Court.

The relevant excerpts of that testimony are annexed hereto at Ex. "A" (Transcript 10/13/23, p. 97-113, 120-121).  Nady made clear that in directing the Debtor's affairs in respect to the *Murray* litigation he:

> Would not pursue a settlement of the *Murray* Creditors claims if that could be secured for less than the cost to the Debtor of continuing to litigate them;  *Id.,* p. 97-102;
>
> He was "a man of principle" dealing with a lawsuit that was "obviously wrong" and a "personal matter."  *Id.*;
>
> He had authorized, and would authorize again, the Debtor to pay an attorney $375 or more to pursue a claim for $49 of costs from a *Murray* Creditor, and to appeal that issue when those costs were denied, as a matter of "principle" even though doing so was contrary to the Debtor's financial interests.  *Id.*, p. 105-106, p. 111;
>
> He had the Debtor pay attorneys to bring a case, subsequently dismissed with a finding it was commenced in bad faith and with an award of attorney's fees, against Wendy Gagliano, a cooperating witness for the *Murray* Creditors, without any expectation of the Debtor recovering any money from that case ("She had nothing.")  *Id.* p. 106-107;
>
> He directed the Debtor to pay attorneys to file two cases, one against the *Murray* lead plaintiffs and another against their counsel; he authorized the withdrawal of the latter and the payment by the Debtor of $12,000 to the

*Murray* Counsel to settle a sanctions award made against the Debtor's counsel when the former was dismissed as a bad faith filing. *Id.* 107-111.

In light of the foregoing record, it would improvident to grant, at this time, any portion of the requested fee award to Special Counsel in connection with the pursued appeal.   The Court is urged to deny that award request with leave for its renewal once that appeal is concluded.

## CONCLUSION

For all the foregoing reasons, the Court should deny, at this time, any of the fees requested and recite that any award of fees that it does Order it tentative and subject to further review and potential modification, if requested, prior to final judgment.

Dated: August 6, 2024

Respectfully submitted,

**Leon Greenberg Professional Corporation**

By:   /s/ *Leon Greenberg*
          Leon Greenberg (NSB 8094)
          1811 South Rainbow Boulevard, Suite 210
          Las Vegas, Nevada 89146
          Telephone: 702-383-6085
          Facsimile: 702-385-1827
          Email: leongreenberg@overtimelaw.com
          *Counsel to Murray Case Creditors*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing was electronically filed using the Court's CM/ECF system on this 6th day of August 2024, which will send electronic notification of this filing to all counsel of record.

/s/Leon Greenberg
Leon Greenberg

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (LAS VEGAS)

|                        |   |                            |
|------------------------|---|----------------------------|
| IN RE:                 | . | Case No. 22-14361-nmc      |
|                        | . | Chapter 11                 |
| A CAB, SERIES L.L.C.,  | . |                            |
|                        | . | 300 Las Vegas Blvd. South  |
|            Debtor.     | . | Las Vegas, NV 89101        |
|                        | . |                            |
|                        | . | Friday, October 13, 2023   |
| . . . . . . . . . . . . . . . . . . | . | 9:53 a.m.     |

TRANSCRIPT OF EVIDENTIARY HEARING RE: CHAPTER 11 SMALL BUSINESS
SUBCHAPTER V PLAN FILED BY MATTHEW C. ZIRZOW ON BEHALF OF A CAB
SERIES L.L.C. [65]
BEFORE THE HONORABLE NATALIE M. COX
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:          Larson & Zirzow LLC
                         By:  MATTHEW C. ZIRZOW, ESQ.
                         850 E. Bonneville Avenue
                         Las Vegas, NV 89101
                         (702) 382-1170

For the Murray          Leon Greenberg, Attorney at Law
Creditors:              By:  LEON GREENBERG, ESQ.
                             RUTHANN DEVEREAUX-GONZALEZ ESQ.
                        1811 South Rainbow Blvd.
                        Las Vegas, NV 89146
                        Phone

APPEARANCES CONTINUED.

