LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No. 22-14361-nmc |
| | Chapter 11 |
| A CAB, SERIES L.L.C, | |
| | |
| Debtor. | Date:  August 20, 2024 |
| | Time: 9:30 a.m. |

**OMNIBUS REPLY TO THE MURRAY CLAIMANTS' OPPOSITIONS TO**
**THE INTERIM FEE APPLICATIONS OF THE DEBTOR'S PROFESSIONALS**

A Cab, Series L.L.C., a Nevada series limited liability company, as debtor and debtor in possession (the "Debtor"), submits its omnibus reply (the "Omnibus Reply") to the oppositions (collectively, the "Oppositions") [ECF Nos. 538-540] filed by the Murray Plaintiffs and their counsel (collectively, the "Murray Claimants") to the following applications of the Debtor's professionals:

(1)    The *Third Interim Fee Application of Larson & Zirzow, LLC* (the "L&Z Application") [ECF No. 524] filed on behalf of Larson & Zirzow, LLC ("L&Z") as the Debtor's general bankruptcy counsel;

(2)    The *First Interim Application of Rodriguez Law Offices, P.C.* (the "Rodriguez Application") [ECF No. 527] filed on behalf of Rodriguez Law Offices, P.C. ("RLO") as the Debtor's special counsel;

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel:  (702) 382-1170   Fax:  (702) 382-1169

(3)     The *First Interim Application of Lewis Roca Rothgerber Christie LLP as Special Counsel to the Debtor for Allowance of Compensation for Services Rendered* (the "LRRC Application" and together with the L&Z Application and the Rodriguez Application, the "Applications") [ECF No. 532] filed on behalf of Lewis Roca Rothgerber Christie LLP ("LRRC") as the Debtor's special counsel.

This Omnibus Reply is made and based on the points and authorities herein, the papers and pleadings on file in this bankruptcy case, judicial notice of which is requested, and any arguments of counsel made at any hearings on the Applications.

## I.     LEGAL ARGUMENT

**A.     The Murray Claimants' Asserted Premise for Their Objections is Meritless Because the Debtor's Amended Plan Clearly Proposes to Pay All Allowed Claims in Full.**

The Murray Claimants assert that the reason for their Oppositions is that it is "unknown" whether the Debtor's Amended Plan will pay the alleged claims of the Murray in full.[1] As an initial matter, whether the Murray Claimants even have allowed claims entitled to distributions in the first place remains subject to dispute, because the Debtor's appeal remains pending before the Nevada Supreme Court, which appeal was fully briefed as of May 2024 (the "NSC Appeal"). For the Court's reference, true and correct copies of the Debtor's Opening and Reply Briefs filed in the NSC Appeal are attached as **Exhibit 1** and **Exhibit 2**, respectively. Even a cursory review of these briefs shows why the Debtor has ample arguments to overturn the Nevada State Court's decisions that led to the filing of this Chapter 11 Case.

Even to the extent the Murray Claimants eventually are determined to have Allowed claims on a final basis, however, the Debtor's [Proposed] *Amended Chapter 11 Plan of Reorganization Dated June 3, 2024* (the "Amended Plan") [ECF No. 504], which is set for a Confirmation Hearing on September 25 and 26, 2024, clearly does provide for the payment in full of whatever Allowed

---

[1] A Debtor filed a redline comparison of the Amended Plan to the Original Plan as ECF No. 505. Although a thorough discussion of the Amended Plan is beyond the scope of the Fee Applications, this redline shows how the Debtor made significant efforts to rework its Original Plan and made substantial concessions for the benefit of the Murray Claimants in the Amended Plan and to address the reasons the Court denied confirmation of the Original Plan.

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

claims, if any, the Murray Claimants are determined to hold. Specifically, Class 4 of the Amended Plan provides that "[e]ach holder of an Allowed general unsecured, non-priority claim shall receive ***payment in full*** of its claims over time, from various sources as follows," and then goes on to provide three (3) different mechanisms for that to happen (disposable income payments, release of the monies held in the Greenberg Trust account, and Employee Retention Tax Credits monies received by the Debtor), which are to be paid on a quarterly basis during the plan's five-year term. Amended Plan, § 4.01 (Class 4, ¶¶ 1-3) (emphasis in original). Additionally, and to reinforce that the Amended Plan provides that all holders of Allowed general unsecured claims will be paid in full, the Amended Plan also includes a "cleanup" provision providing that "[t]o the extent that there are any remaining sums owed to any holders of Allowed claims in this class as of month 60 of the Plan that have not already been paid in full [by the three (3) prior means], then the Debtor shall make final payment to them. Id. ¶ 4.

In other words, the Amended Plan abandons the concept of paying only a set, fixed amount of distribution to general unsecured creditors like in the Debtor's original *Chapter 11 Plan of Reorganization* (the "Original Plan") [ECF Nos. 65 and 375], and instead puts in place a clear and unequivocal requirement of payment in full to the holders of Allowed claims. The Debtor made this change in its Amended Plan both to simplify the confirmation proceedings, because a plan that pays creditors in full moots nearly all of the objections previously made by the Murray Claimants in opposition to confirmation of the Original Plan, and also because certain alleged claims like the actual final amount of claims of the Murray Plaintiff's counsel (Leon Greenberg, P.C. *et al.*) have proven rather elusive, to say the least, as illustrated by the prior claim objection proceedings as to the Murray Plaintiffs' counsels' fees and costs (the "Claim Objection") [ECF Nos. 338, 368, and 372] when their counsel refused even to provide detailed invoices in support of their claims and asserted that such amounts continue to accrue. Faced with such a situation, and the Murray Claimants' refusal even to engage in a settlement conference without certain preconditions involving fundamental changes to a proposed Plan, the Debtor filed its Amended Plan including this more open-ended requirement of payment in full of all Allowed Claims over time, to move

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

this Chapter 11 Case toward a proper conclusion with a confirmed plan.[2]

In light of these exceedingly clear provisions in the Amended Plan, the Murray Claimants' alleged uncertainty regarding whether the Amended Plan would pay them in full – if they have claims that are allowed on a final basis, which uncertainty they claim led to their file of their Objections, is mystifying.

**B.** **All of the Proposed Forms of Orders for the Applications Already Expressly State That They are Interim Awards and Pursuant to 11 U.S.C. § 331, Which is Sufficient to Protect Whatever Challenge Rights Exist at the Time of Final Approval.**

All of the Applications filed by the Debtor's professionals expressly provide that they are interim awards only, as they have to given that each of their professionals' respective representations remains ongoing. Additionally, all of the proposed forms of orders submitted with each of the Applications expressly state that they are "interim" awards only and are made "pursuant to section 331 of the Bankruptcy Code," which governs interim awards, as opposed to "final" awards pursuant to section 330 of the Bankruptcy Code. Such language is sufficient standing alone and without more to preserve later challenges on a final basis as a matter of law. Leichty v. Neary (In re Strand), 375 F.3d 854, 858 (9th Cir. 2004). In fact, the Murray Claimants cite to the Strand case in their Oppositions, yet apparently did not read it, because it clearly shows why their additional proposed language is unnecessary.

As explained by the Ninth Circuit in Strand, "[s]ection 331 provides that "any professional person employed under section 327 . . . may apply to the court . . . for such compensation for services rendered before the date of such an application . . . as is provided under section 330 of this title." 11 U.S.C. § 331. "The limited purpose of this statute is to provide financial relief to

---

[2] Moreover, the remaining potential general unsecured claims asserted in this Chapter 11 Case have also been greatly narrowed by the Debtor's significant efforts this year to eliminate all of the proofs of claims filed by the various ordinary course personal injury claimants, including by stipulations for relief from the automatic stay to allow such claimants' state court litigations to proceed, but requiring the claimants to look only to available insurance coverage (outside of a $25,000 self-insured retention) for payment instead of the bankruptcy estate, and/or actual settlements with the settlement proceeds paid by available insurance coverage. In fact, at present, other than the alleged claims of the Murray Claimants -- which remain disputed and subject to allowance on a final basis by the NSC Appeal, there are only a few other small general unsecured proofs of claim remaining in this case, which together assert claims of not more than $90,000.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

court-appointed officers engaged in protracted bankruptcy litigation, so that these officers do not have to wait for what may be years before receiving compensation." In re Strand, 375 F.3d at 858 (citing legislative history and various caselaw); In re Mansfield Tire & Rubber Co., 19 B.R. 125, 127 ("The essential purpose of 11 U.S.C. § 331 is, of course, to relieve counsel and others from the burden of 'financing' lengthy and complex efforts leading to the conclusion of bankruptcy proceedings . . . .") (Bankr. N.D. Ohio 1981). "The relief afforded under § 331, however, in no way restricts the bankruptcy court's ability to craft a final award under § 330. 'Because interim awards are interlocutory and often require future adjustments, they are 'always subject to the court's reexamination and adjustment during the course of the case.'" In re Strand, 375 F.3d at 858 (quoting In re Evangeline Ref. Co., 890 F.2d at 1321 (quoting 2 Collier on Bankruptcy ¶ 331.03 (15th ed.)) ("Interim fee awards are not final determinations intended to put a matter to rest.").

Accordingly, the Murray Claimants' proposed additional language is unnecessary, as the existing language already clearly protects whatever challenge rights they, or indeed any other creditor or party in interest, or the Court, may have with respect to final allowance later.

**C.      The Murray Claimants' Request to Defer Allowance and Payment of Fees and Costs Incurred by L&Z in Connection With Confirmation of the Original Plan and the Claim Objection.**

The Murray Claimants next request that the Court defer decision on the allowance and payment of the fees and costs that L&Z incurred as the Debtor's general bankruptcy counsel in seeking confirmation of the Original Plan and in filing the Claim Objection, and on the theory that the fees and costs L&Z incurred in this regard "conferred no benefit on the Debtor."

As an initial matter, the appropriate standard of decision for fee applications is that the court may disallow compensation when services were not "reasonably likely to benefit the debtor's estate." 11 U.S.C. § 330(a)(4)(A)(ii)(I) (emphasis added). Additionally, "[w]hile the services need not 'result in a material benefit to the estate[,]' approval of fees is contingent upon a showing 'that the services were 'reasonably likely' to benefit the estate at the time the services were rendered.'" In re Las Vegas Monorail Co., 458 B.R. 553, 556 (Bankr. D. Nev. 2011) (emphasis added) (quoting In re Mednet, 251 B.R. 103, 108 (B.A.P. 9th Cir. 2000)).

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

5

As applied in the case at hand, and starting first with L&Z's fees and costs incurred in preparing and seeking confirmation of the Original Plan, although rehashing the confirmation arguments previously briefed and the Court's ruling thereon is unnecessary here, the Original Plan was certainly a good faith effort to achieve a successful restructuring in a difficult, complex and highly contested situation. This was borne out by the extensive briefing and evidence presented. By contrast, the Murray Claimants' argument effectively seeks to transform L&Z into contingency fee lawyers whose compensation should be allowed and paid only if their efforts ultimately are successful, which is simply contrary to applicable law. Simply because the Murray Plaintiffs' counsel undertook its representation on a contingency fee basis, does not mean that L&Z has to as well, and indeed that is contrary to the hourly retention that the Court previously approved in L&Z's original retention application. [ECF Nos. 45 and 83]. It cannot be doubted that the fees and costs L&Z incurred in seeking confirmation of the Original Plan were reasonably likely to benefit the bankruptcy estate at the time the services were rendered pursuant to section 330(a)(4)(A)(ii)(I) of the Bankruptcy Code, and regardless of the fact that the Court later denied confirmation of the Original Plan. Accordingly, the fees and costs L&Z incurred in seeking confirmation of the Original Plan should be allowed and paid.

Second, with respect to the fees and costs L&Z incurred in preparing and filing the Claim Objection, the Murray Claimants argue that "[n]o sound basis existed for those objections which were rejected by the Court." As an initial matter, this argument clearly misstates the Court's actual ruling with respect to the Claim Objection. Contrary to the Murray Claimants' argument, the Court did not reject the Debtor's arguments in the Claim Objection; rather, it held that adjudicating the Claim Objection was contrary to the terms of the Debtor's proposed Original Plan, which the Court interpreted as reserving to the Nevada State Court to decide, and thus deferred any decision on it. That is not the same as a "rejection" as the Murray Claimants assert.

Additionally, although the Debtor disagrees with the Court's interpretation of its Original Plan in this regard, and as indicated in the Claim Objection pleadings the Debtor actually was intending in its Original Plan to only have this Court rule on the fees and costs the Murray

6

Plaintiffs' counsel was claiming that the Nevada State Court had <u>not yet</u> ruled on, as well also the fees and costs the Murray Claimants allegedly incurred <u>during the Debtor's Chapter 11 Case</u>, which are both claims in the case over which the Court had jurisdiction over and could have ruled on, the Claim Objection had ample basis in law as was briefed therein. The final allowed amount of fees and costs owed to the Murray Plaintiffs' counsel is a central issue in this Chapter 11 Case because those fees and costs have surpassed the Murray Plaintiffs' own claims, and indeed counsel's fees are now the largest claims asserted in the case. Given these obvious facts, it was appropriate for the Debtor to seek to challenge the fees and costs by the Claim Objection and in an attempt to reduce them and to reach a more definitive, final number, especially given the vague and indefinite numbers claimed by counsel.

Finally, even if this Court ultimately does not decide the Claim Objection for whatever reason, and instead defers or abstains in favor of the Nevada State Court on the issue, the points and authorities in the Claim Objection can easily be reused in those subsequent proceedings, and thus remain of substantial value to the estate in dealing with the largest claim in the case.

L&Z filed its current application, which is its third interim application in this Chapter 11 Case, because it has been quite some time since its last application was approved. Specifically, L&Z's last fee application -- its second interim application -- sought compensation through September 2023, and thus it was a ripe time for L&Z to file another application given the passage of ten (10) months since its last application in this case. Additionally, although the current confirmation proceedings on the Debtor's Amended Plan are set for the end of September, there will presumably be post-trial briefing and some time for the Court to decide that matter, which potentially could extend into next year, and thus it makes sense to take stock of the case and decide L&Z's current application now, especially considering that it is only an interim application.

In sum, the fees and costs incurred by L&Z with regard to the Claim Objection were reasonably likely to benefit the Debtor's bankruptcy estate at the time the services were rendered pursuant to section 330(a)(4)(A)(ii)(I) of the Bankruptcy Code, and thus the fees incurred should be allowed as well.

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

**D.**     <u>**The Murray Claimants' Request to Defer the Allowance and Payment of RLO's and LRRC's Fees and Costs Incurred in the NSC Appeal.**</u>

Similar to its objection to the L&Z Application, as to the RLO Application and the LRRC Application, the Murray Claimants assert that the allowance and payment of any fees and costs these two (2) firms incurred in briefing the NSC Appeal should also be deferred until after the NSC Appeal is decided, and because the Debtor filed the NSC Appeal with the "goal of harassing" the Murray Claimants and "with complete indifference to its cost or merit." The only alleged support the Murray Claimants offer for their exceedingly sweeping, conclusory allegations in this regard are out-of-context quotes to the testimony of the Debtor's principal, Creighton J. Nady, from the prior confirmation proceedings on the Original Plan.

As previously explained, the actual standard of proof with respect to the Applications is whether the services for which compensation is sought were "reasonably likely" to benefit the debtor's estate, and that while the services need <u>not</u> actually result in a material benefit to the estate, approval of fees is contingent upon a showing that the services were reasonably likely to benefit the estate at the time the services were rendered.

As applied to the case at hand, the Murray Claimants are attempting to question the Debtor's exercise of its business judgment in pursuing its appellate rights with the NSC Appeal of the Nevada State Court's decisions. A debtor's business judgment, however, is entitled to substantial deference, and courts are unwilling to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and will uphold a company's decisions as long as they are attributable to "any rational business purpose." <u>Unocal Corp. v. Mesa Petroleum Co.</u>, 493 A.2d 946, 954 (Del. 1985) (citing <u>Sinclair Oil Corp. v. Levien</u>, 280 A.2d 717, 720 (Del. 1971)). The Murray Claimants' conclusory arguments fail to come close to satisfying their difficult burden to challenge the Debtor's exercise of its business judgment in proceeding with the NSC Appeal. Even a cursory review of the Debtor's attached briefing filed in the NSC Appeal illustrates how that appeal is well warranted, as substantial questions remain regarding the Nevada State Court's decisions, including whether the Murray Claimants even have claims in the first place.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Additionally, the Murray Claimants, as the appellees in the NSC Appeal, are obviously interested parties, and thus their Objections are really just trying to frustrate the Debtor's exercise of its appellate rights by objecting to the fees and costs incurred by the Debtor's counsel in pursuing the appeal. Moreover, as the Court heard at the last status conference in the Chapter 11 Case, it is the Murray Claimants who refused to agree to attend a Settlement Conference without various preconditions in this case, and thus it is disingenuous of them to assert that the Debtor is proceeding without regard to the cost and benefit of the NSC Appeal when they have refused to try and have a meaningful discussion before a bankruptcy neutral.

Finally, these are the only the first and interim Applications of RLO and LRRC in this Chapter 11 Case, and given that the merits briefing in the NSC Appeal was recently completed, it is an appropriate natural break in those proceedings to file such applications. Although these counsels' work is not finished, and they do not know if and when the Nevada Supreme Court may set the NSC Appeal for oral argument, nor how the appeal ultimately will be decided obviously, it is likely that it will not be decided until sometime in 2025. Accordingly, it would be unfair and inappropriate for these counsel, whose retention was approved on an hourly basis, to wait until such undefined time in the future as the Murray Claimants seek, to have their compensation allowed and paid, especially considering that these are only first and interim applications.

**E.**     **The Murray Claimants' Request to Defer Allowance and Payment of the Debtor's Professionals Until The Murray Claimants are Paid in Full First Has No Basis in Law.**

Finally, and in a rather absurd overreach, the Murray Claimants argue that the Debtor should not be permitted to pay its professionals the sums requested in the Applications until the Murray Claimants are paid in full. The Murray Claimants do not cite any authority supporting this request, nor is there any basis in law for such request for various reasons.

*First*, the claims of the Debtor's professionals asserted in the Applications are administrative claims pursuant to sections 507(a)(2) and 503(b)(1)(A) of the Bankruptcy Code, which thus have statutory priority over whatever Allowed general unsecured claims, if any, the Murray Claimants may have, if any. This express statutory priority allows these administrative

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

claimants, and any other administrative claims -- including the fees and costs of the Subchapter V Trustee in this case for example -- to be paid. The Debtor's proposed Amended Plan complies with this statutory priority as well -- as it must pursuant to section 1129(a)(9), as amended by section 1191(e) -- by paying any remaining Allowed administrative claims over time in full over time their *pro rata* share of $15,000 per month. Plan § 3.02. In fact, if anything, the Amended Plan makes a concession for the benefit of all creditors holding Allowed general unsecured claims, which could include the Murray Claimants if their claims are eventually Allowed by final order, by proposing that payments to the holders of Allowed general unsecured claims can commence at the same time as payments of the remaining Allowed administrative claims. Plan §§ 3.02 and 4.01 (Class 4).

