_____

Honorable Natalie M. Cox
United States Bankruptcy Judge

Entered on Docket
October 16, 2025

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ., NBN 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ., NBN 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>A CAB, SERIES L.L.C.,<br><br>　　　　　　　Debtor. | Case No. 22-14361-nmc<br>Chapter 11<br><br><u>Confirmation Hearing:</u><br>Date: September 25, 2024<br>Time: 9:30 a.m. |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER**
**CONFIRMING DEBTOR'S AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

A Cab, Series L.L.C., a Nevada series limited liability company, as debtor and debtor in possession (the "Debtor"), having filed its *Amended Chapter 11 Plan of Reorganization* [ECF No. 504] (as further amended in the form as attached to the Confirmation Order, the "Plan"); the Court having conducted a confirmation hearing on the Plan on September 25, 2024 (the "Confirmation Hearing"), and having also held a further status hearing on September 25, 2025 (the "Status Hearing"); and good cause appearing;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

**A.    Findings and Conclusion.**

1.    These findings of fact and conclusions of law, as well as the Court's findings of fact and conclusions of law stated on the record at the Status Hearing, which are incorporated herein by reference pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rules 7052 and 9014, constitute the Court's findings and fact and conclusions in support of confirmation of the Debtor's Plan.[1] To the extent any of the following conclusions of law constitute findings of fact, or *vice versa*, they are adopted as such.

2.    The Court incorporates herein the analysis set forth in: (a) the *Debtor's: (I) Brief in Support of Confirmation of Amended Chapter 11 Plan of Reorganization Dated June 3, 2024, and (II) Reply to Objections of the Murray Case Creditors and Leon Greenberg, P.C.* [ECF No. 587] and accompanying declarations [ECF Nos. 576 and 577]; (b) the *Notice of Redline of Proposed Changes to Debtor's Amended Chapter 11 Plan of Reorganization Re: Changes Proposed in its Confirmation Brief* [ECF No. 595]; (c) the Confirmation Hearing, including the exhibits admitted into evidence by agreement of the parties [ECF No. 706]; (d) the *Debtor's Reply to Murray Claimants' Post-Confirmation Hearing Brief Regarding Amended Chapter 11 Plan of Reorganization* [ECF No. 618]; (e) the *Debtor's Response to Order Directing Debtor to File Amended Redline and Status Report* [ECF No. 687]; and (f) the arguments made on the record at the Status Hearing [ECF No. 706]. The Court also takes judicial notice of all filings on its docket in this Chapter 11 Case and the Murray Adversary to extent permitted by Rule 201 of the Federal Rules of Evidence.

**B.    Jurisdiction, Venue, and Core Proceeding.**

3.    The Court has jurisdiction over the Debtor's Chapter 11 Case pursuant to 28 U.S.C. §§ 1334 and 157, and LR 1001(b)(1). Confirmation of this Plan is a core proceeding within the

---

[1] All undefined capitalized terms used herein shall have the same meanings as in the Plan. All references to the "Bankruptcy Code" are to title 11 of the U.S. Code; all references to a "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure; and all references to an "LR" are to the Local Rules of Bankruptcy Practice for the U.S. District Court for the District of Nevada.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**C.      Notice.**

4.      Due, adequate, and sufficient notice of the Plan and the Confirmation Hearing, together with all deadlines for voting to accept or reject the Plan, as well as objecting to the Plan, have been provided to all creditors and parties in interest. [ECF Nos. 551 and 554]. Such notice was adequate and sufficient under the facts and circumstances of case, and no other or further notice is or shall be required.

**D.      Burden of Proof.**

5.      The Debtor, as the Plan's proponent, has satisfied its burden of proving that its Plan satisfies the confirmation requirements in §§ 1191 and 1129 of the Bankruptcy Code, as applicable, by a preponderance of the evidence.

**PLAN CONFIRMATION REQUIREMENTS**

**E.      11 U.S.C. § 1129(a)(1): Plan Compliance With the Bankruptcy Code.**

6.      The Plan satisfies § 1129(a)(1) of the Bankruptcy Code by complying with the applicable provisions of the Bankruptcy Code, including § 1122 regarding the classification of claims, and § 1123 regarding the terms required to be included, and that may be included in a plan, as hereinafter detailed.

7.      The Plan complies with § 1122 of the Bankruptcy Code because it classifies its creditors into five (5) classes as follows: Class 1 (Priority Non-Tax Claims); Class 2 (Secured Claim of the SBA); Class 3 (Other Secured Claims); Class 4 (Non-Priority General Unsecured Claims); and Class 5 (Equity Interests). Plan, Arts. 2 and 4. All of the claims placed into each of the foregoing classes are substantially similar.

8.      The Plan satisfies § 1123(a)(1) of the Bankruptcy Code because it designates classes of claims and equity interests, subject to § 1122, into 4 total classes of claims, and 1 class of equity interests.

9.      The Plan satisfies § 1123(a)(3) of the Bankruptcy Code because it specifies which

3

classes of claims are unimpaired. Plan § 4.01.

10.     The Plan satisfies § 1123(a)(4) of the Bankruptcy Code because it specifies the treatment of claims in each respective class and provides for the same treatment by the Debtor for each claim in each respective class. Plan § 4.01.