Audio Operator:          Maria Garrett, ECR

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46048
                         (855) 873-2223
                         www.accesstranscripts.com

    Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (Continued):

Subchapter V Trustee:     NATHAN F. SMITH, ESQ.
                          2112 Business Center Drive
                          Irvine, CA 92612
                          (949) 252-9400

TELEPHONIC APPEARANCES:


For the Murray           Law Office of Gabriel Del Virginia
Creditors:               By:  GABRIEL DEL VIRGINIA, ESQ.
                         30 Wall Street, 12th Floor
                         New York, NY 10005
                         (212) 371-5478

I N D E X
10/13/2023

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| FOR THE DEBTOR: | | | | |
| Keith Gibson | 23 | -- | -- | -- |
| Mark Trafton | 31 | -- | -- | -- |
| FOR THE CREDITORS: | | | | |
| Creighton Nady | 42 | -- | -- | -- |
| Steven Beck | 125 | -- | -- | -- |
| Ricki Barlow | 155 | 171 | -- | -- |

| EXHIBITS | ADMITTED |
|---|---|
| None | |

MR. ZIRZOW:  No questions.

BY MR. GREENBERG:

Q    Mr. Nady --

THE COURT:  I sustained the objection, so don't answer.

THE WITNESS:  Okay.  Thank you.  I didn't hear that.

BY MR. GREENBERG:

Q    Mr. Nady, I'm not asking you whether you authorized or spoke to your attorneys about it.  But did you consider proposing to me that we reach an understanding to pay my clients over a period of time or under other terms that could keep the A Cab business running and avoid bankruptcy?

MR. ZIRZOW:  I would object to that question, Your Honor, to the extent it seeks to elicit attorney-client privileged communication.  Mr. Nady can answer that without discussing any communications with attorneys, that's fine.

THE COURT:  I agree.

THE WITNESS:  I consider myself a man of principle. I -- I think -- I believe in what's right and what's wrong. This lawsuit is obviously wrong.  Every -- every one of your clients, which have no idea where they are.  You've never spoken with at least 99 percent of them, or maybe 98 percent of them, we have paid already through the other case.  Are you -- are you ignoring me intentionally, Mr. Greenberg?  Of course you are.  We have paid every one of them, as I -- I don't want

to settle with you, because it just flat isn't right.  It isn't right.  Everybody's already been paid.  Everybody has been paid except for two or three people that you -- that you have.  And we offered them large settlements and you declined those already.

Now, we -- we paid everybody we possibly can, and we're looking for the ones we can't find.  And we're going through skipped traces and we're -- and we're -- and we've -- we've put all the money in -- into another firm to pay that.  And they are aggressively trying to find them.  Every one of your clients except for maybe two or three, which are under your wing, have already been paid.  This -- there isn't a big -- the only thing I have to pay through bankruptcy basically is you.  And do I want to settle with you now after all this, 11 years of heartache on this stuff and stress?  No, I -- I -- this is wrong.  It's so wrong that I -- I am a man of principle.  I will not let you beat me to death just because you call at my door every day.

Q    So Mr. Nady, it is your position that the debtor should not pay my clients and my claims, even if it could do so for less than the cost that it's going to occur in this bankruptcy proceeding and in other continued litigation, correct?

A    Do you remember, Mr. Greenberg, when you said that I -- that you offered to settle for $400,000, and then a month later, I offered the $400,000 to settle it, and you went to a

million-four?  That's what you did.  What kind of a deal is --
maker are you?

Q    Mr. Nady --

A    Mr. Greenberg, you're -- you're --

Q    That's --

A    -- you say one thing and you do the exact opposite.

          THE COURT:  Mr. Nady, let's get it --

          THE WITNESS:  I'm getting excited.

          THE COURT:  Yes, you are.

          THE WITNESS:  So I've got to take a big breath.

BY MR. GREENBERG:

Q    Mr. Nady, my question to you was it is your intention as
the controlling manager of the debtor to have the debtor
continue to go through this bankruptcy proceeding, continue to
contest my claims and my clients' claims, even if the cost to
the debtor to do so is greater than the cost of paying those
claims, correct?

A    In answer to your question, Mr. Greenberg, which is not a
yes or no answer, it will be -- I don't -- I think that you
have -- you're the only claimant, except for two or three other
people, and that's it.  That's it really.  We paid everybody
else, except for the two or three people you are hiding behind
you.  And we offered them a good settlement, much more than
they're going to get when the Supreme Court rules.  More than
that.  So why would I give up now after all I've been through,

all you've put me through, Mr. Greenberg? It's just a matter of -- I -- I can't -- I can't do it. It's -- it's beneath me as a person to let this kind of a case not -- go unmarshalled in any way. You -- this is -- this is not a good case, Mr. Greenberg. You -- you -- you've -- the only that's going to make any money on this is you. Your people have already been paid. Wake up, you're the one --

Q   So --

A    -- that's running the bills up. You wanted a million and a half now in your attorney's fees? Holy Moses. I've already paid these guys a bunch.