*Second*, the Murray Claimants request that the Court defer a decision on *allowance* (not just *payment*) of the fees it disputes in the Applications until they are paid in full first. Given the potential amount of the claims of the Murray Claimants, which are asserted to be in excess of $2 million, however, and assuming those claims are eventually Allowed on a final basis – which may not happen for at least 6-9 months, if ever, as it will require the Nevada Supreme Court to rule on the NSC Appeal in their favor, and possibly other state court adjudications thereafter, it will take the Debtor the better part of five (5) years to pay such claims off in full, even if they are Allowed on a final basis. Unlike the claims at issue in the Applications, which are relatively small by comparison, the Debtor lacks the financial ability to pay the Murray Claimants' claims in full immediately. As such, the Murray Claimants are apparently requesting this Court to defer both the allowance and payment of administrative claims for five (5) years, which is plainly absurd and there is no support for such a deferral of an issue. In this regard, it is entirely unfair to force the administrative claimants with valid claims to have to wait to get paid until some uncertain, undefined time in the future, and that is precisely what interim allowance pursuant to section 331 of the Bankruptcy Code is designed to avoid.

*Third*, the Murray Claimants cite no evidence whatsoever that the Debtor lacks the financial ability to pay any fees and costs that the Court may allow to in the Applications now, and also still make the payments over time proposed under the Amended Plan to the holders of any

Allowed general unsecured claims – whether or not that is eventually determined to be the Murray Claimants or not. As such, the Murray Claimants fail to assert any appropriate basis that compels the Court to defer or deny any of the Applications.

## II.    CONCLUSION

WHEREFORE, the Debtor requests that the Court overrule the Murray Claimants' Objections to the Applications, and grant the Applications in full, including as to both allowance and payment, but only on an interim basis and pursuant to section 331 of the Bankruptcy Code, not on a final basis. The Debtor also requests such other and further relief as is just and proper.

Dated: August 13, 2024.

By:    /s/ Matthew C. Zirzow
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for the Debtor

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

11

# EXHIBIT 1

Case No. 85850

# In the Supreme Court of Nevada

A CAB SERIES LLC f/k/a A CAB, LLC,

  Appellant,

*vs.*

MICHAEL MURRAY; and MICHAEL RENO, individually and on behalf of others similarly situated,

  Respondents.

Electronically Filed
Jan 26 2024 10:22 PM
Elizabeth A. Brown
Clerk of Supreme Court

### APPEAL

from the Eighth Judicial District Court, Clark County
The Honorable MARIA GALL, District Judge
District Court Case No. A-12-669926-C

### APPELLANT'S OPENING BRIEF

ESTHER C. RODRIGUEZ (SBN 6473)
RODRIGUEZ LAW OFFICES, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(702) 302-8400

DANIEL F. POLSENBERG (SBN 2376)
ABRAHAM G. SMITH (SBN 13,250)
LAUREN D. WIGGINTON (SBN 15,835)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 949-8200

*Attorneys for Appellant*

## NRAP 26.1 DISCLOSURE

The undersigned counsel of record certifies that the following are persons and entities as described in NRAP 26.1(a), and must be disclosed.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Appellant A Cab Series LLC f/k/a A Cab, LLC is a limited liability company. It has no parent corporation, and no publicly held company owns 10% or more of its stock.

Appellant has been represented by attorneys at Rodriguez Law Offices, P.C. and Lewis Roca Rothgerber Christie LLP.

Dated this 26th day of January, 2024.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By:   */s/ Abraham G. Smith*

ESTHER C. RODRIGUEZ (SBN 6473)
RODRIGUEZ LAW OFFICES, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(702) 302-8400

DANIEL F. POLSENBERG (SBN 2376)
ABRAHAM G. SMITH (SBN 13,250)
LAUREN D. WIGGINTON (SBN 15,835)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 949-8200

*Attorneys for Appellant*

i

# TABLE OF CONTENTS

NRAP 26.1 DISCLOSURE ............................................................................... i

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES .............................................................................. v

JURISDICTION ............................................................................................ xii

ROUTING STATEMENT ................................................................................ xii

ISSUES PRESENTED .................................................................................. xiii

STATEMENT OF THE CASE ........................................................................... 1

FACTS ........................................................................................................ 2

    *The Original Class Action* .................................................................. 2

    *The* Murray I *Appeal* ......................................................................... 4

    Dubric *Reaches a Settlement Despite Plaintiffs' Obstructionism* .... 5

    *Plaintiffs Push* Murray II *to Premature Resolution,*
    *A Cab Moves for a Stay* .................................................................. 6

    *This Court Affirms the* Dubric *Settlement*
    *and the* Murray II *Stay is Lifted* ...................................................... 8

    *The District Court Ignores* Dubric *in Awarding Attorney Fees* ....... 9

SUMMARY OF THE ARGUMENT ................................................................... 10

ARGUMENT ............................................................................................... 12

I.    ATTORNEY FEES ARE NOT AVAILABLE HERE ..................................... 14

    A.    Plaintiffs Are Not Prevailing Parties ................................... 14

        *1.*    *The Class Should Have Been Decertified*
            *After* Dubric*, Which Destroyed Numerosity* ................. 14

ii

a. PLAINTIFFS WHO DID NOT OPT-OUT OF THE *DUBRIC* SETTLEMENT CAN NO LONGER BE CERTIFIED AS PART OF THE *MURRAY* CLASS..........15

b. THIS COURT'S SUBJECT MATTER JURISDICTION IN *DUBRIC* IS IRRELEVANT BECAUSE A CAB CAN RAISE A SEPARATE ENFORCEMENT ACTION IN *MURRAY* ......................16

c. THIS COURT'S REMAND ORDER WAS NOT FINAL JUDGMENT AND THE CLASS COULD BE DECERTIFIED EVEN IF IT WAS FINAL.....................18

d. WITHOUT THE SETTLING PLAINTIFFS, THE *MURRAY* CLASS DOES NOT MEET THE NUMEROSITY REQUIREMENT ..........................19

e. DECERTIFICATION OF THE CLASS REQUIRES THAT THE ATTORNEY FEE AWARD BE VACATED ....20

B. No Party Can Prevail Before Final Judgment, and Final Judgment Cannot Issue Here Without an Evidentiary Hearing .........................................22

C. Plaintiffs Were Not Entitled to Attorney Fees on Appeal....24

1. *The MWA's Language Does Not Support an Award of Appellate Fees* ..........................................26

2. *The Circuits Are Split as to Whether Appellate Fees Are Available Under the FLSA*....................................29

3. *Even if Appellate Fees Were Available the District Court Lacked Authority to Award Them*.....................31

4. *Any Award of Appellate Fees Should Have Been Proportionally Reduced*..............................32

II. THE ATTORNEY FEE AWARD WAS UNREASONABLE BECAUSE IT WAS NOT PROPORTIONALLY REDUCED AS THE CLASS CONSTRICTED ..........................................................33

iii

III.   ALTERNATIVELY, PLAINTIFFS SHOULD HAVE BEEN
       SANCTIONED, OFFSETTING THE ATTORNEY FEE AWARD ...................38

CONCLUSION ......................................................................................43

CERTIFICATE OF COMPLIANCE...............................................................xiv

## TABLE OF AUTHORITIES

### Cases

*145 E. Harmon II Tr. v. Residences at MGM Grand – Tower
A Owners' Ass'n,*
136 Nev. 115, 460 P.3d 455 (2020) ................................................... 12

*A Cab, LLC v. Murray,*
137 Nev. 805, 501 P.3d 961 (2021) ............................. 1, 3, 5, 23, 32, 33

*Abbott Laboratories v. CVS Pharmacy, Inc.,*
290 F.3d 854 (7th Cir. 2002) .......................................................... 22

*Estate of Adams ex rel. Adams v. Fallini,*
132 Nev. 814, 386 P.3d 621 (2016) .................................................. 23

*Amantiad v. Odum,*
90 Haw. 152, 977 P.2d 160 (1999) ................................................... 17

*In re Att'y Fees in Yu v. Zhang,*
637 N.W.2d 754 (Wis. 2001) ........................................................... 40

*Barfield v. N.Y.C. Health & Hosps. Corp.,*
537 F.3d 132 (2d Cir. 2008) ....................................................... 34, 35

*Bd. of Gallery of History, Inc. v. Datecs Corp.,*
116 Nev. 286, 994 P.2d 1149 (2021) ....................................... 24, 27, 28

*Bergmann v. Boyce,*
109 Nev. 670, 856 P.2d 560 (1993) .................................................. 34

*Bobby Berosini, Ltd. v. People for the Ethical Treatment of
Animals,*
114 Nev. 1348, 971 P.2d 383 (1998) ....................................... 25, 27, 28

*Bradgate Assocs., Inc. v. Fellows, Read & Assocs.,*
Inc., 999 F.2d 745 (3d Cir. 1993) .................................................... 42

*Brunzell v. Golden Gate Nat. Bank,*
85 Nev. 345, 455 P.2d 31 (1969) ..................................................... 34

*Carroll v. Blinken*,
  105 F.3d 79 (2d Cir.1997) ................................................................. 35

*Caserta v. Home Lines Agency, Inc.*,
  273 F.2d 943 (2d Cir. 1959) .............................................................31

*Culver v. City of Milwaukee*,
  277 F.3d 908 (7th Cir. 2002)............................................................20

*Disher v. Citigroup Glob. Markets, Inc.*,
  486 F. Supp. 2d 790 (S.D. Ill. 2007) ................................................ 19

*Doe Dancer I v. La Fuente, Inc.*,
  137 Nev. 20, 481 P.3d 860 (2021) ................................................ 5, 30

*Dubric v. A Cab, LLC*,
  Case No. A-15-721063-C ..................................................................... 3

*Eberle v. State ex rel. Nell J. Redfield Tr.*,
  108 Nev. 587, 836 P.2d 67 (1992) .................................................... 36

*Edwards v. Emperor's Garden Rest.*,
  122 Nev. 317, 130 P.3d 1280 (2006) ................................................ 25

*In re Est. & Living Tr. of Miller*,
  125 Nev. 550, 216 P.3d 239 (2009) .................................................. 25

*Frye v. Baptist Mem'l Hosp., Inc.*,
  507 F. App'x 506 (6th Cir. 2012) ...................................................... 21

*Godell v. Johnson*,
  244 Or. 587, 418 P.2d 505 (1966) .................................................... 30

*Green v. Obledo*,
  624 P.2d 256 (Cal. 1981) ............................................................ 10, 18

*Handler v. Thrasher*,
  191 F.2d 120 (10th Cir. 1951)........................................................... 30

*Hardy Companies, Inc. v. SNMARK, LLC*,
  126 Nev. 528, 245 P.3d 1149 (2010) ................................................ 28

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983).................................................................. 34, 37

*Holtville Alfalfa Mills v. Wyatt,*
   230 F.2d 398 (9th Cir. 1955).......................................................... 32

*Jimenez v. GLK Foods LLC,*
   No. 12-C-209, 2018 WL 11304531 (E.D. Wis. Apr. 19,
   2018) ................................................................................. 29, 31, 32

*Kirby v. Roth,*
   515 F. App'x 642 (8th Cir. 2013) ...................................................... 36

*Knussman v. Maryland,*
   73 F. App'x 608 (4th Cir. 2003) ....................................................... 34

*Koch v. Jerry W. Bailey Trucking, Inc.,*
   51 F.4th 748 (7th Cir. 2022) ........................................................... 35

*Krysl v. Treasurer of Missouri,*
   615 S.W.3d 843 (Mo. Ct. App. 2020) ................................................. 24

*L. W. v. Jersey City Bd. of Educ.,*
   824 F. App'x 108 (3d Cir. 2020)........................................................ 24

*Las Vegas Review-Journal v. City of Henderson,*
   137 Nev. 766, 500 P.3d 1271 (2021) .................................................. 22

*Lee v. GNLV Corp.,*
   116 Nev. 424, 996 P.2d 416 (2000) .................................................... 22

*Marcure v. Lynn,*
   992 F.3d 625 (7th Cir. 2021)............................................................ 42

*Marez v. Saint-Gobain Containers, Inc.,*
   688 F.3d 958 (8th Cir. 2012)............................................................ 35

*Marlo v. United Parcel Serv.,*
   453 F. App'x 682 (9th Cir. 2011) ...................................................... 21

*Marlo v. United Parcel Serv., Inc.*,
  No. CV0304336DDPRZX, 2009 WL 10669458 (C.D. Cal.
  Aug. 12, 2009)...................................................................................21

*Mashburn v. Nat'l Healthcare, Inc.*,
  684 F. Supp. 679 (M.D. Ala. 1988) ....................................................37

*Mays v. Midnite Dreams, Inc.*,
  915 N.W.2d 71 (Neb. 2018)................................................................30

*MB Am., Inc. v. Alaska Pac. Leasing*,
  132 Nev. 78, 367 P.3d 1286 (2016) ....................................................12

*Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*,
  613 F.3d 609 (6th Cir. 2010)..............................................................39

*Montalvo v. Tower Life Bldg.*,
  426 F.2d 1135 (5th Cir. 1970).....................................................29, 32

*Murray v. Dubric*,
  No. 83492, 2022 WL 3335982 (Nev. Aug. 11, 2022)
  (unpublished disposition) .............................................................1, 8

*Nalder v. Eighth Jud. Dist. Ct.*,
  136 Nev. 200, 462 P.3d 677 (2020) ....................................................41

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
  981 F.2d 429 (9th Cir. 1992)..............................................................40

*Off. of Washoe Cnty. Dist. Atty. v. Second Jud. Dist. Ct.*,
  116 Nev. 629, 5 P.3d 562 (2000) ........................................................39

*In re Pac. Sunwear of Cal., Inc.*,
  No. 16-10882(LSS), 2016 WL 4250681 (Bankr. D. Del.
  Aug. 8, 2016)......................................................................................15

*Patry v. Liberty Mobilehome Sales, Inc.*,
  394 Mass. 270, 475 N.E.2d 392 (1985)..............................................32

*Piroozi v. Eighth Jud. Dist. Ct.*,
  131 Nev. 1004, 363 P.3d 1168 (2015) ................................................28

*Ramirez v. Fox Television Station, Inc.,*
998 F.2d 743 (9th Cir. 1993)................................................................41

*Rendon v. AT & T Techs.,*
883 F.2d 388 (5th Cir. 1989).........................................................37, 38

*Reyes v. Aqua Life Corp.,*
632 F. App'x 552 (11th Cir. 2015) ......................................................41

*Saglimbene v. Venture Indus. Corp.,*
895 F.2d 1414 (6th Cir. 1990).......................................................29, 31

*Sargeant v. Henderson Taxi,*
133 Nev. 196, 394 P.3d 1215 (2017) ..................................................14

*Smith v. City of Joliet,*
No. 93 C 3401, 1995 WL 336999 (N.D. Ill. May 31, 1995) .................20

*Smith v. Ricks,*
31 F.3d 1478 (9th Cir. 1994), *cert. denied,* 514 U.S. 1035
(1995) ...................................................................................................41

*St. Germain v. Bos. Popcorn Co.,*
No. CV962404, 2000 WL 33170896 (Mass. Super. May 17,
2000) ....................................................................................................39

*Stanley v. McDaniel,*
913 P.2d 76 (Idaho Ct. App. 1996) .....................................................30

*Step Plan Servs., Inc. v. Koresko,*
12 A.3d 401 (Pa. Super. Ct. 2010) ......................................................17

*Tulelake Horseradish, Inc. v. Santa Margarita Ranch, LLC,*
132 Nev. 1038 (2016) .....................................................................27, 28

*United States v. Lacey,*
982 F.2d 410 (10th Cir. 1992)..............................................................19

*Vasconcelo v. Miami Auto Max, Inc.,*
981 F.3d 934 (11th Cir. 2020)..............................................................36

*Wakefield v. Gov't Emps. Ins. Co.,*
   260 La. 286, 255 So. 2d 771 (1972) ...................................................... 18

*Wheeler Springs Plaza, LLC v. Beemon,*
   119 Nev. 260, 71 P.3d 1258 (2003) ...................................................... 23

*Williams v. Corbett,*
   205 Or. 69, 286 P.2d 115 (1955) .......................................................... 30

*Williams v. State Dep't of Corr.,*
   133 Nev. 594, 402 P.3d 1260 (2017 ..................................................... 28

*Yagman v. Republic Ins.,*
   987 F.2d 622 (9th Cir. 1993) ................................................................ 39

*Young Elec. Sign Co. v. Erwin Elec. Co.,*
   86 Nev. 822, 477 P.2d 864 (1970) ........................................................ 26

*Zenith Lab'ys, Inc. v. Carter-Wallace, Inc.,*
   530 F.2d 508 (3d Cir. 1976) ................................................................. 17

## Rules

NRAP 38(b) ................................................................................... 24, 25, 27

NRCP 23(a) ............................................................................................ 14

## Statutes

29 U.S.C.A. § 216(b) ............................................................................. 29

NRS 608.040 ............................................................................................ 2

## Constitutional Provisions

Nev. Const. Article 15, § 16 .................................................................. 14

Nev. Const. Article 15, § 16(B) ...................................................... 26, 33

**Treatises**

Mary Kay Kane, 7A FED. PRAC. & PROC. CIV. (Wright & Miller) (4th ed.) ............................................................................. 20

52 A.L.R.2d 863 ............................................................................ 25

151 A.L.R. Fed. 77 (Originally published in 1999) ................................ 38

47 AM. JUR. PROOF OF FACTS 3d 241 (2023 Supp.) ................................ 41

15A C.J.S. *Compromise & Settlement* § 78.............................................. 17

36 C.J.S. *Federal Courts* § 739............................................................. 19

**Other Authorities**

2 AGE DISCRIMINATION § 8:158 (2d ed.) (2023 Supp.)............................ 29

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012) ........................................... 27

CONNECTED (https://www.merriam-webster.com/dictionary/connected) .................................................. 16

*Court Awarded Attorney Fees*, 108 F.R.D. 237, 248 (3d Cir. 1986) ............................................................................................ 37

Dubric *Settlement and the*.......................................................................... 8

5 MCDONALD & CARLSON TEX. CIV. PRAC. § 30:50 (2d. ed.)..................... 18

MICHEL HUGHES ET AL., 6A FED. PROC., L. ED. § 12:299 (2023 Supp.)....................................................................................... 18

3 *Newberg and Rubenstein on Class Actions* § 7:38 (6th ed.)................. 15

## JURISDICTION

The district court entered a final judgment on remand on November 17, 2022.  A Cab Series LLC f/k/a A Cab LLC timely appealed on December 21, 2022.