11.     The Plan provides adequate means for its implementation as required by § 1123(a)(5) of the Bankruptcy Code by explaining that it will be funded through cash flow generated from the future business operations of the Debtor, and other contributions. Plan § 7.01 (Funding). The Plan also provides for a remand of the Murray Adversary back to Nevada State Court for the sole purpose of allowing for a liquidation of remaining claims against the Debtor, Plan § 7.02 (Remand of Murray Adversary), and various protections and preservation of rights in the event of a default under the Plan. Plan §§ 7.03 (Preservation of Avoidance Actions), and § 7.04 (Limitation on Sale or Other Transaction of the Bruce Property). Additionally, as supported by the Plan Projections, the Debtor is providing for the submission of all of its future income as is necessary for the execution of the Plan, as required by § 1190(2). Plan, §§ 4.01 and 7.01, Ex. 2 (Plan Projections). The Plan also provides that the Debtor shall be responsible for making payments under the Plan post-confirmation, not the Subchapter V Trustee. Plan § 10.7. Finally, the Plan provides for an appropriate retention of jurisdiction in the event of potential issues arising with the interpretation, implementation and enforcement of it. Plan § 8.08.

12.     Section 1123(a)(6) of the Bankruptcy Code is inapplicable/satisfied because the Plan does not provide for the issuance of any nonvoting equity securities or makes any change to the Debtor's organizational documents; rather, the rights of Creighton J. Nady ("Mr. Nady"), as the Debtor's manager are unchanged. Plan § 4.01 (Class 5).

13.     The Plan complies with § 1123(a)(7) of the Bankruptcy Code because Mr. Nady will maintain control of and indirect ownership over the Debtor's business. Plan, §§ 4.01 (Class 5), and 8.07. This is consistent with the company's organizational documents and appropriate given Mr. Nady's knowledge and experience with the everyday operations of the business, as well as his holding the licensure with the Nevada Taxicab Authority, and the Plan does not appoint any

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

other officers, directors, or trustees.

14.	Section 1123(a)(8) of the Bankruptcy Code is inapplicable because that section does not apply in subchapter V cases pursuant to § 1181(a).

15.	The Debtor's Plan is consistent with the permissive provisions that may be incorporated into a chapter 11 plans pursuant to § 1123(b) of the Bankruptcy Code. *First*, the Plan is consistent with § 1123(b)(1) of the Bankruptcy Code because it both impairs and leaves unimpaired various classes of claims and interest, as is necessary to accomplish the Debtor's reorganization. Plan, Arts. 2 and 4. *Second*, the Plan is consistent with § 1123(b)(2) because it proposes to assume various executory contracts that are necessary for the Debtor's operations in accordance with this provision and § 365. Plan, Art. 6. *Third*, the remaining provisions of the Plan are fully compliant and consistent with applicable sections of the Bankruptcy Code, and thus are appropriate pursuant to § 1123(b)(6).

**F.	11 U.S.C. § 1129(a)(2): Proponent's Compliance With the Bankruptcy Code.**

16.	The Plan satisfies § 1129(a)(2) of the Bankruptcy Code because the Debtor, as the Plan proponent, has complied with the applicable provisions of the Bankruptcy Code, including, as applicable, the disclosure and solicitation requirements. Section 1181(b) of the Bankruptcy Code provides that § 1125 does not apply to subchapter V cases unless the Court orders otherwise for cause. The Court has not ordered otherwise for cause in this case. Accordingly, the Plan satisfies the disclosure requirements in § 1190(1) by providing a brief history of the Debtor's business operations, its lengthy legal entanglements with the Murray Claimants, a Liquidation Analysis, and Plan Projections showing the Debtor's ability to make payments under the proposed Plan. Plan, pp. 1-7, and Exs. 1 and 2.

**G.	11 U.S.C. § 1129(a)(3): Proposed in Good Faith and Not by Illegal Means.**

17.	The Plan is proposed in good faith and not by any means forbidden by law pursuant to § 1129(a)(3) of the Bankruptcy Code. The Plan is proposed in good faith because it achieves a result consistent with the objectives and purposes of the Bankruptcy Code taking into account the totality of the circumstances of the case. The Plan maximizes the value of the bankruptcy estate,

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

5

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

provides for a satisfaction of creditors' claims, preserves jobs, and maintains operations of a valuable business, which will be able to pay back far more to creditors over time than if it were liquidated. Moreover, the Plan does not involve any of the typical situations where courts have found a lack of good faith. The Plan is not proposed by any means forbidden by law, nor are there any allegations that the Plan runs afoul of applicable Federal or State law.

**H.      11 U.S.C. § 1129(a)(4): Payments for Services Reasonable.**

18.      The Plan satisfies § 1129(a)(4) of the Bankruptcy Code because it provides that all professional fees and expenses, including those of the Subchapter V Trustee and the Debtor, remain subject to final review by the Court for reasonableness pursuant to § 330. Plan § 3.02.

**I.      11 U.S.C. § 1129(a)(5): Disclosure of Management and Insiders.**

19.      The Plan satisfies § 1129(a)(5) of the Bankruptcy Code because it discloses that the Debtor's existing management, Mr. Nady, will remain in control of the business, and given his background and experience, he is well-suited to continue in that role post-confirmation. Plan, § 8.07. Further, Mr. Nady has no affiliations with any creditors, and his interests are aligned with the company's and the faithful execution of the Plan. Finally, absent an approved licensed replacement, Mr. Nady's continued participation is required as a regulatory matter by the Nevada Taxicab Authority and related state regulations.

**J.      11 U.S.C. § 1129(a)(6): Regulatory Approvals.**

20.      The Plan satisfies § 1129(a)(6) of the Bankruptcy Code because it does not propose to alter or amend any rates that are regulated by a governmental agency.

**K.      11 U.S.C. § 1129(a)(7): Best Interests Test.**

21.      The Plan satisfies § 1129(a)(7) of the Bankruptcy Code because it is in the best interests of creditors, and each holder of an impaired claim will receive or retain under the Plan on account of such claim property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7. The Plan includes a Liquidation Analysis which, using the applicable "waterfall" priority of distribution under the Bankruptcy Code, demonstrates that all creditors will receive at least as

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

much, and indeed more under the Plan than they would otherwise receive in a hypothetical chapter 7 liquidation. Plan, Ex. 1. In fact, given the Plan's payment in full of all claims with interest over time, and thus a better result could not be achieved in a hypothetical liquidation.