THE COURT:  All right. We're getting well beyond the question. Let's --

THE WITNESS:  Okay. I'm sorry.

BY MR. GREENBERG:

Q   Mr. Nady --

A   But I'm -- but I'm -- this is a personal matter.

Q   Yes. And because it's personal, you do not believe that the debtor should settle and pay my claims and my clients' claims even if we could arrange a payment that would be less than the cost of ultimately contesting and not paying those claims, correct?

MR. ZIRZOW:  Objection. Compound. Seeks to elicit inadmissible evidence in the form of settlement discussions and otherwise argumentative.

THE WITNESS:  Do you think I should --

THE COURT:  Hold on.  Hold on.  Hold on.  I haven't ruled on the objection yet.  Did you want to be heard in response?

MR. GREENBERG:  Your Honor, the question is directed to the witness's competence and management of the debtor.  He needs to answer the question as to what his operating position is as the debtor's manager.  Is he in fact going to commit the debtor to the expense of contesting these claims if that expense is greater than the opportunity to resolve them.

THE COURT:  He's already answered.  If you -- I mean, his answer is his answer, whether you like it or not.  It's -- he's answered it.  The reason that he's proceeding, he's explained himself.

MR. GREENBERG:  Okay.  If Your Honor feels that the question -- I don't disagree with you, Your Honor, but I wanted to be sure that the Court understood the answer.

BY MR. GREENBERG:

Q    Which is again, Mr. Nady, as a matter of principle you have committed the debtor to proceed with this bankruptcy case and to proceed to contest my clients' claims, correct?

A    You settle with every other company just about.

Q    Okay.

THE COURT:  Mr. Nady, you can say no.

THE WITNESS:  Yes.

THE COURT:  You can yes.  You could say --

MR. GREENBERG:  Okay.

THE WITNESS:  Yes.

THE COURT:  -- whatever the answer is.  But just answer it, just, you know.

THE WITNESS:  Okay.  Thank you.  All right.  It's just difficult.

THE COURT:  Let me --

MR. GREENBERG:  Okay.

THE COURT:  I'm not sure he -- can you please ask that question again?  And it's a yes or no question, and it's fine --

THE WITNESS:  Okay.

THE COURT:  -- to answer whatever is the honest answer.

THE WITNESS:  All right.

BY MR. GREENBERG:

Q    Mr. Nady, you agree that as a matter of principle, you believe that the debtor should proceed with this bankruptcy case and continue to contest my claims and my clients' claims, correct?

A    I don't know if it's a matter of principle or just what's right.

Q    Okay.  Thank you.  Now, Mr. Nady, is it correct that you approved payments of the bills of A Cab's attorneys?

A     Would you ask that again a little slower?

Q     You're the one who approves payments of bills to A Cab's attorneys, correct?

A     I am.

Q     Okay.  You're aware that A Cab has spent over $1,400,000 since 2019 involved in litigation relating to my clients' claims?

A     I don't think that's true.

Q     Okay.  Well, if it has spent that money, do you think that was money well spent?

A     I think we've been put in a position we had no choice.

Q     Okay.

A     I had no choice.  The company had no choice.

Q     Okay.

A     You think we're just going to roll over?

Q     Mr. Nady, when attorneys present bills to be paid by A Cab, do you review those bills and try to make sure the work they're doing is sensible and appropriate?

A     I do.

Q     Okay.  And have you sometimes had those attorneys reduce their bills?

A     What was the question again?

Q     Do you sometimes have those attorneys reduce their bills?

A     Reduce them?

Q     Yes.

A    On occasion, yes.

Q    Okay.  And do you keep yourself informed in advance about what sort of activities those attorneys are going to undertake for A Cab?

A    I think I know what they're going to do when I ask them to do it.

Q    Okay.  And how long has Esther Rodriguez been an attorney for A Cab?

A    I think she came onboard in 2001.