## ROUTING STATEMENT

This matter is not presumptively retained by the Supreme Court or assigned to the Court of Appeals under NRAP 17.

The issues presented are answered by existing law.  The entire appeal can be resolved by assessing whether plaintiffs prevailed in the action.  A Cab submits that they did not, under established Nevada law.  Given that, A Cab further submits that plaintiffs' demand for attorney fees can be rejected outright.  The Court of Appeals would be an appropriate forum to issue that relief.

If the question of the availability of appellate attorney fees under the Minimum Wage Act needs to be reached, however, the Supreme Court is better positioned to decide the appeal.  In that case, the question presented is a matter of first impression in Nevada and

requires a survey of federal and state minimum wage laws and their fee-shifting provisions.

## ISSUES PRESENTED

1.    Did the district court err by awarding attorney fees to a putative class of plaintiffs where that class should have been decertified?

2.    Alternatively, did the district court err by not proportionally reducing the award of attorney fees given the putative class's limited success?

3.    In the second alternative, did the district court err by refusing to reduce the fee award by sanctions for the putative class's excessive litigation in direct violation of a stay order?

## STATEMENT OF THE CASE

The attorney fees appeal now before this Court is the tail that wags the dog. Plaintiffs brought the purported class action that preceded it (*A Cab, LLC v. Murray*, 137 Nev. 805, 501 P.3d 961 (2021) ("*Murray I*")) under the Minimum Wage Amendment (MWA) a decade ago. Since then, the dispute between appellant A Cab, LLC and its drivers has reached near unanimous settlement in a companion case, *Murray v. Dubric*, No. 83492, 2022 WL 3335982 (Nev. Aug. 11, 2022) (unpublished disposition) (*Dubric*). Vis-à-vis that settlement, all but three plaintiffs released the claims for which the district court awarded attorney fees.

What roared in as a class of almost nine hundred slinks out as a handful of plaintiffs whose claims that could be feasibly joined. Pooled together, the claims by the three non-settling plaintiffs in *Murray I* are worth less than $12,000. Indeed, the claims would hardly be appeal-worthy but for plaintiffs' counsel's current award of attorney fees (22 App. 5408).

The award is an abuse of discretion. Following the *Dubric* settlement, the class certified in *Murray I* should have been decertified

1

on remand (*Murray II*).  Plaintiffs are no longer "prevailing" and are not entitled to attorney fees under the MWA.  And even if plaintiffs had prevailed in *Murray II*, the award should have been reduced, either in proportion to plaintiffs' limited successes in *Murray I* or via sanctions for plaintiffs' inappropriate litigation tactics.  In either event, the award of appellate fees under the MWA was legal error.

This Court should reverse the erroneous orders outlined above and vacate its attorney fee award.

## FACTS

### *The Original Class Action*

Michael Murray and Michael Reno (collectively, "plaintiffs") filed a class action against A Cab Taxi Service LLC and A Cab, LLC (collectively, "A Cab"). (1 App. 2; 1 App. 32; 1 App. 146 ¶ 3.)[1] Plaintiffs alleged that A Cab failed to pay a putative class of taxi cab drivers (the *Murray* class) the minimum wage the MWA requires.[2]  (*Id.* at ¶ 6.)  Of

---

[1] Plaintiffs also sued Creighton J. Nady as A Cab's owner, adding claims against him as an individual.  Those claims were severed from those made against A Cab, and not relevant to this appeal.  (7 App. 1615.)

[2] Plaintiffs also sought the penalties owed pursuant to NRS 608.040 for violations of NRS 608.020 and 608.030, which relate to payment of

2

particular relevance here, plaintiffs also sought an award of attorney fees, interests, and costs. (*Id.* at 152, 153 – 60 ¶¶ 21, 25-45.)

The district court certified the *Murray* class, excluding driver Jasminka Dubric, who had filed a separate class action against A Cab on the same claims in *Dubric v. A Cab, LLC*, Case No. A-15-721063-C.[3] (2 App. 424:8–9.)

Ultimately the district court granted summary judgment for plaintiffs in *Murray I.* (7 App. 1606.) Plaintiffs were awarded $1,033.027.81, plus interest. (*Id.* at 1614–15, 1618–46.) In part those damages included claims on which the statute of limitations would have expired, but for the district court's equitable tolling for supposed failure of notice.[4]

The district court further awarded plaintiffs $568,071 in attorney fees "pursuant to the mandatory fee-shifting provision of Article 15, Section 16 of the Nevada Constitution." (11 App. 2536.) It also

---

wages to employees that are discharged or those that resign or quit. (*See id.* 153 ¶¶ 25–26.)

[3] The district court made its ruling under the pre-2019 version of the Nevada Rules of Civil Procedure.

[4] The district court initially held that A Cab's publicly posted notice was insufficient to start the statute of limitations.

awarded $46,528.07 in costs, the entirety of plaintiffs' request. (*Id.* at 2539.)

Plaintiffs then obtained a writ of execution to garnish the "[b]ank [a]ccounts or monies on deposit with Wells Fargo Bank that are owned by judgment debtors A Cab LLC or A Cab Taxi Service LLC." (8 App. 1762.)[5]  A Cab moved to quash the writ, and the other companies in the A Cab Series LLC filed claims for exemption from execution based on their separate corporate forms. (8 App. 1981–9 App. 2016; 7 App. 1750– 8 App. 1751 (noting that the companies "have their own books, records and accountings, and do not share assets" with A Cab, LLC).)  The district court denied that motion. (10 App. 2484–88.)

### The Murray I Appeal

A Cab appealed the orders (1) granting summary judgment, (2) amending the judgment to add A Cab Series LLC as a defendant; (3) denying A Cab's motion to quash writ of execution; and (4) granting plaintiffs' attorney fees and costs. (11 App. 2550.)  The Nevada

---

[5]A Cab Series LLC had not been initially named, but the district court amended the judgment on plaintiffs' motion, "so that it was also against A Cab Series LLC." (9 App. 2045.)

4

Supreme Court subsequently took the matter under consideration and issued its opinion in *Murray I*, 137 Nev. at 501 P.3d 961 (2021).

*Murray I* reversed the district court's tolling decision. *Murray I*, 137 Nev. at 813, 501 P.3d at 971. And in light of that holding, *Murray I* also reversed and remanded the award of damages, attorney fees, and costs, for reassessment. *See Murray I*, 137 Nev. at 812, 813, 820, 501 P.3d at 970, 971, 975-76. This Court further reversed the district court's denial of A Cab's motion to quash, with instructions to hold an evidentiary hearing on the A Cab entities' corporate separateness. *Murray I*, 137 Nev. at 824-25, 501 P.3d at 978-79.

### Dubric *Reaches a Settlement Despite Plaintiffs' Obstructionism*

While the *Murray* parties negotiated remand proceedings in *Murray II*, the parallel *Dubric* class action settled. (14 App. 3469; 12 App. 2794–802; 22 App. 5262.) The *Dubric* settlement provided that any person settling a claim would release any related claim in *Murray II*. (22 App. 5287; 22 App. 5276.)[6]

---

[6] The relevant language is discussed in greater detail herein. In sum, under the agreement every settling plaintiff in *Dubric* agreed to release all claims "related to, arising out of, or which could have been asserted,

5

Watching his putative class slip through his fingers, *Murray* class counsel filed multiple motions on behalf of the *Murray* class to intervene in [*Durbic*] and disrupt the settlement agreement's approval. (*Id.*)  The district court rejected these attempts, approving the settlement to bind "all . . . members of the Class," with limited exceptions for *Murray* plaintiffs including Michael Murray, Michael Reno, and Michael Sargeant (the *Murray II* plaintiffs).[7]  (16 App. 3836 *see also* 22 App. 5285.)  The *Murray II* plaintiffs, as intervenors, appealed the *Dubric* settlement. (14 App. 3387.)

### *Plaintiffs Push* Murray II *to Premature Resolution, A Cab Moves for a Stay*

While tapping the brakes in *Dubric*, plaintiffs took to their proceedings in *Murray II* full-throttle.  Plaintiffs moved for entry of a modified judgment in *Murray II*, providing the court a proposed order and a "modified judgment list."  (*See* 13 App. 3066.)  The proposed modification would exclude claims predating October 8, 2010 (when the

---

inferred, implied, included, or connected in any way with" the claims in *Dubric*.

[7]Richard Clark released his claim in the consent judgment with the USDOL, discussed *infra at* § I.A.1.(d).  So, only three plaintiffs retain their claims in *Murray II*.

statute of limitations ran without the advantage of the district court's tolling). (*See id.* at 3066:18–22, 3068:3–6.) Plaintiffs argued that *Murray I* otherwise affirmed the court's decisions in full. (*Id.* at 3066.)

A Cab cautioned the district court that plaintiffs were "rushing [the district court] to enter judgment" on an incomplete record. (15 App. 3522:11–12; 16 App. 3788.) One major outstanding issue was the then-pending appeal of the *Dubric* settlement, which the proposed order and modified judgment list ignored entirely. (*Id.*)

To appropriately slow plaintiffs' roll, A Cab moved to stay the district court's proceedings in *Murray II* until this Court issued its decision in *Dubric*. (14 App. 3385:24–28.) Plaintiffs countered that the *Dubric* judgment and appeal could not modify what plaintiffs claimed was still a final judgment from *Murray I*—notwithstanding the intervening appellate judgment reversing and remanding. (16 App. 3819.) Plaintiffs insisted that the *Dubric* judgment was void "to the extent it purports to modify or release any liability" of A Cab. (*Id.* at 2.)

The district court rejected plaintiffs' arguments and stayed *Murray II*. (16 App. 3902–16; *see also* 16 App. 3920:5–8.) Plaintiffs petitioned for writ relief on the district court's stay order. At the same

time, they ignored it—filing several motions in *Murray II* in direct violation of it.

### *This Court Affirms the* Dubric *Settlement and the* Murray II *Stay is Lifted*

This Court affirmed the settlement in *Dubric*. *See Murray v. Dubric*, No. 83492, 2022 WL 3335982 (Nev. Aug. 11, 2022) (unpublished disposition). In so doing, this Court rejected plaintiffs' arguments that the district court could not have approved the settlement—either because the district court lacked jurisdiction or because the settlement was unfair to the non-settling plaintiffs. *Dubric*, 2022 WL 3335982, at *2 & n.5. As to the first argument, this Court found that plaintffs waive it won appeal. As to the second, this Court noted that the *Dubric* class reached the settlement "as the result of lengthy negotiations after conducting a significant amount of discovery and with the assistance of both a jointly retained expert and an experienced judicial officer." *Id.*

In light of *Dubric*'s affirmance, the district court lifted the *Murray* stay. (20 App. 4984:18–22.)

8

***The District Court Ignores* Dubric *in Awarding Attorney Fees***

The district court granted plaintiffs' motion for entry of a modified judgment.  The court adjusted the class (and recalculated damages) to exclude expired claims.  But the court refused to exclude class members who had settled in *Dubric*.  (*See* 7 App. 1617; 22 App. 5352.)  And the district court refused to exclude class members who had not yet cashed checks that A Cab had written pursuant to a consent judgment with the United States Department of Labor.  (21 App. 5207.)  The district court also refused to decertify the *Murray II* class.  (22 App. 5341:24–28.)[8]

The district court then awarded plaintiffs' requested attorney fees, adjusting the attorney fees down only by the number of hours their counsel claimed to have worked on the tolling issue.  The court added appellate fees to the award in the full amount plaintiffs requested.  (22 App. 5380, 5382.)

A Cab asked that sanctions issue to offset plaintiffs' sizeable attorney fees award.  Plaintiffs' counsel had continuously over-litigated

---

[8]The district court also acknowledged appellants had "the right to a further hearing upon remand on whether that judgment execution should be quashed" but declined to order such a hearing. (*See id.* at 5344.)

9

*Murray I* and *II*, defying a court-ordered stay. (16 App. 3919.) The court was forcing A Cab to foot that bill. (22 App. 5389.) Despite agreeing that plaintiffs "violated that stay order," the district court found it "harmless." (*Id.* at 5390.) It denied sanctions. (*Id.* at 5391.)

Finally, A Cab had been awarded "their costs in connection with the appeal of the final judgment order." (22 App. 5400.) Over appellants' objection, the district court ordered this award to be "offset against the total class judgment of $685,886.60, with the reduction apportioned pro rata amongst the class members." (*Id.; see* 17 App. 4094–110.)

A Cab appeals.

## SUMMARY OF THE ARGUMENT

This Court should reject plaintiffs' counsel's demand for a six-figure attorney fees award on a judgment worth less than $12,000.

Plaintiffs are not prevailing parties on the class claims they sought to bring. The *Murray* class should have been decertified after *Dubric* resolved the claims of nearly every class member. At that point, changed circumstances made continued class action treatment improper. *Green v. Obledo*, 624 P.2d 256, 269 (Cal. 1981) (discussing

10

federal Rule 23 procedures).  The attorney fees award should be vacated accordingly.

Alternatively, the award should be vacated because the district court disregarded this Court's express instruction to hold an evidentiary hearing.  Without such a hearing, the district court's ruling and attorney fee award was premature.

Even if some of the fees from the district court proceedings were recoverable, plaintiffs cannot recover for the attorney fees they incurred on appeal.  Such fees are not available under the MWA.  And if they were, plaintiffs should have sought them from this Court, not the district court.  Because it was not asked, this Court declined to do so.

Assuming that attorney fees are recoverable here, the district court's award was still outrageous.  It should be reduced in proportion to the limited claims on which plaintiffs had any success.  Alternatively, it should be reduced by an award of sanction against plaintiffs for their egregious disregard for the district court's stay order while *Dubric* was pending.

### ARGUMENT[9]

The MWA's proponents expressly rejected arguments that its fee-shifting clause would be used to enrich plaintiffs' attorneys at the expense of employers acting in mistaken good faith. *See* Min. Ass'y Committee on Commerce and Labor, 29 (Apr. 7, 2021) (testimony of Assemblyman Lynn Hettrick that MWA should "help people who need to make more money and who are honest, hardworking people who I have the utmost respect for . . . but we don't need to help the attorneys"); *id.* at 31 (testimony of Chairperson Barbara Buckley that the MWA was not intended to be "prone to attorneys"). Plaintiffs would prove otherwise, and the record is rife with iterative briefing that plaintiffs' counsel undertook despite minimal benefit to the class he purports to represent. (*Compare* 12 App. 2811 *with* 17 App. 4202 *and*

---

[9] **Standard of Review:** Generally, "[a]n award of attorney fees is reviewed for an abuse of discretion." *MB Am., Inc. v. Alaska Pac. Leasing*, 132 Nev. 78, 88, 367 P.3d 1286, 1292 (2016). But

"when an attorney fees matter implicates questions of law"—such as the determination of prevailing-party status—"the proper review is de novo." *145 E. Harmon II Tr. v. Residences at MGM Grand – Tower A Owners' Ass'n*, 136 Nev. 115, 118, 460 P.3d 455, 457 (2020) (cleaned up) (reviewing de novo fee award based on contested prevailing-party status).

12

16 App. 3934 (raising, for the third time, the same arguments for apportionment of costs approximating $11.48 against each plaintiff).) While defendants successfully settled *Dubric*'s claims with nearly every member of the *Murray* class (which was brought by different counsel), *Murray* drags on.  But *Dubric*'s resolution of nearly every *Murray* class member's claim has laid bare the motivation for *Murray* counsel's continued barratry: to inflate the attorney fee award he insists he is entitled to.

For his prosecution of an action seeking an average of $1,012.62 in recovery for each class member,[10] plaintiffs' counsel demanded and the district court awarded 534.5 times that average recovery in attorney fees.  The MWA does not authorize such an award, and it should be reversed.  If the Court disagrees, the award is, at least, unreasonable, in which case this Court should vacate the fee award and remand with instructions that (1) appellate fees are not available and (2) any fee award must be reduced in proportion to plaintiffs' multiple losses in *Murray I*.  Finally, even if this Court disagrees on the prior points, the

---

[10]This is the average of the "Total 10/8/2010-12/31/2015 Shortage" listed in column "G" of Exhibit 1 to the order modifying final judgment.

13

award must be recalculated for offset by sanctions that the district court abused its discretion in denying.

## I.

### ATTORNEY FEES ARE NOT AVAILABLE HERE

**A.     Plaintiffs Are Not Prevailing Parties**

The MWA mandates an award of reasonable attorney fees to "an employee who prevails in any action to enforce this section." Nev. Const. art. 15, § 16. Plaintiffs represent that they were successful on most of the claims they brought. But plaintiffs did not "prevail" within the meaning of the MWA for all the reasons that follow.

#### *1.     The Class Should Have Been Decertified After Dubric, Which Destroyed Numerosity*

Certification is appropriate only where "(1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims for defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy]." *Sargeant v. Henderson Taxi*, 133 Nev. 196, 199, 394 P.3d 1215, 1219 (2017) (quoting NRCP 23(a)). "A necessary

14

corollary to certification is the court's duty to monitor the litigation to ensure that the requisites are maintained throughout the case." *In re Pac. Sunwear of Cal., Inc.*, No. 16-10882(LSS), 2016 WL 4250681, at *13 (Bankr. D. Del. Aug. 8, 2016). Courts should decertify whenever the class fails any of these four requirements during the action. *See* 3 *Newberg and Rubenstein on Class Actions* § 7:38 (6th ed.) (collecting cases); *see also In re Pac. Sunwear*, 2016 WL 4250681, at *13.

### a. PLAINTIFFS WHO DID NOT OPT-OUT OF THE *DUBRIC* SETTLEMENT CAN NO LONGER BE CERTIFIED AS PART OF THE *MURRAY* CLASS

*Dubric* reached a signed settlement. The settlement extinguished the right to proceed with duplicative claims. (*See generally* 22 App. 5262. )

The *Dubric* plaintiffs agreed to release A Cab, its officers, directors, and related entities from all "Settled Claims." By the agreements' terms, settled claims include the claims at issue in *Dubric* as well as any that "could have been asserted, inferred, implied, included or connected in any way with, any of the allegations in [*Dubric*]." (*Id.* at 5266, 5267, 5276–77 ¶¶ 2.19, 13.2, 13.3.) This necessarily includes any fees associated with the settling plaintiffs'

15

claims.