**L.    11 U.S.C. § 1129(a)(8): Class Acceptance.**

22.    The Plan does not satisfy § 1129(a)(8) of the Bankruptcy Code because Class 5 (Non-Priority General Unsecured Creditors) has not accepted the Plan. Therefore, given that consensual confirmation under § 1191(a) is not available in the case at hand, the Debtor must seek confirmation on a "cramdown" basis pursuant to § 1191(b). Section 1129(a)(8) does not apply in the context of nonconsensual confirmation, and this section is inapplicable.

**M.    11 U.S.C. § 1129(a)(9): Administrative and Priority Claims.**

23.    The Plan satisfies § 1129(a)(9)(A) of the Bankruptcy Code, as modified by § 1191(e), because the Plan provides for the payment in full of each holder of an Allowed administrative claim over time through the Plan. Plan, § 3.02.

24.    The Plan satisfies § 1129(a)(9)(B) of the Bankruptcy Code because it provides that any Allowed priority non-tax claims will be paid in full in cash on the later of the Effective Date, or the date on which such claim is Allowed. Plan § 4.01, Class 1.

25.    The Plan satisfies § 1129(a)(9)(C) and (D) of the Bankruptcy Code, as applicable, because it provides that all Allowed priority tax claims pursuant to § 507(a)(8) will be paid in full pursuant to those sections. Plan §§ 3.01 and 3.03.

**N.    11 U.S.C. § 1129(a)(10): One Consenting Impaired Class.**

26.    Section 1129(a)(10) of the Bankruptcy Code is inapplicable given that the Debtor must seek confirmation of its Plan on a "cramdown" basis pursuant to § 1191(b).

**O.    11 U.S.C. § 1129(a)(11): Feasibility.**

27.    The Plan satisfies § 1129(a)(11) of the Bankruptcy Code because, based on the totality of circumstances, the Plan has a reasonable possibility of success, and thus is feasible. The Plan Projections are within the range of the Debtor's operations pre-petition, and its operations during the Chapter 11 Case as demonstrated by its filed Monthly Operating Reports and its

Periodic Reports filed pursuant to Bankruptcy Rule 2015.3. Additionally, the Debtor's manager and ultimate indirect owner, Mr. Nady, will remain at the helm post-confirmation, thus providing continuity, knowledge and experience to continued operations, as well as the required licensure with the Nevada Taxicab Authority.

**P.      11 U.S.C. § 1129(a)(12): U.S. Trustee's Fees Paid.**

28.      The Plan satisfies § 1129(a)(12) of the Bankruptcy Code because the Debtor has elected to proceed under Subchapter V, and thus there are no fees owing pursuant to 28 U.S.C. § 1930(a)(6)(A). Accordingly, the Plan provides that such fees are inapplicable. Plan, § 3.04.

**Q.      11 U.S.C. § 1129(a)(13)-(16): Various Inapplicable Provisions.**

29.      The Debtor has no retiree benefits within the meaning of § 1129(a)(13) of the Bankruptcy Code, and thus that section is inapplicable/satisfied.

30.      The Debtor is not obligated to pay any "domestic support obligation" as defined in § 101(14)(A) of the Bankruptcy Code, and thus § 1129(a)(14) of the Bankruptcy Code is satisfied.

31.      Section 1129(a)(15) of the Bankruptcy Code is inapplicable to subchapter V case pursuant to § 1191.

32.      The Debtor is a for profit company, not an eleemosynary entity that falls within the scope of § 1129(a)(16) of the Bankruptcy Code, and thus this section is inapplicable/satisfied.

**R.      The Plan Complies with Various Other Miscellaneous Requirements.**

33.      Sections 1129(b), (c) and (e) of the Bankruptcy Code are inapplicable in this Subchapter V case pursuant to § 1181(a) of the Bankruptcy Code.

34.      The Plan satisfies § 1129(d) of the Bankruptcy Code because no governmental unit has requested that the Plan not be confirmed on the grounds that the primary purpose of the Plan is the avoidance of taxes or the avoidance of application of Section 5 of the Securities Act of 1933, and the primary purpose of the Plan is not those improper purposes.

**S.      11 U.S.C. § 1191(b): Non-Consensual Confirmation.**

35.      The Plan is "fair and equitable" pursuant to § 1191(b) through (d) of the Bankruptcy Code, and thus can be confirmed on a nonconsensual basis, for the reasons as hereinafter detailed.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

8

36. The Plan does not "discriminate unfairly" against any impaired claims that have not accepted the Plan pursuant to § 1191(b) of the Bankruptcy Code because each class contains dissimilar claims that are required to be separately classified into their own classes.

37. The Plan is also "fair and equitable" to each class of claims that is impaired under and has not accepted the Plan pursuant to § 1191(b) of the Bankruptcy Code, as detailed herein.

38. The Plan complies with § 1191(c)(1) of the Bankruptcy Code because it complies with the definition of "fair and equitable" in § 1129(b)(2)(A) as to each secured claim. In particular, the Plan provides for each Allowed secured claim holder to retain its liens in its respective collateral, and receive cash payments equal to the allowed amount of its respective Allowed secured claims pursuant to § 506, and thus satisfies both (i) and (ii) of § 1129(b)(2)(A). In this case, the SBA is the only secured creditor, and it is unimpaired under the Plan. Plan § 4.01 (Class 2).

39. The Plan complies with § 1191(c)(2) of the Bankruptcy Code because it provides that all of the Debtor's projected disposable income received in the next five (5) years will be applied to make payments under the Plan (or at least the value to be distributed under the Plan) and is not less than the Debtor's projected disposable income. Plan §§ 4.01 and 7.01, and Ex. 2 (Plan Projections). The Plan devotes the Debtor's disposable income as defined in § 1191(d) because it devotes all reasonably projected income, based on historical operations and reasonable assumptions about future income, and subtracts out reasonable, ordinary course expenses, prior to calculating payments of creditor claims. Further, all of the expenses in the Plan Projections are reasonably necessary for the continuation, preservation, or operation of the Debtor's business, and thus are appropriate.