Q    Okay.  And do you know how much she charges per house typically?

A    No.

Q    Well, she was approved by this Court to charge $375 an hour.  Does that seem about right to you, sir?

A    I -- I don't know.  I said I don't know.

Q    Well, do -- you approve attorney's bills.  Is that an hourly amount that you are unfamiliar with attorneys charging?

A    If that's what it is, that's what it is, Mr. Greenberg.

Q    Well, do you approve bills for attorneys to be paid that --

A    I approve those bills, yes.

Q    Do you approve bills for attorneys to be paid over $300 an hour?

A    Over what?

Q    Over $300 an hour, sir?

A    I think they're all pretty much over that.

Q    Okay.  Thank you.  Would you authorize Ms. Rodriguez to spend one hour of her time and charge A Cab $375 to collect $49 from my clients?

A    Yes.

Q    And why would you do that, sir?

A    Principle, Mr. Greenberg.

Q    I see.  Okay.

A    She was collecting money from a case that you helped another person, and that was the cost of the -- of the transcript, I believe.  And we wanted a copy of the -- of the court record of it before we would -- we were asked to pay it. And that's not a bad thing to do.

Q    Okay.  And you're aware that your lawyer, Ms. Rodriguez, did in fact charge A Cab to make a request to the district court for that $49 award, which was then denied by the district court, and that denial of that $49 award is now being appealed by A Cab.  Are you aware of that?

A    Are you -- are you challenging my choice of attorneys or my respect for my attorneys or their bill?

         THE COURT:  Mr. Nady, answer the question.  Let's at least --

BY MR. GREENBERG:

Q    I'm just asking whether you're aware of that course of events, sir.

A     I'm aware of everything, Mr. Greenberg.

Q     So your answer is yes, correct?

A     For the most part.  The answer is yes.

Q     Thank you.

A     Gladly.

Q     Okay.  Are you aware of a case A Cab brought against Wendy Gagliano in 2019?

A     I do.

Q     And you --

A     I am.

Q     -- authorized A Cab's attorneys to file that case?

A     I'm sorry.  I didn't hear the question.

Q     You authorized A Cab's attorneys to file that case, sir?

A     I did.

Q     Okay.  And why did you have them do that?

A     Because we paid Wendy Gagliano, I want to say $2500 when we fired her for something that she did wrong, which I can't recall what it is at the moment, but we gave her a -- a severance pay and a noncompete and a nondisclosure agreement, which she signed.  And then, she became one of your clients completely against that nondisclosure and severance agreement.

Q     When you brought that case against Ms. Gagliano, did you have any expectation of what A Cab would hopefully win from that case?

A     She had nothing.

Q    Okay.  So you didn't actually expect that A Cab would collect any money from that case, correct?

A    I didn't expect her to collect -- but Mr. --

Q    Okay.

A    Mr. Greenberg, if you have an agreement with somebody, and -- and you sign and get paid for that agreement, and then you -- and then you -- you -- you -- you don't agree with that agreement, you can't just go off and run about it.  Somebody has to hold you -- hold you responsible.  And -- and that was -- it's a case where -- kind of like my case with you, Mr. Greenberg.  She was -- she shouldn't have joined your crew and provided the information when she had a -- a noncompete agreement, which by the way, was the same as Steve Wynn used for him employees, and it's a pretty good contract.

Q    Okay.  Mr. --

A    But we -- but at the end -- I didn't want to fight her too hard.  I just didn't want her to continue to help you.

Q    Mr. Nady, are you aware that the Court dismissed that case and ordered that I be paid 20 -- over $20,000 in attorney's fees that was assessed against A Cab's lawyers for bringing that case in bad faith?

MR. ZIRZOW:  Objection.  Lack of foundation.  That's also not true.  That matter was dismissed and that sanctions award was vacated.  He's --

THE WITNESS:  I guess the answer on that was no.

MR. ZIRZOW:  Counsel's testified -- let me finish. Counsel's testifying.  Lack of foundation.

THE COURT:  Sustained.

BY MR. GREENBERG:

Q    Mr. Nady, are you aware that at one time that that case was dismissed and the district court made a decision that I was to be awarded over $20,000 in attorney's fees against the lawyers who brought that case?

MR. ZIRZOW:  Same objection.  Lack of foundation.