Even plaintiffs do not seriously dispute that claims by the same plaintiffs, against the same defendants, for the same minimum wage violations are not factually or legally joined or linked together. *See* Merriam-Webster.com CONNECTED (https://www.merriam-webster.com/dictionary/connected). Without question the *Murray II* claims are at least "connected . . . with" those in *Dubric*.

> b. THIS COURT'S SUBJECT MATTER JURISDICTION IN *DUBRIC* IS IRRELEVANT BECAUSE A CAB CAN RAISE A SEPARATE ENFORCEMENT ACTION IN *MURRAY*

In the trial court, plaintiffs suggested that *Dubric* could not impact their recovery. Plaintiffs argued that this Court lacked "subject matter jurisdiction" over the *Murray I* claims when it affirmed the settlement in *Dubric*. (22 App. 5305–06.) The district court appears to have accepted that argument, refusing to modify the *Murray* class to exclude plaintiffs who released their claims in *Dubric*. (22 App. 5351.) This missed the mark.[11]

---

[11]Plaintiffs also suggest that equity somehow bars appellant's enforcement of the *Dubric* settlement. It cites no authority for the principle. Nor is it clear how equity affects appellant's "legally

16

Even if this Court's remand order had been final, the district court's "[l]ack of competent jurisdiction to adjudicate [the *Murray*] cause of action [in *Dubric*] . . . [did] not divest [the district] court of the power to enforce a settlement agreement arising from [*Dubric*]." *Step Plan Servs.*, 12 A.3d at 417; *see also* 15A C.J.S. *Compromise & Settlement* § 78.

A Cab had a legally protectable interest in the *Dubric* settlement. *Step Plan Servs.*, 12 A.3d at 422. A Cab could ask the district court to enforce that right in an independent action, including via *Murray II*. *See Amantiad v. Odum*, 90 Haw. 152, 159, 977 P.2d 160, 167 (1999) (noting that a settlement agreement may be enforced by bringing an independent action). And the existence of that defense by A Cab—one unique to settling plaintiffs—should have excluded settling plaintiffs from the *Murray* class. *Zenith Lab'ys, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976) (holding that class with members with unique defenses could not be certified).

---

enforceable interest" in the settlement.  *Step Plan Servs., Inc. v. Koresko*, 12 A.3d 401, 422 (Pa. Super. Ct. 2010).

17

c.    THIS COURT'S REMAND ORDER WAS NOT
FINAL JUDGMENT AND THE CLASS COULD BE
DECERTIFIED EVEN IF IT WAS FINAL

Plaintiffs alternatively suggest that *Dubric* has no impact because the *Murray* class had already received a "final judgment" that could not be modified.  (22 App. 5305–06.)

A class should be decertified—even after the issuance of a final judgment—where it is clear there exist changed circumstances making continued class action treatment improper.  *Green v. Obledo*, 624 P.2d 256, 269 (Cal. 1981) (discussing federal Rule 23 procedures); *see* MICHEL HUGHES ET AL., 6A FED. PROC., L. ED. § 12:299 (2023 Supp.) (noting that class may be decertified after trial).

In any case, after this Court's remand in *Murray I*, there was no longer a final judgment.  "[A] judgment that reverses and remands in part . . . is not a final judgment on appeal against the appellant, as it fails to dispose of all issues and all parties."  5 MCDONALD & CARLSON TEX. CIV. PRAC. § 30:50 (2d. ed.); *see, e.g.*, *Wakefield v. Gov't Emps. Ins. Co.*, 260 La. 286, 255 So. 2d 771 (1972) (noting that judgment was not final because the appellate court's judgment had the "effect of a partial remand").  And, following that reversal and remand, the effect of any

18

underlying district court judgment ceases as well. *See United States v. Lacey*, 982 F.2d 410, 412 (10th Cir. 1992); *Disher v. Citigroup Glob. Markets, Inc.*, 486 F. Supp. 2d 790 (S.D. Ill. 2007) (noting general rule "that reversal of a judgment leaves the parties in the same position as if the judgment had never been entered"); *see also* 36 C.J.S. *Federal Courts* § 739 (noting that the effect of an order of reversal "is to nullify [the underlying judgment] completely and to leave the cause standing as if it had never been rendered").

That is the whole point of a reversal and remand. The remand requires further proceedings to reach a corrected judgment in the district court that conforms to this Court's instructions.

In sum, the *Murray* class was still subject to decertification when *Murray II* was being decided. The district court should have considered the effect of A Cab's unique defenses against the settling plaintiffs and excluded them from the class.

       d.    WITHOUT THE SETTLING PLAINTIFFS, THE *MURRAY* CLASS DOES NOT MEET THE NUMEROSITY REQUIREMENT

Just four *Murray* class members were not party to the *Dubric* judgment: Michael Murray, Michael Reno, Michael Sargeant, and

19

Richard Clark.  Clark settled his claim against A Cab via the USDOL consent judgment.  (*See* 12 App. 2803.)  Now, just three claimants in *Murray* remain.  (*See* 21 App. 5228.)

With just three plaintiffs, joinder is practicable.[12]  Rubenstein, *supra* at § 3:12 ("As a general guideline, however, a class that encompasses fewer than 20 members will likely not be certified absent other indications of impracticability of joinder." (collecting cases)); Mary Kay Kane, 7A FED. PRAC. & PROC. CIV. (Wright & Miller) § 1762 (4th ed.); *see, e.g.*, *Smith v. City of Joliet*, No. 93 C 3401, 1995 WL 336999, at *3 (N.D. Ill. May 31, 1995) (decertifying class of seven individuals for failure to satisfy numerosity requirement).  The district court should have granted A Cab's motion to amend the class and decertified it accordingly.

        e.    DECERTIFICATION OF THE CLASS REQUIRES THAT THE ATTORNEY FEE AWARD BE VACATED

Decertification is "tantamount to dismissal."  *Culver v. City of Milwaukee*, 277 F.3d 908, 915 (7th Cir. 2002).  Thus any award of

---

[12] The class should be alternatively decertified because the named plaintiffs do not represent the interests of the class as a whole.  Nearly every other plaintiff has settled and released their claims.  Plaintiffs refuse to do the same.

20

attorney fees to the class attorney should be vacated following decertification.  *See*, *e.g.*, *Frye v. Baptist Mem'l Hosp., Inc.*, 507 F. App'x 506, 508 (6th Cir. 2012) (holding that party who successfully obtained decertification was prevailing for attorney fee purposes); *Marlo v. United Parcel Serv., Inc.*, No. CV-0304336-DDP-RZX, 2009 WL 10669458, at \*8 (C.D. Cal. Aug. 12, 2009), *aff'd sub nom. Marlo v. United Parcel Serv.*, 453 F. App'x 682 (9th Cir. 2011) (reducing award of attorney fees by amounts time spent representing subsequently decertified class).

In sum, the district court abused its discretion by refusing to decertify the *Murray* class and vacate the prior award of attorney fees to plaintiffs.  This Court should reverse the orders amending the class and modifying the judgment, and vacate the award of attorney fees. Plaintiffs are no longer prevailing within the MWA's meaning because the "class" they purport to represent does not exist.[13]

---

[13] To the extent that this Court thinks Murray, or any individual plaintiff, could be a prevailing party on his individual claim, despite the overall failure of the class action, his award should be proportionally reduced by the drastic constriction in the size of the class.  *See infra* at Part II.

**B.     No Party Can Prevail Before Final Judgment,
and Final Judgment Cannot Issue Here Without
<u>an Evidentiary Hearing</u>**

Alternatively, plaintiffs are not prevailing because they have not yet obtained a final judgment that complies with this Court's mandate. *See Las Vegas Review-Journal v. City of Henderson*, 137 Nev. 766, 769, 500 P.3d 1271, 1276 (2021) ("Generally, an action must have proceeded to final judgment for a party to have prevailed.")  "[A] final judgment . . . disposes of all the issues presented in the case, and leaves nothing for the future consideration of the court, except for post-judgment issues such as attorney's fees and costs."  *Lee v. GNLV Corp.*, 116 Nev. 424, 426, 996 P.2d 416, 417 (2000)

There are multiple issues remaining for this Court's future consideration beyond attorney fees and costs in *Murray II*.  Plaintiffs have not yet identified the appropriate defendant: A Cab is just one member of a series LLC.  Instead, without having named any of appellant's sibling LLCs, and even in the absence of any alter ego finding, plaintiffs seek to recover against all of them, without regard for any corporate formalities.  *Contra Abbott Laboratories v. CVS Pharmacy, Inc.*, 290 F.3d 854, 858 (7th Cir. 2002). ("[T]hat a judgment

binds one corporation does not allow a court to adjudicate claims against its shareholders, subsidiaries, or other juridically distinct entities.").

Seven of appellant's siblings filed claims of exemption from plaintiffs' claims. (20 App. 4999.) The district court failed to resolve them before purporting to reach a final judgment in *Murray I*. So this Court remanded to the district court to hold an evidentiary hearing as to the propriety of appellant's organization. *Murray I*, 137 Nev. at 824, 501 P.3d at 978.

This instruction from this Court was incorporated into the remittitur to the district court: "When a reviewing court determines the issues on appeal and reverses the judgment specifically directing the lower court with respect to particular issues, the trial court has no discretion to interpret the reviewing court's order; rather, it is bound to specifically carry out the reviewing court's instructions." *Wheeler Springs Plaza, LLC v. Beemon*, 119 Nev. 260, 263–64, 71 P.3d 1258, 1260 (2003); *see also Estate of Adams ex rel. Adams v. Fallini*, 132 Nev. 814, 818, 386 P.3d 621, 624 (2016). Yet here, despite its obligation to hold an evidentiary hearing in compliance with this Court's mandate,

23

the district court has not done so.  *See Krysl v. Treasurer of Missouri*, 615 S.W.3d 843, 848 (Mo. Ct. App. 2020) (holding that the district court must follow instructions on remand).

The district court's decision in *Murray II* was therefore in error because it failed to follow this Court's mandate.  "Rather than leaving the [district court] with nothing to do on remand other than execute judgment, [this Court's] order instructed the [district court] to hold an evidentiary hearing."  *L. W. v. Jersey City Bd. of Educ.*, 824 F. App'x 108, 111 (3d Cir. 2020) (finding that such an order was not a final judgment).  The district court did not do so.  Until that evidentiary hearing is held, and the propriety of A Cab's organization decided, any award to plaintiffs is improper and in violation of this Court's mandate. *See id.*

### C.   Plaintiffs Were Not Entitled to Attorney Fees on Appeal

The district court also erred by awarding additional fees incurred on appeal.

Other than NRAP 38(b), "[t]here is no provision in the statutes authorizing the district court to award attorney fees incurred on appeal."  *Bd. of Gallery of History, Inc. v. Datecs Corp.*, 116 Nev. 286,

24

288, 994 P.2d 1149, 1150 (2021).  NRAP 38(b) was neither applicable[14]

nor argued as a basis for appellate fees here.  Instead plaintiffs sought

appellate fees under the MWA, arguing that "[i]t is self-evident that the

MWA requires an award of attorney[ ] fees for successfully defending an

employee's judgment on appeal."

But without language or case law supporting what is "self-

evident" to plaintiffs, this summary assessment was insufficient for the

district court to award relief at all.  *Edwards v. Emperor's Garden Rest.*,

122 New 317, 330 n. 38, 130 P.3d 1280, 1288 n. 38 (2006) (explaining

that this court need not consider an appellant's argument that is not

cogently argued or lacks the support of relevant authority).  And the

MWA does not allow for such an award, in any case.[15]  The district

---

[14]NRAP 38(b) limitedly allows an award of appellate fees against a
party who has frivolously misused the appeals process. *Bobby Berosini,
Ltd. v. People for the Ethical Treatment of Animals*, 114 Nev. 1348,
1356, 971 P.2d 383, 388 (1998); *see also* 52 A.L.R.2d 863 (collecting
cases) ("Under normal circumstances, attorney fees on appeal are only
awarded when the appellate court is left with the abiding belief that the
appeal was brought, pursued or defended frivolously, unreasonably or
without foundation.").  Appellant's appeal was not frivolous or
unreasonable.  Indeed, it was granted in part.

[15] This Court's review of the statutory requirements for granting
attorney fees is de novo. *In re Est. & Living Tr. of Miller*, 125 Nev. 550,
552–53, 216 P.3d 239, 241 (2009).

court's award of attorney fees pursuant to the MWA was an abuse of discretion.

### 1. The MWA's Language Does Not Support an Award of Appellate Fees

The district court relied on the MWA's supposed authorization of awards "'in any action' to enforce the [MWA]" in awarding appellate fees. (22 App. 5380.) This analysis took the relevant phrase out of its explanatory context.

The MWA indeed provides that: "An employee who prevails in *any action* to enforce this section shall be awarded his or her reasonable attorney's fees and costs." Nev. Const. Art. 15, § 16(B) (emphasis added). But the phrase "any action" is informed by the list that precedes it. *Young Elec. Sign Co. v. Erwin Elec. Co.*, 86 Nev. 822, 825, 477 P.2d 864, 866 (1970) ("Where a general term in a statute follows specific words of a like nature, it takes its meaning from those specific words and is presumed to embrace the kind of things designated by the specific words."). That list includes actions "brought for . . . back pay, damages, reinstatement or injunctive relief." *Id.*

Attorney fees are only available under the MWA for actions similar to those brought for monetary damages and related equitable

26

relief. Notably absent from the list is any reference to an appellate action, belying plaintiffs' suggestion that appellate fees are encompassed therein.

Plaintiffs would flip this principle of ordinary interpretation on its head, arguing that because "there is nothing in the MWA's language suggesting" that appellate fees are *not* available, appellate fees are. (13 App. 3304.) That is plainly incorrect under this Court's precedent. In Nevada appellate attorney fees are not recoverable unless the relevant fee-shifting statute "explicitly authorize[s] attorney's fees on appeal." *Bobby Berosini*, 114 Nev. at 1357, 971 P.2d at 388; *see also Tulelake Horseradish, Inc. v. Santa Margarita Ranch, LLC*, 132 Nev. 1038 (2016); *Datecs Corp.*, 116 Nev. at 288, 994 P.2d at 1150. As explained above, "any action" does not give such "explicit" authorization here.

This makes sense under well-established principles of statutory construction. If a fee-shifting provision does not expressly mention appellate fees, NRAP 38(b) "comes closer to addressing the very problem posed by the case at hand [whether attorney fees are available from an appeal]." NRAP 38(b) therefore controls over any provision in the MWA that might generally suggest otherwise. Antonin Scalia &

27

Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012); *see Williams v. State Dep't of Corr.*, 133 Nev. 594, 601, 402 P.3d 1260, 1265 (2017) (citing *Reading Law*'s discussion of this canon favorably); *Piroozi v. Eighth Jud. Dist. Ct.*, 131 Nev. 1004, 1009, 363 P.3d 1168, 1172 (2015) ("Where a general and a special statute, each relating to the same subject, . . . conflict . . . the special statute controls." (internal quotation marks omitted)).

Nevada's common-law rule is likewise consistent in holding that attorney fees incurred on appeal are presumptively not recoverable. *Bobby Berosini*, 114 Nev. at 1357, 971 P.2d at 388; *see also Tulelake Horseradish, Inc. v. Santa Margarita Ranch, LLC*, 132 Nev. 1038 (2016); *Datecs Corp.*, 116 Nev. at 288, 994 P.2d at 1150.  Again, in the absence of any clear intent that the MWA would abrogate that common law, it does not.  *See Hardy Companies, Inc. v. SNMARK, LLC*, 126 Nev. 528, 535, 245 P.3d 1149, 1154 (2010) ("In the enactment of a statute, the legislature will be presumed not to intend to overturn long-established principles of law, and the statute will be so construed unless an intention to do so plainly appears by express declaration or necessary implication." (internal quotation marks omitted)).

28

Simply put, if the MWA's fee-shifting clause was intended to reach appellate proceedings, the language needed to say so, explicitly. Without such an express statement, logic and canons of construction weigh against that result.

### 2. The Circuits Are Split as to Whether Appellate Fees Are Available Under the FLSA

Plaintiffs suggested in the court below that the MWA granted appellate fees because its federal counterpart, the FLSA, permits such an award. The FLSA "allow[s] a reasonable attorney's fee to be paid by the [FLSA] defendant" where the FLSA plaintiff prevails. 29 U.S.C.A. § 216(b); *see, e.g., Montalvo v. Tower Life Bldg.*, 426 F.2d 1135, 1150 (5th Cir. 1970) (collecting cases). Courts in some circuits have interpreted that language to allow for the award of appellate fees. *See Saglimbene v. Venture Indus. Corp.*, 895 F.2d 1414 (6th Cir. 1990) (noting split in circuits and declining to award appellate fees); *Jimenez v. GLK Foods LLC*, No. 12-C-209, 2018 WL 11304531, at *1 (E.D. Wis. Apr. 19, 2018) (noting that the Seventh Circuit has not held that appellate fees are available under the FLSA); *cf.* 2 AGE DISCRIMINATION § 8:158 (2d ed.) (2023 Supp.) (discussing ADEA corollary and noting that there is "room for dispute" as to whether appellate fees are allowed because the section

29

"does not refer to appellate courts").

Some courts seem to understand Section 216(b) as having similar limitations as Rule 38, allowing such fees only where an appeal has been frivolously defended. *Stanley v. McDaniel*, 913 P.2d 76, 82 (Idaho Ct. App. 1996) (stating same and denying appellate attorney fees). And some courts reject appellate fees, whatever the circumstances. *Handler v. Thrasher*, 191 F.2d 120, 123 (10th Cir. 1951) (denying award of appellate attorney fees following successful appeal); *cf. Mays v. Midnite Dreams, Inc.*, 915 N.W.2d 71, 90 (Neb. 2018) (applying state law and denying appellate attorney fees); *Williams v. Corbett*, 205 Or. 69, 77, 286 P.2d 115, 118 (1955), *overruled on other grounds by Godell v. Johnson*, 244 Or. 587, 418 P.2d 505 (1966).

Plaintiffs cannot borrow from the FLSA gloss that federal courts have not decisively given. Until the FLSA's attorney fee section has been interpreted "nearly ubiquitous[ly]" so as to have "[a]ccquired . . . a technical legal sense," there is no clear meaning to impute to the MWA here. *Cf. Doe Dancer I v. La Fuente, Inc.*, 137 Nev. 20, 25, 481 P.3d 860, 867 (2021) (adopting the FLSA's definition of "employment" under the MWA because courts' application of that definition had been unanimous

30

for decades).