40. The Plan complies with § 1191(c)(2) of the Bankruptcy Code because the Debtor does not owe any "domestic support obligations" pursuant to §§ 101(14A) and 1191(d)(2).

41. The Plan satisfies § 1191(c)(3)(A) of the Bankruptcy Code because the Debtor will be able to make all Plan payments as demonstrated by its Plan Projections, its prior operating history both pre and post-petition, and for the same reasons as discussed herein regarding the Plan's

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

"feasibility" pursuant to § 1129(a)(11).

42.      Alternatively, the Plan also satisfies § 1191(c)(3)(B) of the Bankruptcy Code because there is a reasonable probability that the Debtor will be able to make all payments under its Plan based on its historical operating results and Plan Projections, and because the Plan provides sufficient default remedies to protect the holders of claims in the event that such payments are not made. Plan, Art. 10, ¶ 7; § 7.03 (Preservation of Avoidance Actions), § 7.04 (Limitation on Sale or Other Transaction of the Bruce Property). Holding such potential claims in abeyance, while still preserving them to the extent necessary, and allowing creditors and parties in interest to avail themselves of such remedies only upon the occurrence and continuation of a Material Default in the Plan, should resort to them be necessary, is both necessary and appropriate under the specific facts and circumstances of this case and to the proper and effective implementation of the Plan.

**T.      Modifications to the Plan.**

43.      The additional modifications the Debtor has proposed to its Plan were all concessions in favor of the Murray Claimants, and nearly all of which were offered to address argument they raised in their *Objection* [ECF No. 581] (the "Objection") to confirmation of the Plan. Such modifications are permitted pursuant to § 1193(a) of the Bankruptcy Code, and without any need to resolict votes, because the Plan, as modified, still meet the requirements of §§ 1122 and 1123. The Court addresses certain specific arguments the Murray Claimants raise in their Objection, however, for the avoidance of doubt, the Court overrules all of their arguments not otherwise addressed below or addressed by a modification to the Plan.

**CERTAIN SPECIFIC OBJECTIONS ADDRESSED IN GREATER DETAIL**

**U.      The Argument Regarding the Alleged "Appeal Bond Funds."**

44.      Greenberg P.C., counsel for the Murray Plaintiffs, is currently holding the sum of $303,695 in his attorney trust account arising from the Murray Case and related appeals, pending further order of a court. [Debtor's Ex. 49]. The parties dispute whether those funds are property of the Debtor's bankruptcy estate, and the Murray Claimants have filed with this Court in the Murray Adversary a motion entitled *Motion to Disburse Appeal Bond Funds* (the "Interim Distribution

Motion") [Adv. ECF No. 33]. Regardless of that dispute, and while the Debtor does not waive its arguments before the Nevada Supreme Court, nor the Nevada State Court regarding these disputed funds on remand, for purposes of this Plan, the Debtor does not object to a distribution of those funds as payment toward its alleged obligations under the Plan, if any; *provided*, *however*, that: (a) such funds will only be distributed after the occurrence of the Plan's Effective Date, and (b) nothing in the Court's approval of the Interim Distribution Motion is intended or should be construed as waiving any rights or arguments that parties may have before the Nevada Supreme Court and the Nevada State Court after remand. Plan § 4.01 (Class 4).

## V.    The Argument Regarding the Removed Murray Case.

45.    The Plan provides that the Murray Case will be remanded back to Nevada State Court upon the Plan's Effective Date, but without prejudice to any matters still pending in the Murray Appeal before the Nevada Supreme Court, which pending matters shall be fully allowed to proceed through to final decision. Plan § 7.02. Further, on remand, the Nevada State Court is permitted to conduct any remaining claim adjudications or liquidation of the amounts of any alleged claims of the Murray Claimants, but is prohibited from enforcing such claims or compelling any collection of them against the Debtor or the Debtor's property (including the appointment of a receiver), except in accordance with the Plan, and is further prohibited from taking any actions that are contrary to the Plan. Accordingly, this remand resolves any issue regarding whether the Debtor inappropriately removed that litigation to the Bankruptcy Court during the pendency of this Chapter 11 Case, and the Murray Claimants' pending *Motion to Remand* that adversary proceeding [Adv. ECF No. 9]. For the avoidance of doubt, the Nevada Supreme Court and Nevada State Court are granted relief from any stays to allow the foregoing to proceed through to final judgment.

## W.    The Argument That the Plan Understates the Debtor's Liquidation Value and Falsely Asserts that the Debtor is Insolvent to Avoid Paying Post-Petition Interest at the Nevada Judgment Rate.

46.    The Murray Claimants argue that the Plan undervalues the liquidation value of the

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

11

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Debtor's assets and that the Debtor falsely claimed insolvency in order to deny the payment of post-petition interest at the Nevada judgment rate per NRS § 17.130. The Court disagrees. The Plan provides for the payment in full of all Allowed claims over time, plus interest. Plan § 4.01 (Class 4). Additionally, the Plan allows the appellate process before the Nevada Supreme Court in the Murray Appeal and any further proceedings in the Nevada State Court in the Murray Case on remand to play out through to conclusion to the extent necessary, but in all events subject to the terms and conditions of the Plan. Plan § 7.02. This avoids the interference and potential loss in value if a receiver were appointed over the Debtor, and also puts whatever the Allowed claim are ultimately determined to be, if any, on a firm payment schedule, which provides for certainty for all involves. Further, the Plan's payment of any Allowed amount of interest to the Murray Claimants adequately compensates them for any alleged "delay" in payments under the Plan. Finally, if the claims of the Murray Claimants are ever Allowed in full, then the Debtor lacks the financial ability to pay such matters in a single lump sum immediately, and thus the Debtor's resort to filing for bankruptcy was in good faith and for the legitimate purpose of reorganize its financial affairs, including seeking to pay such potential claims over time.