MR. GREENBERG:  Your Honor, we can introduce the exhibit.

THE WITNESS:  The answer is -- the question is --

THE COURT:  Question is --

THE WITNESS:  -- am I aware of it?

THE COURT:  Yeah, let's -- he can answer the question about whether he's aware of it.

THE WITNESS:  I was very much aware of it.

BY MR. GREENBERG:

Q    Okay.  Thank you.  And did you have A Cab pay the lawyers who engaged in those activities?

A    I did, Mr. Greenberg.

Q    Okay.  And ultimately, there was money paid also to settle that award that was entered against me.  There was a bond put up.  Did A Cab pay that bond?

A    There are reasons that I did that that unless you want me

to go into those reasons, that are -- that are pertinent to this, it's not like I just wanted to pay them.  We would have won that case, but I just tired of facing you in so many different places.

Q     Mm-hmm.

A     And that's the -- that's the truth.  You represented her, and you found a loophole somewhere about the Series LOC in the document itself, which was violated.  The intent of the document, Mr. Greenberg, was very clear and plain, but you found a loophole in it.  And after all that, I just got -- Wendy is not a bad person.  I just didn't like her joining the -- the -- the crew.

Q     Mr. Nady, I want to apologize, because I was confused.  A Cab did bring that case against Ms. Gagliano.  But there was a -- not that award that I was mentioning to you that was made against A Cab's lawyers in that case.  That award was made in the case that A Cab brought against Wells Fargo and my clients Murray and Reno.  Are you familiar with that case, sir?

A     Yeah, I -- Mr. Greenberg, there are so many cases that are parasites on this case that I might get them confused on which ones.

Q     Did you --

A     And we're -- we're trying to clean them up.  And that's why we're here.

Q     Okay.  Did you authorize your lawyers to bring that case

against Wells Fargo and my clients Murray and Reno?

A    I'm -- I authorize everything that the attorneys do.

Q    Are you aware they also brought a case against me
personally --

A    Well, you're --

Q    -- and my clients Murray and Reno?

A    Surprise.  Yes, I'm aware they did that.

Q    Okay.  And then they dismissed that case voluntarily?

A    I am aware of that, too.

Q    And you paid them to do that, sir?

A    We paid -- I paid them to do that, too.

Q    Okay.  And that case that proceed against my clients
Murray and Reno and Wells Fargo Bank was the one I was
referring to previously where that award was made against those
lawyers, and you authorized an appeal of that decision, sir?

A    I don't remember --

Q    Okay.

A    -- that one.

Q    Okay.  And did you authorize the posting of the $20,000 or
so bond that was put up on that case?

A    I did that.  I did that.

Q    Okay.  And did you authorize the release of $12,000 from
that bond payment to me to settle --

A    And I did that.

Q    -- that case and withdraw that appeal?

A      We're just trying to get rid of some damage here, Mr. Greenberg.

Q      Okay.

A      Every once in a while, you feel like you just spent too much time on it, and it might be good time, which shows I'm a little bit reasonable --

THE COURT:  Mr. Nady.  Mr. Nady.

BY MR. GREENBERG:

Q      Mr. Nady, do you understand that now that A Cab has filed for bankruptcy and is operating as a debtor in possession, you, as the controlling manager of A Cab, have a duty to make business decisions that will maximize A Cab's ability to pay its creditors?

A      I do that every day, Mr. Greenberg.

Q      Okay.  So could you explain how it makes sense for A Cab to pay lawyers to pursue an appeal of a claim for $49, how that's going to maximize the bottom line for A Cab?

A      Somewhere along the line, Mr. Greenberg, you have to draw rules.  You have to have rules.  You have to have principle about what you're doing.  And I have those principles and I live by them.  If other people did, the world would be a lot better.

Q      So --

A      It's just what's right.

Q      So it's correct then that you will continue to conduct the

Nady - Direct                                          112

affairs of A Cab as debtor in possession based on what you

believe is right, not necessarily what's actually going to put

the most money into A Cab's --

A     I will --

Q     -- coffers at the end of the day, correct, sir?

A     I will comply with everything that's required in

bankruptcy.  And I'll also comply with I -- with what I believe

is the right thing to do always.  If the bankruptcy says

something, I will do it.  If the -- my mind -- if my -- my

conscience runs my world.  I'm an honest, straightforward

person, if people lie to me, if they try to steal from me, I am

vengeful and I am going to go after that in the best way I can

besides physically.