Nor are the cases plaintiffs favor persuasive such that this Court should opt to follow them. Courts that have allowed for an award of appellate fees under Section 216(b) have done so summarily, in reliance on cases that are, themselves, summary. *See, e.g., Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 948 (2d Cir. 1959) (awarding appellate fees without analysis). Given the rule's thin foundation, several jurisdictions have called the summary adoption of it into question, noting the absence of any language in Section 216(b) that would demand such a result. *Saglimbene*, 895 F.2d at 1414 (noting that Section 261(b) does not "expressly provide" for an award of appellate fees); *see also Jimenez*, 2018 WL 11304531, at *1 ("Section 216(b) neither expressly provides for the award of attorneys' fees and costs on appeal nor prohibits them.")

> ### 3. *Even if Appellate Fees Were Available the District Court Lacked Authority to Award Them*

If this Court decided to follow the federal precedent discussed above, ruling that appellate fees are allowable under the MWA, that same precedent forecloses the district court's award here. The precedent discussed above allows the *appellate* court to consider such an

31

award where the *appellate* court deems it appropriate.  *Montalvo v. Tower Life Bldg.*, 426 F.2d 1135, 1150 (5th Cir. 1970).  While the trial judge may be asked to assess the reasonable measure of such fees on remand, *Holtville Alfalfa Mills v. Wyatt*, 230 F.2d 398, 400 (9th Cir. 1955), it has no authority to allow the same fees in the first instance.  *Patry v. Liberty Mobilehome Sales, Inc.*, 394 Mass. 270, 272, 475 N.E.2d 392, 394 (1985); *see also Jimenez*, 2018 WL 11304531, at *1 (holding that because the appellate court had not found the employee was entitled to appellate fees the district court could not make an award for the same).

When this Court declined to award attorney fees on appeal, the district court lost any opportunity to set their amount.  The district court's award of appellate fees should be vacated.

### 4.    *Any Award of Appellate Fees Should Have Been Proportionally Reduced*

Even if the MWA extends to fees on appeal, it does not extend to fees expended on defending an erroneous judgment.  As already discussed, despite plaintiffs' protestations to the contrary, this Court rejected multiple points of plaintiffs' arguments in *Murray I*.  That is, assuming that plaintiffs partially prevailed, the requested appellate

32

fees would need to be reduced because A Cab did likewise.  To the extent that this Court agrees, remand to the district court for proportional reduction, as outlined immediately below, would be warranted.

## II.

### THE ATTORNEY FEE AWARD WAS UNREASONABLE BECAUSE IT WAS NOT PROPORTIONALLY REDUCED AS THE CLASS CONSTRICTED

The MWA only allows for an award of "reasonable" attorney fees. Nev. Const. art. XV, § 16(B).  In *Murray I*, this Court held that in light of "the district court's improper tolling of the statute of limitations, the amount of the attorney fees must be reconsidered for reasonableness." *A Cab, LLC v. Murray*, 137 Nev. 805, 819, 501 P.3d 961, 975 (2021). Plaintiffs argued for a limited reading of these instructions on remand, suggesting that this Court only required the district court to determine "how the erroneous statute of limitations tolling decision impacted that award and the resulting appropriate modification."

The district court uncritically adopted this position, reducing the $568,071 award by approximately $26,800 (plaintiffs' counsel's hourly rate multiplied by the 70 hours plaintiffs' counsel purported to spend on

33

the issue). (22 App. 5347). This was an abuse of discretion *Cf. 553 Bergmann v. Boyce*, 109 Nev. 670, 674, 856 P.2d 560, 563 (1993) (noting that award of attorney fees is generally left to the district court's discretion).

The district court was correct to exclude the hours expended on the statute of limitations issue from plaintiffs' counsel's attorney fees award: Because "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved, . . . no fee may be awarded for services on the unsuccessful claim." *Hensley*, 461 U.S. at 435 (internal quotation marks omitted). But *after* the time counsel spent on plaintiffs' unsuccessful claims was eliminated from consideration, the district court should have again reduced the award by an overall percentage reflecting "the degree of success enjoyed by the plaintiff." *Knussman v. Maryland*, 73 F. App'x 608, 613–14 (4th Cir. 2003); *cf. Brunzell v. Golden Gate Nat. Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969) (requiring that a court consider the result achieved in assessing the reasonableness of a fee).

The plaintiffs' ability to secure class certification is one factor in weighing their overall success. *See Barfield v. N.Y.C. Health & Hosps.*

34

*Corp.*, 537 F.3d 132, 152 (2d Cir. 2008). Where, as here, the attempt at certification is "a flop[,]" the lodestar amount should be significantly reduced. *Koch v. Jerry W. Bailey Trucking, Inc.*, 51 F.4th 748, 757 (7th Cir. 2022). "Billable hours that would be appropriate for a sprawling class action" are not reasonable where "counsel represents only a fraction of the class members." *Id.*

There is no hard and fast rule for the overall reduction the district court should have made in light of plaintiffs' limited success. But what occurred here—no assessment of the quality and quantity of the relief plaintiffs' obtained, much less an additional reduction for their limited success—is reversible error. *See Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir.1997). *Cf. Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (affirming 50 percent reduction in fees award where defendant had sought recovery for thousands of class members but obtained $1,744.50 in recovery); *Koch v. Jerry W. Bailey Trucking, Inc.*, 51 F.4th 748, 758 (7th Cir. 2022) (reducing lodestar by 45 percent where minimum wage class plaintiffs prevailed on only one-sixth of the claims); *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 966 (8th Cir. 2012) (upholding 50 percent reduction where plaintiff

35

was successful on one of two claims); *Kirby v. Roth*, 515 F. App'x 642 (8th Cir. 2013) (affirming 75% reduction in attorney fees based on plaintiffs' "limited success on the merits"); *Vasconcelo v. Miami Auto Max, Inc.*, 981 F.3d 934 (11th Cir. 2020) (affirming a roughly 60% reduction in plaintiff's attorney's fees based upon winning only $97.20 at trial).[16]

As laid out above, there was overlap in class membership between *Murray* and *Dubric* such that all settling plaintiffs in *Dubric* should have been excluded from the *Murray* class.[17]  All these exclusions from the *Murray* class cabined plaintiffs' recovery: plaintiffs did not prevail in *Murray* on any claims that settled in *Dubric*, plaintiffs instead released their *Murray* claims.  *Cf. Eberle v. State ex rel. Nell J. Redfield*

---

[16] At a minimum the attorney fee award should be reduced in proportion to the reduction in the judgment that this Court finds should have been required on remand. Even plaintiffs admit that this was *at least* a 34-percent reduction.

[17] If this Court disagrees that *Dubric* settling plaintiffs should be excluded from the *Murray* class, there are additional grounds to large numbers of claims.  For instance, all class members who did not opt-out of A Cab's settlement with the Department of Labor should also be excluded.  If the Court believes the award only needs to be reduced in proportion to those claims, remand to the district court is likely necessary.

36

*Tr.*, 108 Nev. 587, 590, 836 P.2d 67, 69 (1992) (internal citations omitted) (finding neither party prevailed in an action terminated legislative amendment undertaken, while the case was on appeal).

Plaintiffs' counsel cannot be allowed to recover his entire fees for representing a class that, almost to a person, reached a successful settlement releasing the very claims he purports to bring on their behalf.  Such an award would only incentivize plaintiffs' counsel to continue to bill hours on claims that are no longer cognizable, raising counsel's own fee without concern for the best interests of the class members.  *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 696 (M.D. Ala. 1988); *cf. Court Awarded Attorney Fees*, 108 F.R.D. 237, 248 (3d Cir. 1986) (task force report on curbing abuse of attorney fee requests where a settlement fund exists).  Thus, the reduction in successful claims from nearly 900 to 3 should be proportionally reflected by a reduction in the reasonable hourly amount.  *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *cf. Rendon v. AT & T Techs.*, 883 F.2d 388, 399 (5th Cir. 1989) (approving 50% reduction in fee award because "only 26 of 150 class claimants" recovered in the action).

In sum, plaintiffs' ultimate success is necessarily limited: given

37

the *Dubric* settlement, less than 1% of *Murray* class members will be able to recover.  *Id.*  The total amount those three plaintiffs are owed is less than $12,000, a pittance compared to plaintiffs' complaint, which sought over $1 million and purported to represent a class of 889 plaintiffs.  (16 App. 3935, .)  The requested award should have been reduced in proportion to the limited success achieved.  151 A.L.R. Fed. 77 (Originally published in 1999).  This Court should reverse the unreduced award and remand for proceedings consistent with this rule.

## III.

### ALTERNATIVELY, PLAINTIFFS SHOULD HAVE BEEN SANCTIONED, OFFSETTING THE ATTORNEY FEE AWARD

The district court stayed proceedings pending the *Dubric* appeal. While that stay was pending, plaintiffs filed a motion for turnover and two motions seeking to alter the prior award of costs.  Defendants notified plaintiffs of their intent to seek sanctions in the form of attorney fees and costs if the motions were not withdrawn.  When plaintiffs did not withdraw the motion, defendants did indeed move for sanctions.

The district court acknowledged that plaintiffs' motion practice in *Murray* had violated the court's stay order.  But the district court

38

denied defendants' motion for sanctions. According to the court, sanctions were not available because (1) the violations were "harmless" and (2) the motions were not filed for an improper purpose. (*See* 22 App. 5390.) The first reason reflects the district court's erroneous view of the law, the second a clearly erroneous assessment of the evidence. In both instances, the district court abused its discretion. *Off. of Washoe Cnty. Dist. Atty. v. Second Jud. Dist. Ct.*, 116 Nev. 629, 636, 5 P.3d 562, 566 (2000); *cf. Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993).

Rule 11 sanctions are available where an attorney files a motion without believing there is good legal ground to support it, and "for the express purpose of engendering delay and higher cost." *See St. Germain v. Bos. Popcorn Co.*, No. CV962404, 2000 WL 33170896, at *3 (Mass. Super. May 17, 2000), *aff'd*, 57 Mass. App. Ct. 1118, 786 N.E.2d 1254 (2003) (interpreting Massachusetts' Rule 11 equivalent). A party's intentional violation of a stay order is, likewise, sanctionable. So too, repeated challenges on frivolous issues over-litigate the case and misuse the resources of this Court. *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 629 (6th Cir. 2010) (granting Rule 11

39

sanctions based on plaintiff's "continued failure to refrain from pursuing meritless claims"). Sanctions for such over-litigation need to have enough sting to discourage that misuse. *See In re Att'y Fees in Yu v. Zhang*, 637 N.W.2d 754, 762 (Wis. 2001).

Here, a stay on the entire *Murray* action was imposed so that the impact of the then-pending *Dubric* decision could be assessed. (*See* 16 App. 3920.) Plaintiffs petitioned for writ relief in *Dubric*, asking that A Cab's stay be dissolved. At the same time, plaintiffs moved for a stay of their own—as to the costs awarded to A Cab—in the district court. The only substantive argument in the already needless motion to stay was a motion for offset or apportionment of those costs. (16 App. 3934.)

Plaintiffs' argument on this front was literal copy-and-paste from an identical motion for reconsideration. (17 App. 4204–08.) A different department of the district court had already rejected this argument, twice. (*Compare* 16 App. 3934 *with* 17 app. 4202.) There was no given justification for refiling this argument a third time.

Plaintiffs' repetitive litigation of arguments decided and rejected is sanctionable. *See, e.g., Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 439 (9th Cir. 1992) (affirming sanctions where second

motion . . . largely duplicated [the] first . . ., which earlier had been denied"); *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994), *cert. denied,* 514 U.S. 1035 (1995) (affirming sanctions where counsel "renoticed a motion that already had been denied); *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743 (9th Cir. 1993) (affirming sanctions for "identical set of papers [filed] on two different occasions during the litigation").  Plaintiffs' conscious disregard for the court's stay order was, likewise, improper.  *See Nalder v. Eighth Jud. Dist. Ct.*, 136 Nev. 200, 208, 462 P.3d 677, 685 (2020).  The fee award should be reduced to discourage him from doing the same in a future action. *Reyes v. Aqua Life Corp.*, 632 F. App'x 552, 558 (11th Cir. 2015) (reducing award of attorney fees by 85 percent as sanctions).

Plaintiffs insist that sanctions are unwarranted because appellant was not prejudiced by the overlitigation.  The court posited that plaintiffs "presumably would have filed [the] motions after the lifting of the stay." (22 App. 5390.)  But even in that context these entirely duplicative, procedurally improper, twice-rejected motions were sanctionable.  47 AM. JUR. PROOF OF FACTS 3d 241 (2023 Supp.) (noting that the timing of a filing may demonstrate an improper motive, such as

41

undue delay). Plaintiffs' frivolous filing prejudiced appellant by increasing the overall cost of litigating the matter.

In any case, Rule 11 does not require a showing of prejudice. *See Marcure v. Lynn*, 992 F.3d 625, 630 (7th Cir. 2021) (rejecting need for prejudice inquiry where uncorrected document is not withdrawn). "The focus of a district court's Rule 11 inquiry [should be] the reasonableness of the investigation and not whether the movant is prejudiced by his or her opponent's actions." *Bradgate Assocs., Inc. v. Fellows, Read & Assocs.*, 999 F.2d 745, 752 (3d Cir. 1993). Even setting aside the prejudice to defendants, plaintiffs' over-litigation and frivolous motion practice prejudiced this state's courts by wasting their resources. *Cf. id.* ("To consider prejudice alone is to overlook the fundamental objective of Rule 11, which is to encourage the filing of documents that are well-grounded in both law and fact.").

Moreover, plaintiffs filed their unsupported motions in knowing violation of a stay order, and despite asking for a stay for themselves. Plaintiffs' bad faith is evident on its face. Nothing beyond their refusal to withdraw the violating documents is required. *Cf. Marcure*, 992 F.3d at 630. The district court abused its discretion by failing to award

42

sanctions offsetting the award of attorney fees.

## CONCLUSION

The district court's award of attorney fees under the MWA was in error. Plaintiffs' class should have been decertified, and the prior award of fees—premised on their having prevailed in a class action—vacated. The district court's award of appellate fees under the MWA is doubly improper, there being no express provision in the law that authorizes it.

Alternatively, the award must be vacated and remand with instructions as to its additional reduction. The reduction should be proportional to the massive constriction in class following remand in *Murray* and settlement in *Dubric*.

In the second alternative, the district court should be instructed to impose sanctions against plaintiffs for violation of the stay, and the current fee award should be offset by that sanction.

Dated this 26th day of January, 2024.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

ESTHER C. RODRIGUEZ (SBN 6473)
RODRIGUEZ LAW OFFICES, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(702) 302-8400

By:   /s/ Abraham G. Smith
DANIEL F. POLSENBERG (SBN 2376)
ABRAHAM G. SMITH (SBN 13,250)
LAUREN D. WIGGINTON (SBN 15,835)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 949-8200

*Attorneys for Appellant*

44

## CERTIFICATE OF COMPLIANCE

1.      I certify that this brief complies with the formatting, typeface, and type-style requirements of NRAP 32(a)(4)–(6) because it was prepared in Microsoft Word 2010 with a proportionally spaced typeface in 14-point, double-spaced Century Schoolbook font.

2.      I certify that this brief exceeds the type-volume limitations of NRAP 32(a)(7) because, except as exempted by NRAP 32(a)(7)(C), it contains 8,559 words.

3.      I certify that I have read this brief, that it is not frivolous or interposed for any improper purpose, and that it complies with all applicable rules of appellate procedure, including NRAP 28(e).  I understand that if it does not, I may be subject to sanctions.

Dated this 26th day of January, 2024.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By:  */s/ Abraham G. Smith*

ESTHER C. RODRIGUEZ (SBN 6473)
RODRIGUEZ LAW OFFICES, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(702) 302-8400

DANIEL F. POLSENBERG (SBN 2376)
ABRAHAM G. SMITH (SBN 13,250)
LAUREN D. WIGGINTON (SBN 15,835)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 949-8200

*Attorneys for Appellant*

xiv

## CERTIFICATE OF SERVICE

I certify that on the 26th day of January, 2024, I submitted the

foregoing "Appellant's Opening Brief" for e- filing and service via the

Court's eFlex electronic filing system.  Electronic service of the forgoing

documents shall be made upon all parties listed on the Master Service

List.

LEON GREENBERG
RUTHANN DEVEREAUX-GONZALEZ
LEON GREENBERG
PROFESSIONAL CORPORATION
2965 South Jones Blvd., Suite E3
Las Vegas, Nevada 89146

CHRISTIAN GABROY
GABROY LAW OFFICES
170 S. Green Valley Parkway, Suite 280
Henderson, Nevada 89012

*Attorneys for Respondents*

/s/ Jessie M. Helm
An Employee of Lewis Roca Rothgerber Christie LLP

xv

# EXHIBIT 2

Case No. 85850

———————

# In the Supreme Court of Nevada

A CAB SERIES LLC f/k/a A CAB, LLC,

Appellant,

*vs*.

MICHAEL MURRAY; and MICHAEL RENO, individually and on behalf of others similarly situated,

Respondents.

Electronically Filed
May 17 2024 11:24 PM
Elizabeth A. Brown
Clerk of Supreme Court

## APPEAL

from the Eighth Judicial District Court, Clark County
The Honorable MARIA GALL, District Judge
District Court Case No. A-12-669926-C

———————————————

## APPELLANT'S REPLY BRIEF

———————————————

ESTHER C. RODRIGUEZ (SBN 6473)
RODRIGUEZ LAW OFFICES, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(702) 302-8400

DANIEL F. POLSENBERG (SBN 2376)
ABRAHAM G. SMITH (SBN 13,250)
JOHN MCCORMICK-HUHN (SBN 15,961)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 949-8200

*Attorneys for Appellant*

## NRAP 26.1 DISCLOSURE

The undersigned counsel of record certifies that the following are persons and entities as described in NRAP 26.1(a) and must be disclosed. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Appellant A Cab Series LLC f/k/a A Cab, LLC is a limited liability company. It has no parent corporation, and no publicly held company owns 10% or more of its stock.

Appellant has been represented by Esther C. Rodriguez of Rodriguez Law Offices, P.C. and is currently represented by Daniel F. Polsenberg and Abraham G. Smith of Lewis Roca Rothgerber Christie LLP.