**X.    The Argument That the Plan Improperly Provides Distributions to Mr. Nady, as Owner, to Pay Income Taxes Incurred as a Result of the Business Operations.**

47.    The Court overrules the Murray Claimants' argument that the Plan "has the Debtor paying at least $995,000 in income taxes that it can legally avoid and does not need to pay," Objection, pp. 18-27, for various reasons as detailed hereinafter.

48.    As an initial matter, one of the reasons a debtor is required to include projections in support of its plan of reorganization, including projecting its income and expenses therein, is to determine whether the plan pays to creditors the debtor's projected disposable income as defined in § 1191(c)(2) of the Bankruptcy Code for the plan's commitment period. In the case at hand, the Plan is not a "pot" plan that only proposes to pay creditors' claims *in part*, and then seek to discharge the remaining balance; rather, the Plan pays all Allowed claims *in full, with interest* over time. Payment in full militates against any alleged prejudice the Murray Claimants claim they will

incur as a result of any particular expense line item in the Plan Projections, including but not limited to for taxes. Moreover, the Plan's payment of interest adequately compensates the Murray Claimants for any alleged delay in their receiving payment in full as a result of any particular expense line item in the Plan Projections, including without limitation for taxes.

49. Further, to the extent the Court needs to reach the issue, in this case, the Court overrules the Murray Claimants' argument that the Debtor should be required to devote its *gross or pre-tax* income or such after-tax income as would remain if it elected to be taxed as a corporation to the payment of creditors under the Plan. The Debtor has previously elected to be a disregarded entity for tax purposes and the Plan continues that election and thus all of its income is reported on Mr. Nady's own personal tax returns. [Debtor's Exs. 32-35] and the Court finds it is appropriate in this case to calculate the Debtor's disposable income *net* of such taxes based on the Debtor continuing that election for various reasons as hereinafter detailed.

50. If Congress had intended to require a subchapter V debtor to devote all its *gross* or *pre-tax* income to paying creditors under a plan, then it could have used clear language in the statute to require that result. It did not. Instead, Congress only required subchapter V debtors devote their "disposable income" to repay creditors, which is a qualified, limited term. As such, the plain text of the Bankruptcy Code is contrary to the Murray Claimants' argument.

51. Further, the payment of taxes arising from the operation of the Debtor's business is an expenditure reasonably necessary for the continuation, preservation and operation of the business in the case at hand, just as other items such as payroll, utilities, rent, insurance, and other expenses as detailed in the Plan Projections.

52. If the Debtor's disposable income were not calculated on an *after*-tax basis, then the disposable income it would have to pay to creditors would be far greater if it is a pass-through entity than if it were not. In this case, it would be unfair and inequitable to require the Debtor to have to pay its unsecured creditors with disposable income calculated on a *pre*-tax basis because that would essentially require the Debtor to pay to creditors more at each payment interval than what the Debtor actually has at its disposal to pay if the taxes incurred by its operations are

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

considered, and would also ignore the fact that the taxes are generated from the company's own operations.

53.     In this particular case, the Court also finds that a contrary rule also would impose an undue hardship on Mr. Nady personally because he would then be forced to bear the brunt of the tax liability without any help from the Debtor, while still saddling the Debtor with having to pay over disposable income on *pre-tax* basis to creditors under its Plan. Such an imposition on Mr. Nady, whose financial wherewithal is tied to the Debtor's business, is contrary to the intent and spirit of Subchapter V, which is to foster small businesses reorganizations. The foregoing is also supported by the Subchapter V Trustee's report on the matter, which concluded that it would be difficult to establish that such transfers to Mr. Nady were avoidable fraudulent transfers [ECF No. 304, p. 10; Debtor's Ex. 6].

54.     Further, the definition of "disposable income" in § 1191(d) of the Bankruptcy Cope for subchapter V debtors is substantially similar to the term as used in both §§ 1225(b)(2) and 1325(b)(2) (except that in chapter 13 permits a deduction for charitable contributions), and also that § 1129(a)(15) applicable to individual debtors under regular (non Subchapter V) cases also incorporates the same chapter 13 definition. Although the definition of "disposable income" in all of these chapters is substantially the same, the manner of determining permissible deductions in calculating disposable income differs materially with regard to expenditures for the "maintenance and support" of the debtor and debtor's dependents. Critically, however, the definitions across *all* of these chapters generally calculate disposable income on an after *after-tax* basis, and thus only require the debtor to make payments to unsecured creditors *net* of its tax payments on the associated income. Congress did not draft subchapter V on a "blank slate," and instead borrowed concepts from other chapters in creating subchapter V, including chapter 13 in particular. As a result, this prior longstanding practice under these other chapters also provides some support for the Debtor's position that the calculation of a subchapter V debtor's "disposable income" should be calculated on an *after*-tax basis.

55.     The Murray Claimants also argue that the Plan does not minimize the Debtor's tax

14

burden by electing to be taxed as a corporation at lower current rate than the tax rate proposed by the Plan. In other words, the Murray Claimants assert that the Plan should only allow, for determining Plan disposable income, for taxes at the amount the Debtor would pay if it withdrew its current tax election, wherein the Debtor is a disregarded entity paying no tax directly, and elected to pay taxes at the corporate level. To the extent the Debtor sought to maintain its disregarded entity status, then Mr. Nady would have to pay any additional taxes due beyond that amount.. The Court overrules this argument for various reasons as hereinafter detailed.