Q     Mr. Nady, isn't it true that you filed this bankruptcy

court -- this bankruptcy case to keep the state court from

releasing $302,000 in appealed bond funds it was considering

releasing to my clients and me?

A     Why -- I couldn't hear that when you were mumbling a

little bit.

Q     Mr. Nady, isn't it true you filed this bankruptcy case to

keep the state court from releasing $302,000 in appeal bond

funds it was considering releasing to me and my clients?

A     No.

Q     Okay.

A     It was just a -- a benefit on the side.

Q    Excuse me, sir.  What was you --

A    That was just a side benefit.

Q    Oh, but that was a benefit that you were aware of by filing the bankruptcy case.

A    I certainly didn't even think about it, Mr. Greenberg.

Q    You testified differently at your deposition.  Are you aware of that?

A    There you go.  I didn't -- I don't remember.  The reason we filed bankruptcy was because we -- you got a judgment from a judge, and we've appealed it to the Supreme Court.  And that judge was way off bounds.  We've been before the -- what, the Supreme Court with you three times.  You've lost three separate times, and you know you're going to lose again.  So you're desperate to get this done before the Supreme Court gets to it. So I did that because we have -- we have a state court judge who went off of the rockers, went off the rails.

Q    So you filed for bankruptcy and had the disbursement of those $302,000 stopped for those reasons, correct, sir?

A    Yes.

Q    Okay.  Do you recall claiming in October of 2022 in an appeal bond application that A Cab had a value of four-and-a-half million dollars?

A    I do.

Q    And do you recall testifying two days ago that you just made up that number because you were desperate to keep me,

MR. ZIRZOW:  Your Honor, if there's a point when we could take a break, I just need, like, ten minutes to --

MR. GREENBERG:  I was hoping to finish up within just about five minutes, Your Honor.

MR. ZIRZOW:  I can hold it for five minutes, Your Honor.  Sorry.

MR. GREENBERG:  Okay.

THE COURT:  That's on the record now, Mr. Zirzow.  If you can't, then please leave.

MR. GREENBERG:  Okay.

THE COURT:  Five minutes, go ahead.

MR. GREENBERG:  Thank you, Your Honor.

BY MR. GREENBERG:

Q   Mr. Nady, do you recall testifying at your deposition that you don't care what it costs to contest my clients' claims because the cost is irrelevant in respect to the conduct of A Cab's business.  Is that correct?

A   I don't think I ever mentioned the cost was irrelevant to the cost of -- of -- no, that's not right.

Q   Okay.  Well, I'd ask you to turn to Page 1026 of that exhibit.

A   1026.  I am there.  Where are you now on this page?

Q   Okay.  If we go to Page -- well, starting at the bottom of Page 1026, my question to you, Mr. Nady, "Okay.  And do you think it's -- that it's a more important outcome to see that

there's a victory, a win, as you say, for A Cab in this litigation than the cost of the litigation itself?"  Your answer, do you see your answer, sir?  It says, "Yes."

A    Yes.

Q    Okay.  Do you disagree with that answer sitting here today?

A    I believe in principles, Mr. Greenberg.  Do I -- I believe that you are -- you are a -- that this case is going to be resolved by the Nevada Supreme Court, and in that case, they will realize what you've done.  Your -- your -- your claim is the only claim there is.  The rest -- I mean, the rest of them are less than $5,000 in total.  The only claim we have -- now we've got some people who have accidents and wrecks, but I think that we probably can pay that through the insurance claims.  But I think -- those are the only claims.

And then the other claim was from the people down in Los Angeles that you -- that you -- that you conspired with to -- to create a bill when they hadn't even received any documents to send a bill for $80,000 and said they would not do any work until they were paid.  And these were your friends and your recommendations to the Judge Cory.  I don't think I should ever pay that bill.  They did nothing for it.  And you answer that -- somewhere in life people have to stand up for what's right.  And -- and this case is already -- everybody's been paid except for your people who you have conned into this

**C E R T I F I C A T I O N**

I, Alicia Jarrett, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____

ALICIA JARRETT, AAERT NO. 428     DATE: October 30, 2023

ACCESS TRANSCRIPTS, LLC