Dated this 17th day of May, 2024.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/ Abraham G. Smith*

ESTHER C. RODRIGUEZ (SBN 6473)     DANIEL F. POLSENBERG (SBN 2376)
RODRIGUEZ LAW OFFICES, P.C.        ABRAHAM G. SMITH (SBN 13,250)
10161 Park Run Drive, Suite 150    3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89145            Las Vegas, Nevada 89169
(702) 302-8400                     (702) 949-8200

*Attorneys for Appellant*

i

## TABLE OF CONTENTS

NRAP 26.1 DISCLOSURE ................................................................. i

TABLE OF CONTENTS ................................................................... ii

TABLE OF AUTHORITIES ............................................................. vi

INTRODUCTION ............................................................................ 1

ARGUMENT .................................................................................. 1

I.   BOTH THE DISTRICT COURT AND THIS COURT
     CAN CONSIDER THE *DUBRIC* SETTLEMENT ............................... 1

     A.   The *Murray* Class Could Be Decertified
          Before a New Judgment on Remand ................................ 2

          1.   *Class Decertification Is Proper
               Before Any New Final Judgment* ............................ 2

          2.   *Remand after Murray I Left this Case
               Without a Final Judgment* ..................................... 2

     B.   The *Dubric* Settlement—Encompassing Nearly All of the
          *Murray* Class Members—Was a Compelling Reason to
          Modify the *Murray* Judgment .......................................... 4

          1.   *The District Court Can Always Provide
               Relief from a Judgment That Has Been
               Satisfied, Released, or Discharged* ......................... 4

          2.   *The Mandate Rule Did Not Prohibit the District
               Court's Consideration of the Dubric Settlement* ...... 6

          3.   *A Cab Was Not Obligated to Disrupt the Murray I
               Appeal for a Discretionary Huneycutt Remand* ....... 8

          4.   *The Law of the Case Doctrine Does
               Not Eliminate Dubric's Impact* ............................... 9

5. *A Cab Did Not Waive the Dubric Settlement* ......... 10

C. Respondents' Misguided Arguments
about Subject Matter Jurisdiction ................................. 10

1. *The District Court in Dubric Exercised Jurisdiction over the Parties in that Action* ............................... 11

2. *The Dubric Agreement Released Class Members' Claims; It Did Not Purport to "Vacate" the Murray Judgment Directly* ................ 12

3. *The Dubric Judgment Was Not Void Ab Initio as to Its Release of the Murray Claims* .................. 13

4. *This Court Affirmed the Dubric Settlement, Knowing that It Could Affect Murray* .................... 14

   a. Respondents Argued Their Concerns about *Dubric's* Impact on *Murray* ........................... 15

   b. This Court Affirmed ..................................... 16

5. *Respondents Attempt to Relitigate the Same Arguments Raised in the Dubric Appeal* ............... 17

   a. This Court's Had to Confirm Subject-Matter Jurisdiction ......................... 18

   b. Respondents Present the Same Irrelevant Arguments ................................. 19

6. *A Cab's Hands Are Clean* ...................................... 20

   a. Respondents Cannot Demonstrate that A Cab's Conduct Was Egregious or that It Seriously Harmed the Settling *Dubric* Plaintiffs ...................................................... 20

   b. Allegations of an Injunction Violation Should be Raised Elsewhere ..................................... 22

iii

   7. *The Murray District Court Could Not Enjoin the Dubric District Court*...................... 22

  D. Considering *Dubric*, the *Murray* Class Should Be Decertified............................................ 23

II. THE AMOUNT OF ATTORNEY FEES AWARDED IS UNREASONABLE ...............................................23

  A. Respondents Cannot Prevail Before Complying with *Murray I*'s Instructions........................ 24

  B. All but Three Plaintiffs Released the *Murray* Claims ... 25

  C. A Cab Demonstrated that the *Murray* Class Was Included in the *Dubric* Class ......................... 26

  D. Respondents Will Try Any Tactic to Hide the Fact that *Dubric* Included Almost All of the *Murray* Taxi Drivers.......................... 26

III. THE MWA'S LANGUAGE DOES NOT SUPPORT AN AWARD OF APPELLATE FEES..............................28

  A. A Cab Argued Below that the WMA does Not Authorize an Award of Attorney Fees ..................... 28

  B. Respondents Cites No Authority Providing Appellate Fees under the MWA...................................... 29

  C. *Las Vegas Review-Journal* Creates Confusion as to When Appellate Fees Are "Explicitly Authorized"......... 29

IV. PLAINTIFFS SHOULD HAVE BEEN SANCTIONED, OFFSETTING THE AWARD OF ATTORNEY FEES .......................33

  A. A Cab's Appendix is Sufficient for this Court's Review . 33

  B. Rule 11 Does Not Require a Showing that A Cab was Prejudiced............................................ 34

CONCLUSION .................................................................35

iv

v

CERTIFICATE OF COMPLIANCE.......................................................xi

CERTIFICATE OF SERVICE ..........................................................xii

## TABLE OF AUTHORITIES

*A Cab, LLC v. Murray,*
  137 Nev. 805, 501 P.3d 961 (2021) (*Murray I*) .......................... 2, 9, 24

*Estate of Adams ex rel. Adams v. Fallini,*
  132 Nev. 814, 386 P.3d 621 (2016) ...................................................... 6

*In re Adoption of a Minor,*
  136 F.2d 790 (D.C. 1943) ................................................................... 30

*Amcast Indus. Corp. v. Detrex Corp.,*
  45 F.3d 155 (7th Cir. 1995) ................................................................. 3

*Archer W. Contractors, Ltd. v. Benise-Dowling & Assocs.*
  33 So. 3d 1216 (Ala. 2009) ................................................................ 18

*Bobby Berosini, Ltd. v. PETA,*
  114 Nev. 1348, 971 P2d 383 (1998) ....................................... 29, 31, 32

*Bradgate Assocs. v. Fellows, Read & Assocs.,*
  999 F.2d 745 (3d Cir. 1993) .............................................................. 34

*Cano v. Walker,*
  901 N.W.2d 251 (Neb. 2017) ............................................................. 14

*Chevron U.S.A., Inc. v. Traillour Oil Co.,*
  987 F.2d 1138 (5th Cir. 1993) ........................................................... 16

*Crocker v. Piedmont Aviation, Inc.,*
  49 F.3d 735 (D.C. Cir. 1995) ............................................................. 10

*Culver v. City of Milwaukee,*
  277 F.3d 908 ....................................................................................... 24

*Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.,*
  123 Nev. 598, 172 P.3d 131 (2007) ............................................. 33, 34

*Davis v. Proud,*
  2 F. Supp. 3d 460 (E.D.N.Y. Mar. 5, 2014) ...................................... 17

*Dictor v. Creative Mgmt.*,
126 Nev. 41, 223 P.3d 332 (2010) ........................................................ 9

*Eckerson v. C.E. Rudy, Inc.*,
72 Nev. 97, 295 P.2d 399 (1956) ........................................................ 30

*Emeterio v. Clint Hurt & Assocs.*,
114 Nev. 1031, 967 P.2d 432 (1998) ..................................................... 8

*Engineered Abrasives, Inc. v. Am. Mach. Prods. & Servs., Inc.*,
882 F.3d 650 (7th Cir. 2018) ............................................................... 5

*F.D.I.C. v. McFarland*,
243 F.3d 876 (5th Cir. 2001) ............................................................. 17

*Fettig v. Estate of Fettig*,
934 N.W.2d 547 (N.D. 2019) ............................................................. 17

*Fortunet, Inc. v. Rosten*,
No. 85618, 2024 WL 390133 (Nev. Jan. 31, 2024) .............................. 6

*Foster v. Dingwall*,
126 Nev. 49, 228 P.3d 453 (2010) ........................................................ 8

*Holdaway-Foster v. Brunell*,
130 Nev. 478, 330 P.3d 471 (2014) ................................................... 18

*Howe v. Blue Bell Creameries, L.P.*,
Nos. 73216, 74354, 2019 WL 1422862 (Nev. Mar. 28, 2019) ............................................................................... 20, 21

*Hsu v. Cnty. of Clark*,
123 Nev. 625, 173 P.3d 724 (2007) ..................................................... 7

*Huneycutt v. Huneycutt*,
94 Nev. 79, 757 P.2d 585 (1978) ........................................................ 8

*Jeff D. v. Andrus*,
899 F.2d 753 (9th Cir. 1989) ............................................................. 19

vii

*John v. Douglas Cnty. Sch. Dist.*,
125 Nev. 746, 219 P.3d 1276 (2009) .................................................. 11

*Las Vegas Review-Journal v. City of Henderson*,
137 Nev. 766, 500 P.3d 1271 (2021) ..................................... 24, 31, 32

*Las Vegas Review-Journal v. Clark Cnty. Office of the*
*Coroner/Med. Examiner*,
138 Nev., Adv. Op. 80, 521 P.3d 1169 (2022) ........................ 29, 31, 32

*Lee v. GNLV Corp.*,
116 Nev. 424, 996 P.2d 416 (2000) ....................................................3

*Meyer v. Eighth Judicial Dist. Court*,
110 Nev. 1357, 885 P.2d 622 (1994) ..................................................2

*Murray v. Dubric*,
No. 83492, 2022 WL 3335982 (Nev. Aug. 11, 2022) ... 1, 2, 4, 5, 7, 8, 9,
10, 11, 12, 13, 14, 15, 16, 17, 18, 19,
20, 21, 22, 23, 24, 25, 26, 27, 35

*Nalder v. Eighth Judicial Dist. Court*,
136 Nev. 200, 462 P.3d 677 (2020) .................................................. 31

*Nguyen v. United States*,
792 F.2d 1500 (9th Cir. 1986)............................................................6

*Postlewaite v. McGraw-Hill, Inc.*,
333 F.3d 42 (2d Cir. 2003) ............................................................... 17

*Reconstruct Co. v. Zhang*,
130 Nev. 1, 317 P.3d 814 (2014) ..................................................... 10

*Riverwood Commercial Park, LLC v. Standard Oil Co.*,
729 N.W.2d 101 (N.D. 2007).......................................................... 17

*Rohlfing v. Second Judicial Dist. Court*,
106 Nev. 902, 803 P.2d 659 (1990) .................................................. 12

*In re Sonus Networks, Inc.*,
229 F.R.D. 339 (D. Mass. Aug. 15, 2005) .........................................2

*State Indus. Ins. Sys. v. Prewitt,*
 113 Nev. 616, 939 P.2d 1053 (1997) ................................................ 32

*State Indus. Ins. Sys. v. Sleeper,*
 100 Nev. 267, 679 P.2d 1273 (1984) ................................................ 11

*State v. Kavajecz,*
 80 P.3d 1083 (Idaho 2003) .............................................................. 18

*Stevens v. F/V Bonnie Doon,*
 731 F.2d 1433 (9th Cir. 1984) ............................................................ 6

*Vanisi v. Gittere,*
 No. 78209, 2022 WL 263342 (Nev. Jan. 27, 2022) ............................. 6

*Wakefield v. Government Employees Insurance Co.,*
 255 So. 2d 771 (La. 1972) .................................................................. 3

*Zalyaul v. State,*
 138 Nev., Adv. Op. 74, 520 P.3d 345 (2022) ..................................... 11

**Rules**

NRCP 11 ...................................................................................... 34, 35

NRAP 16(e)(4) .................................................................................. 5

NRAP 3(b) ........................................................................................ 8

NRAP 31(e) ....................................................................................... 8

NRAP 37 ........................................................................................... 4

NRCP 60(b)(1)-(3) ............................................................................ 4

NRCP 60(b)(5) .................................................................................. 4

NRCP 60(c)(1) .................................................................................. 4

NRCP 62.1 ........................................................................................ 8

**Statutes**

NRS 18.010 ................................................................................. 31, 32

NRS 22.030 ....................................................................................... 22

NRS 239.011 .............................................................................. 29, 30

NRS 239.011(2) ................................................................................ 29

**Constitutional Provisions**

Nev. Const. Article 6 § 6 ................................................................. 11

Nev. Const. Article 15, § 16 ............................................. 23, 28, 30, 32

Nev. Const. Article 15, § 16(B) ........................................................ 25

**Other Authorities**

*Black's Law Dictionary* ......................................................... 12, 13, 30

21 C.J.S. *Courts* § 102 ................................................................ 18, 19

21 C.J.S. *Courts* § 258 ..................................................................... 22

18B EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE
    § 4478.3 (3d ed.) .......................................................................... 3, 7

EDWIN E. BRYANT, THE LAW OF PLEADING UNDER THE CODES
    OF CIVIL PROCEDURE 3–4 (2d ed. 1899) ........................................ 30

## INTRODUCTION

Three non-settling plaintiffs continue to obstruct the enforcement of a settlement reached by hundreds of taxi drivers in *Murray v. Dubric*, No. 83492, 2022 WL 3335982 (Nev. Aug. 11, 2022) (unpublished disposition) (*Dubric*). These three plaintiffs—owed less than $12,000, collectively—are spurred on by class counsel, who is eager to protect his six-figure attorney-fee award.

## ARGUMENT

## I.

### BOTH THE DISTRICT COURT AND THIS COURT CAN CONSIDER THE *DUBRIC* SETTLEMENT

The district court should have considered the *Dubric* settlement as affirmed by this Court. Had it done so, the district court would have de-certified the *Murray* class and reassessed the judgment and attorney fees.

A.      The *Murray* **Class Could Be Decertified**
        **Before a New Judgment on Remand**

1.      ***Class Decertification Is Proper***
        ***Before Any New Final Judgment***

Plaintiffs do not contest that class decertification can occur at any time in the absence of final judgment. *See In re Sonus Networks, Inc.*, 229 F.R.D. 339 (D. Mass. Aug. 15, 2005) (discussing federal procedures and noting "the court may decertify a class at any time before final judgment"); *Meyer v. Eighth Judicial Dist. Court*, 110 Nev. 1357, 1365, 885 P.2d 622, 627 (1994) (noting "that the district court holds discretion to decertify the class if at any time it determines that the plaintiff class and its representatives no longer meet the elements of a class as defined under NRCP 23").

2.      ***Remand after* Murray I *Left this Case***
        ***Without a Final Judgment***

Respondents wrongly insist that a final judgment has been in place since 2018 (RAB xi), relying on the partial affirmance in *A Cab, LLC v. Murray*, 137 Nev. 805, 501 P.3d 961 (2021) (*Murray I*) but ignoring the partial reversal.

This Court reversed the 2018 judgment as to damages. *A Cab, LLC v. Murray*, 137 Nev. 805, 825, 501 P.3d 961, 979 (2021)

("revers[ing] the summary judgment as to damages for claims outside the two-year statute of limitations"). But because "[a]ppellate courts . . . ordinarily do not enter the final judgment,"[1] the district court had to re-calculate and enter a new judgment on remand. *See Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155, 159 (7th Cir. 1995) (explaining that a declaratory judgment that was "largely affirmed" had not actually been "affirm[ed]" because it was "reversed in part and remanded for further proceedings, which resulted in the issuance of a new declaratory judg-ment" that "was a new, [appealable] final judgment," even if it was "not significantly different from the old one").[2] Until that happened, there was no longer a final judgment. *See Lee v. GNLV Corp.*, 116 Nev. 424, 426, 996 P.2d 416, 417 (2000).[3]

---

[1] 18B EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE (WRIGHT & MILLER) § 4478.3 (3d ed.) (noting "[entering final judgment] is accom-plished on remand to the district court").

[2] Respondents' characterization of *Wakefield v. Government Employees Insurance Co.*, 255 So. 2d 771 (La. 1972), is nonsensical. (*See* AOB 10.) In plain language, the Supreme Court of Louisiana clearly noted that a partial remand of a judgment resulted in that judgment not being final. *See Wakefield*, 255 So. 2d at 771.

[3] Respondents insist this Court "affirmed, as modified" the 2018 judg-ment. (*See* RAB xi.) They rely on a February 3, 2022 order where this Court construed its *Murray I* decision as "an affirmation of the original judgment." (*See* 16 AA 3795.) But this was solely for purposes of

3

**B.    The *Dubric* Settlement—Encompassing Nearly All of the *Murray* Class Members—Was a Compelling <u>Reason to Modify the *Murray* Judgment</u>**

Even if the 2018 judgment somehow remained "final" after this Court's reversal and remand, however, commonsense principles governing settlements apply.

Respondents' kitchen sink of post-judgment doctrines—such as the rule of mandate and law of the case—do not override class members' voluntary resolution of their claims via the *Dubric* settlement.

> ***1.    The District Court Can Always Provide Relief from a Judgment That Has Been Satisfied, Released, or Discharged***

Even after a judgment becomes final and unappealable, the district court can always consider satisfactions, releases, and discharges that relieve a party from a judgment. *See* NRCP 60(b)(5); NRCP 60(c)(1) (noting a time requirement for relief under NRCP 60(b)(1)-(3) but not NRCP 60(b)(5)).[4] Indeed, this is how most cases are resolved after final

---

interest calculation under NRAP 37.

[4] The district court could have also considered further evidence regarding the class members who did not opt out of A Cab's settlement with the U.S. Department of Labor. In fact, the district's 2018 judgment provided A Cab the option to present further evidence of the settlement. (*See* 7 App. 1617 (noting "A Cab may present to the Court, at anytime after entry of this Order a motion to have the Court enter satisfactions

4

judgment. *See, e.g.*, NRAP 16(e)(4) (discussing settlement documents and dismissal of appeal). Were it otherwise, parties could never resolve their own claims on terms other than those put forth in the judgment.

This is true even when the parties agree to release their claims via a settlement in a subsequent lawsuit. *See Engineered Abrasives, Inc. v. Am. Mach. Prods. & Servs., Inc.*, 882 F.3d 650, 651–52, 654–55 (7th Cir. 2018) (affirming district court's grant of relief from a default judgment).

There is no reason class members should be treated any differently, particularly when—as here—the class members' settlement is approved by a district court and then affirmed in this Court.

Here, the district court should have given effect to the release given by nearly all the class members in *Dubric*—a release that extinguishes the claims purportedly brought by respondent class representatives in *Murray*.

---

towards each class member judgment creditor's judgment amount for the amounts A Cab paid them under the consent judgment").)

### 2.     *The Mandate Rule Did Not Prohibit the District Court's Consideration of the Dubric Settlement*

Ignoring this, respondents propose an uncompromising view of the mandate rule. They argue A Cab was barred from requesting further reductions or modifications to the judgment (other than to exclude amounts outside the two-year statute of limitations). (*See* RAB 10–13.) Not so.

"The mandate rule generally requires lower courts to effectuate a higher court's ruling on remand." *Estate of Adams ex rel. Adams v. Fallini*, 132 Nev. 814, 819, 386 P.3d 621, 624 (2016). However, "the mandate rule does not preclude actions incidental to the mandate or actions on issues not governed by the scope of the mandate." *Fortunet, Inc. v. Rosten*, No. 85618, 2024 WL 390133, at *3 (Nev. Jan. 31, 2024) (unpublished); *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir. 1986) (noting a mandate "leaves to the district court any issue not expressly or impliedly disposed of on appeal" (quoting *Stevens v. F/V Bonnie Doon*, 731 F.2d 1433, 1435 (9th Cir. 1984))).