56.    *First*, the Murray Claimants argument is inconsistent with its prior argument that the taxes are expenses that should be *excluded* in calculating the Debtor's disposable income. The Murray Claimants' "corporate taxation" argument effectively acknowledges that the income incurred as a result of the operation of the Debtor's business *could* be taxed (and potentially taxed twice) at both the corporate level and then also at the individual level to the extent there are distributions from the company to Mr. Nady, and thus are a proper expense of the business. The Debtor's tax election to be treated as a disregarded entity does not change the fundamental reality that the taxes in question were incurred as a result of the operation of the business and thus are properly business expenses, and was done in a proper exercise of the Debtor's business judgment to minimize the overall income tax burden arising from the Debtor's business operations on the company and Mr. Nady together.

57.    *Second*, the Court finds that requiring the Debtor and Mr. Nady to withdraw their tax election now, and elect for "double taxation" would likely result in a *greater* overall tax burden on them both, and thus is self-defeating and contrary to the general policy behind subchapter V of fostering small business reorganizations.

**Y.    The Disputed Claims Reserve and the Definition of "Allowed" Claim.**

58.    The Court overrules the Murray Claimants' objections to the Disputed Claims Reserve, Plan § 10.4, and to the definition of "Allowed" Claims as not including disputed claims, Plan §§ 5.01 and 5.02, thus not allowing payments on disputed claims until those claims are Allowed on a final basis. Such provisions are appropriate for various reasons as detailed herein.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

59.    *First*, disputed claims reserves and provisions withholding distributions to claimants until their claims are adjudicated on a final basis are common provisions used in many chapter 11 plans and for good reason. Such reasons may include, but are not necessarily limited to, avoiding premature distributions, and the difficultly and expense of recovering distributions if it is later determined that they were incorrectly paid. The latter is especially concerning in this case given number of Murray Plaintiffs, and thus once distributions are released to them, many of which are for relatively small sums, it would difficult and cost-prohibitive to recover such sums, if needed.

60.    *Second*, the Court overrules the Murray Claimants' argument that the Debtor filed its bankruptcy case in bad faith, and to use the automatic stay improperly to avoid posting a supersedeas bond in the Murray Appeal. Never in the multi-year history of this bankruptcy case have the Murray Claimants ever filed a motion to dismiss the bankruptcy case on such a basis, and their only raising such an argument in the context of a confirmation objection to a Plan that pays them in full over time with interest, is too little, too late. Further, the Murray Claimants could have, but never did, seek or obtain relief from the automatic stay to allow the Murray Appeal or further proceedings in the Murray Case to proceed, to the extent they could given the pendency of the appeal; rather, they only sought a remand. Further, it was the Debtor who sought and obtained such stay relief to allow the Murray Appeal to proceed [ECF Nos. 319 and 345], thus seeking to proceed with such matters diligently and unabated by the bankruptcy filing.

61.    *Third*, any alleged prejudice to the Murray Claimants claim arising as a result of any delay in payment until their alleged claims are Allowed on a final basis is adequately compensated for with the payment of interest under the Plan pursuant to NRS 17.130. Plan § 4.01 (Class 4). Further, the fact that such interest may continue to accrue until paid in full is a powerful incentive for the Debtor not to delay payments and indeed may even motivate the Debtor to try to pay claims off early to avoid the incurrence of additional interest. Plan § 10.1.

62.    *Fourth*, the Debtor's Disputed Claims Reserve requires the funds to be paid into an escrow account, which allows those funds to earn interest pending their distribution, while also

providing adequate protection and transparency as well. Plan § 10.4.

63.      *Fifth*, the Plan's requirement that an Allowed claim must be adjudicated pursuant to a "Final Order" before a distribution conforms with the definition of what constitutes a final judgment consistent with Fed. R. Civ. P. 54, as made applicable pursuant to Bankruptcy Rule 7054, and likewise, as applicable, Nev. R. Civ. P. 54. To the extent the Murray Claimants assert that they should be entitled to distributions *before* such finality, except to the extent specifically permitted by the order granting the Interim Distribution Motion, the Court overrules that argument because it seeks to alter of the normal default rules regarding the finality of judgments.

**Z.      The Argument That "The Plan Does Not Unequivocally Make All of the Debtor's Assets, Including Those Nominally Titled To Its 'Subseries' LLCs, Available to Satisfy the Plan's Obligations."**

64.      The Plan complies with the Court's direction in its prior *Order Denying Confirmation* [ECF No. 482] by adequately explaining the relationship between the Debtor, as part of a series LLC, and other entities in the series, and how they interact. Plan, pp. 1-2.

65.      The Murray Claimants misconstrue the Debtor's position regarding its assets, as compared with the assets of the other non-debtor series LLC entities. The Plan provides for a limited "deemed" consolidation of those separate non-debtor entities with the Debtor to ensure that the Plan is feasible pursuant to § 1129(a)(11) of the Bankruptcy Code, but not for any other purpose. Plan § 7.02. The Debtor did so because the Debtor, as a "standalone" entity and without regard to its non-debtor series LLCs, could not afford to make the payments proposed under the Plan alone. Moreover, the Debtor's annual financial results reported to the Nevada Taxicab Authority are presented on a consolidated basis with its non-debtor series as well, and the Debtor relies on those same consolidated financial results in support of confirmation of this Plan. [Debtor Exs. 25-29, and 85].

66.      The Plan does not propose, nor is the Court ordering the substantive consolidation of the Debtor with its non-debtor series LLCs for any other purpose other than as provided in the Plan. Plan § 7.01. The limited substantive consolidation in the Plan is done with the Debtor's

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

consent and for that limited purpose only. Further, the Court is not making any finding or determination that the substantive consolidation of the Debtor with its non-debtor series is appropriate for any other purpose outside of what is stated in and agreed to in the Plan. No creditor or party in interest has ever filed a motion seeking substantive consolidation of the Debtor with its non-debtor series during the lengthy pendency of this Chapter 11 Case, and granting such a motion, even had it ever been filed, would be extraordinary relief that would require a substantial legal and evidentiary showing under applicable caselaw.