Nor is the mandate rule without additional exceptions. *See Vanisi v. Gittere*, No. 78209, 2022 WL 263342, at *2 (Nev. Jan. 27, 2022) (unpublished) (recognizing and citing authority showing that the mandate

6

rule is not "uncompromising"); 18B WRIGHT & MILLER § 4478.3 ("If final judgment has not yet been entered, a compelling showing may justify departure from the mandate."). This Court has noted that almost every state has some kind of exceptions where "a court is not absolutely bound by the law of the case." *Hsu v. Cnty. of Clark*, 123 Nev. 625, 631, 173 P.3d 724, 729 (2007).

At a minimum, the *Dubric* settlement, affirmed by this Court, was a "changed circumstance" that warranted the district court's consideration on remand. *See* 18B WRIGHT & MILLER § 4478.3 (3d ed.) (explaining that "[o]ther changed circumstances also may justify a departure without seeking recall of the mandate, but the circumstances must be clear and compelling").

The settlement had implications for the *Murray* judgment and the award of attorney fees. Instead, the district court ignored the settlement, creating an unjust result. *See Hsu*, 123 Nev. at 631, 173 P.3d at 729 (recognizing that most states "allow departure from prior decisions if enforcement of the previous decision would cause an unjust result"). It thwarted a settlement between the taxi drivers and A Cab.[5]

---

[5] Similarly, respondents argue that the only "appealable" issues

### 3.  *A Cab Was Not Obligated to Disrupt the* Murray I *Appeal for a Discretionary* Huneycutt *Remand*

Respondents note that A Cab "could have" advised this Court of the *Dubric* judgment as a "supplemental authority" under NRAP 31(e), moved to consolidate the *Dubric* appeal with *Murray I*, or sought an indicative ruling and remand under NRCP 62.1 and *Huneycutt v. Huneycutt*, 94 Nev. 79, 757 P.2d 585 (1978). (RAB 14-15, 21.) Setting aside whether these procedures were possible—NRAP 31(e) and NRAP 3(b) are particularly inapt procedures considering the distinct issues raised in *Murray I*—they were at best optional. *Huneycutt* is just a vehicle for restoring jurisdiction to the district court; it does not dictate how or when relief must be requested. *See Foster v. Dingwall*, 126 Nev. 49, 52, 228 P.3d 453, 455 (2010). Because respondents were still challenging the *Dubric* settlement on appeal, it was reasonable for A Cab to

---

concerning the judgment and award of pre-judgment attorney fees are those related to the two-year statute of limitations—discussed in *Murray I*. But the issues presented in this appeal are not the same as those presented in *Murray I. See Emeterio v. Clint Hurt & Assocs.*, 114 Nev. 1031, 1034, 967 P.2d 432, 434 (1998) ("This court has declined to apply the law of the case doctrine, however, where issues presented in the second appeal are not the same as those presented in the first appeal.").

8

await the outcome of both appeals—*Murray I* and *Dubric*—to see how they would ultimately affect the class members' claims.

### 4. The Law of the Case Doctrine Does Not Eliminate Dubric's Impact

To invoke law of the case, "the appellate court must actually address and decide the issue explicitly or by necessary implication." *Dictor v. Creative Mgmt.*, 126 Nev. 41, 45, 223 P.3d 332, 334 (2010) ("The law-of-the-case doctrine provides that when an appellate court decides a principle or rule of law, that decision governs the same issues in subsequent proceedings in that case."). But *Murray I* did not address the impact of the *Dubric* judgment, which was then still being appealed.

Likewise, "the doctrine does not bar a district court from hearing and adjudicating issues not previously decided, . . . and does not apply if the issues presented in a subsequent appeal differ from those presented in a previous appeal." *See id.* at 45-46, 223 P.3d at 334. Because this Court had not considered how *Dubric* impacted *Murray*, this question remained open on remand.

### 5.    *A Cab Did Not Waive the Dubric Settlement*

Nor did A Cab waive argument about *Dubric*. "Waiver in the law-of-the-case context 'applies only when the trial court has expressly or impliedly ruled on a question and there has been an opportunity to challenge that ruling on a prior appeal.'" *Reconstruct Co. v. Zhang*, 130 Nev. 1, 9, 317 P.3d 814, 819 (2014) (quoting *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 740–41 n.2 (D.C. Cir. 1995)).

Here, when this Court considered *Murray I*, the trial court had not ruled on the applicability of the *Dubric* judgment. Indeed, when the 2018 judgment was entered, the *Dubric* settlement had not received final approval. "[S]ince the [*Murray*] district court did not decide [the *Dubric* judgment's applicability], there was no error for [A Cab] to argue." *Id.*

### C.    Respondents' Misguided Arguments about Subject Matter Jurisdiction

Respondents wrongly suggest that the *Dubric* district court somehow usurped the *Murray* district court's jurisdiction, making *Dubric* void. (RAB 17–24.) These arguments are largely recycled from the *Dubric* appeal. They do not warrant (re)consideration now.

10

### *1.    The District Court in* Dubric *Exercised Jurisdiction over the Parties in that Action*

The district court in *Dubric* was specific about its jurisdiction: "This Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Class Members." (22 App. 5284.) It never purported to exercise direct jurisdiction over the *Murray* matter.

This makes sense because Nevada's district courts are courts of general jurisdiction. *See* Nev. Const. art. 6 § 6; *John v. Douglas Cnty. Sch. Dist.*, 125 Nev. 746, 756, 219 P.3d 1276, 1283 (2009), *superseded by statute on other grounds as stated in Delucchi v. Songer*, 133 Nev. 290, 296, 396 P.3d 826, 831 (2017).

The cases respondents cite (RAB 17)—discussing specific statutory limitations—do not hold otherwise. *See, e.g.*, *Zalyaul v. State*, 138 Nev., Adv. Op. 74, 520 P.3d 345, 350 (2022) (limitation on juvenile court's jurisdiction over adults); *State Indus. Ins. Sys. v. Sleeper*, 100 Nev. 267, 270, 679 P.2d 1273, 1275 (1984) (requirement of administrative exhaustion in worker's compensation).

11

Respondents cite no authority that would limit the *Dubric* district court's jurisdiction "over the subject matter of the [*Dubric*] Action," the *Dubric* parties, and the *Dubric* class members. (22 App. 5284.) They thus fail to cogently explain how the *Dubric* settlement is void.

### 2.      *The* Dubric *Agreement Released Class Members' Claims; It Did Not Purport to "Vacate" the* Murray *Judgment Directly*

Respondents also put words in A Cab's mouth. They claim A Cab argued that *Dubric* "vacated" the *Murray* judgment, a strawman for their authority that "[a] Nevada district court judge cannot vacate or modify an order or judgment issued by a different district judge." (RAB 19–20).

While A Cab does not dispute that one judge cannot declare void another judge's order, *Rohlfing v. Second Judicial Dist. Court*, 106 Nev. 902, 803 P.2d 659 (1990), no such thing happened here.

A Cab noted only that the parties agreed to *release* their claims. (AOB 5.)[6] To release is not the same as to vacate. *Compare Release*,

---

[6] The settling *Dubric* plaintiffs agreed to "release any and all Settled Claims," which includes "any and all claims, demands, controversies, actions, causes of action, debts, liabilities, rights, damages, costs," etc. that "Releasing Parties asserted, have ever had, now have, or may here-after have, related to, arising out of, or which could have been asserted,

12

*Black's Law Dictionary* (11th ed. 2019) ("Liberation from an obligation, duty, or demand; the act of giving up a right or claim to the person against whom it could have been enforced[.]") *with Vacate, id.* ("To nullify or cancel; make void; invalidate[.]").

The *Dubric* district properly approved a class settlement that included a release to which the class members agreed. *See* NRCP 23(f). A Cab properly put the issue of the release's effect before the *Murray* court. In no way did the *Dubric* court directly vacate any judgment in *Murray*.

### 3. *The* Dubric *Judgment Was Not Void Ab Initio as to Its Release of the* Murray *Claims*

Respondents also argue that "[t]he *Dubric* final judgment was *void ab initio* in respect to the final judgment in" *Murray* because when it was issued, *Murray I* was still on appeal. (RAB 21.) But as just discussed above, the district court in *Dubric* was not claiming jurisdiction over the *Murray* case.

---

inferred, implied, included, or connected in any way with" the claims in *Dubric*. (22 App. 5266, 5276.) Those claims included those in *Murray II*.

13

There is also no prescribed timeline for reaching a settlement that releases a prior judgment. *See Cano v. Walker*, 901 N.W.2d 251, 260 (Neb. 2017) ("A judgment creditor may make a valid and binding agreement, either at the time a judgment is entered *or later*, to release and satisfy the judgment on terms other than receiving full payment of its amount." (emphasis added)).

Upon remittitur, the *Murray* district court regained jurisdiction. This was the appropriate time for A Cab to ask the court to consider the *Dubric* settlement. The *Murray* court should have done so.

### 4.    *This Court Affirmed the* Dubric *Settlement, Knowing that It Could Affect* Murray

These jurisdictional arguments aim to undermine *Dubric*'s impact on *Murray*. But respondents—intervenors in *Dubric*—already raised these concerns in their *Dubric* appeal, and this Court rejected them. *See Murray v. Dubric*, No. 83492, 2022 WL 3335982 (Nev. Aug. 11, 2022). Unpersuaded by "arguments contesting the *Dubric* settlement terms," this Court affirmed. *Id.* at *2.

14

a.   RESPONDENTS ARGUED THEIR CONCERNS ABOUT
*DUBRIC'S* IMPACT ON *MURRAY*

Contesting the *Dubric* settlement, the intervenors framed *Dubric's* impact on *Murray* as a main issue on appeal: "Did the district court err in refusing to exclude from any class action it certified the claims already adjudicated in *Murray v. A Cab*, Eighth Judicial District Court, A-12-669926-C, and incorporated into the *Murray* final judgment appealed to this Court?" (*Dubric* AOB x.)[7] They then spent many pages explaining the impact.[8]

---

[7] "*Dubric* AOB" references the appellant opening brief filed in *Murray v. Dubric*, Case No. 83492. (Ex. B to Mot. for Judicial Notice of Related Proceedings.)

[8] The intervenors discussed the impact throughout the brief. (*See, e.g.*, *Dubric* AOB 1 ("The released claims were for all minimum wages owed by A Cab to the class members, its taxi drivers employees, under the . . . the [MWA] or for any other reason."); 2 (noting "[t]he class granted final certification in this case includes at least 797 of the . . . *Murray* class of MWA judgment creditors and purports to release those *Murray* judgment amounts"); 3 (noting "the purported release of the *Murray* judgment by [the *Dubric*] settlement"); 3 ("The putative class action MWA claims made by Dubric were asserted in [*Murray*]"); 11 ("The resulting final judgment entered by the district court purports to release the MWA claims of all class members in this case, including, . . . at least 797 of the . . . *Murray* judgment creditors."); 12 (arguing the purpose of the *Dubric* settlement terms "was to release the much earlier in time filed *Murray* class claims and judgments"); 16 ("But it is clear the parties, and the district court, intended to have the claims of the . . . *Murray* class member judgment creditors resolved by that final judgment."); 17 (arguing "the only reason for A Cab to enter into a class settlement

15

The *Dubric* intervenors requested relief that would bar *Dubric* from impacting *Murray*: "This Court, in any remand to the district court, should also direct that the district court expressly exclude the *Murray* judgment and class members claims from any class action settlement or disposition it enters as part of a final judgment in [*Dubric*]." (*Dubric* AOB 17; *see also id.* at 42 ("[T]he remittitur should instruct that the district court shall not grant class certification, or any class action certification that includes any of the claims adjudicated in *Murray*, during any future proceedings.").)

### b.  THIS COURT AFFIRMED

Aware of these arguments, this Court affirmed. *See Dubric*, 2022 WL 3335982, at *2. Doing so affirmed the settlement's impact on *Murray* by necessary implication. *See Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1150 (5th Cir. 1993) ("If an issue was decided on appeal—either expressly or by necessary implication—the determination will be binding on remand and on any subsequent appeal."). *That*—and

---

with Dubric was to resolve the *Murray* judgment")).

16

not a judgment that did not address *Dubric* at all—is the preclusive decision.[9]

### 5.   *Respondents Attempt to Relitigate the Same Arguments Raised in the Dubric Appeal*

Respondents recycle the jurisdictional arguments that this Court dismissed in the *Dubric* appeal. *See Dubric*, 2022 WL 3335982, at *2 n.5 ("We decline to consider appellants' argument that the district court lacked subject matter jurisdiction to approve the *Dubric* settlement because appellants fail to support this argument with citation to relevant authority."). These arguments were so detached from any plausible legal theory that this Court paid them no mind. Warmed over for this appeal, they are no better.

---

[9] Preclusion applies to issues determined by necessary implication. *E.g.*, *Davis v. Proud*, 2 F. Supp. 3d 460, 481 (E.D.N.Y. Mar. 5, 2014) ("The prior decision of the issue need not have been explicit, however, if by necessary implication it is contained in that which has been explicitly decided." (quoting *Postlewaite v. McGraw-Hill, Inc.*, 333 F.3d 42, 48 (2d Cir. 2003))); *Fettig v. Estate of Fettig*, 934 N.W.2d 547, 553 (N.D. 2019) (noting that issue preclusion applies where issues "were necessarily litigated, or by logical and necessary implication must have been litigated" (quoting *Riverwood Commercial Park, LLC v. Standard Oil Co.*, 729 N.W.2d 101, 107 (N.D. 2007))); *F.D.I.C. v. McFarland*, 243 F.3d 876, 884 (5th Cir. 2001) (noting law-of-the-case doctrine "applies regardless of whether the issue was decided expressly or by necessary implication").

a.    THIS COURT'S HAD TO CONFIRM
SUBJECT-MATTER JURISDICTION

If *Dubric* had presented jurisdictional problem, this Court would have addressed it *sua sponte. See Holdaway-Foster v. Brunell*, 130 Nev. 478, 483, 330 P.3d 471, 474 (2014). It is unlikely that this Court turned a blind eye to a true jurisdictional defect, particularly in light of the extensive arguments raised by respondents.

In fact, other state supreme courts confirm that review of subject-matter jurisdiction is mandatory. *See, e.g., State v. Kavajecz*, 80 P.3d 1083, 1084 (Idaho 2003) ("A question of jurisdiction is fundamental; it cannot be ignored when brought to our attention . . . . Even if jurisdictional questions are not raised by the parties, we are obligated to address them, when applicable, on our own initiative." (citations omitted)); 21 C.J.S. *Courts* § 102 ("Subject matter jurisdiction is an issue on which court must act upon whenever and however it comes to the court's attention.").

Nor are appellate courts constrained by the parties' arguments on the topic. *See Archer W. Contractors, Ltd. v. Benise-Dowling & Assocs.*, 33 So. 3d 1216, 1220 (Ala. 2009) ("In matters of subject-matter

18

jurisdiction, we are not limited by the arguments of the parties."); 21

C.J.S. *Courts* § 102 (same).

> b.      RESPONDENTS PRESENT THE SAME
> IRRELEVANT ARGUMENTS

Respondents repeat their argument that no procedural rule pro-

vides "the basis for *Dubric's* subject matter jurisdiction over the final

judgment in this case." (*Compare* RAB 18 *with Dubric* AOB 18–19 ("The

[*Dubric*] judgement's [sic] release . . . did not rely upon any of the provi-

sions of the Nevada Rules of Civil Procedure.") But as already ex-

plained, the *Dubric* court did not exercise jurisdiction over the *Murray*

judgment; it merely approved a settlement with a release.[10]

---

[10] In *Dubric*, respondents attacked Jasminka Dubric as class representative—calling her "conflicted, inappropriate, and collusive." (*Dubric* AOB 31.) This Court was not persuaded. *See Dubric*, 2022 WL 3335982, at *2 & n.4. Respondents now attempt a slightly different approach. They argue "[t]he district court in *Dubric* lacked subject matter jurisdiction to grant Jasminka Dubric the power to settle the claims incorporated into the final judgment in [*Murray*]." (RAB 22.)

Respondents provide no legal authority in support of their position. (*See id.*) Additionally, the release of the *Murray* claims was negotiated by the parties. It was not the *Dubric* district court's job to re-write the settlement agreement. *See Jeff D. v. Andrus*, 899 F.2d 753, 758 (9th Cir. 1989) ("The court's power to approve or reject settlements does not permit it to modify the terms of a negotiated settlement. . . . It may only approve or disapprove the proposal.").

This Court should (again) give the subject-matter-jurisdiction arguments no consideration.

### 6.     A Cab's Hands Are Clean

In a last-ditch effort, respondents suggest A Cab cannot seek relief based on *Dubric* because of "unclean hand[s]" from violating the district court's injunction. (RAB 24.)

> a.     RESPONDENTS CANNOT DEMONSTRATE THAT A CAB'S CONDUCT WAS EGREGIOUS OR THAT IT SERIOUSLY HARMED THE SETTLING *DUBRIC* PLAINTIFFS

For starters, respondents fail to identify what *equitable* relief A Cab is allegedly seeking but is now barred from receiving. *See Howe v. Blue Bell Creameries, L.P.*, Nos. 73216, 74354, 2019 WL 1422862, at *3 (Nev. Mar. 28, 2019) (unpublished) (explaining that courts, when "determin[ing] whether a party's misconduct is serious enough to bar equitable relief under the unclean hands doctrine," must look at "(1) the egregiousness of the misconduct at issue, and (2) the seriousness of the harm caused by the misconduct" (quoting *Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahern Rentals*, 124 Nev. 272, 276, 182 P.3d 764, 767 (2008))).

20

Nevertheless, A Cab's actions do not constitute the type of "misconduct" that permits a finding of unclean hands. Its conduct is hardly egregious. A Cab obtained the release language by way of "lengthy negotiations . . . with the assistance of . . . an experienced judicial officer." *Dubric*, 2022 WL 3335982, at *2. Moreover, the district court found that the terms, which included the release language, were "fair, reasonable, and adequate and in the best interest of the class members." *Id.* at 1.

Nor can A Cab's conduct be egregious when it occurred before the 2018 *Murray* judgment. Jasminka Dubric, individually and on behalf of the class, initially entered into the settlement agreement with the *Dubric* defendants on December 28, 2016. (22 App. 5283.) The alleged injunction in *Murray* did not come into effect until August 21, 2018. (*See* RAB 2.)