67. The Plan provides appropriate default remedies pursuant to § 1191(c)(3)(B)(ii) of the Bankruptcy Code on the specific issue of substantive consolidation because it preserves any creditors' or any party interests' ability to bring such a potential claim in the event of the occurrence and continuation of a Material Default under the Plan. Plan §§ 7.03 and 10.9.

**AA. The Arguments That The Plan should include a guarantee from Nady, personally, to not transfer the Bruce Property; require consent or approval for such transfer; and only stay, not dismiss, the pending fraudulent conveyance case.**

68. The Murray Claimants argue that the definition of "Allowed" denies them, as the holders of disputed claims that have not yet been Allowed on a final basis, with protection under the Plan until they are determined to be "Allowed." Objection, p. 33, No. 1. The Court disagrees and notes that upon the occurrence of its Effective Date, the Plan provides that it is binding on the Debtor and all creditors and holders of alleged claims, and regardless of the fact that the Murray Claimants claims have not yet been Allowed on a final basis, Plan § 8.04, thus resolving this issue satisfactorily. For the avoidance of any doubt, however, except for the distribution pursuant to the Interim Distribution Motion the Plan only requires the Debtor to pay claims if and when they are Allowed on a final basis.

69. *Second*, the Murray Claimants argue that Mr. Nady and Four Fours, LLC are not bound by the Plan, including in particular, the provisions regarding the tolling of Avoidance Actions, Plan § 7.03, and the restrictions on the sale of the Bruce Property, Plan § 7.04, because they are not signatories to the Plan. Objection, p. 33-34, Nos. 2 and 3. Mr. Nady and Four Fours

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

18

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

have since agreed to modify the Plan to provide that they will also execute it, thus confirming their agreement to be bound by these two provisions of the Plan, Plan, p. 18, thus resolving this matter satisfactorily.

70.     *Third*, the Murray Claimants assert that Plan § 7.04 (Limitation on Sale or Other Transaction of the Bruce Property) should be modified to require either: (a) the Murray Claimants' consent to a transaction involving the Bruce Property; or (b) this Court's approval of a transaction involving the Bruce Property. Objection, p. 34. Mr. Nady and Four Fours, LLC agreed to modify the Plan to sign it, thus agreeing to be bound by the Plan and this provision in particular, Plan, p. 18, thus resolving this matter satisfactorily.

71.     *Fourth*, the Murray Claimants argue that Plan § 7.03 (Preservation of Avoidance Actions) should be modified to provide that the commencement or continuation of any Avoidance Actions, to the extent they exist, should only be stayed, not dismissed without prejudice. Objection, p. 34. The Debtor agreed to modify Plan § 7.03 to provide for that to the extent any Avoidance Actions exist, they are preserved during the Debtor's performance of its Plan, and shall not be commenced or continued unless and until it is determined that a Material Default has occurred and is continuing pursuant to Plan § 10.9 , thus resolving this matter satisfactorily.

**BB.     The Argument That "The Plan Should Provide for the State Court to Oversee the Distributions of Plan Payments."**

72.     The Murray Claimants argue that the Nevada State Court should "oversee" the distributions under the Plan, including upon a remand of the Murray Adversary, and that the Plan should provide for the Nevada State Court to appoint a third party administrator to handle distribution of payments to the 661 Murray Claimants and for the Debtor to pay such third party administrator costs. . Objection, pp. 34-35. The Murray Claimants' intention in requesting this open-ended provision is apparently to be able to file a motion with Nevada State Court to compel the Debtor to pay for a third-party administrator to handle distributions under the Plan to Class 4.

73.     The Court overrules this argument for various reasons. *First*, nothing in the Bankruptcy Code requires such a third party administrator, and allowing the Debtor, as a fiduciary,

19

to act as its own disbursement agent under its Plan, is both permitted pursuant to § 1194(b) of the Bankruptcy Code, and is subject to the supervision of the Subchapter V Trustee, the Office of the U.S. Trustee, the Murray Claimants, and this Court, which provides adequate protection under the specific facts and circumstances of this case. Plan § 10.7. *Second*, the Court finds the Debtor has a *bona fide* interest in avoiding the expenses that would be imposed on it if such terms were part of the Plan and the record before the Court is insufficient to justify rejecting Plan confirmation because the Debtor has declined to makes these terms sought by the Murray Claimants part of the Plan. *Third*, the Court is concerned about ceding control over such a matter to a Nevada State Court, which could impose additional conditions, revisions and costs that are contrary to or inconsistent with the Plan and this Court's jurisdiction.

**CC.    The Argument That "The Plan Improperly Delays Payments to the Murray Claimants By Allowing Over $1,000,000 of Unnecessary Expenses."**

74.    The Court overrules the Murray Claimants' argument that the Plan "delays" distributions to them because of certain allegedly unnecessary or overstated expenses in the Plan Projections. Objection, pp. 35-36. The Murray Claimants previously made this argument with respect to the line item for distributions to Mr. Nady to cover the taxes incurred as a result of the Debtor's business operations, which was already addressed previously herein at length. The Murray Claimants repeat this argument, but with respect to $50,000 per month in professional fees in the Debtor's Plan Projections as well. The Court overrules this objection for various reasons, as hereinafter detailed.

75.    *First*, regardless of whatever alleged prejudice the Murray Claimants claim they could incur as a result of any delay in distributions to them as a result of such professional fee expenses in the Plan Projections, the Plan compensates them by paying them interest. Plan § 4.01 (Class 4). Moreover, the fact the Debtor must pay interest is a strong incentive for it to pay any Allowed claims off as soon as financially feasible, including even ahead of time, which the Plan allows it to do by providing for no prepayment penalty. Plan § 10.1.