Finally, respondents cannot identify any harm that the settling taxi drivers suffered. The potential class members in *Dubric* were provided notice. *Dubric*, 2022 WL 3335982, at *1. "[O]nly *one* member, in addition to the Murray intervenors, opted out." *Id.* (emphasis added).

b.   ALLEGATIONS OF AN INJUNCTION VIOLATION
SHOULD BE RAISED ELSEWHERE

Respondents had the opportunity to raise concerns about the 2018

judgment's injunction when they appealed the *Dubric* judgment. They

did not.[11]

They also could have instituted contempt proceedings in *Murray*

*II*. *See* NRS 22.030 (describing affidavit procedure for alerting the court

of contempt). They did not.

### 7.   *The* Murray *District Court Could Not Enjoin the* Dubric *District Court*

Violating their own authorities on judges intruding on one an-

other's jurisdiction, respondents finally assert that the *Murray* "injunc-

tion limited the subject matter jurisdiction of the *Dubric* district judge."

(RAB 20.) For all the reasons we just discussed, it could not. *See* 21

C.J.S. *Courts* § 258 ("Generally, one court may not, by an order in one

---

[11] In *Dubric*, respondents instead noted the presence of a separate in-junction in *Murray*, which allegedly went into effect when the *Murray* class was certified. (*See Dubric* AOB 3–4 ("That Order granting class ac-tion certification also enjoined the *Murray* class members from compro-mising the *Murray* class claims except by a future Order issued in *Mur-ray*.") This Court would have also had the opportunity to review the *Murray* 2018 judgment when it decided *Dubric* as well as its con-sistency with the 2018 judgment's injunction.

22

action, stay proceedings in an action pending in another court in the state, but one court may restrain the parties from proceeding in another court in the same state under certain conditions.").

### D. Considering *Dubric*, the *Murray* Class Should Be Decertified

Once this Court clears away respondents' baseless arguments about "final judgment" and "subject matter jurisdiction," it becomes apparent that the district court in *Murray* had the authority to consider the *Dubric* settlement. Applying this settlement, any taxi driver settling a claim in *Dubric* released any related claim in *Murray*.

And because these releases reduce the class claimants in *Murray* to three, *see Dubric*, 2022 WL 3335982, at *1, the district court should plainly have decertified the class before entering a new final judgment or considering attorney fees.

## II.

### THE AMOUNT OF ATTORNEY FEES AWARDED IS UNREASONABLE

Only "prevailing" plaintiffs can be awarded *reasonable* attorney fees under the Minimum Wage Amendment (MWA). *See* Nev. Const. art. 15, § 16. Because of the *Dubric* settlement, the class certified in

23

*Murray I* should have been decertified. After that, respondents would not have been "prevailing" for purposes of attorney fees. *See, e.g., Culver v. City of Milwaukee*, 277 F.3d 908, 915 (7th Cir. 2002 (providing that decertification "is tantamount to dismissal"). Alternatively, plaintiffs did not prevail in *Murray* on any claims that settled in *Dubric*; plaintiffs released those claims.

### A.    Respondents Cannot Prevail Before Complying with *Murray I*'s Instructions

This Court's remand contained several instructions for the district court. Some still have not been completed.[12] Murray has failed to obtain a final judgment that complies this Court's mandate. "Generally, an action must have proceeded to final judgment for a party to have prevailed." *See Las Vegas Review-Journal v. City of Henderson*, 137 Nev. 766, 769, 500 P.3d 1271, 1276 (2021).

---

[12] For example, the district court still has not held an evidentiary hearing on A Cab entities' corporate separateness. *See Murray I*, 137 Nev. at 824–25, 501 P.3d at 978–79 (discussing how "to assess the existence of the individual series entities for the purpose of judgment collection" and remanding "to reconsider the motion to quash the writ of execution"). In opposing entry of a modified judgment, A Cab argued that "[t]he [Nevada Supreme Court] remand for a determination as to the appropriate Defendant must first be complied with before any entry of a judgment." (15 App. 3521.)

24

If Murray has not properly prevailed, then the award of attorney fees was improper. *See* Nev. Const. Art. 15, § 16(B) (providing attorney fees to "[a]n employee who prevails").

## B.    All but Three Plaintiffs Released the *Murray* Claims

Respondents disingenuously claim that A Cab has "failed to establish that [the *Dubric*] release could apply to *any* of the Taxi Drivers." (RAB 27.) Respondents' own words belie their position.

In the *Dubric* appeal, respondents admitted that the settling plaintiffs in *Dubric* included many members of the *Murray* class. (*See Dubric* AOB 2 (noting "[t]he class granted final certification in [*Dubric*] includes at least **797** . . . **members of the *Murray* class** of MWA judgment creditors" (emphasis added)).) Respondents made a similar claim in their omnibus brief submitted in *Murray II*. (*See* 22 App. 5305 ("A Cab made a commitment under the *Dubric* judgment to send payments totaling $219,529 to various taxicab drivers, *including many who are judgment creditors in this case*." (emphasis added)).)

### C. A Cab Demonstrated that the *Murray* Class Was Included in the *Dubric* Class

Similarly, A Cab explained in its omnibus brief the need to release the settling *Dubric* plaintiffs from *Murray*. (*See* 20 App. 4996–97.) Exhibit 5 to the brief included "status reports with the *Dubric* court advising of the status of the distribution of payments to the *Dubric* class members." (20 App. 4996.) Included in that report was another "report which includes the exact dollar amount each [*Dubric*] class member is owed from the settlement fund." (21 App. 5160.)

The *Murray* class members, listed in the Excel sheet attached to the order modifying final judgment, are repeated in the *Dubric* class-member list. (*Compare* 22 App. 5363–76 *with* 21 App. 5167.) A Cab also included a list of the *Dubric* class members (Exhibit 10)—edited to show those class members who were also class members in *Murray*. (*See* 21 App. 5236–50; 22 App. 5251–60.)

### D. Respondents Will Try Any Tactic to Hide the Fact that *Dubric* Included Almost All of the *Murray* Taxi Drivers

Respondents disregard the overwhelming evidence—and their own words—demonstrating that the *Dubric* taxi drivers had their *Murray* judgments released. *See Dubric*, 2022 WL 3335982, at *1 n.2

(recognizing "some overlap of class membership" between *Murray* and *Dubric*).

Instead, respondents try to create ambiguity about the *Dubric* judgment's class definition to suggest that the *Murray* class members were not included in *Dubric*.[13]

Not surprisingly, this is yet another argument that respondents raised in the *Dubric* appeal—to no avail. (*See Dubric* AOB 15–17 (arguing under the heading of "The final judgment was intended to resolve the Murray final judgment even though the district court contradictorily and improperly defined the settlement class").)

---

[13] Respondents assert that the *Dubric* district court's use of "hourly paid Drivers" could not include the *Murray* taxi drivers because "they were all paid on a commission basis." (RAB 26.) The order conditionally certifying the class settlement in *Dubric* provides additional context that "Defendants had a policy of crediting tips earned by Plaintiff and other Drivers towards the calculation of minimum wage and/or made unlawful and/or unauthorized deductions from Plaintiff's and other Drivers' wages which may have resulted in underpayment of minimum wage." (Ex. A to Mot. for Judicial Notice of Related Proceedings, Order at 6.) Read in context, "hourly paid Drivers" clearly refers to A Cab's taxi drivers. And as respondents state, their commissions are "sometimes supplemented to meet minimum wage requirements," which of course is calculated on an hourly basis. (RAB 26 n.9.)

27

## III.

### THE MWA'S LANGUAGE DOES NOT SUPPORT AN AWARD OF APPELLATE FEES

**A.    A Cab Argued Below that the WMA does Not Authorize an Award of Attorney Fees**

Respondents incorrectly claim that A Cab waived its argument that MWA does not authorize an award of appellate fees. (*See* RAB 30–31.) A Cab explicitly argued in its opposition to plaintiffs' motion for appellate fees that "the guiding rule for any award of attorney fees to a party prevailing in an appeal is [NRAP] 38." (16 App. 3800.) This argument was made in the context of discussing plaintiffs' argument that they were entitled to appellate fees pursuant to Nevada's Constitution art. 15, sec. 16:

> In their motion to the Nevada Supreme Court seeking the same relief now sought, Plaintiffs argued to the Nevada Supreme Court the same arguments contained herein, **namely that they are entitled to fees under the Nevada Constitution automatically for any work engaged in. Such a position is not supported by any caselaw, precedent, and clearly not the intent of the Nevada Constitution to provide a blanket free-for-all frenzy for fees.**

(16 App. 3799 (emphasis added).)

28

**B.     Respondents Cites No Authority Providing Appellate Fees under the MWA**

Respondents cite no Nevada caselaw that interprets an attorney-fee provision containing the word "action" as automatically including appellate fees. Instead, the rule has historically been that where a fee provision is "silent with respect to attorney's fees on appeal" and does not "explicitly authorize" such fees, appellate fees are excluded. *Bobby Berosini, Ltd. v. PETA*, 114 Nev. 1348, 1356–57, 971 P2d 383, 388 (1998). Because the MWA lacks that explicit authorization, respondents are not entitled to appellate fees. *See id.*

**C.     *Las Vegas Review-Journal* Creates Confusion as to When Appellate Fees Are "Explicitly Authorized"**

*Las Vegas Review-Journal v. Clark Cnty. Office of the Coroner/Med. Examiner*, 138 Nev., Adv. Op. 80, 521 P.3d 1169 (2022) is distinguishable. Interpreting the word "proceeding" in NRS 239.011, this Court benefitted from knowing that that statute was later amended to "specifically authorize" appellate fees. *See id.* ("The amendment *can as easily be read to clarify* as change the rule that NRS 239.011(2) authorizes recovery of appellate fees to record requesters who must defend an agency appeal." (emphasis added)).

29

The MWA instead uses the word "action." *Compare* Nev. Const. art. 15, § 16 *with* NRS 239.011 (pre-2019). While respondent argues that "action" and "proceeding" are interchangeable (*see* RAB 31 (citing *Black's Law Dictionary*), even *Black's Law Dictionary* concedes "proceeding" is broader than "action." *See Proceeding*, *Black's Law Dictionary* (11th ed. 2019) (explaining that the word "proceeding" "is more comprehensive than the word 'action,' but it may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action" (quoting EDWIN E. BRYANT, THE LAW OF PLEADING UNDER THE CODES OF CIVIL PROCEDURE 3–4 (2d ed. 1899); *In re Adoption of a Minor*, 136 F.2d 790 (D.C. 1943) ("Proceeding is a word of broader meaning than action, especially when it is used, disjunctively, with action." (footnotes omitted)).

In other contexts, this Court has held that the "action" refers to proceedings in the district court. For example, the "principle that intervention may not follow a final judgment" rests on the idea that once the case has reached judgment in the district court—even if that judgment is still subject to challenge on appeal—there is no longer a "pending *action* to which the intervention might attach." *Eckerson v. C.E. Rudy,*

30

*Inc.*, 72 Nev. 97, 99, 295 P.2d 399, 400 (1956) (emphasis added); *accord Nalder v. Eighth Judicial Dist. Court*, 136 Nev. 200, 201, 207, 462 P.3d 677, 680, 682 (2020). This suggests that the MWA's reference to prevailing in the "action" means the action in which the substantive relief— "back pay, damages, reinstatement, or injunctive relief"—is granted, i.e., before the district court.

Even so, *Las Vegas Review-Journal* creates confusion. The Court determined that the coroner overstated *Bobby Berosini* for the proposition "that a fee statute's silence as to appellate fees signifies their exclusion." *See Las Vegas Review-Journal*, 521 P.3d at 1176. But that is exactly what *Bobby Berosini* provides:

> [W]e note that the text of NRS 18.010 **is silent with respect to attorney's fees on appeal**. . . . Accordingly, **because NRS 18.010 does not explicitly authorize attorney's fees on appeal**, and because NRAP 38(b) limits attorney's fees on appeal to those instances where an appeal has been taken in a frivolous manner, we conclude that PETA is not entitled to [appellate fees].

114 Nev. at 1356–57, 971 P.2d at 388 (emphasis added).

This Court now appears to suggest that NRS 18.010 does not contemplate appellate fees because it "limitedly authorizes" fee awards to "trial court matters"—such as bringing claims or counterclaims without

31

reasonable ground. *See Las Vegas Review-Journal*, 521 P.3d at 1176.

This extended explanation is not found in *Bobby Berosini* and leaves the

bench and bar guessing as to the consequences of a statute that is truly

"silent" on appellate fees.

Nevertheless, the limitations the *Las Vegas Review-Journal* Court

seized on in NRS 18.010 are equally present in the MWA with its exam-

ples of what "an action against [the employee's] employer" would entail:

:

> all remedies available under the law or in equity ap-
> propriate to remedy any violation of this section, *in-*
> *cluding but not limited to back pay, damages, reinstate-*
> *ment or injunctive relief.*

Nev. Const. art. 15, § 16 (emphasis added); *see also State Indus. Ins.*

*Sys. v. Prewitt*, 113 Nev. 616, 619–20, 939 P.2d 1053, 1055 (1997) (not-

ing that the phrase "including, but not limited to" is "limiting lan-

guage"). Specifically, the types of "action" are informed by the remedies

available. *Id.*

The list omits anything related to appeals. (*See* AOB 26–27 (argu-

ing "attorney fees are only available under the MWA for actions similar

to those brought for monetary damages and related to equitable

32

relief").) Accordingly, this Court should construe the language as not including appellate fees.

## IV.

### PLAINTIFFS SHOULD HAVE BEEN SANCTIONED, OFFSETTING THE AWARD OF ATTORNEY FEES

#### A.     A Cab's Appendix is Sufficient for this Court's Review

A Cab provided the portions of the record that were necessary for this Court's review of the district court's abuse of discretion in failing to award sanctions offsetting the award of attorney fees. *See Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 603, 172 P.3d 131, 135 (2007).

This is not like *Cuzze*, where the appellant appealed a summary judgment and omitted their opposition to the motion. *See id.* at 600, 172 P.3d at 133. Without the opposition, this Court "presume[d] that this opposition failed to introduce admissible evidence of specific facts showing that a genuine factual issue exists for trial." *Id.* at 604, 172 P.3d at 135.

Here, appellants provided the Court with the frivolous, duplicative motions underlying A Cab's request for sanctions. (*Compare* 16 App. 3934 *with* 17 App. 4202.) It also provided the district court's order

33

denying defendants' motion for sanctions. (*See* 22 App. 5389.) The order clearly states that plaintiffs violated the stay. (*See* 22 App. 5390.) It then provides the reasons for why the district court found "sanctions are not warranted," (22 App. 5390), which is what A Cab contests on appeal. Accordingly, this Court has what is required to analyze this issue.

Nevertheless, A Cab has supplemented its appendix to include these documents.[14] *See Cuzze*, 123 Nev. at 604, 172 P.3d at 135 (noting "appellants failed to take any steps to supplement their appendix with the missing documents"); NRAP 30(b)(5) (permitting reply appendix).

Of course, respondents could have also included these documents. *See* NRAP 30(b)(4) (permitting respondent's appendix).

## B.   Rule 11 Does Not Require a Showing that A Cab was Prejudiced

Respondents incorrectly argue that A Cab did not identify the district court's erroneous view of the law. (RAB 34–35.) It did. (*See* AOB 42.) Specifically, NRCP 11 does not require a showing of prejudice. *See, e.g.*, *Bradgate Assocs. v. Fellows, Read & Assocs.*, 999 F.2d 745, 752 (3d

---

[14] The supplemented materials include the underlying motions. (*See* 24 Reply App. 5531–26 Reply App. 6187.)

34

Cir. 1993) (explaining "[t]he focus of a district court's Rule 11 inquiry is . . . not whether the movant is prejudiced by his or her opponent's actions"). This proposition and relevant cases were discussed in the opening brief. (*See* AOB 42.)[15]

## CONCLUSION

The district court improperly awarded class counsel's attorney fees under the MWA. The district court ignored the *Dubric* settlement and failed to decertify the class. Contrary to respondents' arguments, the district court had the authority to consider the *Dubric* settlement.

In light of the *Dubric* settlement, respondents could not "prevail" under the MWA. At least, the district court should have reduced its award of attorney fees in proportion to the drastic constriction of the *Murray* class. Or the district court should have offset the award by imposing sanctions against respondents for violation of the stay.

---

[15] A Cab did not mispresent the record. (*See* RAB 35.) Respondents claim the filing of two motions for reconsideration was justified because "*two orders* were entered by the district court on the issue and it was unknown which order was effective." (RAB 35.) As explained below by A Cab, "[p]laintiffs' counsel intentionally created this record with errors so that there [was] conflicting dates for reconsideration, for appeal, and inconsistencies between the departments." (18 App. 5.)

35

As the current fee award is unreasonable, this Court should reverse.

Dated this 17th day of May, 2024.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/ Abraham G. Smith*

ESTHER C. RODRIGUEZ (SBN 6473)
RODRIGUEZ LAW OFFICES, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(702) 302-8400

DANIEL F. POLSENBERG (SBN 2376)
ABRAHAM G. SMITH (SBN 13,250)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 949-8200

*Attorneys for Appellant*

36

## CERTIFICATE OF COMPLIANCE

1.      I certify that this brief complies with the formatting, type-face, and type-style requirements of NRAP 32(a)(4)–(6) because it was prepared in Microsoft Word for Windows 365 with a proportionally spaced typeface in 14-point, double-spaced Century Schoolbook font.

2.      I certify that this brief complies with the type-volume limitations of NRAP 32(a)(7) because, except as exempted by NRAP 32(a)(7)(C), it contains 6969 words.

3.      I certify that I have read this brief, that it is not frivolous or interposed for any improper purpose, and that it complies with all applicable rules of appellate procedure, including NRAP 28(e). I understand that if it does not, I may be subject to sanctions.

Dated this 17th day of May, 2024.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/ Abraham G. Smith*

ESTHER C. RODRIGUEZ (SBN 6473)
RODRIGUEZ LAW OFFICES, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(702) 302-8400

DANIEL F. POLSENBERG (SBN 2376)
ABRAHAM G. SMITH (SBN 13,250)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 949-8200

*Attorneys for Appellant*

xi

CERTIFICATE OF SERVICE

I certify that on May 17, 2024, I submitted the foregoing APPEL-

LANT'S REPLY BRIEF for filing *via* the Court's eFlex electronic filing sys-

tem. Electronic service of the forgoing documents shall be made upon all

parties listed on the Master Service List:

LEON GREENBERG
RUTHANN DEVEREAUX-GONZALEZ
LEON GREENBERG
PROFESSIONAL CORPORATION
1811 S. Rainbow Blvd., #210
Las Vegas, Nevada 89146

CHRISTIAN GABROY
GABROY LAW OFFICES
170 S. Green Valley Parkway, Suite 280
Henderson, Nevada 89012

*Attorneys for Respondents*

/s/  *Emily D. Kapolnai*
An Employee of Lewis Roca Rothgerber Christie LLP