76.    *Second*, the Murray Claimants' argument that the Debtor's professional fees

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

expense line item in its Plan Projections is too high overlooks the fact that: (a) given the lengthy and litigious history of the Murray Case, the Debtor will likely still have substantial legal expenses dealing with the remainder of the Murray Appeal and the Murray Case post-remand and for the foreseeable future; (b) the Debtor has other ordinary course legal expenses outside of the Murray-related matters incurred in the normal operation of its business, including but not limited to self-insured retentions and defense costs for personal injury actions, and normal business litigation and contract work, as is evidenced by the many stipulations for stay relief approved by the court on the docket; (c) the professional fees in the Debtor's Plan Projection are a fair approximation based on its recent historical legal expenses incurred over the last few years; (d) the Debtor will have substantial legal fees and costs owing to the various professionals in the Chapter 11 Case as well, including but not limited to the Subchapter V Trustee.

## DD.    Alleged Alter Ego Claims.

77.    The Court is not making a determination herein regarding whether any alleged alter ego, "piercing the corporate veil," or similar style claims, including without limitation those as may have been pled in the Murray Case and/or the Recovery Casse, which claims seek to hold certain individual persons liable for the Debtor's alleged debts, are or were property of the Debtor's bankruptcy estate pursuant to § 541 of the Bankruptcy Code. Accordingly, any party, including without limitation the Murray Claimants and/or the Debtor or Reorganized Debtor, as applicable, remain free to petition this Court through appropriate means for a determination of that property of the estate question, if necessary. For the avoidance of doubt, however, to the extent the foregoing claims are determined to have been property of the Debtor's bankruptcy estate, or under the control of the bankruptcy estate, they are subject to the provisions of the confirmed Plan. Plan § 10.8.

## EE.    The Murray Claimants' Status Report.

78.    On September 23, 2025, the Court entered an *Order Setting Status Hearing* (the "Status Hearing Order") [ECF No. 703], which set a Status Hearing on various pending matters, including without limitation, confirmation of the Debtor's Plan, but did not direct additional briefing by the parties.

79. Notwithstanding the foregoing, on September 24, 2025, the Murray Claimants filed what they called a *Status Report of the Murray Case Creditors for Hearing of September 24, 2025 Re: Proposed Development of Bruce Street Property, Debtor's Shift to a 100% Taxicab "Lease" Operation* (the "Murray Status Report") [ECF No. 704].

80. On September 25, 2025, the Court held the Status Hearing wherein it heard and considered the further arguments of counsel. [ECF No. 706]. At this hearing, the Court was advised that although the Nevada Supreme Court entered an order in the Murray Appeal on August 7, 2025 affirming a judgment in favor of the Murray Claimants [ECF No. 692, Ex. A], on September 22, 2025, the Debtor filed a petition for rehearing, and thus there is still no final decision in the Murray Appeal as of that date. Additionally, the Murray Claimants have also filed a motion for an award of attorney's fees and costs in the Murray Appeal, which also presently remains pending and unresolved as of that date.

81. On September 16, 2025, the Murray Claimants filed their Interim Distribution Motion in the Murray Case. As an additional concession to allow the Plan to be confirmed, the Debtor agreed at the Status Hearing to allow the Murray Claimants' Interim Distribution Motion to be granted; *provided*, *however*, that: (a) such funds will only be distributed after the occurrence of the Plan's Effective Date, and (b) nothing in the Court's approval of the Interim Distribution Motion is intended or should be construed as waiving any rights or arguments that parties may have before the Nevada Supreme Court and the Nevada State Court on remand.

82. Additionally, because of the Murray Claimants' filing of the Murray Status Report the day before the Status Hearing, thus not allowing time for the Debtor to respond before the Status Hearing, and given the statements of the Debtor's counsel on the record at the Status Hearing that the allegations in the Murray Status Report, the Court directed the Debtor to submit a further declaration addressing the allegations made therein. In compliance with the Court's direction at the Status Hearing, on October 2, 2025, the Debtor filed its *Supplemental Declaration of Creighton J. Nady Re: Status Report of the Murray Case Creditors* [ECF No. 710], which addressed the allegations made in the Murray Status Report. The Court has reviewed and

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

considered the foregoing, and is satisfied that it adequately addresses the allegations in the Murray Claimants' Status Report, and that those allegations are not an impediment to confirmation of the Plan as a result.

**IT IS HEREBY ORDERED, ADJUGED AND DECREED that:**

83. The Court shall enter a separate order confirming the Debtor's Plan on a non-consensual basis pursuant to § 1191(b) of the Bankruptcy Code.

84. The Court shall enter a separate order granting the Murray Claimants' Interim Distribution Motion pursuant to the terms as specified therein.

85. After entering the Interim Distributions Order, the Court shall enter a separate order remanding the Murray Case back to the Nevada State Court effective as of the occurrence of the Plan's Effective Date pursuant to the terms and conditions in the Plan. The Nevada Supreme Court and the Nevada State Court are granted relief from any stays to allow such matters to proceed through to final conclusion.

**IT IS SO ORDERED.**

. . .

. . .

. . .

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

PREPARED AND SUBMITTED:

By:   /s/ Matthew C. Zirzow
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ., NBN 7787
MATTHEW C. ZIRZOW, ESQ., NBN 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for Debtor

## LR 9021 CERTIFICATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐    The court has waived the requirement of approval under LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the Application.

☒    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

Nathan F. Smith (Subchapter V Trustee):                              APPROVED
Edward M. McDonald, Jr. (Office of the U.S. Trustee):        APPROVED
Leon Greenberg, P.C. (Murray Claimants):                            APPROVED

☐    I certify that this is a case under chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169